UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
JANE DOE,                                               :
                                                        :
                Plaintiff,        :   Civil Case No.: 1:23-cv-06418
                                                        :
        v.                                      :
                                                        :
LEON BLACK,                                             :
                                                        :
                Defendant.        :
------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY

**WIGDOR LLP**
Jeanne M. Christensen
85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
*Counsel for Plaintiff*

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe"), by and through her undersigned counsel Wigdor LLP, hereby files this Memorandum of Law in Support of Plaintiff's Motion to Proceed Anonymously pursuant to Federal Rule of Civil Procedure ("FRCP") 10a (the "Motion").

## PRELIMINARY STATEMENT

This lawsuit involves claims arising from Defendant Leon Black's ("Black") sexual assault and rape of Plaintiff in 2002. In the Complaint (Dkt. No. 1), Plaintiff alleges that after sex offenders Jeffrey Epstein ("Epstein") and Ghislane Maxwell ("Maxwell") trafficked her to Black, he then violently assaulted her in Epstein's home located on East 71st Street. Plaintiff was sixteen. Because of the egregious nature of what happened,[1] Plaintiff filed this lawsuit under the pseudonym of Jane Doe. There is no prejudice to Black if Plaintiff is permitted to pursue her claims as Jane Doe, and as is required, counsel for Plaintiff confidentially disclosed her name to counsel for Defendant. *See* Christensen Decl. ¶ 3. Appallingly, the only thing Black has done with this confidential disclosure is hire private investigators to harass and intimidate Ms. Doe. By way of example only, on June 27, 2023, the day after the Complaint was filed, Ms. Doe had a large white Suburban bearing a Virginia license plate TSH-8229 just inches from her family's driveway. Christensen Decl. ¶¶ 5-6 & Ex. 1. After the local police were called, the Suburban left. *Id*.

On August 7, 2023, at about 2 p.m., Ms. Doe's parents returned to their home in a residential Virginia neighborhood to find two men "waiting" for them. Christensen Decl. ¶ 7. At the time, Ms. Doe's minor child was with her parents. *Id.* These men said that they were "investigating" a complaint filed in court and needed to speak to her parents. *Id.* These two men had with them photos of Ms. Doe's minor child, and specifically photos when the child was very young. *Id.* ¶ 8. Undoubtedly, showing baby photos in their possession to Ms. Doe's parents is a

---

[1]  These details are set forth in the Complaint at ¶¶ 65-81, and not repeated here.

blatant attempt to send a strong and disgusting message to Ms. Doe that should she proceed to assert her claims against Black, that she was placing the safety of her immediate family, including her minor child, in jeopardy.

In pathetic fashion, the two men came to the house where Ms. Doe grew up carrying a wrapped cheesecake as a ploy to be invited in for coffee. *Id.* ¶¶ 8-9. The blindsiding resulted in the "investigators" "interviewing" Ms. Doe's parents and even speaking to her minor child. *Id.* ¶ 10. The investigators recorded the conversations during which they asked questions about Ms. Doe's childhood and requested photos of Ms. Doe when she was a child. *Id.* ¶¶ 9-10. In addition, they asked pressing and intimate questions about Ms. Doe's medical history. *Id.* ¶ 9.

The next morning, two men showed up unannounced at the home of Ms. Doe's father's sister, with whom Plaintiff is close. *Id.* ¶ 12. Again, the "investigators" implied that they were on official business in connection with a lawsuit. *Id.* Of course, the only "official" business they had was private work for Leon Black. In addition to Ms. Doe's aunt, the men attempted to question her cousin about her personal life. After the two men arrived, Ms. Doe's aunt, who was afraid, contacted Ms. Doe. *Id.* ¶ 13. Ms. Doe's aunt told them to leave and fortunately, the two men left. *Id.* Several hours later, a childhood friend of Ms. Doe's contacted her to explain that her neighbor had told her that two men were "waiting" outside of her residence during the day. *Id.* ¶ 14. The business card left by the two men indicated that they were affiliated with SIC, Inc., based in Miami, Florida.[2] *Id.* The investigation firm is headed by Carlos Melendez, a retired Major in the U.S. Army, who lists on his site that his qualifications include being a certified fraud examiner, an FAA Commercial Pilot, and provides the license number of his concealed weapons license.

