**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

        *Plaintiff,*

        v.

LEON BLACK,

        *Defendant.*

Case No. 1:23-cv-06418-JGLC

## DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO
## PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY

PERRY LAW
E. Danya Perry
Peter A. Gwynne
157 East 86th St., 4th Floor
New York, NY 10028
(646) 974-0935

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, New York 10010
(212) 849-7000

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice forthcoming*)
947 Berkeley St.
Santa Monica, CA 90403
(213) 399-2132

*Counsel for Defendant Leon Black*

Defendant Leon Black submits this response to Plaintiff's Motion to Proceed Anonymously (the "Motion") [ECF Doc. No. 6].

## INTRODUCTION AND BACKGROUND

This motion never should have been brought. Had Plaintiff's counsel at Wigdor LLP ("Wigdor") simply asked, Mr. Black would have advised them that he does not object to Plaintiff proceeding pseudonymously at this time, and a simple stipulated order could have been submitted for the Court's consideration. But that would not have achieved Wigdor's objective of publicly smearing Mr. Black; so instead, they filed the Motion, which is just the latest installment in Wigdor's use of the courts to harass and threaten, rather than to vindicate valid legal rights.

It was entirely unnecessary for Wigdor to have filed its lengthy and wildly inaccurate screed attacking Mr. Black for investigating Plaintiff's claims, other than as a weapon in their campaign of character assassination. We regret further burdening the Court with a response, but it bears explanation that the Motion is not only unnecessary, but also replete with falsehoods. As an example, the Memorandum of Law submitted in support of the motion [ECF Doc. No. 8] (the "Motion") suggests Mr. Black was seeking to intimidate and harass the Plaintiff by having a large white SUV parked outside her home; if such a car was parked there, it had nothing to do with Mr. Black. This is just one of many examples of Wigdor simply making things up.

The fact of the matter is that the claims pleaded in the Complaint—just like the purported grievances in the Motion—are entirely fabricated, which will be proven in the fullness of time. Mr. Black never met Plaintiff, much less sexually assaulted her, and Mr. Black intends to defend himself. In his defense, Mr. Black is entitled to take legitimate steps to investigate claims that he knows to be untrue. There is nothing remotely inappropriate about using professional, ethical, licensed investigators to ascertain the true facts; indeed, although Wigdor itself does not appear to

take steps to investigate its matters, legitimate plaintiffs' attorneys routinely use investigators as well. And as is clear from the voluntarily recorded interviews, the 83-year-old investigator in this case could not have been less intimidating or more professional.

What the many witnesses with whom he spoke told him has been consistent and clear: Every material aspect of Plaintiff's Complaint is untrue, and Wigdor either must know it or is or deliberately indifferent to it.

**<u>Wigdor's Pattern of Frivolous Lawsuits Against Mr. Black</u>**

Wigdor's business model is to threaten putative defendants with scandalous allegations and press leaks that can be avoided only at the cost of an outsized settlement, of which Wigdor takes a shockingly large cut. Initially, Wigdor must have believed that Mr. Black was just another deep pocket who would be willing to pay exorbitant sums to avoid lurid—and, in his case, utterly false— allegations. But he was not, and Wigdor has sought to teach him a lesson by filing three separate lawsuits which it knew, or should have known, were untrue.

*First*, Wigdor filed a lawsuit on behalf of Guzel Ganieva, who previously had a consensual relationship with Mr. Black and signed a broad NDA and release agreement barring all claims against him. Wigdor filed suit anyway, alleging misconduct plainly contradicted by their client's own words in text messages and audio recordings. The appellate court rejected the "scandalous" and "prejudicial" allegations in the first amended complaint, and the trial court dismissed the entire case with prejudice in a humiliating set of defeats for Wigdor. *Second*, Widgor filed a lawsuit against Mr. Black on behalf of Cheri Pierson, a serial litigant who has been involved in over 35 previous lawsuits, has an extensive criminal record, and who has been publicly accused of harassment, stalking, and threatening to kill others. Mr. Black has never even met Ms. Pierson. The allegations in question concern events over 20 years ago, and there is no corroboration alleged

in the complaint. Wigdor filed suit anyway. *Third*, and most recently, Wigdor filed this lawsuit

against Black on behalf of "Jane Doe," who, again, Mr. Black has never even met, and which,

again, was based on completely uncorroborated allegations involving decades-old alleged conduct.

