UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

PLAINTIFF,

-AGAINST-

LEON BLACK,

DEFENDANT.

Case No. 23-cv-06418-JGLC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OF JANE DOE

Dated: September 29, 2023

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, New York 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com

PERRY LAW
E. Danya Perry
Peter A. Gwynne
157 East 86th St., 4th Floor
New York, NY 10028
(646) 357-9952
dperry@danyaperrylaw.com
pgwynne@danyaperrylaw.com

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St
Santa Monica, CA 90403
(213) 399-2132
susan@estrichgoldin.com

*Counsel for Defendant Leon Black*

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................ II

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL AND LEGAL BACKGROUND .......................................................................... 3

I.     THE RELEVANT ALLEGATIONS IN THE COMPLAINT ........................................... 3

II.    THE RELEVANT STATUTES ................................................................................ 3

       A.     New York City's VGMVPL ................................................................. 4

       B.     New York State's CVA ....................................................................... 5

       C.     New York City's Revival Statute ...................................................... 6

       D.     New York State's Adult Survivors Act ............................................ 6

ARGUMENT ............................................................................................................... 7

I.     LEGAL STANDARD ON A MOTION TO DISMISS ................................................. 7

II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED AS UNTIMELY .............................. 8

       A.     The Claim Is Untimely Under The VGMVPL's Default Limitations
              Period .................................................................................................. 9

       B.     Plaintiff's Claim Is Not Rendered Timely By The NYC Revival Statute
              Because That Statute Is Preempted By The New York State CVA ..... 9

       C.     Plaintiff Did Not File Within The CVA Revival Window ................. 20

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

*Page(s)*

## *Cases*

*Ackerman v. Ackerman,*
2012 WL 407503 (S.D.N.Y. Feb. 9, 2012) ...................................................................7

*Albany Area Bldrs. Ass'n v. Town of Guilderland,*
74 N.Y.2d 372 (1989) ...............................................................................................10, 17

*Anonymous v. Castagnola,*
210 A.D.3d 940 (2d Dep't 2022) ...........................................................................2, 15, 16

*Ass'n of Home Appliance Manufacturers v. City of New York,*
36 F. Supp. 3d 366 (S.D.N.Y. 2014).............................................................................8

*Carroll v. Trump,*
2023 WL 185507 (S.D.N.Y. Jan. 13, 2023) ...............................................................7

*Chwick v. Mulvey,*
81 A.D.3d 161 (2d. Dep't 2010) ..................................................................................18

*Cohen v. Bd. of Appeals of Vill. of Saddle Rock,*
100 N.Y.2d 395 (2003) .................................................................................................11

*Consol. Edison Co. v. Town of Red Hook,*
60 N.Y.2d 99 (1983)........................................................................................16, 17, 18

*Cordero v. Epstein,*
22 Misc. 3d 161 (N.Y. Sup. Ct., N.Y. Cty. 2008).......................................................19

*Council of City of New York v. Bloomberg,*
6 N.Y.3d 380 (2006) ...........................................................................................1, 3, 16

*Doe v. Crooks,*
613 S.E.2d 536 (S.C. 2005) .........................................................................................16

*Doe v. Gonzalez,*
2023 WL 5979182 (E.D.N.Y. Aug. 4, 2023)...............................................................13

*Doe v. Gooding,*
2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022)..............................................................19

*Doe v. Hartford Roman Cath. Diocesan Corp.,*
317 Conn. 357 (2015) ...................................................................................................16

*Doe v. Roman Cath. Diocese of Jefferson City,*
    862 S.W.2d 338 (Mo. 1993) ...................................................16

*Drake v. Lab. Corp. of Am. Holdings,*
    458 F.3d 48 (2d Cir. 2006)........................................................8

*Engelman v. Rofe,*
    194 A.D.3d 26 (1st Dep't 2021) .........................................19, 20

*Fenton v. State,*
    213 A.D.3d 737 (2d Dep't 2023) ...............................................5

*Finnigan v. Lionetti,*
    Index No. 70001/2019E (N.Y. Sup. Ct. Oct. 7, 2021)..................17

*Garcia v. New York City Dep't of Health & Mental Hygiene,*
    31 N.Y.3d 601 (2018) .............................................................10

*Gaston v. New York City Dep't of Health Off. of Chief Med. Exam'r,*
    432 F. Supp. 2d 321 (S.D.N.Y. 2006)........................................7

*Ghartey v. St. John's Queens Hosp.,*
    869 F.2d 160 (2d Cir. 1989).....................................................7

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir. 1985)....................................................7

*Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n,*
    634 F.3d 206 (2d Cir. 2011)....................................................16

*ILC Data Device Corp. v. County of Suffolk,*
    182 A.D.2d 293 (2d Dep't 1992) ...................................10, 17, 19

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.,*
    2022 WL 2124608 (W.D.N.Y. June 13, 2022)..........................8, 15

*Kamhi v. Town of Yorktown,*
    74 N.Y.2d 423 (1989) .............................................................10

*Lansdown Ent. Corp. v. New York City Dep't of Consumer Affs.,*
    74 N.Y.2d 761 (1989) ....................................................... passim

*Latif v. Morgan Stanley & Co.,*
    2019 WL 2610985 (S.D.N.Y. June 26, 2019) .............................21

*Meimaris v. Royce,*
    2021 WL 5170725 (2d Cir. Nov. 8, 2021)....................................7

*Mitchell v. Roberts*,
  2020 UT 34, 469 P.3d 901 ..................................................................16

*N.Y. State Ass'n for Affordable Hous. v. Council of N.Y.*,
  141 A.D.3d 208 (1st Dep't 2016) ........................................................14

*New York Bankers Ass'n, Inc. v. City of New York*,
  119 F. Supp. 3d 158 (S.D.N.Y. 2015)....................................................8

*New York City Health & Hosps. Corp. v. Council of City of New York*,
  303 A.D.2d 69 (1st Dep't 2003) ..........................................................11

*New York State Club Ass'n, Inc. v. City of New York*,
  69 N.Y.2d 211 (1987), *aff'd*, 487 U.S. 1 (1988)...........................11, 18

