UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

        Plaintiff,

v.

LEON BLACK,

        Defendant.

Case No. 1:23-cv-06418-JGLC

### DECLARATION OF ▇▇▇▇▇

I, ▇▇▇▇▇, hereby declare under penalty of perjury that the following is true and correct:

1. I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The statements in this Declaration are based upon my personal knowledge.

2. My name is ▇▇▇▇▇. My date of birth is ▇▇▇▇▇. I live in ▇▇▇▇▇.

3. I first met the Plaintiff in the above-captioned action when she was in high school. Plaintiff participated in a recreational cheerleading program with an organization called ▇▇▇▇▇ for which I was a volunteer.

4. The cheerleading program was open to youth of all ages. It was not reserved for 8–12-year-olds, as alleged in the Complaint in this action. Plaintiff participated in a program for ~~high school-aged~~ girls [up to age 16], ~~and was approximately the same age as the other girls in her group~~. The cheerleading program did not involve overnight trips.

5. When she participated in the cheerleading program as a high school student, Plaintiff's physical development was normal. She could not have fit into a uniform for 8–12-year-old children.

6. Plaintiff and I became friendly during and after her participation in the cheerleading program. Plaintiff appeared to be emotionally troubled, and looked to me to provide support. I cared for her and wanted her to be successful and happy. Among other things, I helped Plaintiff with her college applications.

7. I met Plaintiff's mother and got along fine with her. I believe Plaintiff had a stable home life.

8. After Plaintiff graduated from high school in 2003, and with parental permission, I took her on a trip to the Bahamas with my son and a female friend of mine. That was the first and only overnight trip I ever took with Plaintiff. I never traveled with her to New York City, Palm Beach, or the Virgin Islands, and I am not aware of her ever traveling to any of those places while she was in high school or college.

9. After graduating high school in 2003, Plaintiff enrolled at ▮▮▮▮▮▮. I lived closer to ▮▮▮▮▮▮ than Plaintiff's family, and, as a favor, I offered to let her live with me while she attended college. Plaintiff's parents were aware of and fine with this arrangement.

10. At the time, I lived with my then-13-year-old son. My now-▮▮▮▮▮▮, did not live with me then. ▮▮▮▮ has only met Plaintiff a few times.

11. Plaintiff moved out of my house within a few months, saying that she missed her parents and being at home with her sister. I had also grown concerned that Plaintiff was spending

a lot of her time going out with friends back home in ▓▓▓▓, and did not appear to be appropriately focused on her college education.

12. To be clear, Plaintiff never lived with me or stayed overnight with me while she was in high school. she only stayed with me for several months while she was in college.

13. I have not spoken with Plaintiff by phone or in person since she moved out. The last time I had any contact with her was ▓▓▓▓ several years ago.

14. I have read the Complaint in the above-captioned action, and believe that the allegations concerning "Elizabeth" refer to me. ▓▓▓▓

15. Other than the fact of Plaintiff's participation in a cheerleading program while in high school, none of the allegations concerning "Elizabeth" are true. Specifically:

- Plaintiff participated in a cheerleading program for high school aged girls, not for 8–12-year-old children.

- Plaintiff did not live with me while she was in high school. She moved in with me for a brief period in 2003 after she graduated and while she was attending ▓▓▓▓. Plaintiff was 18 years old at the time. Plaintiff had her own bedroom.

- I never physically, sexually, or psychologically abused Plaintiff. I never punched or kicked her, dragged her up the stairs, deprived her of food or water, made her dress in small children's clothing, or forced her to work out at a gym.

- I did not own a gun at the time Plaintiff lived with me. I never threatened Plaintiff with violence, or that she would "go missing" if she disobeyed me.

- My now-husband ▓▓▓▓ did not live with me at the time, ~~and has only met Plaintiff once or twice~~. ▓▓▓▓ was not in his "late forties" at the time—he is two years younger than me and therefore would have been in his mid-thirties as the time.

- Neither I nor ▓▓▓▓ ever forced Plaintiff to watch us have sex. ▓▓▓▓

- Neither ▓▓▓▓ nor I have ever met Ghislaine Maxwell, Jeffrey Epstein, Sarah Kellen, or Leon Black.

3

- Neither ■■■■ nor I ever "shipped out" Plaintiff to Palm Beach, the Virgin Islands, New York City, or any other place. Plaintiff did not take any flights or travel to any of those places during the time she lived with me, and I am not aware of her doing so while she was in high school.

16. To my knowledge, Plaintiff was not diagnosed with either autism or Mosaic Down syndrome prior to the time I knew her. In my view, she did not engage in or display the characteristics of either condition when she was in the cheerleading program or during the brief period when she lived with me while attending college. The first time I became aware that she claimed to have autism was years later when she mentioned it in a post on Facebook.

17. During the entire time I knew her, Plaintiff never mentioned Jeffrey Epstein, Ghislaine Maxwell, Sarah Kellen, or Leon Black. I have no reason to believe she has ever met any of them, let alone that she was abused by them as alleged in her Complaint. Plaintiff has never made any allegations to me of being abused, molested, or raped by anyone.

18. A few weeks ago, I was approached by an investigator who stated that he was working for Plaintiff. The investigator stated that he was researching Plaintiff's background, and asked me questions about her state of mind and well being. The investigator did not ask me any questions about the allegations in the Complaint. He took notes but did not, to my knowledge, record our conversation.

19. The investigator referred to me as "■■■■" and never mentioned the name "Elizabeth." He asked me if I knew Leon Black, but did not mention this lawsuit or provide me with a copy of the Complaint.

20. I first became aware of this lawsuit when I met with Carlos Melendez on August 19, 2023. Mr. Melendez provided me with a copy of the Complaint. As stated above, other than the fact of Plaintiff's participation in a cheerleading program while in high school, the allegations in the Complaint concerning "Elizabeth" (if they in fact refer to me) are completely untrue.

21.     I have read this Declaration more than once very carefully. Every statement in this Declaration is completely truthful and accurate and I have given this Declaration under my own free will. I have not been threatened in any way or offered any money to make this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in [REDACTED], on August 22, 2023.

By: [REDACTED]

Witness to the above signature:

By: _____

Richard Restrell
082223

5