**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
JANE DOE,                                          :
                                                   :
                              Plaintiff,           :        Civil Action No.: 1:23-cv-06418-JGLC
                                                   :
            v.                                     :
                                                   :
LEON BLACK,                                        :
                                                   :
                              Defendant.           :
                                                   :
----------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION FOR SANCTIONS**</u>


&gt;WIGDOR LLP

Jeanne M. Christensen
Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     ARGUMENT ...................................................................................................... 2

        A.     Legal Standard ...................................................................................... 2

        B.     Black's Rule 11 Threat is Premature and Improper Under Well-Settled Law ........ 2

        C.     Black Fails to Cite a Single Case That Supports His Frivolous Motion ................. 9

        D.     Black Seeks to Create a Distinct and Heightened Standard for Attorneys
               Representing Plaintiffs with Autism or Developmental Disabilities .................... 12

        E.     Black's Rule 11 Motion is Procedurally Defective ................................................. 15

        F.     Black's Rule 11 Motion is a Transparent Attempt to Circumvent New York's
               Anti-SLAPP Statute ............................................................................................. 17

III.    CONCLUSION ................................................................................................. 18

## **TABLE OF AUTHORITIES**

Cases                                                                                           Page(s)

Anderson News, L.L.C. v. Am. Media, Inc.,
    No. 09 Civ. 2227 (PAC), 2013 WL 1746062 (S.D.N.Y. April 23, 2013) ................................. 2

Anderson v. County of Montgomery,
    111 F.3d 494 (7th Cir. 1997) ................................................................................................. 11

Baskin v. Lagone,
    No. 90 Civ. 5478 (RPP), 1993 WL 59781 (S.D.N.Y. Mar. 3, 1993) ...................................... 3

Bernal v. All Am. Inv. Realty, Inc.,
    479 F. Supp. 2d 1291 (S.D. Fla. 2007) ............................................................................. 11, 12

Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.,
    28 F.3d 259 (2d Cir. 1994) ....................................................................................................... 6

Chambers v. NASCO, Inc.,
    501 U.S. 32 (1991) .................................................................................................................... 3

Estate of Calloway v. Marvel Entm't Grp.,
    9 F. 3d 237 (2d Cir. 1993) ...................................................................................................... 13

Estate of Calloway v. Marvel Entm't Grp.,
    138 F.R.D. 646 (S.D.N.Y. 1991) ...................................................................................... 13, 14

Forbes v. Merrill Lynch, Fenner & Smith,
    179 F.R.D. 107 (S.D.N.Y. 1998) ........................................................................................... 10

Gartenbaum v. Beth Israel Med. Ctr.,
    26 F. Supp. 2d 645 (S.D.N.Y. 1998) .................................................................................. 9, 10

Healey v. Chelsea Res., Ltd.,
    947 F.2d 611 (2d Cir. 1991) ................................................................................................. 6, 9

Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.,
    23 F. Supp. 3d 173 (S.D.N.Y. 2014) ....................................................................................... 4

Hernandez v. Miller,
    No. 22 Civ. 6964 (VSB), 2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022) ............................. 3

Herrera v. Scully,
    143 F.R.D. 545 (S.D.N.Y. 1992) ............................................................................................. 4

Jeffreys v. Rossi,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003)..................................................................... 9

Koar v. United States,
    No. 96 Civ. 5166 (KMW), 1997 WL 1038181 (S.D.N.Y. Sept. 2, 1997) .................................. 4

Luv N' Care, Ltd. v. Shiboleth LLP,
    No. 16 Civ. 3179 (AJN), 2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017) ..................................... 4

Meza-Perez v. Sbarro LLC,
    No. 19 Civ. 373 (APG) (NJK), 2020 WL 5848091 (D. Nev. Sept. 30, 2020)................... 10, 11

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986)................................................................................. 2

O'Rourke v. Dominion Voting Sys., Inc.,
    552 F. Supp. 3d 1168 (D. Colo. 2021)...................................................................... 11

O'Sekon v. Exxon Corp.,
    No. Civ. 00-675 (WGB), 2001 WL 1715783 (D.N.J. Dec. 21, 2001)...................................... 12

Safe-Strap Co. v. Koala Corp.,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003)................................................................... 3, 4

Sang Lan v. Time Warner, Inc.,
    No. 11 Civ. 2870 (AT), 2015 WL 4469838 (S.D.N.Y. July 13, 2015) ..................................... 3

Schlaifer Nance & Co., Inc. v. Estate of Warhol,
    194 F.3d 323 (2d Cir. 1999)............................................................................. 2, 15

Seldon v. Bernstein,
    No. 09 Civ. 6163 (AKH), 2010 WL 3632482 (S.D.N.Y. Sept. 16, 2010)................................ 2

Sound Video Unlimited, Inc. v. Video Shack Inc.,
    700 F. Supp. 127 (S.D.N.Y. 1988) ......................................................................... 4

