Exhibit 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————X
LEON D. BLACK,

               Plaintiff,

-against-

WIGDOR LLP AND GUZEL GANIEVA,

               Defendants.

————————————————————X

Index No.:158062/2023

**Motion. Seq. No. 002**

---

## DEFENDANT WIGDOR LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Respectfully submitted,

RIVKIN RADLER LLP
Attorneys for Defendant, Wigdor LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

On the brief:

Max Gershenoff, Esq.
Janice J. DiGennaro, Esq.
Yonatan Bernstein, Esq.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

STATEMENT OF RELEVANT FACTS .................................................................... 3

    I.      The Parties ..................................................................................... 3

    II.    Ganieva's First-Filed State Court Action Against Black ........................... 4

    III.   Black's Federal Action Against Wigdor and Ganieva .............................. 6

    IV.   Black's Contrived and Retaliatory Claims Against Wigdor and Ganieva in the Tortious Interference Case .................................................... 7

    V.    Black's Retaliatory Claims Against Wigdor and Ganieva in the Present Case ................................................................................................ 8

ARGUMENT .......................................................................................................... 8

    I.      Black's Complaint is Subject to Dismissal Under New York's Anti-SLAPP Statute ............................................................................... 8

    II.    Standards on a Malicious Prosecution Claim ........................................ 10

    III.   Black Cannot State a Claim Against Wigdor for Malicious Prosecution ................. 11

        A.    Black Has Failed to Allege the "Entire Absence" of Probable Cause ................................................................................ 12

        B.    Black Fails to Adequately Plead Malice ....................................... 16

        C.    Black Does Not Plead the Requisite Special Injury ...................... 20

            1.    Wigdor's Filing of the State Court Action Did Not Cause Black to Step Down from Apollo or Unidentified Philanthropic Organizations ............................................ 20

            2.    Black's Allegations of Injury to His Reputation and Business Standing are Insufficient to Satisfy the Special Injury Requirement of a Malicious Prosecution Claim .............................. 22

            3.    Defending Against the State Court Action Does Not Constitute Special Injury ................................................ 23

CONCLUSION ..................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Scott,*
  286 A.D.2d 692 (2nd Dept. 2001) ...........................................................................19

*Aristocrat Plastic Surgery, P.C. v. Silva,*
  206 A.D.3d 26 (1st Dep't 2022) ...........................................................................9, 12

*Balliet v. Kottamasu,*
  76 Misc. 3d 906 (Civ. Ct. 2022) ..........................................................................10

*Black v. Ganieva,*
  2023 U.S. App. LEXIS 5087 (2d Cir. 2023) .........................................................7

*Black v. Ganieva,*
  Index No. 654108/2022 .........................................................................................7

*Black v. Ganieva,*
  S.D.N.Y. Case No. 1:21-cv-08824-PAE . In the Federal Action ..................1, 2, 6, 7

*Campion Funeral Home v. State,*
  166 A.D.2d 32 (3rd Dept. 1991) ..........................................................................22

*Cardoza v. City of N.Y.,*
  139 A.D.3d 151 (1st Dept. 2016)..........................................................................12

*Cheri Pierson v. Leon Black et al,*
  Index No. 952002/2022 .........................................................................................18

*Doe v. Black,*
  S.D.N.Y. Case No. 1:23-cv-06418 ........................................................................18

*Dudick v. Gulyas,*
  277 A.D.2d 686 (3rd Dept. 2000) .....................................................................20, 21

*Engel v. CBS, Inc.,*
  93 N.Y.2d 195 (1999) ......................................................................................11, 22, 23

*Facebook, Inc. v DLA Piper LLP (US),*
  134 A.D.3d 610 (1st Dept. 2015)..........................................................................12

*Fink v. Shawangunk Conservancy, Inc.,*
  15 A.D.3d 754 (3 Dept. 2005) ..............................................................................13

ii

*Fischer v. Chevra Machziket H'Shechuna, Inc.*,
    295 A.D.2d 227 (1st Dep't 2002) ........................................................................15

*Ganieva v. Black*,
    Index No. 155262/2021 .............................................................4, 5, 13, 14, 17

*Gottwald v. Sebert*,
    2023 N.Y. LEXIS 913 (June 13, 2023) ...............................................................10

*Gross v. Newburger, Loeb & Co.*,
    426 N.Y.S.2d 667 (Sup. Ct. Nassau Cty. 1980)...................................................19

*Holber Assoc., L.P. v Reckson Operating Partnership, L.P.*,
    2017 N.Y. Misc. LEXIS 3812 (Sup. Ct. N.Y. Cty. 2017) ....................................13

*Hornstein v. Wolf*,
    109 A.D.2d 129 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 721 (1986) ......................11, 19

*Howell v. Davis*,
    43 N.Y.2d 874 (1978) ...............................................................................11, 18

*Howell v. Davis*,
    58 A.D.2d 852, *aff'd*, 43 N.Y.2d 874 ................................................................19

*Kaufman v. Moritt Hock & Hamroff, LLP*,
    192 A.D.3d 1092 (2nd Dept. 2021) ...............................................................11, 12

*Lee Litig. Group, PLLC v. A&B Rest. Group, LLC*,
    2023 N.Y. Misc. LEXIS 1672 (Sup. Ct. N.Y. Cty. 2023) ...................................10

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
    50 F. Supp. 3d 267 (E.D.N.Y. 2014) ...............................................20, 21, 22, 23

*McCaul v. Ardsley Union Free Sch. Dist.*,
    514 F. App'x 1 (2d Cir. 2013) ..........................................................................23

*Napoli v James*,
    2020 N.Y. Misc. LEXIS 2411 (Sup. Ct. N.Y. Cty. 2020) ...................................13

*Rubin v. Lutfy*,
    25 Misc. 3d 1242(A) (Sup. Ct. N.Y. Cty. 2009)..............................................14, 17

*Santoro v. Town of Smithtown*,
    40 A.D.3d 736 (2nd Dept 2007) ........................................................................16

*Web Mgmt. LLC v. Sphere Drake Ins. Ltd.*,
    754 N.Y.S.2d 636 (1st Dept. 2003) ...................................................................14

*Wilderhomes, LLC v Zautner*,
23 Misc. 3d 1112(A)(Sup. Ct. Albany Cty. 2009).................................................................13

iv

Case 1:23-cv-06418-JGLC     Document 61-9     Filed 10/18/23     Page 7 of 30

Defendant Wigdor LLP ("Wigdor"), respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Leon Black's ("Black" or "Plaintiff") amended complaint, with prejudice, pursuant to C.P.L.R. 3211(a)(7) and (g)[1], and Civil Rights Law § 76-a(1)(a). *See* NYSCEF No. 5.

