# EXHIBIT A

**EG** | **ESTRICH GOLDIN**
www.estrichgoldin.com

August 25, 2023

**By Email and Federal Express**

Jeanne Christensen
Wigdor LLP
85 Fifth Avenue
New York, NY 10003

*Jane Doe* v. *Leon Black*,
No. 23-cv-06418 (S.D.N.Y.)

Dear Jeanne:

      As you know, we represent Leon Black in the above-referenced matter. We have reviewed the complaint that you filed on behalf of a certain Jane Doe (the "Plaintiff") on July 25, 2023, in the above-referenced case, and are writing to advise you that the allegations in the complaint and your conduct in filing it violate Rule 11(b)(3) of the Federal Rules of Civil Procedure, for the reasons described below. Accordingly, we are writing to demand that you and your client promptly withdraw those claims with prejudice within 21 days of the date of this letter. If you do not do so, we reserve the right, without further notice to you, to file the accompanying Notice of Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure. The filing of the motion will be accompanied by a separate memorandum of law.

      Rule 11(b)(3) provides that, "[b]y presenting to the court a pleading[,] . . . an attorney . . . certifies that to the best of the person's knowledge, information, belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Thus, an attorney violates Rule 11 by filing a pleading, motion, or other paper "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (internal quotations omitted); *see also Steele v. Polymer Rsch. Corp. of Am.*, 1987 WL 12819, at *2 (S.D.N.Y. June 18, 1987) ("Rule 11 . . . imposes upon attorneys an affirmative duty of prefiling inquiry into the facts and the law."). Furthermore, Rule 11(c) requires the imposition of sanctions for violations of Rule 11(b): "[s]anctions ***shall be imposed*** against an attorney and/or his client" for filing a pleading in violation of Rule 11. *In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Pracs. & Prod. Liab. Litig.*, 268 F.R.D. 509, 517 (S.D.N.Y. 2010) (emphasis added; internal quotations omitted).

      It is clear that you did not come close to satisfying your obligations under Rule 11(b)(3) before filing the complaint in this action. To the contrary, your conduct plainly violates that rule and the case law interpreting it, because the essential allegations in the complaint you filed are total fiction, and even a modicum of investigation on your part would have revealed that the key factual assertions in the complaint are false. Your obvious failure to have undertaken any such investigation, let alone a "reasonable" one, directly contravenes Rule 11, pursuant to which an attorney has an affirmative duty to make a "reasonable inquiry into the facts of the case . . . before filing [it]." *Geler v. Nat'l Westminster Bank USA*, 145 F.R.D. 25, 27 (S.D.N.Y. 1992). "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of ***objective unreasonableness*** on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (emphasis added). Moreover, an attorney may not rely solely on a client's assurances regarding factual allegations where a reasonable inquiry would reveal such assurances to be false. *See Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001); *accord. AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *11 (S.D.N.Y. Sept. 26, 2019) ("[A]n attorney

may not simply take her client's word on faith where that word would be easily proved (or disproved) through a reasonable investigation or where red flags should have (and would have) alerted counsel to problems."), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).

Given the extent to which the complaint you filed is demonstrably and objectively false, as demonstrated below, we can only conclude that either you conducted no investigation prior to filing, or any investigation you purported to have conduct was objectively unreasonable in the extreme. Either scenario easily meets the standard for sanctions. Worse, we have reason to believe that you were expressly warned prior to filing the complaint that your client's allegations regarding Jeffrey Epstein and Leon Black were false, uncorroborated, and likely fabricated.