---

[2] *See* https://sicflorida.com/.

The conduct Black believes he is entitled to engage in, despite his clear intent to frighten and intimidate a sexual assault victim, is of heightened concern here based on Black's recent, substantially similar conduct, in litigation involving another sexual assault victim who has accused Black of raping her in Epstein's townhouse. Specifically in *Pierson v. Black*, Index No. 952002/2022, filed on November 28, 2022 in New York Supreme Court, New York County, after Ms. Pierson dared to use her actual name in connection with the legal action, Black's private investigators spent weeks drudging up information about Pierson that any reasonable person would be humiliated and horrified to learn was publicly filed on a court docket. Christensen Decl. ¶ 16. Abhorrently, Black attached over 230 pages as "exhibits" to a baseless "sanctions" motion in the Pierson case with information about her past that had absolutely nothing to do with Black's legal defenses to the civil claims asserted against him. *Pierson*, ECF No. 14. *Id.* ¶ 17. Black's intent was pure unadulterated victim shaming.

Based on Black's prior use of private investigators to bully and shame women who have accused him of sexual assault, substantial concern exists about what he intends to do with the fact that he has confidentially obtained Ms. Doe's true name in this action. Black's requests for photos of Ms. Doe as a child and adolescent, as well as the fact his investigators already possess photos of her minor child, suggests he intends to publicly leak her identity through the media and possibly through this Court. In fact, his counsel already publicly declared that Black considers this a "sanctionable case." Christensen Decl. ¶ 15. Unquestionably, Black intends to attach hundreds of pages about Ms. Doe's personal history to a baseless sanctions motion in a clear effort to victim shame and intimidate her into dropping her viable legal claims. For these reasons, it is imperative that Ms. Doe be permitted to proceed anonymously pursuant to FRCP 10a.

3

# ARGUMENT

It is well-settled that it is within the sound discretion of the court to allow a plaintiff to proceed anonymously in judicial proceedings. *See*, *e.g.*, *EW v. N.Y. Blood Center*, 213 F.R.D. 108, 110 (E.D.N.Y. 2003); *Doe v. Smith*, 189 F.R.D. 239, 242 (E.D.N.Y. 1998), *vacated on rehearing and modified on other grounds,* 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999). A district court has discretion to grant an exception to the "general requirement of disclosure of the names of parties" to permit a plaintiff to proceed under a pseudonym. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (internal quotation marks and citation omitted) (alteration adopted). The question for the district court is whether the plaintiff has a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* (internal quotation marks and citation omitted).

**I.     PLAINTIFF SHOULD BE GRANTED LEAVE TO PROCEED ANONYMOUSLY IN THIS LAWSUIT DUE TO THE SENSITIVE AND PERSONAL NATURE OF THE ALLEGATIONS**

Plaintiff's interest in anonymity outweighs any other factors that would justify disclosing her name. When deciding whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant. *See id.* at 189-90. In balancing these interests, courts consider several factors, including the following "non-exhaustive" list:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or, even more critically, to innocent nonparties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of disclosing the plaintiff's identity;

4

> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly given his or her age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;
>
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
> (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 189-90 (internal quotation marks, citations, and alterations omitted).

A district court is not required to list each of the factors or use any particular formula as long as the court balances the interests at stake in reaching its conclusion. *See id*. at 191 n.4. When balancing these interests, these factors favor granting Plaintiff's request to proceed anonymously in this action.