As demonstrated below and as will further be proven in due course, Mr. Black has already

uncovered evidence proving that these most recent claims were made up from whole cloth. Upon

information and belief, Wigdor was even warned by others prior to filing that Plaintiff's claims

were fictitious. Wigdor filed suit anyway.

As with Wigdor's other suits against Mr. Black, it has shown interest only in using this

case for publicity and harassment, and no interest in actually prosecuting it. Though it filed the

case on July 25, and although *counsel agreed to accept service* on behalf of Mr. Black as long as

Wigdor would agree to extend the time by which Mr. Black would have to answer or otherwise

respond, Wigdor still has not bothered to even answer counsel's email and effect service.[1] Decl.

of E. Danya Perry ¶¶ 3-5.[2]

## The Assertions in the Motion Are False.

Much like the allegations in the Complaint, Wigdor's claims in its Motion are completely

invented and are designed to smear with no basis in fact. A centerpiece of the Motion is the

suggestion that on July 27, two days after the complaint in this matter was filed, Mr. Black

stationed a large SUV outside the Plaintiff's home "to harass and intimidate Ms. Doe." (Mot. at

2.) In fact, whatever the reason a car was parked outside the Plaintiff's home that day, as noted

---

[1] Counsel's appearance and response to this motion do not obviate Plaintiff's obligation to effect service. *See, e.g.*, *Lewellen v. Morley*, 909 F.2d 1073, 1077 (7th Cir. 1990); *Patterson v. Menard, Inc.*, 2015 WL 12762272, at *6 (S.D. Iowa Dec. 22, 2015) (collecting cases); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) (general appearance does not waive the defense of insufficient service of process). Mr. Black still has not been served, and thus his time to answer or otherwise respond pursuant to Rule 12 of the Federal Rules of Civil Procedure has not yet begun to run. This response does not constitute acceptance or waiver of service, and Mr. Black reserves all rights to challenge service and/or jurisdiction at the appropriate time.

[2] A copy of Ms. Perry's declaration is attached as Exhibit A to this memorandum.

earlier, it had nothing whatsoever to do with Mr. Black. The first date that any investigator working on Mr. Black's behalf in this matter approached anyone to interview them was August 7, some ten days later. No investigator working on Mr. Black's behalf ever parked a car outside of the Plaintiff's home. Decl. of Carlos Melendez ¶¶ 9, 15 ("Melendez Decl.").[3]

To be clear, at no time did any investigator engage in anything other than polite, respectful conduct. As the Motion notes, the lead investigator assisting on this matter is Carlos Melendez, an 83-year-old decorated Army veteran who is a licensed investigator. *Id.* ¶¶ 2-5. In each instance that someone agreed to speak with him, Mr. Melendez recorded the conversation, including confirming on the recording that the individual knew they were being recorded, consented to it, and were speaking with him voluntarily and with no coercion or inducement. *Id.* ¶ 8.

Contrary to the assertions in the Motion, the investigators did not lie in wait for Plaintiff's parents to somehow intimidate them. The investigators first spoke with Plaintiff's father at 12:30 p.m. on August 7, 2023. *Id.* ¶ 9. Plaintiff's father then called his wife who was not at home, and the two made an appointment for the investigators to visit them at 2:30 p.m., when Plaintiff's mother would be home. The investigators went for lunch and were running late, so they called and notified the mother that they were late coming from lunch; as a gesture of politeness, they brought dessert over and apologized that they "made the lady wait." *Id.*

The investigators asked permission to record the conversations, and did so only with consent. *Id.* ¶ 8. They only showed a picture of Plaintiff and her child during the course of the conversation, and, contrary to the Motion's suggestion, not in order to gain entrance or intimidate. (Notably, the photos were gathered from public Facebook accounts). *Id.* ¶ 10. During the course of the conversation, Plaintiff's mother *volunteered* to invite Plaintiff's older child (who lives with

---

[3] A copy of the Melendez Declaration is attached as Exhibit B to this memorandum.

his grandparents), to speak to the investigators. *Id.* ¶ 11. She also *volunteered* to call and invite her other daughter over—Plaintiff's sister—who also came over to join in the interview. *Id.* None of this was coerced, or even suggested by the investigators. *Id.* During the conversation, Plaintiff's mother *voluntarily* showed investigators pictures of Plaintiff. *Id.* ¶ 12. The investigators spent approximately four hours with Plaintiff's family, and *all* members of the family volunteered to be on record and agreed to be recorded.