*People v. De Jesus*,
  54 N.Y.2d 465 (1981) ..........................................................10, 12, 16

*People v. Diack*,
  24 N.Y.3d 674 (2015) ........................................................................10

*People v. Torres*,
  37 N.Y.3d 256 (2021) ........................................................................11

*Port Chester Police Ass'n, Inc. v. Village of Port Chester*,
  291 A.D.2d 389 (2d Dep't 2002) ........................................................10

*S.H. v. Diocese of Brooklyn*,
  205 A.D.3d 180 (2d Dep't 2022) ....................................................5, 18

*Save Lafayette Trees v. City of Lafayette*,
  32 Cal. App. 5th 148 (Cal. Ct. App. 2019) ....................................15, 16

*Schearer v. Fitzgerald*,
  217 A.D.3d 980 (2d Dep't 2023) ...................................................15, 16

*Turnpike Woods, Inc. v. Town of Stony Point*,
  70 N.Y.2d 735 (1987) ...............................................................12, 14, 15

*United States v. Morrison*,
  529 U.S. 598 (2000).............................................................................4

*Utts v. Bristol-Myers Squibb Co.*,
  251 F. Supp. 3d 644 (S.D.N.Y. 2017)....................................................8

*Walters v. Starbucks Corp.*,
  623 F. Supp. 3d 333 (S.D.N.Y. 2022)..................................................21

iv

*Wholesale Laundry Bd. of Trade, Inc. v. City of New York*,
    17 A.D.2d 327 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963) ...........................11, 12, 18, 19

### *Rules / Statutes*

9 U.S.C. § 402.............................................................................................................21

C.P.L.R. § 7515...........................................................................................................21

Child Victims Act ................................................................................................ passim

City of New York, L.L. 21/2022 § 2.............................................................................6

City of New York, L.L. 63/2018 § 47...........................................................................4

City of New York, L.L. 73/2000 § 1.............................................................................4

Federal Arbitration Act (FAA) ..................................................................................21

Federal Rule of Civil Procedure 12(b)(6) ...................................................................7

Federal Violence Against Women Act .........................................................................4

N.Y. C.P.L.R. § 208(b) ............................................................................................2, 18

N.Y. C.P.L.R. § 214-g ........................................................................................ passim

N.Y. C.P.L.R. § 214-j ..................................................................................................7

N.Y. C.P.L.R. § 215.....................................................................................................19

N.Y. Const. ............................................................................................................1, 10

N.Y. Crim. Proc. Law § 30.10(3)(f) ...........................................................................18

N.Y. Judiciary Law § 219-d........................................................................................18

N.Y. Mun. Home Rule Law § 10(1)(i)-(ii)(a)(12)......................................................10

N.Y.C. Admin. Code § 10-1102 ...................................................................................4

N.Y.C. Admin. Code § 10-1103 ........................................................................ passim

N.Y.C. Admin. Code § 10-1104 ...............................................................................1, 4

N.Y.C. Admin. Code § 10-1105 ........................................................................ passim

N.Y.C. Admin. Code § 8-901 *et seq.* ..........................................................................4

New York City Minimum Wage Law .....................................................................11, 18

New York State Labor Law ...................................................................................................11

New York State's Adult Survivor Act ..........................................................3, 6, 7, 20, 21

New York State's Penal Law Article 130 ..................................................2, 3, 6, 13, 20

NYC Revival Law...............................................................................................12, 13, 19

Rule 11 ...............................................................................................................................3

VGMVPL............................................................................................................... passim

### Other Authorities

NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440)........................2, 5, 16, 18

NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082).............................6, 16

NY LEGIS 203 (2022), 2022 Sess. Law News of N.Y. Ch. 203 (S. 66-A)..................................6

N.Y. Senate Debate on Senate Bill S2440, Jan. 28, 2019...............................................17

New York Bill Jacket, 2019 S.B. 2440, Ch. 11, at 7-8 ....................................................5

New York Bill Jacket, 2020 S.B. 7082, Ch. 130 .........................................................17

## PRELIMINARY STATEMENT

In July 2023, Plaintiff filed a complaint based on a sexual assault that allegedly occurred more than 21 years ago: in 2002, when she was a 16-year-old minor.  ECF 1 ("Compl.") ¶¶ 1-2, 60.  As Defendant has explained elsewhere, the complaint's allegations are categorically false and grounds for sanctions based on Plaintiff's counsel's failure to reasonably investigate.  The Court need not address those issues for purposes of this motion, however, because the sole claim in Plaintiff's complaint is untimely, and the suit should be dismissed with prejudice on that basis.

Plaintiff asserts a single claim under New York City's Victims of Gender-Motivated Violence Protection Law (VGMVPL).  N.Y.C. Admin. Code § 10-1101 *et seq.*; Compl. ¶¶ 94-99.  As relevant here, the VGMVPL allows civil recovery for a gender-motivated act that would constitute a crime under New York State law.  N.Y.C. Admin. Code §§ 10-1103, 10-1104; *see* Compl. ¶ 98.  The default limitations period for a VGMVPL claim is seven years.  N.Y.C. Admin. Code § 10-1105(a).  In certain circumstances, the limitations period is nine years from a specified date (*e.g.*, when a minor victim becomes an adult).  *Id.*  Under either of those limitations periods, Plaintiff's claim expired at least a decade ago.

Plaintiff seeks to overcome that serious—and fatal—timing defect by invoking a recently enacted New York City law that purports to revive otherwise-barred VGMVPL claims if they are commenced in a two-year window extending from March 2023 to March 2025.  N.Y.C. Admin. Code § 10-1105(a) ("NYC Revival Statute"); *see* Compl. ¶ 99.  But that law cannot revive Plaintiff's claim.  Under the New York Constitution, municipal ordinances may not conflict with the laws of New York State.  *See, e.g., Council of City of New York v. Bloomberg*, 6 N.Y.3d 380, 392–93 (2006).  And here, New York State has specified a different, precisely defined period— with a start date and an end date—during which expired claims like Plaintiff's can be revived.