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
    682 F.3d 170 (2d Cir. 2012)................................................................................ 15

Storey v. Cello Holdings, L.L.C.,
    347 F.3d 370 (2d Cir. 2003).......................................................................... 15, 17

Tobia v. The United Grp. of Cos., Inc.,
    No. 15 Civ. 1208 (BKS) (DEP), 2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016)...................... 2

Yousef v. Al Jazeera Media Network,
    No. 16 Civ. 6416 (CM), 2018 WL 6332904 (S.D.N.Y. Oct. 31, 2018) .................................... 3

Rules

Fed. R. Civ. P. 11 ................................................................................................. passim

Fed. R. Civ. P. 56 ......................................................................................................... 1

Other Authorities

Civil Rights Law § 70-a ............................................................................................ 18

Civil Rights Law § 76-a ............................................................................................ 18

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe"), by and through counsel, hereby submits this Memorandum of Law in Opposition to Defendant Leon Black's ("Defendant" or "Black") Motion for Sanctions.

## I.    PRELIMINARY STATEMENT

Black's motion fails on both procedural and substantive grounds. Black improperly uses his Fed. R. Civ. P. 11 ("Rule 11") motion ("Motion") as a vehicle to advance his defense to Jane Doe's allegations by setting forth his own version of events outside of the requirements under Fed. R. Civ. P. 56 ("Rule 56"). Black knows that no basis exists to accuse Plaintiff's counsel of sanctionable conduct, but his desire to punish and intimidate Ms. Doe for commencing the action and her counsel for representing her, compounded with his need to publicly proclaim his self-serving version of what happened, caused him to flout the Rules. Contrary to the Advisory Committee Notes which detail proper grounds to seek Rule 11 sanctions, Black also improperly filed the Motion to delay litigating the merits of Ms. Doe's claims. Black outrageously suggests that lawyers who represent autistic plaintiffs or those with developmental disabilities must be held to new, more stringent pleading requirements than attorneys who represent plaintiffs who are not autistic or do not have developmental disabilities. This unsubstantiated proposition has no basis in the law and is wildly offensive to victims and their advocates. And, in addition to these substantive failures, the Motion requires dismissal because Black failed to comply with the strict 21-day safe harbor period provided for by Rule 11(c)(2).

For the reasons that follow, Black's Motion should be dismissed in its entirety.

1

## II.    ARGUMENT

### A.    Legal Standard

A court's decision to impose sanctions should be "made with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999); *see also, e.g.*, *Seldon v. Bernstein*, No. 09 Civ. 6163 (AKH), 2010 WL 3632482, at *2 (S.D.N.Y. Sept. 16, 2010) ("Rule 11 sanctions are strong medicine, and are inappropriate when a milder remedy will suffice . . . the Circuit Courts generally agree that sanctions should not be imposed lightly.") (citations omitted). As such, "in imposing sanctions under Rule 11, the court is to avoid hindsight and resolve all doubts in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Id.* (citation omitted). Thus, "[b]ecause Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort." *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227 (PAC), 2013 WL 1746062, at *4 (S.D.N.Y. April 23, 2013).

### B.    Black's Rule 11 Threat is Premature and Improper Under Well-Settled Law

Black's request for sanctions is based entirely on his position that he denies the allegations in the Complaint. But Black's mere denials of the allegations cannot possibly form the basis for a Rule 11 motion, which is why he fails to cite a single case on this point—none exist. Black's denials in response to the allegations by Ms. Doe would not even suffice for a motion for summary judgment. *See Tobia v. The United Grp. of Cos., Inc.*, No. 15 Civ. 1208 (BKS) (DEP), 2016 WL 5417824, at *27 (N.D.N.Y. Sept. 22, 2016) (holding that a Fed. R. Civ. P. 11 motion cannot act as a vehicle for a defendant's request that a court resolve contested factual disputes that could only "be fully evaluated on a motion for summary judgment"). There is no question that this is what

Black is doing.  Asking the Court to deplete its resources by prejudging the merits of Black's denials relating to his conduct is, under well-settled precedent, a blatant abuse of the Rule 11 process.  *See, e.g.*, *Hernandez v. Miller*, No. 22 Civ. 6964 (VSB), 2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022).  In *Hernandez*, the court recognized that courts deny Rule 11 motions as premature when the motion would force a court to preemptively adjudicate the merits of a party's legal arguments, "in the case of pleadings the sanctions issue under Rule 11 normally will be determined *at the end of the litigation*, and in the case of motions at the time when the motion is decided or shortly thereafter."  *Id.* at *1 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 n.19 (1991)) (emphasis added).  For this reason, numerous other courts in this district have denied Rule 11 motions filed before summary judgment or trial.  *See, e.g.*, *Yousef v. Al Jazeera Media Network*, No. 16 Civ. 6416 (CM), 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018) (denying a Rule 11 motion where the merits of the case had not yet been resolved); *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT), 2015 WL 4469838, at *2 (S.D.N.Y. July 13, 2015) ("I decline to consider this [Rule 11] motion until the plaintiff's claims are addressed on their merits through an appropriate dispositive motion or at trial."); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 419 (S.D.N.Y. 2003) (denial of Rule 11 motion as premature where ruling on the motion would have amounted to a ruling on the merits of the case before a motion to dismiss or summary judgment proceeding; *Baskin v. Lagone*, No. 90 Civ. 5478 (RPP), 1993 WL 59781, at *6 (S.D.N.Y. Mar. 3, 1993) (denying Rule 11 motion where it was "premature to ascertain[ ] that the Plaintiffs' Amended Complaint is not grounded in fact or warranted by existing law, as Rule 11 requires before sanctions can be imposed").