This case is now Black's *seventh* retaliatory attempt to gin up a viable SLAPP claim against Wigdor – a law firm – for representing Black's accuser, Guzel Ganieva ("Ganieva"), in a first-filed sexual assault and defamation lawsuit (the "State Court Action").[2] Once again, Black, an intemperate billionaire anxious to change the public conversation about him and his association with notorious pedophile Jeffrey Epstein ("Epstein"), is inviting this Court to paint a target on the back of every attorney who deigns to represent a client who might sue him, by recharacterizing commonplace aspects of attorney representation as "torts". Wigdor respectfully submits that the Court should decline this dubious invitation.

Black first tried to intimidate Wigdor in the United States District Court for the Southern District of New York, when he asserted and then publicized defective "RICO" and "defamation" claims against the firm. *See Black v. Ganieva*, S.D.N.Y. Case No. 1:21-cv-08824-PAE (the "Federal Action"). In the Federal Action, much as in the present case, Black's claims were based on conclusory allegations that Wigdor acted improperly by having the temerity to zealously represent Ganieva against him. After several motions, an amendment, and an attempt to amend for a second time, the Federal Action was dismissed, with prejudice, which dismissal was then affirmed by the

---

[1] Because the present motion to dismiss is brought pursuant to Rule 3211(g), "[a]ll discovery, pending hearings, and motions in the action shall be stayed," and "the court shall grant preference in the hearing of [the] motion." CPLR 3211(g)(1) & (g)(3).

[2] Wigdor no longer represents Ganieva. Ganieva filed her notice of appeal, *pro se*, to the First Department.

1

Second Circuit. Despite Black's virtually unlimited resources and an army of lawyers, his case got nowhere.

Black then tried it again in <u>this</u> Court, by filing two cases, one for "tortious interference" with a non-disclosure agreement that was extracted from Ganieva under duress, the very type of agreement the Speak Out Act is intended to invalidate, *See*, 42 U.S.C. § 19401, and this one for "malicious prosecution". In response to Wigdor's motion to dismiss the tortious interference action, Black seeks leave to amend to file a *third* complaint, *his seventh different pleading at this point counting the ones filed in the Federal Action as well*. Black continues with his efforts to pursue fundamentally defective and futile allegations to the effect that Wigdor engaged in supposed wrongdoing by representing Ganieva in her first-filed defamation and sexual assault lawsuit, and by "encouraging" Ganieva to go public with her sexual assault claims.

Black himself seems to recognize that his "tortious interference" claim against Wigdor is baseless. In particular – and in an outrageous waste of the Court's time and resources – Black filed the present case alleging "malicious prosecution" against Wigdor as a separate lawsuit, under a different index number, on the very same day when he filed his latest motion to amend in his already-pending "tortious interference" case. This despite the fact that the allegations in Black's tortious interference case are based on the same purported facts as the present malicious prosecution case (*i.e.*, that Wigdor acted improperly by representing Ganieva in her first-filed lawsuit). Such an abuse of the legal system should itself be sanctionable.

Black has filed complaint after complaint because he does not care if he wins or loses. Success is not the point. The point is for Black to drag Ganieva and Wigdor's names through the mud for as long as possible so he can paint himself as a victim of lying women and their overly-aggressive lawyers, as if a billionaire who admittedly paid Ganieva $9 million to buy the silence of

a victim, and paid the notorious human trafficker and non-lawyer Epstein $158,000,000 for purported "*legal and tax advice*", has nothing to hide. Black's feigned victimhood is all the more insidious because it was recently disclosed that in January 2023, Black paid yet another $62.5 million to the Attorney General of the USVI to avoid any legal claims tied to its Epstein sex-trafficking investigation. Clearly, this is a man who thinks he is above having to answer for his misconduct.

Critically, because Ganieva's State Court Action against Black concerned matters of a public interest, Black is required by the recently amended New York anti-SLAPP statute to demonstrate by "clear and convincing evidence" that there is a "substantial basis in law" for his malicious prosecution claim. As discussed below, has not met this significant burden.

Accordingly, and once and for all, this Court should put an end to Black's revenge tour against Black and Ganieva, and dismiss this case with prejudice.

## STATEMENT OF RELEVANT FACTS

### I.  The Parties

Black is the co-founder and former chairman of the private equity firm Apollo Global Management, has a net worth in excess of $10,000,000,000, and himself acknowledges that he engaged in an extramarital relationship with Ganieva, and – to buy her silence about his behavior during that relationship – allegedly paid her more than $9 million. *See* Black Amended Complaint (hereinafter "Black Complaint", Exhibit A[3]), ¶¶ ¶¶ 24, 49.

Black has been facing massive scrutiny due to a recent U.S. Senate committee decision to further investigate the $158 million in "tax advice" payments he made to Epstein, and wants that entire affair to just disappear. To try and accomplish this, and in violation of New York's recently amended anti-SLAPP statute, Black has filed a series of frivolous lawsuits – including the present

---

[3] Exhibit references are to the exhibits attached to the Affirmation of Yonatan Bernstein.

3

case – designed to smear his accusers and their lawyers, hoping that by doing so he can dissuade victims and law firms from taking on cases against him.

Wigdor is a nationally renowned law firm that, among other things, specializes in cases of sexual harassment and misconduct, and represented Ganieva in connection with her first-filed State Court Action against Black for defamation, defamation *per se*, intentional infliction of emotional distress, and gender-motivated violence.