The complaint contains no corroboration whatsoever of the supposed events it purports to describe. Had you conducted any investigation at all, much less a reasonable one, you would have discovered not only the absence of any such corroboration, but worse, substantial evidence flatly *contradicting* the outrageously prejudicial allegations in the complaint. But rather than fulfilling your obligations under Rule 11, it is clear that you blindly relied on your client and failed to make a reasonable inquiry, displaying either deliberate or reckless indifference to the truth of her allegations. Indeed, even our initial investigation has made it blatantly clear that there is no evidence whatsoever corroborating Plaintiff's allegations that she ever met Jeffrey Epstein (much less Leon Black) or was trafficked by him. To the contrary, numerous individuals with knowledge of the time period in question, including Plaintiff's parents, sister, and others—including individuals specifically identified in the complaint—have emphatically and unequivocally stated that key allegations in the complaint are false, and that Plaintiff's claims are untrue.

### The Allegations Concerning Trafficking Of Plaintiff To Jeffrey Epstein Are False

Plaintiff's entire complaint revolves around the central allegation that she was trafficked to and/or by Jeffrey Epstein, allegedly traveling to his residences in the U.S. Virgin Islands or Palm Beach "most weekends" while in her junior and senior years of high school, missing many Fridays and Mondays from school. (Compl. ¶ 44.) This conduct allegedly occurred shortly after Plaintiff's 16th birthday. (*Id.* ¶ 45.) Those core allegations are demonstrably false. Plaintiff's mother and sister—in recorded, voluntary interviews—repeatedly confirmed that Plaintiff lived at home throughout her high school years, including during her junior and senior years of high school. (Melendez Decl. ¶ 14.) Indeed, Plaintiff drove ▮▮▮▮ who was ▮▮▮▮, to school nearly every day of Plaintiff's ▮▮▮▮. And both Plaintiff's mother and sister confirmed that Plaintiff only missed significant time from school when Plaintiff, regrettably, ▮▮▮▮.

Had you conducted any investigation at all, you would have learned that Plaintiff has a ▮▮▮▮ stretching back long before any of the events alleged in the complaint occurred. (*Id.* ¶ 14.) In addition, you would have learned that Plaintiff's mother, sister, cousin, and others close to her believe that Plaintiff frequently creates realities for herself that are not grounded in fact, and then believes them—particularly where they gain her attention. (*Id.*) For example, Plaintiff first claimed to have Mosaic Down syndrome in her thirties, and only after a family member posted on social media about her child having Down syndrome and receiving positive attention as a result. (*Id.*) As a second example, Plaintiff's family is skeptical that Plaintiff suffers from autism and her sister, who works with autistic children, stated that Plaintiff in her twenties began intentionally displaying symptoms and characteristic behaviors of autism for the first time (such as avoiding looking people in the eyes) in order to present herself as a person with autism. (*Id.*) Indeed, Plaintiff's family states that she never displayed any symptoms of either Mosaic Down syndrome or autism, nor was she diagnosed with either condition, during her childhood. (*Id.*) As yet another example of such manufactured realities, within just the past few years, Plaintiff—without ever having mentioned this earlier in her life—suddenly began posting online about allegedly being trafficked by Mr. Epstein, and then, when asked by her family members to remove the posts because they were false, promptly took down the posts of her own volition. (*Id.*)

In light of all this, it is not surprising that Plaintiff does not allege, even obliquely, that Plaintiff contemporaneously told a soul about anything relating to Mr. Epstein, Ms. Groff, Ms. Kellen, or anyone else referred to in her complaint, including, specifically, Mr. Black. The complaint does not identify, or even obliquely advert to the existence of, any friends, family, acquaintances, or professionals who learned of Plaintiff's trauma many years ago. Nor, similarly, does the complaint point to a shred of documentary proof or even any contemporaneous memorialization of Plaintiff's professed recollection. We, of course, understand that in many circumstances victims of sexual assault do not report their experiences in real time, or even close

in time to the event at issue, and we similarly do not doubt that victims often do not otherwise document what happened to them. Nonetheless, the apparent absence of any record over the last 20 plus years remotely substantiating Plaintiff's claims—█████████████████████████████ ████████████████████████████████████████—is a significant data point in evaluating her, and therefore your, bona fides.