### A. This Litigation Involves Matters that are Highly Sensitive and of a Personal Nature

As to the first factor, Plaintiff's claims concern brutal sexual assault and rape and, accordingly, are highly sensitive and of a personal nature. In similar circumstances, courts have recognized the need to protect the identity of sexual assault victims. *See Doe v. Smith*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999) (allowing victim of sexual abuse to proceed anonymously); *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir. 1997) (recognizing rape

5

victims as entitled to anonymity). An action need not involve rape or sexual assault specifically in order to permit a plaintiff to proceed as a Jane Doe. *See Trooper 1 v. N.Y. State Police*, No. 22 Civ. 00893 (LDH) (TAM), ECF No. 37. In *Trooper 1*, the court held:

> Even though Plaintiff has not offered corroboration for her claimed risks of harm at this stage, in light of the allegations contained in the complaint and the high-profile nature of the case, having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case. As a result, the Court finds that a "chilling effect" could result from Plaintiff's being required to reveal her identity, which weighs in favor of permitting Plaintiff to continue anonymously.

*Id*. (citations and quotations omitted). Here, Black is a public figure and the media attention to this case has been substantial, especially because the commencement of this action happened to coincide with the July 25, 2023 announcement that the U.S. Senate Committee on Finance unveiled an ongoing investigation into Black's tax planning and financial ties with Epstein.[3] This news was disclosed just days after multiple media outlets reported that Black had entered into a settlement with the U.S. Virgin Islands and agreed to pay $62.5 million to obtain a release from "potential claims arising out of the territory's three-year investigation into the sex trafficking operation of the disgraced financier Jeffrey Epstein, according to a copy of the settlement agreement." *See* The New York Times, *Leon Black Agreed to Pay $62.5 Million to Settle Epstein-Related Claims*, July 21, 2023 (Goldstein, Matthew).[4]

On the heels of these explosive stories involving Black, the media attention of this action would undoubtedly create a chilling effect on future plaintiffs in similar circumstances should Ms.

---

[3] https://www.finance.senate.gov/chairmans-news/wyden-unveils-ongoing-investigation-into-private-equity-billionaire-leon-blacks-tax-planning-and-financial-ties-with-jeffrey-epstein.
[4] https://www.nytimes.com/2023/07/21/business/leon-black-settlement-jeffrey-epstein-claims.html.

Doe be forced to disclose her identity. *See*, e.g., *Doe v. Colgate Univ.*, No. 15 Civ. 1069 (LEK) (DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014). *See also Doe 1 v. McAdam Fin. Grp. LLC,* No. 22 Civ. 00113 (GHW) (SN), 2022 WL 3579700 (S.D.N.Y. Aug. 3, 2022).

        B.        **Plaintiff's Identification Poses a Risk of Retaliatory Mental Harm**

The second factor is similarly satisfied in favor of granting anonymity, as Plaintiff's identification poses a risk of mental harm. Plaintiff's experiences, which as described in the Complaint are deeply traumatic, and having those experiences played out in a public forum could spark more trauma for Plaintiff. *See Doe 140 v. Archdiocese of Portland in Or.*, 249 F.R.D. 358, 361 (D. Or. 2008) (explaining that "the experience of sexual abuse can be deeply psychologically traumatic, and public knowledge of such abuse can trigger new trauma even years after the fact"). Under circumstances in which disclosure of a party's identity could cause further injury, anonymity is routinely permitted. *See Doe v. Smith*, 105 F. Supp. 2d at 44 (holding that sexual abuse victim may proceed anonymously where victim's doctor opined that revelation of her identity would cause emotional injury); *Doe v. Diocese Corp.*, 647 A.2d 1067, 1072 (Conn. 1994) (therapist opined that disclosure of clergy abuse victim's identity would cause a setback in his treatment); *Roe v. Borup*, 500 F. Supp. 127 (E.D. Wis. 1980). In this case, the filing of this lawsuit has garnered significant attention in the press, and if her identity is revealed to the public, there is little doubt that she would be inundated with unwanted attention from the media that would cause her extreme psychological distress. Plaintiff has sought mental health treatment to address the

significant trauma she experienced as a result of Black's sexual assault and rape and would certainly experience significant harm if she is forced to reveal her identity to the public.