Indeed, if any party here was harassing anyone, it was Wigdor itself. While the investigator was speaking with Plaintiff's aunt, Ms. Christensen of Wigdor was furiously texting her, trying to put a stop to the voluntary conversation. *Id.* ¶ 13. Ms. Christensen then called the witness during the interview, at which time the witness told Ms. Christensen that she did not like Ms. Christensen's attitude, and she specifically told Ms. Christensen that the investigator had been "nothing but polite and very reasonable." *Id*. Remarkably, despite explicitly being told this, Wigdor is trying to claim the very opposite here.

**The Allegations in the Complaint are False.**

Wigdor's extreme tone in the Motion no doubt results from its knowledge that even a modicum of investigation will reveal the claims to be the sham that they are. Wigdor is correct. Investigators spoke with numerous witnesses, including close and extended family members, as well as individuals who have known Plaintiff well, and among other things they have stated the following, in recorded interviews:

- Plaintiff, who has used a series of different names and personas, has a history of making up alternate realities; a diagnosis of borderline personality disorder; and invents things that "become[] her reality."

- Contrary to the allegations in the Complaint, Plaintiff lived at home through high school, and did not travel to Florida, New York, or the Virgin Islands as the Complaint asserts. While in high school, she did not travel out of town on weekends or weekdays.

5

- Plaintiff graduated high school on time, did not fail any classes, and did not miss school for any significant amounts of time (other than when she was hospitalized for two weeks in Baltimore).

- Plaintiff participated in a county cheerleading program when she was a senior in high school—not when she was 15, as is alleged in the Complaint. The program was for high school students, not for children aged 8–12. The cheerleading program did not involve overnight trips.

- Based on descriptions and photographs, Plaintiff appeared to be of average weight and developmentally age appropriate. When she was in the cheerleading program as a high school senior, she could not have fit into a uniform for 8–12 year-old children, as alleged in the Complaint.

- Although Plaintiff claims in the Complaint to have autism and Mosaic Down syndrome, she was not diagnosed with either during her childhood or while she lived at home throughout high school, and did not display symptoms or behaviors of either condition. Instead, Plaintiff became aware of and studied those behaviors and began intentionally displaying them in her twenties in order to present herself as a person with autism. For example, she once noted that people with autism don't look other people in the eye, and thereafter began to avoid looking people in the eye—a behavior she had never before displayed. Likewise, the first time her family heard Plaintiff claim to have mosaic Down syndrome was when she was in her thirties, after a relative posted on social media about her child with Down syndrome, and received positive support and attention. According to her family, Plaintiff has a history of seeking attention through any means available to her.

- Recently, Plaintiff posted on social media that she had been abused by Jeffrey Epstein. She had never made such allegations before. Her family told her that they did not believe this to be true, and she deleted the posts.

*Id.* ¶¶ 12, 14. At the appropriate time, Mr. Black also will show that other specific details contained in the Complaint are demonstrably false, and he reserves all of his rights in connection with Wigdor's misconduct.

## ARGUMENT

### I.    Legal Standards for Moving to Proceed Anonymously

Fed. R. Civ. P. 10(a) provides that "[t]he title of the complaint must name all the parties" and Fed. R. Civ. P. 17(a)(1) states that an action "must be prosecuted in the name of the real party in interest." As such, there is a "strong presumption that litigants must proceed under their true names." *Doe v. Black Diamond Cap. Mgmt. LLC*, 2023 WL 2648017, at *2 (S.D.N.Y. Mar. 27,

2023); *see also U.S. v. Pilcher*, 950 F.3d 39, 42 (2d Cir. 2020) ("Identifying parties in a proceeding 'is an important dimension of publicness,' as 'people have a right to know who is using their courts.'" (quotations omitted)). "'[P]seudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption.'" *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022) (quoting *Pilcher*, 950 F.3d at 45).

"District courts have discretion to grant an exception to Rule 10(a)" and allow a plaintiff to proceed anonymously "only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and 'the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Rapp v. Fowler*, 537 F. Supp. 3d 521, 526-27 (S.D.N.Y. 2021) (quotation omitted).