Specifically, in the Child Victims Act (CVA), New York State enacted a comprehensive overhaul of legislation governing sexual assaults against minors. NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440). The CVA altered ten separate provisions of New York law on the subject. Among others, it allows minor victims of sexual assaults committed after the statute's effective date to file claims at any time before the victim turns 55 years old. N.Y. C.P.L.R. § 208(b). Of central relevance here, the CVA also took the "extreme" legislative step of "reviv[ing] causes of action" that had already expired for specifically defined past conduct. *Anonymous v. Castagnola*, 210 A.D.3d 940, 942 (2d Dep't 2022) (citations and brackets omitted); *see* N.Y. C.P.L.R. § 214-g (the "CVA Revival Provision"). The scope of the CVA Revival Provision includes "every civil claim or cause of action brought against any party" for an act against a then-minor victim that would "constitute a sexual offense as defined in article one hundred thirty of the penal law." *Id.* In contrast to the decades-long timeline that it adopted for prospective claims, the CVA permits the specifically defined set of expired claims to be revived only during a two-year window extending from August 2019 to August 2021. *Id.* The CVA expressly states that its limited revival window for such claims applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id.*

The CVA Revival Provision applies directly to Plaintiff's claim. She alleges that Defendant's assault of her when she was a minor "constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law." Compl. ¶ 98. As just noted, that is precisely the kind of claim that, under the CVA Revival Provision, can only be revived if filed between August 2019 and August 2021. N.Y. C.P.L.R. § 214-g. But Plaintiff decided not to file a claim during that window. Under a straightforward reading of the CVA Revival Provision, that decision bars her from filing such a claim now. And under a straightforward application of New York

2

preemption law, the City cannot countermand the State's judgment by adopting a conflicting revival period for the same claims. From the City's perspective, a later revival period "may be a desirable end." *Bloomberg*, 6 N.Y.3d at 390. Under state law, however, "it is not one that New York City is free to pursue." *Id*. Plaintiff's claim should accordingly be dismissed.

**FACTUAL AND LEGAL BACKGROUND**

**I.    THE RELEVANT ALLEGATIONS IN THE COMPLAINT**

Defendant has never even met Plaintiff, let alone sexually assaulted her. As outlined in Defendant's motion for Rule 11 sanctions, this is another in a long string of frivolous lawsuits filed by Plaintiff's counsel, Wigdor LLP, asserting completely uncorroborated, uninvestigated, and untruthful allegations against Defendant. ECF 15, at 2-3. Defendant will continue to pursue available remedies for the reckless assertion of these false claims.

Only a few aspects of Plaintiff's allegations are relevant here, however, and the Court can assume them to be true, exclusively for purposes of this motion to dismiss. First, Plaintiff alleges that she was sexually assaulted by Defendant in 2002, when she was a minor. Compl. ¶¶ 1-3, 60-80. She alleges this gives rise to a claim under New York City's VGMVPL because, as a sexual assault under Article 130 of the New York State Penal Law, it constitutes a "crime of violence" as defined by the VGMVPL. *Id.* ¶¶ 95-98 (citing N.Y.C. Admin. Code § 10-1103). And she alleges that her claim is timely under the NYC Revival Statute because it was commenced within the two-year window extending from March 2023 to March 2025, or "two years and six months after September 1, 2022." Compl. ¶ 99 (citing N.Y.C. Admin. Code § 10-1105(a)).

**II.    THE RELEVANT STATUTES**

There are three relevant statutes at issue in this case: New York City's VGMVPL, New York State's CVA, and New York City's Revival Statute. A fourth statute, New York State's Adult Survivor Act (ASA), provides additional context.

### A.    New York City's VGMVPL

The New York City Council adopted the VGMVPL in 2000 in response to the U.S. Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the federal Violence Against Women Act on Commerce Clause grounds.  *See City of New York*, L.L. 73/2000 § 1; N.Y.C. Admin. Code § 10-1102.[1]  The VGMVPL creates a civil cause of action for a "crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104.  As relevant here, the statute defines "crime of violence" as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law … , whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." *Id.* § 10-1103. The statute defines "crime of violence motivated by gender" to mean "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.*

As a general matter, a claim under the VGMVPL must "be commenced within seven years after the alleged crime of violence motivated by gender occurred."  N.Y.C. Admin. Code § 10-1105(a).  If, however, a potential plaintiff is unable to bring an action at the time the crime of violence occurs for certain enumerated reasons, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id.* One of the enumerated reasons is "infancy" (*i.e.*, minor status). *Id.* A VGMVPL plaintiff whose claim arose when the plaintiff was a minor thus has nine years to bring the claim after becoming an adult. *Id.*

---

[1]    Until 2018, the VGMVPL was codified as N.Y.C. Admin. Code § 8-901 *et seq.*  *See City of New York*, L.L. 63/2018 § 47 (recodifying the statute to its current location).

**B.      New York State's CVA**

The New York State Legislature enacted the CVA on February 14, 2019.  NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440).  The CVA comprehensively reformed New York's laws related to sexual offenses committed against minors in both criminal and civil contexts.  *Id.*  In particular, it dramatically extended numerous statutes of limitations for child victims of sexual assault.  *See Fenton v. State*, 213 A.D.3d 737, 740 (2d Dep't 2023) ("The legislative purpose of the CVA is to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations") (internal citations omitted).  The Senate Introducer's Memo in support of the CVA justified it by stating that "New York is one of the worst states in the nation for survivors of child sexual abuse" and the CVA would "finally allow justice for past and future survivors of child sexual abuse."  New York Bill Jacket, 2019 S.B. 2440, Ch. 11, at 7-8.  Supporters of the legislation emphasized that the CVA was designed to "help[] every single victim in this state" and applies "everywhere in the State of New York."  *S.H. v. Diocese of Brooklyn*, 205 A.D.3d 180, 186 (2d Dep't 2022) (quoting legislative history).