Even when a court is faced with a frivolous action, it should consider dismissal through dispositive motions such as summary judgment as a "first option" and only resort to "the

imposition of sanctions . . . [as] a choice of last resort." *Safe-Strap Co.*, 270 F. Supp.2d at 419. The proper vehicle for testing the merits of an initial complaint is for a defendant to file a motion to dismiss, not a Rule 11 motion. Based on well-settled precedent, courts faced with similar duplicative and premature Rule 11 motions have warned attorneys "to consider carefully the prudence of engaging in extensive and duplicative motion practice." *Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16 Civ. 3179 (AJN), 2017 WL 3671039, at *13, 16 (S.D.N.Y. Aug. 8, 2017) ("Only after discovery has been completed will the Court properly have before it evidence regarding the veracity of Plaintiffs' allegations.") (collecting cases).[1] "To grant a sanctions motion at this stage . . . would be an end-run around the axiomatic legal principle that a Court must assume that the Plaintiffs' allegations are true and may only consider the complaint and a limited category of other information at the motion to dismiss stage . . . ." *Id.* at *13. In sum, because the "filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions," and the Motion overwhelmingly is frivolous and baseless, Black is the party deserving of sanctions. Rule 11 Advisory Committee Note; *see also Koar v. United States*, No. 96 Civ. 5166 (KMW), 1997 WL 1038181, at *2 n.2 (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant.""). Here, the intentional misuse of Rule 11 by Black is blatant. But it is even more obvious when viewed in conjunction with Black's

---

[1]    *See further Herrera v. Scully*, 143 F.R.D. 545, 552 (S.D.N.Y. 1992) ("[T]his request for Rule 11 sanctions is premature because the Court is not in a position to make a definitive finding pursuant to the Rule without having the complete evidence . . . before it"); *See generally Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173, 194 (S.D.N.Y. 2014) ("[S]atellite issues [under Rule 11] are best resolved in connection with the ultimate conclusion of the litigation."); *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 149 (S.D.N.Y. 1988) ("[S]anctions under Rule 11 normally will be determined at the end of litigation."); *cf. Safe-Strap Co.*, 270 F. Supp. 2d at 412-21 (concluding that Rule 11 may not be used as a "substitute" or "surrogate" for summary judgment, and that Rule 11 issues would be revisited at the end of the case).

simultaneous filing of a malicious prosecution action against Wigdor based in part on Plaintiff's commencement of this case.  Christensen Decl. at ¶ 22.

Because Black is a billionaire and "titan of Wall Street," he wrongly believes he can operate above the law and in fact, has publicly bragged about doing so.  *See* Caleb Melby and Heather Perlberg, "Nobody Makes Money Like Apollo's Ruthless Founder Leon Black," *Bloomberg Businessweek*, Jan. 16, 2020, *available at* https://www.bloomberg.com/news/features/2020-01-16/nobody-makes-money-like-apollo-s-ruthless-founder-leon-black ("If anything has made Apollo seemingly risk-immune, it's this ability of Black's to emerge clean from a quagmire.  It's a pattern that's defined his career: One way or another, Black always wins.").  Although the rules which everyone else must follow do apply to him, the unfortunate reality is that any financial penalty imposed by this Court for filing a knowingly improper Rule 11 motion is meaningless to Black.  His goal was to present his version of events when he would otherwise be unable to do so under the Federal Rules, and he has succeeded in doing this.  It is troubling that Black has capitalized on his impropriety and used the Motion also to publicly discredit and shame Ms. Doe, as well as initiate false narratives about ▮REDACTED▮.  Black's use of Rule 11 is not without repercussions.  Regarding the 1993 Amendments to Rule 11, the Advisory Committee Notes set forth the following:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b).  They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

*See also Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (Sanctions should be imposed only "'where it is patently clear that a claim has absolutely no chance of success'") (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)). Nevertheless, in defiance of well-settled precedent, Black filed the Motion for improper reasons.