## II.    Ganieva's First-Filed State Court Action Against Black

In Ganieva's State Court Action, she alleged that, beginning in 2008, Black sexually assaulted her for years, and used his immense wealth to intimidate and unlawfully coerce her into silence. Ganieva further alleged in the State Court Action that in October 2015, after these repeated sexual assaults, she signed – under duress – a non-disclosure agreement (the "NDA") with Black. *See Ganieva v. Black*, Index No. 155262/2021, at NYSCEF Doc. No. 155 ("Ganieva Second Amended Complaint" or "Ganieva SAC"). According to Ganieva, Black then used the presumed protection of the NDA to defame her.

The general terms of the one page NDA were that Black would pay Ganieva $100,000 a month, forgive his previous loans to her, and provide other unspecified "consideration" in exchange for her silence about the "allegations and claims" she had against Black. Black Complaint, ¶ 40. Black thereafter deposited $100,000 a month into Ganieva's bank account from late 2015 through March 2021, at which point the payments stopped. Black Complaint, ¶¶ 31-36; Ganieva SAC, ¶¶ 259-260. The payments stopped in March 2021 because, on March 17, 2021, Ganieva broke her silence regarding Black, and posted on Twitter that he had sexually abused her for years in response to public denials he had made. Ganieva SAC, ¶¶ 267-268.

4

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 11 of 30

Ganieva's State Court Action goes on to detail how, on April 8, 2021, Bloomberg published an article containing a statement by Black in which he falsely contended that his "affair" with Ganieva was purely "consensual", and that "any allegation of harassment or any other inappropriate behavior is fabricated." Black also falsely stated to Bloomberg that he supposedly had been "extorted by Ganieva for many years and [that he] made substantial monetary payments to her, based on her threats to go public" about their relationship. Ganieva SAC, ¶¶ 267-272.

On June 1, 2021, as the result of these statements and the years-long sexual abuse she had endured, Ganieva commenced the State Court Action by filing her initial Complaint asserting causes of action against Black for defamation, intentional infliction of emotional distress and under the Gender-Motivated Violence Act ("GMVA"). Black Complaint, ¶ 77. Wigdor, in its capacity as Ganieva's counsel, filed her State Court Action, and she thereafter amended her complaint as of right (the "First Amended Complaint" or "FAC"). *Ganieva v. Black, supra*, at NYSCEF Doc. No. 26.

Then, on September 20, 2021, Ganieva filed a motion for leave to file a second amended Complaint in her State Court Action. This Second Amended Complaint against Black was still based on Black's defamatory statements and sexual abuse, but also added additional factual allegations. *Ganieva v. Black, supra,* at NYSCEF Doc No. 46.

Black opposed Ganieva's motion for leave to file the SAC, arguing that Ganieva's allegations were "frivolous" and "fabricated from whole cloth". *Ganieva v. Black, supra,* at NYSCEF Doc No. 58, p. 6. However, on May 6, 2022, the court in the State Court Action granted Ganieva's motion for leave to file the SAC, rejecting Black's contentions that Ganieva's claims were "insufficient and meritless", and holding that *Ganieva's lawsuit was "not palpably insufficient or devoid of merit". Id*., at NYSCEF Doc No. 152, p. 21 (Exhibit B)(emphasis added).

5

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 12 of 30

Nevertheless, on December 16, 2022, Black filed a motion for sanctions against Wigdor in the State Court Action. This sanctions motion was premised on the identical grounds as this current lawsuit – namely the allegation that Ganieva's first-filed State Court Action lacked merit. *Id*., at NYSCEF Doc No. 226, p.12. (Exhibit "C"). On February 6, 2023, the court in the State Court Action denied Black's motion for sanctions, *reiterated* that Ganieva's claims *did* have merit, and held that Black's "argument that [Ganieva] and Wigdor advanced meritless claims [in the State Court Action] against [Black] is *unavailing*". Id. at NYSCEF Doc. No. 277. (Exhibit D)(emphasis added). This finding, on top of the prior grant of leave to amend, should make a malicious prosecution claim impossible.

Ultimately, while the court in the State Court Action did find that Ganieva's case had merit, it later dismissed it, finding that it did not believe Ganieva signed the NDA under duress, and that the NDA covered all claims arising out of the parties' relationship, no matter how heinous. *Id.* at NYSCEF Doc. No. 292. Ganieva, as a *pro se* plaintiff, has since filed a notice of appeal of the court's decision to dismiss the action. *Id.* at NYSCEF Doc. No. 303.

## III. <u>Black's Federal Action Against Wigdor and Ganieva</u>

In retaliation for Ganieva's State Court Action, Black filed his Federal Action on October 28, 2021 in the United States District Court for the Southern District of New York, and named both Ganieva and Wigdor as Defendants in his initial pleading. In the Federal Action, Black asserted claims against Wigdor for defamation as well as for civil RICO violations under 18 U.S.C. § 1962(c) and (d). *See Black v. Ganieva*, S.D.N.Y. Case No. 1:21-cv-08824-PAE. In sum, Black's claims against Wigdor were predicated on baseless allegations that Wigdor engaged in racketeering activity by simply acting as a lawyer in a case, and defamation, by making public statements regarding Ganieva's claims in the State Court Action. *Id.*, at Docket No. 1.

On June 30, 2022, District Judge Engelmayer dismissed Black's RICO claims – the sole

6

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 13 of 30

basis for federal jurisdiction – with prejudice. *Id.*, at Docket No. 120. (Exhibit E). The District Court noted that Black's RICO claims were "glaringly deficient in fundamental respects" and found it "futile to allow repleading". *Id.*, at Docket No. 120, fn. 24.[4]

## IV. Black's Contrived and Retaliatory Claims Against Wigdor and Ganieva in the Tortious Interference Case

After having his Federal Action dismissed, Black turned to this Court in his endless quest for revenge, and filed the baseless "tortious interference" case against Wigdor. This time Black alleged that Ganieva breached her purported NDA with Black by disclosing his sexual abuse to the press and by filing her Complaints in the State Court Action, and that Wigdor tortiously interfered with the NDA by "encourag[ing]" and "induc[ing]" Ganieva to violate the NDA. *Black v. Ganieva,* Index No. 654108/2022, at NYSCEF Doc. No, 42. (Exhibit "F"). Incredibly, Black was painting *himself* as the victim.