The timing of Plaintiff's complaint likewise belies the notion that there is any truth to Plaintiff's allegations. Investigations concerning Mr. Epstein have been ongoing for many years, led by numerous criminal, civil, and other regulatory authorities, not to mention civil litigants and the innumerable law firms representing them. No one has ever identified Plaintiff as having had any connection to Mr. Epstein. Significant materials concerning Mr. Epstein have been made public through judicial proceedings, and multiple databases, and not a single one contains any direct or indirect reference to Plaintiff.

Not only that, but references to specific individuals in Plaintiff's complaint, transparently included to provide some semblance of support for Plaintiff's claims, are pure fiction. Plaintiff refers, for instance, to interactions with Leslie Groff, Mr. Epstein's longtime assistant. But Ms. Groff's representatives have informed us that she disclaims ever interacting with Plaintiff or, indeed, ever hearing anything about her. The same is true of Sarah Kellen, another individual affiliated with Mr. Epstein and identified by name in the complaint. Ms. Kellen's representatives have likewise informed us that Ms. Kellen has never heard of Plaintiff, and in fact believes that her allegations are outlandish. Given the frequency and nature of the trafficking alleged in the complaint, it is implausible in the extreme that neither of these persons would have any knowledge of Plaintiff if her allegations were true. It is also highly telling that the "details" pleaded concerning Mr. Epstein's townhouse, Ms. Maxwell's conduct, and other features of the alleged trafficking all reflect information easily ascertained from public sources. By way of example, the allegations about the third floor of Mr. Epstein's townhouse—which you offered as supposed evidence of Plaintiff's veracity—are all readily found in multiple mainstream media sources. See, e.g., https://nypost.com/2021/12/07/take-a-look-inside-jeffrey-epsteins-creepy-manhattan-lair/.

All of these points—individually or in aggregate—demonstrate the manifest unreasonableness of your pre-filing investigation and require your immediate withdrawal of the pleading. And if this case goes forward, we will develop additional dispositive evidence that the allegations in the complaint were invented. We expect that information uncovered from Mr. Epstein's estate—consistent with the documents released publicly to date—will demonstrate that Plaintiff never had any connection to Mr. Epstein. You should know, given the allegations that you have leveled, that there are extensive records of Mr. Epstein's horrific misconduct, including flight manifests, visitor logs, and the like. We have every expectation that this evidence will further put the lie to Plaintiff's invented claims. And we very much doubt that you ever bothered to review, or even attempted to review, any of those materials—or ever attempted to contract representatives for Ms. Groff or Ms. Kellen—in an effort to pressure-test what you claim your client has told you.

On this record, the only plausible conclusion is that Plaintiff has concocted—for whatever reason—the assertion that she was trafficked to Jeffrey Epstein and assaulted by Leon Black. This claim is unsupported by any objective evidence, any contemporaneous (or other) corroboration, and is flatly refuted by both her family members who knew and lived with her at the time and the individuals she supposedly encountered while being trafficked.

**The Allegations Concerning Trafficking To "Elizabeth" Are False**

Another critical element of the complaint is the allegation that Plaintiff participated in a cheerleading program for 8–12-year-olds, when an individual referred to as "Elizabeth" groomed her for Mr. Epstein. In fact, as photographic evidence and the statements of Plaintiff's family members and "Elizabeth" show, the cheerleading program was for high-school students, and the assertion that Plaintiff was able to participate because she could fit into a child-sized uniform is demonstrably untrue. ████ Decl. ¶¶ 4-5, 15; Melendez Decl. ¶ 12.) And those fabrications are just the tip of the iceberg.