Here, there is ample evidence showing that Black is already engaging in a campaign of intimidation against Ms. Doe.  Christensen Decl. ¶¶ 5-14.

### C. The Defendant Would Not be Prejudiced by Allowing the Plaintiff to Pursue Her Claims Anonymously

Additionally, Defendant would not be prejudiced if Plaintiff pressed her claim anonymously.  This is not a case in which the Defendant does not know the Plaintiff's identity.  There is no concern about witnesses coming forward when Black, through his investigators, is busy contacting immediate family members, other relatives, prior employers, neighbors, and acquaintances to find out everything about Ms. Doe's personal life.  Similarly, there is no concern about Black being able to conduct discovery if Plaintiff can proceed anonymously.  *Rapp v. Fowler*, No. 20 Civ. 9586 (LAK), 2021 WL 1738349, at *6 (S.D.N.Y. May 3, 2021) (courts consider "difficulties in conducting discovery" on Rule 10(a) motions); *Roe v. Does 1-11*, No. 20 Civ. 3788 (MKB) (SJB), 2020 WL 6152174, at *3 (E.D.N.Y. Oct. 14, 2020) ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations.").

Defendant will have access to Plaintiff's discoverable information, and will still have the right to depose or confer with any and all witnesses, conduct full discovery in accordance with the Rules of Civil Procedure, and obtain any and all documents.  There is neither potential prejudice to the Defendant nor a possibility of confusion of identities.  Indeed, to the contrary, Black already has hired private investigators to run around and suddenly appear at the homes of people close to Ms. Doe.  Thus, allowing Plaintiff to proceed anonymously will not result in prejudice to the Defendant or in any way interfere with the policy underlying Rule 10a of the Federal Rules of

Civil Procedure of apprising the parties of the identity of their opponent.  As such, Defendant will suffer no prejudice if Plaintiff is to pursue her claims under the Jane Doe pseudonym.

### D. Plaintiff has Kept her Identity Confidential

Further, Plaintiff has taken steps to keep her identity confidential.  For example, she has not spoken publicly about the incidents that underly the causes of action.  Christensen Decl. ¶ 18.

### E. The Public Will Not be Prejudiced if Plaintiff Proceeds Anonymously

"[P]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (holding that Plaintiff suing government was entitled to proceed anonymously).  "The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Id*.  Rather, it would seem that the public has a far greater interest in knowing who is accused of sexual abuse and where the abuse is alleged to have occurred than any interest in knowing the specific identity of a victim.  In *EW*, 213 F.R.D. 108, the court held that the privacy rights of a patient who brought suit against a blood bank after receiving a tainted blood transfusion outweighed any First Amendment interest in access to her name.  The court noted, "[t]he modern invention of today includes access to court files by those surfing the Internet.  The facts of this case provide no occasion for imposing such an invasion of privacy as the price for litigating a legitimate private complaint." *Id*. at 112-13.  In this case, the sensitive and personal nature of Plaintiff's allegations of rape and the likelihood of further psychological injury overcomes any presumption of openness.

### F. Allowing Plaintiff to Proceed Anonymously Furthers Public Interest

The Court's favor granting anonymity in these circumstances, as allowing Plaintiff to proceed anonymously, furthers the public interest.  In *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa.

2001), the plaintiff requested that she be able to procced anonymously. As here, the plaintiff in *Evans* was a victim of sexual assault. In considering the public interest, the court determined that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Id*. at 176. Plaintiff requests the same consideration here to protect her identity and she would suffer significant psychological harm if she is forced to reveal her identity to the public.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Leave to Proceed Anonymously in its entirety, and all other relief this Court deems just and appropriate.

Dated: August 10, 2023
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
     Jeanne M. Christensen

85 Fifth Avenue
New York, NY  10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com

*Counsel for Plaintiff*