The Second Circuit has developed a "non-exhaustive" list of factors that courts should consider in balancing these interests:

(1)     whether the litigation involves matters that are highly sensitive and of a personal nature,

(2)     whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties,

(3)     whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,

(4)     whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age,

(5)     whether the suit is challenging the actions of the government or that of private parties,

(6)     whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court,

(7)      whether the plaintiff's identity has thus far been kept confidential,

(8)      whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity,

(9)      whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and

(10)     whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008).

The district court is not required "to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4. Moreover, a plaintiff seeking to proceed anonymously "must base their allegations about these competing interests on more than just mere speculation." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 93 (S.D.N.Y. 2020) (quotation omitted).

## II.    Mr. Black Does Not Challenge Plaintiff's Request for Anonymity at This Time

As noted, this motion never should have been brought; Mr. Black does not oppose Plaintiff's request for anonymity at this time and would readily have said as much to Wigdor had it simply asked—as any other litigant would have done.

To be clear, it certainly is possible that the time will come when Plaintiff's continued anonymity would prejudice Mr. Black. Numerous courts in this district have refused to grant anonymity in similar circumstances. *Rapp*, 537 F. Supp. 3d at 528 (denying application to proceed pseudonymously of one of two plaintiffs who alleged that he had been the victim of a sexual assault by the actor Kevin Spacey thirty-five years earlier when he was a teenager); *Doe v. Freydin*, 2021 WL 4991731, at *2-3 (S.D.N.Y. Oct. 27, 2021) (denying motion to proceed anonymously by plaintiff alleging claims for sexual assault, sexual harassment, and surreptitious recording); *Doe v. Townes*, 2020 WL 2395159, at *1 (S.D.N.Y. May 12, 2020) (denying motion to proceed

anonymously in case involving sexual assault); *Weinstein*, 484 F. Supp. 3d at 98 (same); *Doe v. Skyline Automobiles, Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (denying motion to proceed anonymously despite "highly sensitive" allegations of being "sexually assaulted while unconscious" and subject to "sexual harassment following the incident."); *see also Branca USA, Inc.*, 2022 WL 2713543, at *2 (collecting cases).[4]

However, as noted, the Court need not undertake the lengthy multi-factored analysis or waste any more of its time at this juncture on this motion, which was plainly filed for public relations—and not legal—reasons.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant does not oppose the Motion at this time.

---

[4] The cases cited by Plaintiff are highly distinguishable. In *Doe v. Gooding*, 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022), the court recognized the value in allowing a party to proceed anonymously in three specific situations not applicable in that case and not applicable in Plaintiff's suit against Mr. Black. Those three situations where anonymity is "more favored" are: "[W]here a plaintiff is particularly young and vulnerable to public scrutiny"; "where an anonymous plaintiff challenges the government rather another private party"; and "where a suit raises purely legal, rather than factual, issues." *Id.* at * 6. As in *Gooding*, Plaintiff's current action against Mr. Black does not bear any of these hallmarks.

Dated: New York, New York
      August 14, 2023

By:   */s/ E. Danya Perry*
     PERRY LAW
     E. Danya Perry
     Peter A. Gwynne
     157 East 86th St., 4th Floor
     New York, NY 10028
     Tel: (646) 974-0935
     Facsimile: (646) 849-9609
     pgwynne@danyaperrylaw.com
     dperry@danyaperrylaw.com

     QUINN EMANUEL URQUHART &
     SULLIVAN, LLP
     Michael B. Carlinsky
     Jennifer J. Barrett
     51 Madison Avenue
     22nd Floor
     New York, New York 10010
     Tel: (212) 849-7000
     michaelcarlinsky@quinnemanuel.com
     jenniferbarrett@quinnemanuel.com

     ESTRICH GOLDIN LLP
     Susan Estrich (*pro hac vice* forthcoming)
     947 Berkeley St.
     Santa Monica, CA 90403
     Tel: (213) 399-2132
     susan@estrichgoldin.com


     *Counsel for Defendant Leon Black*

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that on August 14, 2023, a copy of the foregoing, including exhibits, was electronically delivered via ECF to counsel of record as follows:

WIGDOR LLP
Jeanne M. Christensen
Meredith A. Firetog
85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

**DATE:** August 14, 2023

*/s/ E. Danya Perry*
E. Danya Perry