The CVA provision relevant here revives civil claims for specifically defined forms of sexual assault against minors for which the applicable limitations period has already expired.  N.Y. C.P.L.R. § 214-g.  The CVA Revival Provision begins by stating that it applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary."  *Id.*  It then describes its coverage: "*every civil claim* … brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in"—among other provisions—"article one hundred thirty of the" New York State Penal Law, which was "committed against a" minor and was "barred as of" February 14, 2019 because "the applicable period of

limitation has expired." *Id.*[2]  The CVA Revival Provision provides that such claims are "hereby revived, and action thereon may be commenced" between August 14, 2019, and August 14, 2020. N.Y. C.P.L.R. § 214-g.

On August 3, 2020, the New York State Legislature extended the CVA's revival window period for another year, until August 14, 2021.  NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082).  The Sponsor Memorandum stated that "[e]xtending the length of the revival window would provide more time to notify New Yorkers about the new law and allow more survivors to seek the justice that was denied them by New York's formerly prohibitive civil statute of limitations." *Id.* at 5.  It added that "[s]everal states that have enacted legislation similar to the [CVA] have opted to provide a revival window of longer than one year - most recently New Jersey, which provided a two-year window that opened in December 2019." *Id.*

C.    New York City's Revival Statute

On January 9, 2022, the New York City Council adopted an amendment to its VGMVPL stating that "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." City of New York, L.L. 21/2022 § 2; N.Y.C. Admin. Code § 10-1105(a).  The revival period accordingly lasts for two years, beginning on March 1, 2023, and concluding on March 1, 2025— all after the CVA's revival period has expired.

D.    New York State's Adult Survivors Act

The New York State Legislature enacted the ASA on May 24, 2022.  NY LEGIS 203 (2022), 2022 Sess. Law News of N.Y. Ch. 203 (S. 66-A).  Its language closely mirrors the CVA's,

---

[2]  Article 130 of New York State's Penal Law defines various "Sex Offenses" against both adults and minors, including rape.  N.Y. Penal Law § 130.00 *et seq.*

but applies to adult victims rather than minor victims. N.Y. C.P.L.R. § 214-j; *see, e.g., Carroll v. Trump*, 2023 WL 185507, at *7 (S.D.N.Y. Jan. 13, 2023) (noting that the ASA uses "almost precisely the same statutory language" as the CVA). Like the original version of the CVA, the ASA creates a one-year revival period for sexual-assault claims that had previously exceeded their limitations periods. N.Y. C.P.L.R. § 214-j. That period began on November 24, 2022, and will conclude on November 24, 2023. *Id.*

**ARGUMENT**

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a Defendant can move to dismiss a complaint that fails "to state a claim upon which relief can be granted." A Court's function on such a motion is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Ackerman v. Ackerman*, 2012 WL 407503, at *1 (S.D.N.Y. Feb. 9, 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). One reason that a complaint may not be legally sufficient—and therefore must be dismissed—is that "the dates in [the] complaint show that an action is barred by a statute of limitations." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see, e.g., Meimaris v. Royce*, 2021 WL 5170725, at *7 (2d Cir. Nov. 8, 2021) ("A statute of limitations defense can be decided on a Rule 12(b)(6) motion 'if the defense appears on the face of the complaint.'") (citation omitted); *Ackerman*, 2012 WL 407503, at *2 (dismissing claim as time-barred under the applicable statute of limitations). A claim that is time-barred should be dismissed with prejudice. *See, e.g., Gaston v. New York City Dep't of Health Off. of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006). In addressing a statute-of-limitations defense, this Court applies the substantive law of the state in which the Court sits. *See, e.g., Ackerman*, 2012 WL 407503, at *2. The parties do not dispute that New York law applies here. *See, e.g.,* Compl. 18

¶ A (alleging "the actions, conduct and practices of Defendant complained of herein violate the laws of the State of New York").

In this case, determining which statute of limitations applies as a matter of state law requires a preemption analysis.  "It is well-established that preemption may be analyzed and decided at the motion to dismiss stage.  After all, a 'determination regarding preemption is a conclusion of law.'"  *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 672 (S.D.N.Y. 2017) (quoting *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 56 (2d Cir. 2006)).  In conducting that preemption analysis, this Court applies New York law—and the Court may conclude that local law is preempted by state law.  *See, e.g.*, *New York Bankers Ass'n, Inc. v. City of New York*, 119 F. Supp. 3d 158, 193–94 (S.D.N.Y. 2015) (finding local law preempted by New York state law); *Ass'n of Home Appliance Manufacturers v. City of New York*, 36 F. Supp. 3d 366, 375-76 (S.D.N.Y. 2014) (same); *see also Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 2022 WL 2124608, at *3-*4 (W.D.N.Y. June 13, 2022) ("[S]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State") (citation omitted) (discussing the CVA Revival Provision).

## II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED AS UNTIMELY

Plaintiff's claim is barred by the VGMVPL's statute of limitations because it was not commenced within seven years of the alleged assault or within the alternative nine-year period established by that law.  N.Y.C. Admin. Code § 10-1105(a).  Plaintiff appears to concede as much. Plaintiff instead contends that her claim is timely under the NYC Revival Statute, which purports to allow expired sexual-assault claims to be asserted between March 2023 and March 2025.  *Id.*; Compl. ¶ 99.  But the NYC Revival Statute is not applicable here because it is preempted by New York State's CVA Revival Provision, which sets an exclusive, earlier revival window for sexual-

assault claims against minors.  N.Y. C.P.L.R. § 214-g.  Plaintiff could have filed a claim within

that window—between August 2019 and August 2021—but she did not.  Her claim is accordingly

untimely and must be dismissed.

### A.    The Claim Is Untimely Under The VGMVPL's Default Limitations Period

As an initial matter, it appears undisputed that Plaintiff's claim is barred by the default

limitations period in the VGMVPL.  That statute provides that a claim must "be commenced within

seven years after the alleged crime of violence motivated by gender occurred."  N.Y.C. Admin.