There can be no question that Black's purpose in filing his frivolous Motion was to publicly message that Ms. Doe's allegations are "false" while interjecting his own counterstatements of fact that "emphasize the merits of [Black's] position" and to "intimidate [his] adversary." By way of example only, according to Black, he seeks to sanction Wigdor's conduct based on the following:

- "Everything the Complaint says about Mr. Black is utterly and demonstrably false." (p. 2);
- "Black has never met or even heard of Plaintiff, much less raped her." (*Id.*);
- "Black is fully prepared to establish [the falsity of her claim] should this matter proceed." (*Id.*);
- "The Complaint here is a sham." (*Id.*);
- [The Complaint] is a "product of obvious lies by Plaintiff." (*Id.*); and
- [Plaintiff's] lies are "squarely enabled by a law firm that… failed to conduct a reasonable inquiry" (*Id.*).

In support of his claim that Ms. Doe is a "liar" and Wigdor should have known this, Black uses the "results" of his "own investigation." Specifically, all references as to why Wigdor should be sanctioned are based on Black's denials and the gumshoe work of Black's hired consultant Carlos Melendez, an 83-year-old retired U.S. Army Infantry Officer from Florida. Dkt. No. 55 (Melendez Decl.). Melendez's declaration claims that:

- "Plaintiff did not join the cheerleading squad coached by Elizabeth until Plaintiff was in her senior year of high school—not when she was 15." (p. 3);
- Plaintiff "lived with her parents throughout high school" (*Id.*);
- Plaintiff did not miss significant time from high school. (*Id.*);
- Plaintiff "did in fact live with her former cheerleading coach for a brief period of time *after* Plaintiff graduated from high school." (p. 8);
- "Plaintiff's family members and high school classmates deny that Plaintiff ever lived outside of her home during high school, nor do any of them recall Plaintiff missing school," (p. 7); and

- Plaintiff "never traveled out of the state." (p. 8).

Dkt. No. 55. Because of the above—all of which are self-serving and not supported by any admissible non-hearsay evidence—Black has represented to this Court that Wigdor must be sanctioned because Plaintiff's facts are "patently and unequivocally false." Black Mem., p. 6. Based on these alleged discrepancies—none of which actually disprove Plaintiff's allegations about the sexual assault, and which are also incorrect and will be established as such during this litigation—Black asks the Court to conclude that Plaintiff's counsel "should have known" its client was purportedly lying.[2] The absurdity of Black's Motion is clear, and his willingness to intentionally delay litigation and cause Plaintiff to incur additional costs, as well as his motive to use the opportunity to disparage Wigdor warrants *immediate* dismissal of his Motion.

Further, the glaring omission of an affidavit from a single person referenced as the "family" and "friends" upon whom Melendez relied to create his conclusions of "fact," speaks volumes. The Motion repeatedly references information obtained from Ms. Doe's biological parents, family and friends yet not a single "family member" or purported "friend" signed an affidavit in support of Black's Motion. Worse, Melendez relies upon these missing persons to make horrific in "sum and substance" representations that malign and denigrate Ms. Doe. *See* Melendez Decl. at ¶ 13. In paragraph 13 of the Melendez declaration, abhorrent falsified representations about Ms. Doe's ▮▮▮▮REDACTED▮▮▮▮ are set forth. These defamatory statements about Ms. Doe are presented by Black as further "evidence" in support of his improper Motion, yet there is no dispute that

---

[2]     Black's Motion is also improper because he attempts to gain early discovery by goading Plaintiff's counsel into sharing relevant information supporting the allegations. For instance, on page 23 of Black's motion, he lists what he considers the "elements" of a reasonable pre-filing inquiry, thereby suggesting that unless Plaintiff's counsel affirmatively discloses every evidentiary detail underlying the allegations (before discovery has even begun), that the Court has no option but to conclude that no investigation was done. As the Rule makes clear, sanctions "should not be employed as a discovery device."

Melendez declared as such without obtaining a <u>single medical record</u> regarding Ms. Doe. Christensen Decl. at ¶ 9. Black recklessly uses Melendez's representations throughout the Motion to repeatedly malign the woman who has accused him of sexual assault:

- Ms. Doe was " REDACTED (Black Mem., p. 8);
- Plaintiff has a REDACTED that pre-date (and also post-date) the events alleged in the Complaint (*Id.*);
- [Plaintiff] has assumed a series of different names and personas." (*Id.*);
- [Plaintiff] is believed to have a REDACTED ." (*Id.*);
- [Plaintiff] has a history of making up alternate realities, and frequently invents things that, "become[] her reality." (*Id.*);
- "Plaintiff did not display any symptoms or characteristics of autism while in high school" (p. 9); and
- Plaintiff was "not diagnosed with autism during her childhood or while she lived at home throughout high school." (p. 9).

Melendez's in "sum and substance" statements in his declaration are based on his purported conversations with numerous individuals that he fails to identify, much less attach signed statements from.[3] These out-of-court statements are offered to prove the truth of what is asserted. Black rests his entire Motion on hearsay. Although Black has no basis to publicly defame, much less accuse Wigdor of violating Rule 11, Black is fearless in connection with any penalty he may receive from this Court for making his frivolous Motion. He is a billionaire who incorrectly believes he is entitled to act above the law.