Black alleges four ways in which Wigdor purportedly tortiously interfered with the NDA, the last of which provides the sole basis for the present "malicious prosecution" lawsuit against Wigdor: Namely, that Wigdor supposedly induced Ganieva to breach the NDA *by filing and prosecuting Ganieva's State Court Action as Ganieva's counsel. Id.,* at ¶118, *et seq.* Nothing more.

Wigdor moved to dismiss Black's  retaliatory state court lawsuit against it. That motion to dismiss has been fully submitted to Justice Cohen and is now pending before the Court. *Id.* at NYSCEF Doc. No. 47(Exhibit "G").

---

[4] The Second Circuit proceeded to affirm Judge Engelmayer's decision after Black opted to waste the Second Circuit's time with a baseless appeal. *Black v. Ganieva*, 2023 U.S. App. LEXIS 5087 (2d Cir. 2023).

## V.     Black's Retaliatory Claims Against Wigdor and Ganieva in the Present Case

As noted above, on the very same day that Black moved for leave to file a second amended complaint in his retaliatory "tortious interference" case, he chose to waste this Court's time and resources by filing the present case, under a separate index number, this time alleging "malicious prosecution" for bringing the State Court Action in the first place. This, despite the fact that Black easily could have included the malicious prosecution claim as part of the second amended complaint in his already-pending "tortious interference" case. Against this backdrop, it is obvious that Black fears that his frivolous tortious interference case will be dismissed, so he filed the this case under a separate index number in a vexatious attempt to prolong his revenge tour against counsel for his accuser.

After cutting through 30+ pages of irrelevant and conclusory recrimination against Wigdor regarding how it supposedly litigates its cases on behalf of clients, Black's present lawsuit against Wigdor boils down to a single allegation: Wigdor committed "malicious prosecution" by *filing and prosecuting Ganieva's State Court Action as Ganieva's counsel.*

At bottom, however, it is fundamental that claims brought by counsel in a lawsuit are those of the client, not the lawyer. What Black essentially alleges through his malicious prosecution claim against Wigdor is that the decisions of the trial judge to allow the State Court Action to proceed were wrong, and that he should be able to sue Ganieva's lawyer in a separate action for the mere act of being her counsel of record. However, a lawyer has the professional duty to represent a client vigorously and within the bounds of the law, which is not and cannot be actionable as malicious prosecution or anything else.

As a result, this case should be dismissed, with prejudice.

## ARGUMENT

## I.     Black's Complaint is Subject to Dismissal Under New York's Anti-SLAPP Statute

Generally, in determining a motion to dismiss under CPLR 3211(a)(7), the court must "accept the facts as alleged in the Complaint as true, accord plaintiffs the benefit of every possible

8

favorable inference, and determine only whether the facts as alleged fit into any cognizable legal theory."

However, the plaintiff's burden is far greater on a motion to dismiss, such as the present one, that involves "Strategic Lawsuits Against Public Participation" or "SLAPP" suits. *See* Civil Rights Law § 76-a. These lawsuits are "characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future." *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 28 (1st Dep't 2022).

Pursuant to Rule 3211(g)(1), a motion to dismiss that involves "public petition and participation" *shall* be granted unless the party responding to the motion demonstrates – by "clear and convincing evidence" – that the cause of action has a substantial basis in law. This rule covers claims based upon "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a. In this context, "'[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *see also Aristocrat Plastic Surgery, supra*, at *29 (New York courts apply a broad interpretation to what constitutes a matter of public concern).

Ganieva's State Court Action – the predicate of Black's present action – involved allegations of sexual assault made in a publicly filed lawsuit against the former billionaire CEO of a global private equity firm, who contends that he is "one of our nations' leading benefactors of the arts, education, and cancer research", but who, as noted above, is under active Senate investigation for his unsavory and disturbing association with Epstein. Black Complaint, ¶ 19.

With that in mind, Ganieva's State Court Action undoubtedly satisfies the "public interest" standard as defined by New York courts. *Aristocrat Plastic Surgery, P.C.* at * 31, *citing Coleman v*

*Grand*, 523 F Supp 3d 244, 259 (E.D.N.Y. 2021)(finding that "statements about a relationship between [] litigants that touched on the topics of sexual impropriety were "indisputably an issue of public interest" under the anti-SLAPP law); *see also Balliet v. Kottamasu*, 76 Misc. 3d 906, 921 (Civ. Ct. 2022)(noting that "[a]lleged communications of sexual harassment are absolutely matters of public concern and interest").

Accordingly, the anti-SLAPP statute applies to the present case and, as such, even at the pleading stage, to avoid dismissal under CPLR 3211(g), Black is required to establish by "clear and convincing evidence" that there is a "substantial basis" in fact and law for his malicious prosecution claim. For all the reasons set forth below, Black does not come close to meeting this standard, nor does he even satisfy the more liberal pleading standard under CPLR 3211(a)(7).

Additionally, the anti-SLAPP statute provides for a mandatory award of costs and attorneys' fees to a defendant where a plaintiff – such as Black –"commenced or continued" an action that violates the anti-SLAPP statute. Accordingly, Wigdor may file a claim under N.Y. Civ. Rights Law § 70-a, to recover its costs and fees in having to defend against this SLAPP lawsuit, as well as to seek damages for the harm caused by Black's action filed for the purpose of harassing, intimidating, and punishing Wigdor for representing Ganieva.

## II.    Standards on a Malicious Prosecution Claim

In keeping with the "long standing belief that the court system is open to all without fear of reprisal by the way of retaliatory lawsuits", "[a] nonparty attorney *cannot* be sued for malicious prosecution [as] such a scheme would open the floodgates to lawsuits". *Lee Litig. Group, PLLC v. A&B Rest. Group, LLC*, 2023 N.Y. Misc. LEXIS 1672 at *3 (Sup. Ct. N.Y. Cty. 2023)(emphasis added). This holding is consistent with the New York State Court of Appeals' recent decision in *Gottwald v. Sebert*, 2023 N.Y. LEXIS 913 at * 10 (June 13, 2023), which held that the litigation

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 17 of 30

"privilege recognized by this Court for statements made in connection with judicial proceedings" is "absolute".