"Elizabeth," who as you know is in fact named ████████████████████████ has emphatically refuted Plaintiff's allegations under oath. Like Plaintiff's family, Ms. ████ confirmed that Plaintiff lived at her parental home throughout high school and did not live outside the home prior to college. ████ Decl. ¶¶ 7, 12, 15.) Ms. ████ also confirmed—consistent with statements made by Plaintiff's family—that the only trip Plaintiff ever took with her was to the Atlantis Resort in the Bahamas—a trip that only occurred after Plaintiff graduated

from high school. (*Id.* ¶ 8.) Ms. ▆ also confirmed—again under oath—that Ms. ▆ son, as well as a female friend of hers, also came on the trip. (*Id.*) Like Plaintiff's family, Ms. ▆ is entirely unaware of Plaintiff ever traveling to Florida, the U.S. Virgin Islands, or New York on weekends in high school. (*Id.* ¶ 15.)

Although the complaint alleges that Plaintiff lived with "Elizabeth" during high school, Plaintiff in fact only lived with Ms. ▆ for a few months when she started attending ▆ because Ms. ▆ lived closer to the school than Plaintiff's parents did. (*Id.* ¶¶ 9, 11.) Plaintiff never informed Ms. ▆ of any alleged sexual abuse, either during that period or previously. (*Id.* ¶ 17.) Nor did she inform Ms. ▆, contemporaneously, of any diagnosis of autism or Mosaic Down syndrome, and Ms. ▆ did not observe any evidence of such conditions during Plaintiff's high school or college years. (*Id.* ¶ 16.) And, under oath, Ms. ▆ stated emphatically that none of the alleged sexual misconduct alleged in the complaint involving Ms. ▆ ever occurred. (*Id.* ¶¶ 15, 20.)

It is particularly telling that an investigator claiming to represent Plaintiff first contacted Ms. ▆—whose identity was plainly known to you—only <u>after</u> you filed your complaint. (*Id.* ¶¶ 18-19.) And even then, when that investigator spoke with Ms. ▆, he did not ask her about any of the substantive allegations in the complaint that you had already filed—presumably, because you did not want to learn contrary information. (*Id.*)

\*     \*     \*

As we stated at the outset, Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts alleged in a pleading. An attorney may not rely solely on a client's assurances and avoid her obligation to investigate, and certainly may not take deliberate steps to avoid learning facts that contradict her client's claims. *See, e.g., Saltz*, 129 F. Supp. 2d at 646; *AJ Energy LLC*, 2019 WL 4688629, at \*11.

But that is precisely what you did here. You did not conduct any due diligence. Your investigation—to the extent you conducted one at all—was objectively unreasonable. And you signed your name to a complaint that should never have been filed. Your conduct clearly violates Rule 11. Courts in the Second Circuit routinely impose sanctions where, as here, the allegations in a pleading are utterly lacking in evidentiary support and are in fact squarely contradicted by objective evidence. *See, e.g., Mason Agency Ltd. v. Eastwind Hellas SA*, 2009 WL 3169567, at \*2 (S.D.N.Y. Sept. 29, 2009) ("Rule 11(c) of the Federal Rules of Civil Procedure permits the court . . . to sanction an attorney, law firm, or party if the court determines . . . that the attorney, law firm, or party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court.") (internal quotations omitted); *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (court may impose sanctions if a particular allegation is utterly lacking in support); *Chien v. Skystar Bio Pharm. Co.*, 256 F.R.D. 67, 74 (D. Conn. 2009) (Rule 11(b)(3) violated where complaint contained material falsehoods), *aff'd*, 378 F. App'x 109 (2d Cir. 2010); *AJ Energy LLC*, 2019 WL 4688629, at \*11 (holding that sanctions were warranted where attorneys were indifferent to "red flags galore" regarding the improbability of factual allegations central to their client's claims).

This letter and the accompanying Notice of Motion will serve as notice to you that if the complaint is not dismissed voluntarily with prejudice within 21 days of the date of this letter, we reserve the right to move anytime thereafter for sanctions against Plaintiff, you, and your law firm pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure. *See Star Mark Mgmt. Inc. v. Koon Chun Hing Kee Soy & Sauce Factory Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012).

Sincerely,

*Susan Estrich*

Susan Estrich

cc:     Douglas Wigdor

<u>Enclosures</u>