Code § 10-1105.  According to Plaintiff, the "alleged crime of violence motivated by gender" at

issue here "occurred," *id.*, "[i]n 2002," Compl. ¶ 1; *see id.* ¶ 60 (dating the alleged sexual assault

to "around late spring of 2002 or early summer").  Because Plaintiff did not commence this suit

until approximately 20 years later, in 2023, the claim is barred by the VGMVPL's seven-year

limitations period.  N.Y.C. Admin. Code § 10-1105.  The VGMVPL creates an alternative, nine-

year limitations period when certain circumstances are satisfied; among others, it allows a plaintiff

who was a minor at the time the claim accrued to file the claim within nine years of the plaintiff's

becoming an adult.  *See id.*  Plaintiff does not allege, however, that her claim could be timely under

either of those limitations periods, and on that point she is correct.  Given that the alleged assault

occurred in 2002, the seven-year limitations period expired in 2009.  Under the alternative

limitations period extending nine years from her eighteenth birthday, that limitations period would

have run in 2012—more than a decade before she filed this suit.

### B.    Plaintiff's Claim Is Not Rendered Timely By The NYC Revival Statute Because That Statute Is Preempted By The New York State CVA Revival Provision

As noted, Plaintiff appears to accept that her claim is untimely under the VGMVPL's

default limitations period.  She instead asserts that her claim is timely under the NYC Revival

Statute.  Compl. ¶ 99.  But the NYC Revival Statute cannot render her claim timely, because that

statute is preempted by the New York State CVA Revival Provision.

### 1.    *In New York, Local Laws That Conflict With State Laws Are Preempted*

Under the New York Constitution and the State's Municipal Home Rule Law, local

governments have significant authority to adopt laws to promote the health, safety, and welfare of

their people.  N.Y. Const., art. IX, § 2(c); N.Y. Mun. Home Rule Law § 10(1)(i)-(ii)(a)(12).  That

local authority, however, is subject to a "significant restriction." *People v. Diack*, 24 N.Y.3d 674,

679 (2015).  Because the ultimate "fount of the … power" for municipalities to legislate is "the

sovereign State," *People v. De Jesus*, 54 N.Y.2d 465, 468 (1981), local governments may only

enact laws that are "*not inconsistent* with the" laws of the State, N.Y. Const., art. IX, § 2(c)

(emphasis added); *see* N.Y. Mun. Home Rule Law § 10(1)(i)-(ii)(a)(12).[3]

The "overriding limitation" imposed by the preemption doctrine ensures "the untrammeled

primacy of the Legislature to act ... with respect to matters of State concern." *Diack*, 24 N.Y.3d

at 679 (quoting *Albany Area Bldrs. Ass'n v. Town of Guilderland,* 74 N.Y.2d 372, 377 (1989));

*see, e.g.*, *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018)

(describing the preemption doctrine as "a fundamental limitation on" the powers of New York

---

[3]    Although in some circumstances a municipality may "supersede" a state statute by enacting
inconsistent local legislation, that authority "can be exercised only upon substantial adherence to
the procedures set forth in Municipal Home Rule Law § 22(1)." *Kamhi v. Town of Yorktown*, 74
N.Y.2d 423, 434 (1989). Section 22(1) requires the local legislative body to "specify the chapter
or local law or ordinance, number and year of enactment, section, subsection or subdivision, which
it is intended to change or supersede." N.Y. Mun. Home Rule Law § 22(1).  The NYC Revival
Statute, however, does not evidence an intent to supersede the CVA, nor does it substantially
comply with section 22(1)'s procedural requirement to "specify" the statute it seeks to supersede.
*See ILC Data Device Corp. v. County of Suffolk*, 182 A.D.2d 293, 299 (2d Dep't 1992).
Accordingly, the NYC Revival Statute cannot validly supersede the revival period in the CVA,
and does not govern here.  *See Port Chester Police Ass'n, Inc. v. Village of Port Chester*, 291
A.D.2d 389, 390 (2d Dep't 2002) (holding that state statute of limitations for disciplinary charges
was not validly superseded by local ordinance, and charges were time-barred).

municipalities) (citation omitted); *New York State Club Ass'n, Inc. v. City of New York*, 69 N.Y.2d 211, 217 (1987) (describing preemption as a "firm restriction[]" on local government power), *aff'd*, 487 U.S. 1 (1988).

As in the federal system, preemption under New York law can arise in multiple ways. "Conflict preemption prohibits a local government from adopting a law that is 'inconsistent with' state law." *People v. Torres*, 37 N.Y.3d 256, 265 (2021) (citation omitted). "Field preemption prohibits a local government from legislating in a field or area of the law where the 'legislature has assumed full regulatory responsibility.'" *Id.* (brackets and citation omitted). Neither form of preemption requires the State to preempt local law expressly; "[t]he Legislature may expressly state its intent to preempt, or that intent may be implied from the nature of the subject matter being regulated as well as the scope and purpose of the state legislative scheme, including the need for statewide uniformity in a particular area." *Cohen v. Bd. of Appeals of Vill. of Saddle Rock*, 100 N.Y.2d 395, 400 (2003). "A comprehensive and detailed statutory scheme may be evidence of the Legislature's intent to preempt." *Id.* "[A]pplication of the preemption doctrine does not turn on semantics," *Lansdown Ent. Corp. v. New York City Dep't of Consumer Affs.*, 74 N.Y.2d 761, 764 (1989), and a local government "cannot achieve even laudable goals by" departing from state law, *New York City Health & Hosps. Corp. v. Council of City of New York*, 303 A.D.2d 69, 78 (1st Dep't 2003). If "the direct consequences of a local ordinance" are inconsistent with state law, the state law must prevail. *Lansdown*, 74 N.Y.2d at 764.

Of particular relevance here, a local law is preempted by state law when the local law attempts to "exten[d]" or alter a limitation that the State has fixed. *Wholesale Laundry Bd. of Trade, Inc. v. City of New York*, 17 A.D.2d 327, 329–30 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963) (holding New York City Minimum Wage Law invalid since inconsistent with New York

State Labor Law).  For example, where state law provided that bars could remain open until 4:30 A.M., a municipal law requiring bars to close at 4:00 A.M. was preempted.  *Lansdown*, 74 N.Y.2d at 764-65; *see De Jesus*, 54 N.Y.2d at 472 (similar).  So too, when a city attempted to extend the state-prescribed period for a planning board to respond to a request for plat approval, the city's attempt was preempted.  *Turnpike Woods, Inc. v. Town of Stony Point*, 70 N.Y.2d 735, 737–38 (1987).  And where state law set a particular minimum wage and a city attempted to set a higher minimum wage, the local law was preempted because it conflicted with State law and the State indicated its "purpose to occupy the entire field."  *Wholesale Laundry*, 17 A.D.2d at 329–30.  In each of those cases, the city's attempt to supplant a limit fixed by the State created a "direct conflict"—a "head on collision"—in which city law had to give way to the enactment of the State. *Lansdown*, 74 N.Y.2d at 764-65.