---

[3]    The inclusion of a declaration from Elizabeth (Dkt. No. 32) to try to show that Wigdor failed to reasonably investigate is absurd. As evident by Ms. Doe's Complaint, the conduct that Elizabeth engaged in could potentially subject Elizabeth to criminal charges. A self-serving declaration from a person who helped sexually exploit Ms. Doe is not "proof" of anything in connection with Wigdor's prelitigation due diligence. This is material for Black's public relations and media outlet tour.

**C.**     <u>Black Fails to Cite a Single Case That Supports His Frivolous Motion</u>

The foundation for Black's sanctions request—that Wigdor must be sanctioned because Plaintiff's allegations are not "objectively reasonable," is Melendez's hearsay-based representations about Ms. Doe's ▮REDACTED▮ and his hearsay-based statements about where she resided full time during high school. Not surprisingly, Black cannot cite any legal authority to show his Motion is proper. Indeed, the very case Black relies upon for his core argument regarding "objectively reasonable," *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 480 (S.D.N.Y. 2003), supports denial of Black's Rule 11 motion. Def. Mem., p. 11. *Jeffreys* is a decision on a motion for summary judgment, not a Rule 11 motion filed before discovery. In *Jeffreys*, the Rule 56 motion included extensive documentation about the plaintiff's medical records, as a material disputed fact involved his head trauma. Although the medical records omitted any reference to "head trauma," the court denied the Rule 11 motion based on plaintiff's request to file a third amended complaint holding that:

> the absence of evidence of head trauma in the medical records does not conclusively rule out the possibility that Jeffreys was hit in the head nor compel plaintiff's counsel to disbelieve their client. On the contrary, plaintiff's counsel is entitled to rely on the representations of their client, without having to assess his credibility; credibility is solely within the province of the finder of fact.

*Id*. at 480 (quotations omitted) (citing *Healey*, 947 F.2d at 626). Reliance on a case where the Rule 11 motion was filed subsequent to summary judgment, and where the court ultimately denied sanctions anyway, is misplaced and not controlling. Asking the Court to compare Melendez's hearsay-filled declaration to a Rule 56 motion is a clear waste of judicial resources.

Similarly, Black cites *Gartenbaum v. Beth Israel Med. Ctr.*, 26 F. Supp. 2d 645, 646-47 (S.D.N.Y. 1998) for the proposition that an attorney "cannot totally rely on the uncorroborated word of h[is] client and hearsay witnesses for all of the key contentions of the case" but "should

question [the client] thoroughly, not accepting his version on faith alone." Black Mem., p. 11. In *Gartenbaum*, the plaintiff, a white female employee, alleged that her employer unlawfully favored black employees as evidenced by her repeated promotion denials. At a pretrial conference, the employer provided the court documents from a prior arbitration hearing, as well as from several union grievance hearings in which the plaintiff grieved the fact that she was not promoted, yet never once claimed the employer discriminatorily promoted black employees. It was in the context of these hearings that took place over several years and of which transcripts existed, that the court in *Gartenbaum* reasoned that plaintiff's counsel should not have accepted his client's word "based on faith alone." *Id.* at 647. In addition, the quote cited by Black from *Gartenbaum* was taken directly from a decision that was vacated by the Second Circuit in April 1999.[4] This legal authority does not support Black's Motion, and instead favors denial.

To support his contention that Wigdor failed to conduct due diligence pre-filing, Black relies upon *Meza-Perez v. Sbarro LLC*, No. 19 Civ. 373 (APG) (NJK), 2020 WL 5848091, at *2 (D. Nev. Sept. 30, 2020), a case in which Black describes the court sanctioning plaintiff's counsel for failing to conduct any investigation where "'[e]ven minimal due diligence' would have revealed the impossibility of [plaintiff's] allegations [. . .], especially considering that a close reading of the amended complaint leads to serious questions about the timeline of events." The facts in *Meza-Perez* are easily distinguishable, and any reliance on this case is misplaced. In *Meza-Perez*, the court held that plaintiff's <u>own timeline of facts in her complaint</u> showed a "factual impossibility" regarding her claims. *Id.* at 2. Specifically, plaintiff alleged that one of the

---

[4]     *Forbes v. Merrill Lynch, Fenner & Smith*, 179 F.R.D. 107, 109 (S.D.N.Y. 1998). *Forbes* was vacated by the Second Circuit, *see Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87 (2d Cir. 1999), which found that the district court in that case abused its discretion in *sua sponte* imposing sanctions.

individually named defendants who worked in HR had "conspired" with her sexual harasser. Yet, plaintiff's complaint on its face alleged that this same individual defendant never knew about the harassment until four months after it had ceased. For this reason, the court held that plaintiff's claim that the HR employee had "ignored her complaints" was a "factual impossibility." *Id.* The facts in *Meza-Perez* are far removed from the instant action, and Black's Motion, which relies on his investigator's hearsay-filled declaration that Black paid him to write, bears no similarities with the facts in *Meza-Perez*.