However, even assuming that a non-party attorney in an earlier action could be sued for malicious prosecution, the Court of Appeals has made clear that, as a general matter, "malicious prosecution claims are not encouraged". *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 202 (1999); *Howell v. Davis*, 43 N.Y.2d 874 (1978) ("to avoid discouraging free resort to the courts for the resolution of controversies, considerations of public policy have resulted in restricting the instances in which the mere bringing of a lawsuit by one party lays the foundation for the bringing of another lawsuit by the one sued").

Accordingly, whether the Court analyzes this motion under the anti-SLAPP statute or CPLR 3211(a)(7), Black's malicious prosecution claim fails, because it is predicated on nothing more conclusory and unsubstantiated allegations. *See Hornstein v. Wolf*, 109 A.D.2d 129, 133 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 721 (1986)( to set forth a cause of action to recover damages for malicious prosecution, more than conclusory, unsubstantiated allegations are necessary").

## III.    Black Cannot State a Claim Against Wigdor for Malicious Prosecution

"The elements of the tort of malicious prosecution of a civil action are (1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury. [Moreover], [t]he plaintiff, in asserting a cause of action for malicious prosecution, must allege not only that the prior action was commenced for a purpose other than the adjudication of the claim, but that there was an entire lack of probable cause in the prior proceeding. The absence of probable cause must also be patent". *See Kaufman v. Moritt Hock & Hamroff, LLP*, 192 A.D.3d 1092, 1093 (2nd Dept. 2021)(internal quotations and citations omitted).

Here, as previously noted, Black fails to plead a viable malicious prosecution claim against Wigdor in connection with Wigdor's representation of Ganieva in the State Court Action because, as a matter of law, an "attorney *cannot* be sued for malicious prosecution" where – as here – the attorney served as counsel "in the predecessor action [and] not a[s] [a] party".

However, even beyond this fatal – non-curable – defect, Black otherwise fails to adequately plead three *prima facie* elements of any civil malicious prosecution claim. In particular, Black does not allege facts which show that: (i) Wigdor filed the State Court case with "an entire lack" of probable cause; (ii) Wigdor filed the State Court Action against Black out of malice; and (iii) the State Court Action resulted in any "special injury" to Black.

Accordingly, Black's Amended Complaint is fatally defective and should be dismissed with prejudice. *See Cardoza v. City of N.Y.*, 139 A.D.3d 151, 162 (1st Dept. 2016)("Failure to establish any one of [the] elements [of a malicious prosecution claim] defeats the entire claim").

### A.    Black Has Failed to Allege the "Entire Absence" of Probable Cause

Black first fails to meet *his* burden to demonstrate that there was "entire absence of probable cause" for Ganieva's State Court Action. *See Kaufman*, 206 A.D.3d at 808 (to sufficiently allege malicious prosecution, the "plaintiff must allege . . . that there was an entire lack of probable cause in the prior proceeding'"); *Facebook, Inc. v DLA Piper LLP (US)*, 134 A.D.3d 610, 614 (1st Dept. 2015)("in a malicious prosecution action, the burden of proof to establish a want of probable cause is on the plaintiffs").

In fact, Black's claim that Wigdor brought Ganieva's State Court Action without probable cause has already *twice* been *directly rejected* by this Court in the State Court Action itself. In particular, this Court held in the State Court Action – when it permitted Ganieva to file her Second Amended Complaint – that Ganieva's allegations in her complaint were "*not palpably insufficient*

*or devoid of merit*". *Ganieva v. Black, supra,* at NYSCEF Doc No.152, p. 2. Moreover, this Court reiterated that same holding once again when it denied Black's motion for sanctions against Wigdor – a motion based on the same factual premise as the present case[5] – finding that that Black's argument that [Ganieva] and Wigdor advanced meritless claims [in the State Court Action] against [Black] is *unavailing. Id.* at NYSCEF Doc No.277, p. 2.

In this context, this Court has already considered and *rejected* the very allegations that Black makes in this case.

That should have been the end of the matter. *See Fink v. Shawangunk Conservancy, Inc*., 15 A.D.3d 754, 755 (3d Dept. 2005)("prior judicial recognition of potential merit of the underlying case creates a presumption that [the prior case] did not lack probable cause"); *Napoli v James*, 2020 N.Y. Misc. LEXIS 2411 at *4 (Sup. Ct. N.Y. Cty. 2020)(holding that a prior judicial determination that the underlying suit had probable cause – as in the present case – defeats any claim for malicious prosecution"); *Holber Assoc., L.P. v Reckson Operating Partnership, L.P.*, 2017 N.Y. Misc. LEXIS 3812 at * 20-21 (Sup. Ct. N.Y. Cty. 2017)(dismissing malicious prosecution claim, where denial of motion to dismiss in prior action constituted "judicial recognition[] of probable cause in the underlying … action"); *Wilderhomes, LLC v Zautner*, 23 Misc. 3d 1112(A)(Sup. Ct. Albany Cty. 2009)(even though decision denying motion to dismiss underlying action ultimately was reversed, it nonetheless constituted judicial recognition of the existence of probable cause for the action).

Nevertheless, despite the fact that this Court in the State Court Action already twice rejected Black's claim that Wigdor brought the State Court Action without probable cause, Black still

---

[5] *i.e.,* that Wigdor commenced this action to maliciously harass and injure him, "profit financially" by "forc[ing] him to settle" and "promoting Wigdor's interest"). *Id*. at 277, p.3.

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 20 of 30

frivolously persists in pursuing it – this time via a malicious prosecution claim. In doing so, Black relies on three defective allegations:

*First*, Black alleges that Wigdor brought the State Court Action on Ganieva's behalf without probable cause inasmuch as the Court ultimately held that Ganieva released her right to sue Black because she was not under duress when she signed the one-page NDA or, alternatively, even if she did sign under duress, she subsequently ratified the NDA. Black Complaint ¶¶ 47, 62, 93, 106; *Ganieva v. Black, supra,* at NYSCEF Doc No. 292, pp. 10-11.