> **2.**     **The NYC Revival Statute Conflicts With The CVA Revival Provision By Changing The State's Deadline To Reopen Sexual Assault Claims By Minor Victims**

This case involves another such collision.  Although the issue before the Court appears to be one of first impression, preemption principles point to a clear answer:  New York City's Revival Statute is preempted because it attempts to create a *different* time period for reviving the *same* claims that New York State addressed through the CVA Revival Provision.  Specifically, the NYC Revival Statute purports to allow sexual-assault claims by then-minor victims to be filed *between March 2023 and March 2025*, even though the State made a considered judgment that such claims must have been filed *between August 2019 and August 2021*.  Simply put, the City attempts to open a window that the State has closed.  That makes this a paradigmatic case for preemption under either a conflict or field preemption theory.

> **a.**     **The overlap between the NYC Revival Law and the CVA Revival Provision.**  As an

initial matter, the relevant statutory language makes clear that the NYC Revival Law and the CVA

Revival Provision both apply to Plaintiff's claim.  The text of the CVA Revival Provision states that it applies to "*every civil claim* … brought against *any party* … as a result of conduct which would constitute a sexual offense" against a minor as defined in, among other provisions, "article one hundred thirty of the [New York State] penal law." N.Y. C.P.L.R. § 214-g (emphasis added). The NYC Revival Law applies to claims brought under the VGMVPL, which mirrors the CVA Revival Provision by covering "crime[s] of violence motivated by gender," including "acts that would constitute a misdemeanor or felony against the person as defined in *state* [] law." N.Y.C. Admin. Code § 10-1103 (emphasis added).

Plaintiff's complaint makes it particularly evident that her claim is subject to both the NYC Revival Law and the CVA Revival Provision.  The NYC Revival Law is the only statute that Plaintiff cites to support the timeliness of her claim. Compl. ¶ 99. And the only basis that Plaintiff asserts for invoking the NYC Revival Law is that her claim falls within the VGMVPL because Defendant's alleged conduct "constitutes a sexual offense as defined in *Article One Hundred Thirty of the New York [State] Penal Law* ('Article 130')." Compl. ¶ 98 (emphasis added).  As noted, Article 130 of the New York Penal Law is one of the state-law provisions expressly cross-referenced in the coverage provision of the CVA Revival Provision.  N.Y. C.P.L.R. § 214-g. Therefore, because Plaintiff's allegations are based on Article 130 offenses, her VGMVPL "claims *are within the scope of the CVA* because she alleges that Defendant … [sexually assaulted] her when she was a minor." *Doe v. Gonzalez*, 2023 WL 5979182, at *1 n.1 (E.D.N.Y. Aug. 4, 2023), *report and recommendation adopted in part and rejected in part on non-material grounds*, 2023 WL 6211023 (E.D.N.Y. Sept. 25, 2023) (emphasis added).  It is accordingly plain from Plaintiff's own allegations that her claim is subject to both the NYC Revival Law and the CVA Revival Provision.

*b. **Conflict preemption.***  New York courts have found conflict preemption where "a state law prohibits what a local law explicitly allows." *N.Y. State Ass'n for Affordable Hous. v. Council of N.Y.*, 141 A.D.3d 208, 214 (1st Dep't 2016) (citation omitted).  That is the case here.  While the NYC Revival Statute applies to the same claims as the CVA Revival Provision, the City nevertheless attempted to establish a different—and conflicting period—for asserting those claims than did the State.  Again, as amended by the State Legislature, the CVA revived expired sexual-assault claims by then-minors for a two-year window lasting from August 2019 to August 2021.  N.Y. C.P.L.R. § 214-g.  The NYC Revival Statute, however, purported to revive those same claims for a different two-year window lasting from March 2023 to March 2025.  N.Y.C. Admin. Code § 10-1105.  Although some preemption analyses are complicated, this one is not.  It is facially apparent from the statutes that the time periods are conflicting; allowing Plaintiff's claim to be revived under city law in July 2023 is inconsistent with the provision of state law closing the revival window in August 2021.  That makes this a hallmark example of conflict preemption.

Longstanding New York precedent reinforces that common-sense understanding.  As noted above, the New York Court of Appeals in *Lansdown* held that a New York City ordinance that required cabarets to close between the hours of 4:00 A.M. and 8:00 A.M. was preempted by a state law allowing patrons to remain on the premises consuming alcohol until 4:30 A.M.  *Lansdown*, 74 N.Y.2d at 764-65.  These differing time periods were "not a tiny overlap, but a direct conflict." *Id.* (internal citation omitted).  And even if the "legislative objectives" and the "claimed purpose" of the city ordinance aligned with the state's goal of limiting alcohol consumption, this was not "sufficient to surmount the preemption hurdle." *Id.* at 763.

Other New York cases reflect similar reasoning.  In *Turnpike Woods*, the New York Court of Appeals readily rejected a municipality's attempt to extend a state-prescribed period of 45 days

14

for certain zoning decisions by six months. 70 N.Y.2d at 737–38. In a brief memorandum opinion, the Court held that "[i]nsofar as [the local law] purports to suspend for six months the duty of the Town Planning Board to act on [a plat-approval] application, it is inconsistent with the requirement of [state law] that a town planning board act on applications for final plat approval within the prescribed time period, and is therefore invalid." *Id.* at 738.