The other cases Black relies upon are similarly inapposite here and serve to highlight the impropriety of his Motion. For instance, in contending that allegations of "serious wrongdoing" require a unique level of investigation, he cites a series of cases from outside of this Circuit wherein the nature of the allegations was mentioned alongside serious wrongdoing on the part of the filing attorney. In *Anderson v. County of Montgomery*, 111 F.3d 494 (7th Cir. 1997), sanctions were appropriate because the complaint displayed the attorney's lack of familiarity with the law governing the claim at issue and completely ignored binding Supreme Court precedent. While the *Anderson* court also stated that the "serious charges" of court officials' fabrication of official documents "required a serious investigation," it also noted that any investigation is dependent "of course, on the circumstances of the case." *Id.* at 501. In *O'Rourke v. Dominion Voting Sys., Inc.*, 552 F. Supp. 3d 1168 (D. Colo. 2021), the court noted that the allegations of foreign interference in the 2020 election—particularly in light of extensive public reporting disproving those allegations—required a more serious inquiry. And in *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007), the court sanctioned a defendant who submitted (in support of its own Rule 11 motion) an affidavit claiming that the plaintiff had bribed the defendant for testimony. The court found that affidavit false and unsupported after an evidentiary hearing, and sanctioned

11

the defendant when he could provide no explanation for the submission of the false document. *Id.* at 1326-27.  And in *O'Sekon v. Exxon Corp.*, No. Civ. 00-675 (WGB), 2001 WL 1715783 (D.N.J. Dec. 21, 2001), the court did not impose sanctions, thereby rendering its caution to attorneys concerning serious allegations to be *dicta*.  The fact that all of the courts in the cases cited for this proposition only considered sanctions *after* summary judgment, a verdict, or an evidentiary hearing, not only makes clear the ways in which these cases are inapplicable, but also further highlights Black's improper use of Rule 11 in this procedural posture.

### D.    Black Seeks to Create a Distinct and Heightened Standard for Attorneys Representing Plaintiffs with Autism or Developmental Disabilities

Black's Motion repeatedly disparages Ms. Doe, casts doubt on her credibility, victim shames and discredits his accuser by disgustingly trying to label her as ████REDACTED████ and "delusional."  Black Mem., pp. 1, 8.  Black's affirmative "statements of fact" about Ms. Doe's ████REDACTED████ are made without any "proof" and are false.[5]

Other than the hearsay set forth above, Black shamelessly offers no justification for his maligning proclamations about a woman he claims to have "never met."  He believes that because Ms. Doe includes the fact that she is autistic and has developmental disabilities in the Complaint, he is entitled to label her as having ████REDACTED████ (Black Mem., p. 1), assert she was ████REDACTED████ (Black Mem., p. 8), and claim she was diagnosed with ████REDACTED████ *Id.*, pp. 1, 8.  Black's memorandum of law

---

[5]    Aware of Black's pattern of retaliatory conduct against women who accuse him of sexual assault, counsel for Plaintiff refused to be baited into Black's improper attempt to extract discovery from Ms. Doe without his own simultaneous production.  In the regular course of discovery, Ms. Doe will produce the relevant documents in her possession, such as medical records and school attendance records.  But threatening and intimidating Ms. Doe with a Rule 11 motion, <u>filed in advance of the deadline for Black's motion to dismiss</u>, for the purpose of extracting information Black thought may assist with his efforts to dismiss the case, is not only improper, but is sanctionable based on Second Circuit precedent.

repeatedly cites to paragraph 13 of Melendez's declaration for all of these groundless and incorrect references.  To illustrate the sheer abuse of Rule 11 here, even if Carlos Melendez represented that he is a board-certified medical doctor who regularly works with autistic individuals, for example, such statements in his paragraph 13 about Ms. Doe's ███ REDACTED ███ would be grossly improper and inadmissible as "evidence."  Instead, Black presents an 83-year-old former U.S. Army Infantry Officer, licensed in Florida as a "fraud examiner" and "private investigator," to represent based on conversations (and nothing else) he had with Plaintiff's estranged biological parents and sister, and a "cousin" and "aunt" to discredit her experience as a sexual assault victim simply because she is autistic.

Worse, Black uses Plaintiff's identified status to ask this Court, as a matter of first impression, to judicially hold that counsel for a plaintiff with autism or developmental disabilities must adhere to a more stringent, and extensive course of pre-filing due diligence because a client is autistic.  Precisely because Ms. Doe is autistic and has developmental disabilities, Black offensively refers to her as "delusional"[6] and █REDACTED█  Black Mem., pp. 1,8.