While it is true that the Court ultimately dismissed Ganieva's State Court Action, that dismissal does not equate to the State Court Action having "an entire absence" of "probable cause". *Web Mgmt. LLC v. Sphere Drake Ins. Ltd.*, 754 N.Y.S.2d 636 (1st Dept. 2003) (dismissal of prior action does not imply lack of probable cause); *see also Rubin v. Lutfy*, 25 Misc. 3d 1242(A) (Sup. Ct. N.Y. Cty. 2009)("Even where the prior action out of which the malicious prosecution arose was dismissed, that fact alone is not sufficient to infer that defendants did not have probable cause to commence the action").

In this context, Wigdor advanced a viable argument that the NDA was procured under duress and therefore did not preclude Ganieva from suing Black for defamation when he publicly said she had extorted him. *Ganieva v. Black, supra,* at NYSCEF Doc No.182, pp.15-19. While the Court ultimately disagreed with this argument, that does not imply that Wigdor brought the action with an "entire absence" of probable cause. Rather, it merely reflects the obvious fact that in litigation, one side wins.  It does not mean that because the court agrees more with one side than the other, the case should never have been brought. A court or a defendant's disagreement with another lawyer's argument does not give the defendant license – in this case Black – to sue the lawyer on the other side.

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 21 of 30

Were this the case, it would throw the entire legal profession into disarray, because no lawyer could zealously represent a client without constant fear of liability if the client lost. Indeed, even in cases where a court found that an attorney pursued *meritless* litigation on behalf of a client, courts have *still* prohibited defendants from suing the attorney who brought the case. *See Fischer v. Chevra Machziket H'Shechuna, Inc.*, 295 A.D.2d 227, 228 (1st Dep't 2002)(while permitting a malicious prosecution claim to proceed against a *party* to the underlying case, granting summary judgment to the attorneys who represented the party, finding that they did not overstep the "bounds of zealous representation" – *even though* the underlying litigation was found to be "meritless").

Against this backdrop, any claim against Wigdor for malicious prosecution stemming from that case is hopelessly futile.[6]

*Second*, Black alleges that "documentary evidence", in the form of various cherry-picked text messages and voice recordings of conversations between Black and Ganieva, supposedly is proof positive that Ganieva's allegations in the State Court Action were false, and that Wigdor – who eventually became aware of these messages and recordings – therefore must have known that Ganieva's allegations were false. Black Complaint at ¶¶ 3,4, 6, 78, 80, 82, 85, 89. However, this conclusion is based on Black's personal opinion about how much weight to afford this evidence. An attorney representing a client is perfectly entitled to come to a different conclusion about the weight and credibility of evidence than the conclusion reached by an adversary.

---

[6] In his amended Complaint, Black makes much of the fact that the Appellate Division overturned the Court's decision in the State Court Action granting Ganieva leave to file an amended complaint. Black Complaint ¶¶ 4, 13, 15, 75, 87, 92. Putting aside the fact that the Appellate Division was not commenting on whether or not the State Court Action as a whole had merit – rather on just whether some proposed new allegations had merit – the fact is that the Supreme Court reached the opposite conclusion, underscoring that the State Court Action did not have an "entire absence" of probable cause.

15

Were it otherwise – and an attorney could be subject to a malicious prosecution suit in any case where his or her client ultimately loses – it would chill the ability of the lawyer to ever take a case that is not a *sure thing*, without even the benefit of any discovery. That is just not how our system works.

*Third*, Black alleges that because Wigdor did not offer to settle Ganieva's case before filing the State Court Action, and because Wigdor also did not enter into a protective order in the State Court Action, that somehow supports the notion that Wigdor brought the lawsuit without probable cause. Black Complaint ¶¶ 14, 75, 76. First, consider if Wigdor had threatened first. We would be talking now about why that demand was extortionate. In fact, by filing first, it shows the belief that Wigdor had in the merits of its client's position.

Black's subjective lay opinion about Wigdor's litigation decisions – which, as with any other law firm, varies from case to case based on an innumerable number of factors – falls far short of establishing that Wigdor brought the State Court Action on behalf of Ganieva without probable cause. At bottom, Black fails to meet his burden of proof to establish that Wigdor brought the State Court Action with an "entire absence" of probable cause. This is especially the case considering that the Court in the State Court Action already held – twice – that Ganieva's State Court Action had merit.

## B.  Black Fails to Adequately Plead Malice

In order to state a claim for malicious prosecution, a plaintiff must also set forth a "factual basis" that the underlying action was brought with "actual malice" – defined as "some deliberate act punctuated with awareness of 'conscious falsity'". *See Santoro v. Town of Smithtown*, 40 A.D.3d 736, 738 (2nd Dept 2007); *see also Horstein, supra* at 133. Black fails to set forth this "factual basis" and instead relies on five futile allegations that are conclusory, contradictory, self-defeating, legally

16

defective, or otherwise simply reflect that Wigdor acted in a manifestly proper way as a zealous advocate for its client.

*First*, Black alleges that Wigdor acted with actual malice because Wigdor "knew" that Ganieva's claims were prohibited by the NDA. Black Complaint ¶¶ 47, 62, 93, 106. For the same reasons that this allegation fails to establish that Wigdor brough the State Court Action with an "entire absence" of probable cause, this allegation fails to establish that Wigdor acted with malice.

In particular, Wigdor, acting as a zealous advocate on behalf of its client, advanced multiple plausible arguments for why the NDA did not preclude the filing of the lawsuit; such as that Ganieva signed the NDA under duress, and that the NDA did not bar future claims predicated on facts occurring after the NDA was executed, such as for defamation. *Ganieva v. Black, supra,* at NYSCEF Doc No.182, pp.15-19. While the Court in the State Court Action decided otherwise, that does not mean that Wigdor brought the action with malice. *Lutfy, supra* ("an attorney's zealous advocacy on behalf of his client is not a sufficient basis for a finding of malice").