New York courts are not alone in such reasoning. In a recent case closely resembling this one in important respects, a California appellate court held that a municipal law that attempted to extend a state limitations period for a category of suits was preempted. *Save Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 162 (Cal. Ct. App. 2019). The court explained that the municipal law providing for a 180-day period to file an action "cannot be harmonized" with a state law providing for a 90-day period to file the same kind of action. *Id.* Because the two laws "directly conflict," the court held that the shorter state limitations period governed. *Id.*

If anything, the preemptive force of the State's judgment is even more evident here. The CVA does not simply set a default time limit for filing claims, in the manner of a typical statute of limitations. The CVA takes the extraordinary step of reviving claims on which the default limitations period *has already expired*. While upholding such statutes against constitutional due process challenges, courts have rightly recognized that laws "that revive causes of action are extreme examples of legislative power and are narrowly construed." *Castagnola*, 210 A.D.3d at 942 (citations and brackets omitted); *see Jones*, 2022 WL 2124608, at *7 (similar); *see also Schearer v. Fitzgerald*, 217 A.D.3d 980, 983 (2d Dep't 2023) (upholding the CVA as "a reasonable

response to remedy the injustice to [child sexual assault survivors] caused by application of the relevant statute of limitations") (citation omitted).[4]

In taking the "extreme" step of reviving otherwise-expired claims and thereby disrupting the settled expectations of potential plaintiffs and defendants alike, *Castagnola*, 210 A.D.3d at 942, the New York State Legislature struck a compromise: it allowed covered claims to be filed for a period of time, but only a limited period of time—from August 2019 to August 2020. NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440). It later extended that period by another year, but again set a fixed end date of August 2021. NY LEGIS 130 (2020), 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082). In keeping with the "reasonable" response that due process requires in the context of revival statutes, *Schearer*, 217 A.D.3d at 983, the Legislature has declined to further extend that date. The Legislature's measured action reflects precisely the kind of "studied decision" that New York courts have found cannot be disturbed by conflicting municipal actions, *De Jesus*, 54 N.Y.2d at 470—even if they are motivated by laudable goals or "a desirable end," *Bloomberg*, 6 N.Y.3d at 390.

*c. Field preemption.* Plaintiff's allegations are similarly preempted under a field preemption analysis. *See, e.g.*, *Consol. Edison Co. v. Town of Red Hook*, 60 N.Y.2d 99, 107 (1983) (holding that local law was preempted under both conflict and field preemption); *Save Lafayette Trees*, 32 Cal. App. 5th at 158 (declining to reach field preemption after finding conflict preemption based on local government's statute of limitations); *cf. Goodspeed Airport LLC v. E.*

---

[4]    Indeed, a number of state courts of last resort have held that similar revival statutes violate constitutional due process limits by depriving defendants of right to repose after the limitations period has expired. *See, e.g.*, *Mitchell v. Roberts*, 2020 UT 34, 469 P.3d 901, 913; *Doe v. Crooks*, 613 S.E.2d 536, 538 (S.C. 2005); *Doe v. Roman Cath. Diocese of Jefferson City*, 862 S.W.2d 338, 342 (Mo. 1993); *see also Doe v. Hartford Roman Cath. Diocesan Corp.*, 317 Conn. 357, 426-35 (2015) (collecting other such decisions).

*Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 209 n.4 (2d Cir. 2011) (explaining that the categories of preemption "are not rigidly distinct" and that "it may be possible to recast field preemption as a subset of conflict preemption").

The State's desire to preempt a field "may be implied from a declaration of State policy by the Legislature," or "from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area." *Consol. Edison*, 60 N.Y.2d at 105; *see, e.g.*, *Albany Area Builders*, 74 N.Y.2d at 377; *ILC Data*, 182 A.D.2d at 300. Both of those considerations weigh in favor of field preemption here.

In enacting the CVA, the State Legislature clearly and definitively prescribed a specific time window for asserting claims related to sexual offenses against minors throughout the State of New York. As explained above, the CVA Revival Provision's text employs sweeping and categorical language, declaring that it applies to "*every civil claim* … brought against *any party* … as a result of conduct which would constitute a sexual offense" against a minor as defined in, among other provisions, "article one hundred thirty of the [New York State] penal law." N.Y. C.P.L.R. § 214-g (emphasis added); *see, e.g.*, *Finnigan v. Lionetti*, Index No. 70001/2019E, at *10 (N.Y. Sup. Ct. Oct. 7, 2021) (noting that the CVA's "text is the clearest indicator of legislative intent" and that the statutory "language dismisses contradictory statutory time limits"). Numerous aspects of the legislative history reinforce that definitive scope. *See, e.g.*, New York Bill Jacket, 2020 S.B. 7082, Ch. 130, at 8. ("Passage of the Child Victims Act will *finally* allow justice for *past and future* survivors of child sexual abuse."); N.Y. Senate Debate on Senate Bill S2440, Jan. 28, 2019, at 754 ("I am proud to stand here … and cosponsor the Child Victims Act that will *finally* give … *all survivors of childhood sexual abuse in the State of New York* the justice that they deserve."); *id.* at 762 ("On behalf of *all of New York's survivors* … I vote aye."); *id.* at 773 ("Today

is a major step forward … finally getting something done that helps *every single victim in this state*) (all emphases added).  New York courts have relied on that history in construing the CVA, *see S.H.*, 205 A.D.3d at 186, and it points strongly toward a finding of field preemption here.

The Legislature's intent to occupy the field also follows from the "comprehensive and detailed regulatory scheme" that it adopted in the CVA Revival Provision.  *Consol. Edison*, 60 N.Y.2d at 105; *see New York State Club Ass'n*, 69 N.Y.2d at 217 (similar).  As noted above, the revival provision at issue in this case was just one part of the CVA's larger regulatory scheme overhauling state laws—specifically statutes of limitations—applicable to child sexual assault and sexual abuse claims.  As part of this regulatory scheme, New York State also: (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (*see* N.Y. Crim. Proc. Law § 30.10(3)(f)); (2) extended the time in which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (*see* N.Y. C.P.L.R. § 208(b)); (3) instructed the judiciary to promulgate rules for the timely adjudication of these revived claims (*see* N.Y. Judiciary Law § 219-d); and made numerous related changes.  NY LEGIS 11 (2019), 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440).  The "complete and detailed nature of the State scheme" is strong "evidence of the intent to pre-empt."  *Chwick v. Mulvey*, 81 A.D.3d 161, 171 (2d. Dep't 2010).