Black cites a single case, which was first filed nearly forty years ago, *Estate of Calloway v. Marvel Entm't Grp.*, 138 F.R.D. 646 (S.D.N.Y. 1991), to support the creation of a new Rule 11 standard as it applies to attorneys for plaintiffs like Jane Doe.[7]  No such rule exists here.  First, in this copyright infringement action, the motion for sanctions was filed "[a]fter a six-week jury trial and a defendants' verdict."  *Id.* at 647.  The plaintiff had sworn under oath at his deposition that he did not sign the agreements at issue in the case and his signature was forged.  At trial, plaintiff

---

[6]    In the third sentence of the preliminary statement, Black writes, "[Plaintiff's] lawyers at Wigdor . . . knowingly aided and abetted their **client's delusions** without doing even the most basic due diligence into the facts."  Black Mem., p. 1.

[7]    This decision was affirmed in part, and vacated in part, *Estate of Calloway v. Marvel Entm't Grp.*, 9 F. 3d 237 (2d Cir. 1993).

at times admitted he did sign them, but also made inconsistent and contradictory statements about his signatures. The court noted that plaintiff was unable to explain his inconsistent testimony at trial. Second, the mental health of the plaintiff was not in dispute, and the court's reasoning as to whether sanctions should be issued considered that given the history of mental illness, was it reasonable for counsel not to retain a handwriting expert and merely accept plaintiff's forgery claims. *Id.* at 652-53. It is only within this context and after a jury trial that the court, alluding to counsel's knowledge of plaintiff's contradictory statements about the forgery plus the "acknowledged mental illness" was there a basis to suggest that plaintiff's counsel had "a heavy burden to investigate." *Id.* at 653. Such facts are inapplicable to Black's Motion and indeed, the misplaced usage of these quotes by Black are inexplicable.

Black does not—and cannot—cite a single authority that a plaintiff with autism should not be afforded the ability to bring claims of sexual assault. Indeed, this suggestion is incredibly offensive, and the imposition of such a standard would silence victims who happen to have developmental disabilities. This is especially abhorrent given the well-publicized fact that individuals with autism and developmental disabilities are more likely than the general population to be abused. *See, e.g.*, Erika Harrell, "Crime Against Persons with Disabilities, 2009-2015 – Statistical Tables," *U.S. Dep't of Justice – Bureau of Justice Statistics*, July 2017 ("In every year from 2009 to 2015, the rate of violent victimization against persons with disabilities was at least twice the age-adjusted rate for persons without disabilities."); Shunit Reiter, et al., "Adolescents with Intellectual Disabilities as Victims of Abuse," *Journal of Intellectual Disabilities*, Volume 11, 2007; Susanna Niehaus, et al., "Intellectual Disabled Victims of Sexual Abuse in the Criminal Justice System," *Psychology*, Volume 4, 2013.

E.  **Black's Rule 11 Motion is Procedurally Defective**

Furthermore, in filing his Rule 11 motion, Black failed to comply with the strict 21-day safe harbor period provided for by Fed. R. Civ. P. 11(c)(2).  While Black sent Plaintiff's counsel a three-page letter summarily noting that the entirety of Plaintiff's complaint was sanctionable, it did not serve the motion in accordance with Rule 11(c)(2).  Black's motion papers and supporting affidavits—the legally operative documents at issue—did not comport with the Rule.  A boilerplate notice of motion is only a half-measure, insufficient to provide Plaintiff the requisite notice and opportunity to respond under Rule 11.  Indeed, as evidenced by the contentious filings concerning necessary redactions to the Rule 11 papers, it is clear that Black did not appropriately give Plaintiff notice of what he intended to file.  Had Black provided the actual bases for his sanctions motion, the parties' meet and confer regarding redactions prior to the filing of the Rule 11 motion would have obviated the need for emergency sealing by Plaintiff.

Rule 11(c)(2) provides that a motion for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)," and that "the motion must be served under Rule 5" but cannot be filed or presented to the court before 21 days have elapsed.  "The safe-harbor provision is a strict procedural requirement," which allows "the subject of a sanctions motion to be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."  *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citing *Schlaifer Nance*, 194 F.3d at 334).  "Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable."  *Id.* (citation omitted); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003) ("This notice requirement permits the

subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion.").

Black's safe-harbor notice consisted of a boilerplate notice and a three-page letter stating that allegations in the complaint were sanctionable because there was not "evidentiary support," specifically contending that the allegations that "Plaintiff was sex trafficked by Jeffrey Epstein, sexually assaulted by Defendant, and groomed and sex trafficked by Elizabeth" were "baseless." Along with the letter, counsel for Black provided two affidavits upon which it states its Rule 11 motion was based.