This is especially true in the present case where, as noted above, the Court in the State Court Action already held – *twice* – that Ganieva's actions had merit, and thus there is no reason to infer malice.

*Second*, Black alleges that Wigdor acted with malice because it filed Ganieva's State Court Action in order to extract a settlement. Black Complaint ¶¶ 1, 94. Leaving aside his conclusory recrimination, Black does not provide any basis for this allegation. In any case, if representing a client on a contingency fee arrangement could so easily subject an attorney to a malicious prosecution claim, then any attorney who represents clients on a contingency fee arrangement would consistently need to worry about losing, lest they be liable for malicious prosecution claims based solely on the fact that their arguments did not carry the day.  Here, the wholly conclusory allegations

in the complaint are to the effect Wigdor's motivation in filing the lawsuits was to make money via a potential settlement from the suit. That is the point of contingency fee litigation, and the exact sort of fear that the court in *Davis*, as a matter of public policy, wanted to avoid.

*Third*, Black alleges that Wigdor acted with malice because it supposedly wanted to "harm", "humiliate", and "harass" Black. Black Complaint ¶¶ 17, 123. However, Black does not provide any support for this claim, and indeed, there is not a single allegation in Black's complaint that Wigdor had any affiliation with Black before filing the lawsuit that would explain why Wigdor would have any desire to "harm", "humiliate", or "harass" him. Though Black is eager to point fingers at others, he only has himself to blame for his diminished reputation.

*Fourth*, Black alleges that Wigdor acted with malice because it filed additional lawsuits against Black alleging sexual assaults on behalf of Cheri Pierson and a Jane Doe. Black Complaint ¶¶ 2, 113. This allegation does not establish that Wigdor brought the State Court Action with malice. Indeed, these two cases are being actively litigated and have not yet been adjudicated, let alone in Black's favor. *See Cheri Pierson v. Leon Black et al*, Index No. 952002/2022 and *Doe v. Black*, S.D.N.Y. Case No. 1:23-cv-06418. Simply put, this allegation signifies nothing, other than a defendant who unsurprisingly believes that he was wrongfully sued.

*Fifth*, Black argues that comments by Jeanne Christensen – a Wigdor partner – to a news publication called Air Mail reflect that Wigdor acted with malice. Black Complaint ¶¶113. For one, these comments are taken out of context and not even correctly quoted. For instance, Christensen did not say that Black "belongs behind bars", as Black fancifully suggests. Rather, in response to a question about what prompted a Jane Doe to come forward now with her allegations against Black, Ms. Christensen is quoted as saying that "[h]e's not behind bars". *See* https://airmail.news/issues/2023-8-5/the-158-million-question.

However, even putting aside the incorrect and out-of-context quotes, these comments by a Wigdor attorney do not establish that Wigdor acted with malice. It is simply a case of an attorney zealously representing her client outside the courtroom, and commenting on allegations in a publicly-filed lawsuit. In this context, there is nothing improper about a lawyer representing a sexual assault victim referring to the client's alleged attacker as "violent" or someone worthy "of fear", and it is certainly no indication that the attorney's law firm filed the suit with malice.

Simply put, Black's allegations that Wigdor was motivated to bring the State Court Action out of malice are conclusory and speculative, and New York courts routinely dismiss malicious prosecution cases premised on conclusory and speculative allegations of malice. *See Hornstein*, 109 A.D.2d at 133, *supra*; *Alexander v. Scott*, 286 A.D.2d 692, 693 (2nd Dept. 2001); ("unsubstantiated and conclusory allegations of malice are insufficient to sustain a claim for malicious prosecution").

Moreover, not only are Black's allegations that Wigdor acted with malice conclusory but they are also contradictory and self-defeating. For instance, while on the one hand Black alleges that Wigdor acted out some unexplained desire to "humiliate" and "harass" (Black Complaint ¶17), Black also alleges that Wigdor acted out of its own self-interest, whether to obtain money through settlement, or "for its own self-promotion". Black Complaint ¶¶55, 94. By trying to attribute two totally different – but equally baseless – motives to Wigdor for bringing the State Court Action, Black is acknowledging he has no idea of Wigdor's actual motivation in bringing the lawsuit.

Furthermore, Black's allegation that Wigdor brought the State Court Action out of its own self-interest to make money or "for its own self-promotion" *negates* any allegation of malice. *See Howell v. Davis*, 58 A.D.2d 852, *aff'd*, 43 N.Y.2d 874 (finding that "self-interest" "negat[es] malice"); *Gross v. Newburger, Loeb & Co.*, 426 N.Y.S.2d 667 (Sup. Ct. Nassau Cty. 1980)("motives such as self-interest, profit, or business advantage negate the implication of malice").

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 26 of 30

Therefore, Black does not come close to alleging facts necessary to support his claim that Wigdor brought the State Court Action out of "malice".

### C.    Black Does Not Plead the Requisite Special Injury

Also fatal to Black's claim against Wigdor for malicious prosecution is his failure to sufficiently plead that Wigdor caused Black any "special injury". *Dudick v. Gulyas*, 277 A.D.2d 686, 688 (3rd Dept. 2000)("proof of a special injury is a necessary element of a malicious prosecution claim"). To satisfy the "special injury" element of a malicious prosecution claim, a plaintiff must show "a highly substantial and identifiable interference with person, property, or business and must entail some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit". *Id.*

Black alleges three general categories of injuries in his complaint that supposedly resulted from Wigdor filing the State Court Action: (i) he was forced to step down from Apollo – Black Complaint ¶¶17, 70, 83; (ii) he suffered injury to his reputation and business standing, as well as "public abuse" resulting in "mental suffering and anguish" – Black Complaint ¶¶116; and (iii) he had to spend time defending the State Court Action which also resulted in "mental suffering and anguish" – Black Complaint ¶ 117.

For the below reasons, none of these alleged injuries establishes that Wigdor caused Black any "special injury".