New York courts have employed similar reasoning to find field preemption in analogous cases.  In *Wholesale Laundry*, for example, the First Department (in a decision affirmed by the New York Court of Appeals) invalidated a New York City law that attempted to raise the minimum wage fixed by the State.  17 A.D.2d at 329–30.  The court wrote that it was "entirely clear that the State law indicates a purpose to occupy the entire field" from the text of the State Minimum Wage Law, which fixed an "elaborate machinery for the determination of an adequate wage … including

[in] the City of New York." *Id.* at 330. Similarly, in *ILC Data*, the court held that a county could not enact greater worker protections because the field of labor law was preempted by the state statutory scheme. 182 A.D.2d at 301. *See also Lansdown*, 74 N.Y.2d at 765 ("Where a State law indicates a purpose to occupy an entire field of regulation, as exists under the Alcoholic Beverage Control Law, local regulations are preempted regardless of whether their terms conflict with provisions of the State statute or only duplicate them.").

    *d. Engelman v. Rofe.* Although New York appellate courts have not addressed the preemptive scope of the NYC Revival Act, a finding of preemption is consistent with those courts' interpretation of the VGMVPL. In *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021), the First Department held that the seven-year statute of limitations in the VGMVPL was not preempted by New York State's one-year default limitations period for general torts, including assaults. *Id.* at 30-31 (citing N.Y. C.P.L.R. § 215). The crux of the court's reasoning was that the VGMVPL created a remedy "for a civil rights violation," rather than a general tort of the kind covered by the State's one-year limitations period. *Engelman*, 194 A.D.3d at 32. The court therefore concluded that the general state statute of limitations for torts did not preempt a VGMVPL cause of action. *Id.*; *see Doe v. Gooding*, 2022 WL 1104750, at *2 (S.D.N.Y. Apr. 13, 2022) (endorsing the reasoning of *Engelman*). Essentially, the court held that the conduct covered by the local and state statutes was different and did not conflict, and therefore preemption did not apply.[5]

    Critically for present purposes, however, the First Department in *Engelman* did not address either the NYC Revival Statute or the CVA Revival Provision, let alone the interaction between those two statutes. The court did suggest, however, that a municipal law would be preempted if it

---

[5] As *Engelman* recognized, some New York courts would have found preemption even on the facts of that case. *See Cordero v. Epstein*, 22 Misc. 3d 161, 164 (N.Y. Sup. Ct., N.Y. Cty. 2008).

attempted "to extend the statute of limitations for a particular class of assaults" that is covered by a shorter state limitations period. *Engelman*, 194 A.D.3d at 32. As discussed above—and as illustrated vividly by the allegations in this case—that is exactly what the NYC Revival Statute attempts to do. The city law allows the filings of claims between March 2023 and March 2025 based on (as relevant here) sexual assaults that would constitute a crime under state law—including Article 130 of the New York Penal Law, which is the sole basis for Plaintiff's claim here. Compl. ¶ 98; *see* N.Y.C. Admin. Code §§ 10-1103–10-1105. But New York State specifically has limited exactly such claims brought by then-minor victims—expressly including claims alleging violations of New York Penal Law 130—to filing between August 2019 and August 2021. N.Y. C.P.L.R. § 214-g. The City's attempt to create a later filing period creates precisely the kind of "head-on collision" that is forbidden by the New York preemption doctrine, and Plaintiff cannot avoid that result based "on semantics." *Lansdown*, 74 N.Y.2d at 764.

### C.    Plaintiff Did Not File Within The Window of the CVA Revival Provision

The fact that New York State law prevents Plaintiff from taking advantage of the NYC Revival Statute does not mean that she lacked an opportunity to pursue a civil claim against Defendant. Under the VGMVPL, she could have brought such a claim within seven years of the alleged 2002 assault (*i.e.*, by 2009, when she was 23 years old), and she could have brought a claim within nine years of her becoming an adult (*i.e.*, by 2013, when she was 27 years old). N.Y.C. Admin. Code § 10-1105. She also could have brought the claim under the CVA Revival Provision at any point between August 2019 and August 2021 (when she was 33 to 35 years old). N.Y. C.P.L.R. § 214-g. But she did not choose to use those opportunities.

The New York State Legislature, moreover, remains free to change the law. As noted above, the Legislature has already extended the CVA Revival Provision by one year (from August 2020 to August 2021). The State Legislature has also passed the ASA, which creates a revival

20

window that remains open for claims by adult victims.  The Legislature could conceivably extend the CVA Revival Provision again, or perhaps expand the ASA to minor victims.  But those are quintessentially judgments for the New York State Legislature—not for the New York City Council nor this Court.[6]

## CONCLUSION

For the above reasons, the Court should dismiss the complaint with prejudice.

Dated: September 29, 2023
      New York, New York

By:   */s/ Michael B. Carlinsky*

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, New York 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com

PERRY LAW
E. Danya Perry
Peter A. Gwynne
157 East 86th St., 4th Floor
New York, NY 10028
(646) 357-9952
dperry@danyaperrylaw.com
pgwynne@danyaperrylaw.com

---

[6]   Recent developments involving New York's C.P.L.R. § 7515 illustrate how legislatures can respond in measured fashion to judicial decisions.  Section 7515 generally prohibits enforcement of agreements to arbitrate discrimination claims.   After numerous federal and state courts concluded that the statute was preempted by the Federal Arbitration Act (FAA), *see, e.g.*, *Latif v. Morgan Stanley & Co.*, 2019 WL 2610985 (S.D.N.Y. June 26, 2019), Congress amended the FAA to allow a "person alleging conduct constituting a sexual harassment dispute or sexual assault dispute," 9 U.S.C. § 402, to elect to avoid arbitration.   One key policy of Section 7515 was accordingly vindicated, while other portions of the state statute (addressing discrimination claims outside the contexts specified in 9 U.S.C. § 402) remain preempted. *See, e.g.*, *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 338 n.4 (S.D.N.Y. 2022).

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
(213) 399-2132
susan@estrichgoldin.com

*Counsel for Defendant Leon Black*