Black's actual Rule 11 memorandum of law and supporting affidavits, however, were not the same as what his counsel had provided as a "safe harbor" under Rule 11. Christensen Decl. at ¶¶ 4, 8, 10. Most notably, Defendant's motion now focuses a significant amount of attention on what Black asserts are Plaintiff's ███████ REDACTED ███████ and suggests that Plaintiff's autism and developmental disabilities—which are not, of course, ███████ REDACTED ███████ ████████ are in fact evidence of Plaintiff's counsel's sanctionable behavior. Simply put, these accusations and arguments were not made in Defendant's safe harbor letter, and therefore Black failed to abide by the strict procedural requirements of Rule 11. Christensen Decl. at ¶¶ 4, 8, 10 . And, instead of submitting the original Melendez affidavit that had been provided along with the "safe harbor" letter, after counsel met and conferred about redactions, Defendant's counsel produced a brand-new affidavit from Melendez, containing additional information and defamatory accusations of which Plaintiff was not given the proper notice. Christensen Decl. at ¶ 10; Dkt. No. 57, Ex. 3. Plaintiff's request for emergency sealing and opposition to Defendant's motion for sealing further indicate that Plaintiff was not provided with a true safe harbor—if Plaintiff had seen the true nature of the motion for sanctions and the supposedly supportive affidavits, she would

16

have had the opportunity to meet and confer about necessary redactions, and would not have been in a position of surprise to see totally new arguments and allegations on the public docket.[8]

This duplicitous behavior is exactly what the Rule 11 safe harbor is intended to prevent—ultimately, the notice given to Plaintiff in advance of the public filing of the Motion did not permit her to "confront [her] accuser" or "rebut the charges leveled against [her] in a pointed fashion." *Storey*, 347 F.3d at 389. For this reason alone, Black's motion should be denied.

### F. Black's Rule 11 Motion is a Transparent Attempt to Circumvent New York's Anti-SLAPP Statute

Black's Rule 11 motion is a transparent attempt to circumvent the recent amendments to New York State's "Strategic Lawsuits Against Public Participation" or "SLAPP" statute, codified in Civil Rights Laws § 76-a and § 70-a. New York's legislature passed the anti-SLAPP law precisely for a fact pattern as presented here. Ms. Doe's Complaint against Black seeks to hold him accountable for violating New York's Gender Motivated Violence Act, including by accusing him of horrific rape. Understanding that a counterclaim in this case against Ms. Doe, or that filing a separate action in New York Supreme against her, Wigdor or both, would be a textbook violation of the anti-SLAPP law, Black believes he has discovered a clever work-around by instead accusing Ms. Doe's *lawyers* of knowingly filing a "false" complaint on behalf of their client. This is not the only time Black has done this. Christensen Decl. at ¶¶ 13-20. The Motion is nothing more than a lengthy claim that (i) Ms. Doe intentionally made false statements about Black raping her and did so with the purpose of harming him, and (2) by extension, her retained lawyers similarly

---

[8] The filed Motion and Defendant's letter also have another significant difference: Defendant's letter extensively details the ways in which Black's counsel contacted and interviewed Epstein associates in an attempt to "disprove" Plaintiff's claims. Unsurprisingly, in his public filing, Black downplayed how readily he was able to access representatives of Epstein's associates—likely recognizing that highlighting this fact would not help him weave the public-facing narrative he hopes to set out in his Motion.

made false statements about Black with the intention of harming him.  Black's offensive and untenable accusation that Wigdor had a heightened duty to investigate pre-filing because Ms. Doe is autistic is nothing but a red herring for what he actually says: namely, that Wigdor allegedly knew or should have known that its client's rape allegations were false but went ahead (negligently or maliciously) and filed the action on her behalf.

Proving falsity of a statement of fact is a party's burden when asserting a defamation claim which Black knew the anti-SLAPP law prohibited him from filing.  Nevertheless, his Motion is filled with his conclusory statement that allegations in the Complaint are "obviously false."  Black does not even try to hide the fact he is trying to "prove the [allegations] false" within the confines of his Rule 11 motion.  That Black engaged in this anti-SLAPP activity by deploying a Rule 11 motion against the law firm, but not against Ms. Doe, does nothing to insulate him from the reach of Civil Rights Laws § 76-a and § 70-a.[9]  The Motion is a blatant attempt to abuse the litigation process, punish and intimidate Ms. Doe for daring to speak up about a matter of legitimate public concern as defined by courts applying § 76-a, and punish Wigdor for representing a sexual assault victim.  Black hopes his intimidation efforts will deter other lawyers and victims from asserting claims against him as well.  Christensen Decl. at ¶ 12.

## III.    CONCLUSION

The Court should deny Black's motion in its entirety.

---

[9]      Any position by Black that NY's anti-SLAPP law cannot reach him because he is in federal court would be wrong.  *See* Matthew L. Schafer and Tanvi Calsangikar, *The Application Of The New York Anti-SLAPP Scheme In Federal Court*, Journal of Free Speech Law, 2 JFSPL 573, 615 (2023) (reviewing cases and finding that in every identified case except one, federal courts uniformly have applied § 76-a).

Dated: October 18, 2023
     New York, New York

**WIGDOR LLP**

By: _____
    Jeanne M. Christensen
    Meredith A. Firetog

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*