### 1.    Wigdor's Filing of the State Court Action Did Not Cause Black to Step Down from Apollo or Unidentified Philanthropic Organizations

Black stepped down from Apollo on March 21, 2021. Black Complaint ¶70. Wigdor did not file the State Court Action until June 21, 2021 – three months *later*. Thus, whether or not Black stepping down from Apollo even constitutes "special injury", Wigdor's filing of the State Court Action did not cause it, nor could it have. *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d

267 (E.D.N.Y. 2014)(applying New York law, and holding that "[t]o meet the special injury requirement of a malicious prosecution claim, the injury must have resulted *because of the underlying litigation*")(emphasis added).

It is also noteworthy that, in Black's resignation letter to Apollo on March 21, 2021, he did not even mention Wigdor or Ganieva. Rather he attributed his resignation to the public attention surrounding his relationship with Epstein. *See* (www.sec.gov/Archives/edgar/data/1411494/000119312521088432/d114836dex992.htm)("the relentless public attention and media scrutiny concerning my relationship with Jeffrey Epstein…have taken a toll on my health and have caused me to wish to take some time away from the public spotlight that comes with my daily involvement with this great public company")(Exhibit "H") .

Moreover, Black vaguely alleges that Wigdor's conduct led to him stepping down from "leadership positions at numerous philanthropic organizations". Black Complaint ¶116. As a threshold matter, fatal to this allegation is that Black does not even identify the "philanthropic organizations" to which he refers. *Gulyas, supra* (to show special injury plaintiff must plead "*identifiabl*e interference")(emphasis added); *Microflo Ltd, supra* at *295 (plaintiff must identify the "specific entity" from which there was a loss). In any case, it is not hard to imagine that given Epstein's reputation for human trafficking on behalf of his rich friends, Black's admitted association with him would make most organizations uncomfortable to have him on their boards, or in any other leadership position.

Moreover, to the extent that the "philanthropic organization" that Black is referring to is the Museum of Modern Art – Black Complaint ¶19 – Black stepped down from his position there in March 2021. *See* https://www.artnews.com/art-news/news/leon-black-moma-board-chairman-

steps-down-1234588009/. (Exhibit "I") This was three months *before* Wigdor filed the State Court Action. Wigdor's filing of the State Court Action therefore *could not* have been the cause of Black's resignation.

More generally, and in any event, the allegation that Black stepped down from some unidentified philanthropic organizations does not constitute "special injury". *Microflo Ltd, supra* at *293 ("Courts have recognized special injuries in the form of arrests, loss of business, suspension without pay, and provisional remedies such as an attachment of bank accounts or an injunction").

### 2. Black's Allegations of Injury to His Reputation and Business Standing are Insufficient to Satisfy the Special Injury Requirement of a Malicious Prosecution Claim

The only specified harm to "reputation" and "business standing" – and any resulting "mental suffering and anguish" – that Black pleads with any specificity in his amended complaint is having to step down from Apollo and some unidentified "philanthropic organizations". However, as established above, Wigdor's filing of the State Court Action is not what caused Black to step down from Apollo or these philanthropic organizations. To the contrary, Black admits it was his connection to Epstein. And, it is hard to imagine how – given the Epstein taint – Black could ever identify any special and specific damages he suffered as the result of a case Wigdor subsequently filed on behalf of Ganieva.

Otherwise, Black's allegations of harm to his "reputation" and "business standing", as well as his allegations of some unspecified "public abuse"– resulting from the filing of the State Court Action – are vague and unsupported and thus do not amount to cognizable special injury. *Campion Funeral Home v. State*, 166 A.D.2d 32, 37 (3rd Dept. 1991)("Injury to reputation… fails to satisfy the injury to or interference with person or property requirement" of an allegation of special injury); *Engel*, supra (vague allegations of reputational loss… are not sufficient).

Likewise, neither does Black's unsubstantiated allegation that he "sustain[ed] business losses" amount to special injury. Black Complaint ¶118. *Microflo Ltd, supra* at *293 (to state a claim for special injury under a malicious prosecution claim, plaintiff must identify the "specific business lost").

### 3. Defending Against the State Court Action Does Not Constitute Special Injury

Black also alleges that he suffered "mental anguish" by having to defend against the State Court Action. This does not constitute "special injury". *Engel, supra* at 205-07 ("holding that special injury is "some concrete harm that is considerably more cumbersome than the physical psychological or financial demands of defending a lawsuit"); *McCaul v. Ardsley Union Free Sch. Dist.,* 514 F. App'x 1 (2d Cir. 2013) (finding that "distress and anxiety" were insufficient to establish special injury in a malicious prosecution case).

## <u>CONCLUSION</u>

For the reasons set forth herein, Wigdor respectfully requests that Black's claim against it for malicious prosecution be dismissed with prejudice, that the Court award Wigdor its costs and attorney's fees under the anti-SLAPP statute for having to defending against Black's lawsuit, together with such other and further relief as the Court deems proper.

Dated: Uniondale, New York
       October 16, 2023

Respectfully submitted,
RIVKIN RADLER LLP
Attorneys for Wigdor LLP
/s/ <u>Max Gershenoff</u>    /s/ <u>Janice DiGennaro</u>
Max Gershenoff        Janice J. DiGennaro
Yonatan Bernstein
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

23

Case 1:23-cv-06418-JGLC    Document 61-9    Filed 10/18/23    Page 30 of 30

## WORD COUNT CERTIFICATION

I, Max Gershenoff, an attorney duly admitted to practice law before the courts of the State of New York, hereby certifies that this document, Wigdor's Memorandum of Law in Support of its Motion to Dismiss, complies with the word count limit set forth in 22 NYCRR 202.8-b, because it contains 6,992 words, excluding the parts of the memorandum exempted by the rule. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

DATED:        Uniondale, New York
              October 16, 2023


                              RIVKIN RADLER LLP
                              *Attorneys for Defendant Wigdor LLP*


                    By:     */s/Max Gershenoff*_____
                              Max Gershenoff
                              Janice DiGennaro
                              Yonatan Bernstein
                              926 RXR Plaza
                              Uniondale, New York 11556-0926
                              (516) 357-3000

24