**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

              Plaintiff,

      v.

LEON BLACK,

           Defendant.

Case No. 1:23-cv-06418

**DEFENDANT LEON BLACK'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION FOR SANCTIONS
<u>AGAINST WIGDOR LLP AND JEANNE CHRISTENSEN</u>**

Defendant Leon Black respectfully submits this reply memorandum of law in further support of his motion for sanctions against Plaintiff's counsel, Wigdor LLP ("Wigdor"),[1] and Jeanne Christensen, ECF Doc. No. 49.

## PRELIMINARY STATEMENT

This is as black-and-white a case warranting the imposition of Rule 11 sanctions as there can be. As Defendant's moving papers conclusively showed, the Wigdor law firm and its lead lawyer in this matter, Ms. Christensen, have engaged in flagrant and egregious litigation misconduct. The record before this Court on that point is robust and not seriously disputed. Longstanding law and professional responsibility obligations absolutely *required* Wigdor and Christensen to conduct an adequate investigation concerning their client's purported claims and, when they put their signatures on their client's complaint, they certified to this Court that they had in fact done just that. Their professed certification, however, was a total sham.

To be clear, Wigdor and Christensen did no honest diligence into Plaintiff's claims, as Defendant's post-complaint investigation has proven, and even now they cannot point to any work they did to assure themselves of their client's *bona fides*. This is not a case of simple mistake or oversight on their part. To the contrary, Defendant's preliminary investigation has already adduced mountains of evidence completely discrediting the entirety of Plaintiff's made-up story, and at bare minimum has cast a serious enough pall over her narrative so as to compel Wigdor and Christensen to tell this Court in no uncertain terms what inquiry (if any) they made as well as to rebut—or at least attempt to rebut—the definitive evidentiary showing Defendant has made. They have not bothered to do either, instead studiously avoiding saying they made any inquiry at all to validate Plaintiff's allegations.

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in Defendant's Memorandum of Law in Support of His Motion for Sanctions, ECF Doc. Nos. 51, 54 ("Mem.").

In fact—and in yet another instance of independently sanctionable behavior—Wigdor and Christensen are utterly unrepentant, apparently content to file, and now to continue to prosecute, specious claims alleging a grievous and brutal sexual assault against an allegedly incapacitated victim—a shocking accusation of such consequence that the law, not surprisingly, mandates heightened scrutiny by the lawyers pursuing it before they proceeded with a public lawsuit.

Unable or unwilling to either meaningfully answer the results of Defendant's investigation or identify for the Court what specific steps were taken before the complaint was filed—in effect, an admission of guilt—Wigdor and Christensen attempt to deflect by advancing a grab bag of technical arguments that are as irrelevant as they are substantively misguided. They protest, for instance, that an award of sanctions here would be premature at this point, misinterpret the Federal Rules, disregard governing precedents and the Advisory Committees notes to Rule 11, and desperately, invoke New York's Anti-SLAPP statute where it clearly does not apply. None of these contentions authorize Wigdor and Christensen to manufacture false and reputationally ruinous claims predicated on decades-old purported events lacking a scintilla of contemporaneous confirmation, and to do so *exclusively* in blind reliance on a client with an established history of mendacity and invention and in the face of reams of red flags and direct contradictions.

Sanctions are appropriate and warranted given these extreme and unusual circumstances.

## ARGUMENT

## I.   WIGDOR HAS FAILED TO PROVIDE INFORMATION ABOUT WHATEVER INQUIRY IT MADE, INCLUDING WHETHER IT MADE ANY INQUIRY.

The law is crystal-clear that attorneys may rely on their client's representations *only* when they are "*objectively reasonable*." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 480 (S.D.N.Y. 2003) (emphasis added); *see also Craig v. City of N.Y.*, 2022 WL 2238451, at *14 (E.D.N.Y. June 22, 2022) ("[I]f all the attorney has is [her] client's assurance that facts exist or do not exist, when a

reasonable inquiry would reveal otherwise, [she] has not satisfied [her] Rule 11 obligation.")
(quotations omitted). Wigdor has come nowhere close to meeting the objective reasonableness
standard here. To the contrary, any reasonable observer—and certainly licensed lawyers with
decades of specialized experience—would have sensed real trouble here and seriously scrutinized
Plaintiff's apparent description of the events at issue before going ahead with litigation.

Plaintiff's Complaint makes allegations of horrific crimes that happened more than twenty
years ago against the now very public backdrop of Jeffrey Epstein and Ghislaine Maxwell's
crimes, some of which were allegedly committed by non-parties, such as "Elizabeth," Plaintiff's
cheerleading coach. The Complaint alleges that Plaintiff is developmentally "about 12" years old,
"experiences the world in a child-like way," is "extremely trusting," does as she is told by authority
figures, and does not question them. Compl. ¶¶ 2, 11-13.

Remarkably, Wigdor's Opposition ("Opp.") is completely silent as to what, if any,
inquiries it may have made before filing the Complaint, when it had been explicitly warned that
the allegations "regarding Leon Black were false, uncorroborated, and likely fabricated." Mem. at
5.[2] Wigdor does not, and could not, deny that it received such warnings, including before
Defendant's Rule 11 letter. Wigdor is also silent as to any inquiries it made **after** it received
Defendant's Rule 11 letter. It thus appears clear that the **only** source for the Complaint's allegations
is the Plaintiff herself and her attorneys, despite these pre- and post-filing warnings and the ocean
of red flags calling attention to her lack of credibility.

In the Rule 11 letter, attached as Exhibit 1, Defendant expressly told Wigdor, among other
things, that Plaintiff's family and others close to her believe that (1) Plaintiff frequently creates

---

[2] After filing the Opposition, Wigdor filed a letter noting that a motion for sanctions was denied in one of Wigdor's state court cases against Defendant. That motion is based on entirely different facts and legal standards, and has nothing to do with the reasonable inquiry required by Rule 11 in this case.

realities for herself that are not grounded in fact, and then believes them—particularly where these alternative realities help her to gain attention; (2) she never displayed any symptoms of either Mosaic Down Syndrome or autism, nor was she diagnosed with either condition, during her childhood; (3) she lived with her parents the entire time that she attended high school; (4) none of her family or acquaintances recalled her missing significant time from school; (5) she only travelled out of her home state on one occasion; (6) she did not live with Elizabeth during high school or as a minor; and (7) her physical development and maturity were normal in high school. ECF Doc. Nos. 52, 55 at ¶ 13. These circumstances mandated more than mere mindless reliance on a client's statements.

Against this backdrop, Wigdor tries to defend itself by arguing that Defendant's motion for sanctions is based "entirely" on Defendant's denial of the allegations against him, and that it is improper for the Court to resolve contested factual disputes on a Rule 11 motion. Opp. at 2. That is inaccurate. Defendant's motion does not seek "dismissal" of Plaintiff's claim and the allegations underlying it. Defendant *does* of course adamantly deny those allegations; as he made clear in his Memorandum, he will establish their falsity "at the proper time." Mem. 2. Defendant's motion only addresses whether Wigdor willfully failed to investigate, as Rule 11 requires, before it filed the Complaint and then in the face of contradicting evidence after receipt of the Rule 11 letter.

Wigdor also quibbles with the quality, the admissibility, and the "self-serving" nature of the evidence presented in the Rule 11 letter, and argues that Defendant is prematurely seeking "early discovery." Opp. at 7 & n.2. Incredibly, Wigdor does not put any flesh on the bones of that argument by explaining, for instance, what it thinks is problematic about that evidence. Wigdor seems to be suggesting—but notably not saying outright—that every other person in the world, including Plaintiff's family, friends and acquaintances, none of whom have any stake or interest

in this lawsuit or any connection to Defendant, is a liar. The Rule 11 letter placed Wigdor on notice that additional evidence was available to it, and it was no longer reasonable (if it ever was) for Wigdor to rely exclusively on the equally "self-serving" allegations from the Plaintiff. Defendant seeks no discovery from Plaintiff at this point, but Rule 11 requires the Plaintiff to explain the inquiry it made in order to determine if that inquiry was reasonable under the circumstances. Wigdor's failure to do so subjects it to sanctions.

Wigdor also represents that it "will produce the relevant documents in her possession, such as medical records and school attendance records." Opp. at 12 n.5. But Wigdor does not say that such records are *actually in* Plaintiff's possession, let alone that it has reviewed them. If it had such records, Wigdor could have responded to the Rule 11 letter, or could have represented in a proper declaration[3] that it had reviewed Plaintiff's school attendance and/or medical records and was therefore comfortable that specific allegations in the Complaint were in fact accurate. Wigdor's silence on this point again leads inexorably to the conclusion that no investigation was done.

## II.    DEFENDANT IS AUTHORIZED TO SEEK SANCTIONS NOW—NOT LATER.

Wigdor's argues that Defendant's motion is untimely, pointing to decisions in which it says courts have denied or declined to rule on Rule 11 motions based on their timing. Wigdor repeatedly claims it is "well-settled law" that Defendant's filing of this motion is a "blatant abuse" and "improper." Opp at 2-3, 6. Wigdor is mistaken. For starters, nothing in the text of Rule 11 or elsewhere in the Federal Rules precludes a sanctions motion at this stage nor suggests that such a motion must await some future milestone. That alone forecloses Wigdor's "timing" defense.

---

[3] Because Ms. Christensen's declaration, ECF Doc. Nos. 61, 62, was not made "under penalty of perjury," the Court should disregard it. 28 U.S.C § 1746; *Edwards v. Arocho*, 2022 WL 294067, at *1 n.2 (S.D.N.Y. Feb. 1, 2022).

In any event, the caselaw and the Advisory Committee's notes to the 1993 amendment to Rule 11 ("1993 Notes"), which added the "safe harbor" provision, make clear that not only is it proper for a party to file a motion for sanctions promptly after the filing of the inappropriate paper, but also that the failure to do so could subject the party to a finding that the motion is untimely.

The 1993 Notes directly address this issue:

> The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. ***Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely.*** *Id.* (emphasis added).

Despite the clarity of the 1993 Notes, Wigdor relies on caselaw it claims holds that for pleadings, "sanctions under Rule 11 will normally be determined *at the end of the litigation*." Opp. at 3 (emphasis added by Wigdor). Wigdor cites two cases as the source for this quote,[4] but disregards that the quote comes from the Advisory Committee's notes to the 1983 amendments to Rule 11, a fact noted in both cases, and addresses the timing of the court's decision, not the timing of the motion. The Notes to the 1993 amendment, which added the safe harbor provision, directly contradict Wigdor's assertion. The Committee explained there that "[g]iven the 'safe harbor' provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Wigdor's "end of the litigation" contention is thus based on outdated law.

Defendant explained this very point in the Memorandum (at 21-22); Wigdor has simply elected to disregard it. In particular, Defendant cited this Court's decisions in *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003), and *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019). *AJ Energy* was decided pre-discovery and *Safe-Strap* was

---

[4] *Hernandez v. Miller*, 2022 WL 17584025, at *1 (S.D.N.Y. Dec. 12, 2022) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 n.19 (1991)).

decided prior to a motion to dismiss. Indeed, in *Safe-Strap*, the Court expressly held, contrary to Wigdor's arguments, that "efforts to pursue sanctions at this early stage in the litigation, atypical though they may be, would not, without more, justify the denial of [defendant's] motion." 20 F. Supp. 2d at 413.  The court proceeded to engage in a lengthy discussion in a footnote as to why this was the case, relying heavily on the 1993 Notes. *Id.* at 413 n.3. As Defendant explained, and as Wigdor ignored in its Opposition (despite quoting the case, Opp. at 3-4), the *Safe-Strap* Court cited a series of cases in which delayed Rule 11 motions were denied as untimely. 270 F. Supp. 2d at 413 n.3. The court explained that when the challenged filing is a complaint, a party "should move for sanctions promptly after the complaint is filed." *Id.* It also explained that the addition of the safe harbor provision changed the dynamic of Rule 11, by "acting as a practical time limit," since the opportunity for the Plaintiff to correct or withdraw the pleading required a timely submission of the safe harbor letter. *Id.*

*Safe-Strap* also explained a distinction that the Opposition completely disregards: there is a difference between when a party should file the motion and when the court should consider it. Most of the cases cited by Wigdor for the principle that the motion is "premature" or "improper" stand only for the proposition that courts may defer consideration of a Rule 11 motion until the facts have been further developed. *See, e.g. Sang Lan v. Time Warner*, Inc., 2015 WL 4469838, at *2 (S.D.N.Y. July 13, 2015) (declining to consider sanctions motion until a full evidentiary record is developed). While the Court may consider the issue at its discretion, it need not wait here, because Wigdor's complete failure to conduct any inquiry is inherently unreasonable. It is not only the falsity of Wigdor's allegations that is at issue and sanctionable—it is their abject failure to conduct any investigation at all before publicly filing such horrific allegations against the Defendant.

### III.    WIGDOR WAS REQUIRED TO DO MORE THAN BLINDLY ACCEPT PLAINTIFF'S PURPORTED ACCOUNT.

Throughout the Opposition, Wigdor accuses Defendant of attempting to "discredit," "shame," "malign," and "denigrate" Plaintiff by referring in his sanctions motion to Plaintiff's alleged mental and developmental status. Opp. at 7-8, 12-14. Wigdor is unfairly attempting to use Plaintiff's alleged mental status as both a sword and a shield. Wigdor put Plaintiff's mental capacity at issue in the first place, alleging that "[d]evelopmentally she is about 12," Compl. ¶ 2, "it is difficult for her to understand social cues based on the behavior of people she encounters," *id.* ¶ 12, "Plaintiff experiences the world in a child-like way," *id.*, and "she is extremely trusting," *id.* ¶ 13. These allegations were no doubt included to make Plaintiff's account of abuse and trafficking sound even more heinous. But if Wigdor believed these allegations (without any investigation as to their veracity), they bear strongly on Plaintiff's ability to discern reality from fiction and increase the potential for her allegations to be inaccurate. In addition, in the Rule 11 letter, Wigdor was told that Plaintiff's family and others believe that she frequently creates realities for herself that are not grounded in fact, and then acts as if she believes them. These specific allegations require that Wigdor's inquiry consist of more than blind acceptance of the Plaintiff's story, in order to be reasonable and acceptable, under Rule 11.

Attorneys have a heightened duty to investigate when a client presents with issues like those described in the Complaint. Mem. at 16-18. Defendant was not and is not trying to shame or denigrate this anonymous Plaintiff, and raised these developmental issues responsively only to show that, based on what *Wigdor* said about Plaintiff, there would have been reason to question Plaintiff's ability to provide accurate information. The additional information included in the Rule 11 letter only reinforces those questions. Wigdor cannot introduce information about

Plaintiff's mental status when it is convenient to tar Defendant with atrocious allegations while claiming that Plaintiff's mental status insulates her, and it, from the requirements of Rule 11.

## IV.    DEFENDANT'S RULE 11 LETTER WAS PROCEDURALLY PROPER.

In yet another effort to circumvent any reckoning for its actions, Wigdor makes a fleeting argument near the end of its brief that Defendant did not comply with Rule 11 because he served "a boilerplate notice and three-page letter" with supporting affidavits, which, Wigdor asserts, were not "the same" as the memorandum of law and supporting affidavits Defendant ultimately filed in support of his motion for sanctions. That argument fails for at least two reasons.

First, Wigdor misstates Rule 11(c)(2), which "does not require the pre-motion service of a memorandum of law or affidavits, nor does it use the words 'formal fully supported motion.'" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012). Rather, Rule 11 requires *only* service of "[t]he motion"—that is, the notice of motion—as well as providing the subject with notice of "the specific conduct or omission for which the sanctions are being considered." *Id.* at 175. As *Star Mark*, the case on which Wigdor relies, explains, Rule 11(c)(2) is satisfied where, as here, the letter "described the specific conduct that allegedly violated Rule 11(b)." 682 F.3d at 175.

As for any differences between the previously-filed Melendez Declaration (ECF Doc. No. 15-2) that accompanied the Rule 11 letter and the Melendez Declaration submitted in support of Defendant's motion (ECF Doc. Nos. 52, 55), Wigdor points to no requirement that the warning letter must be accompanied by the precise supporting materials ultimately accompanying the motion. Nor does Wigdor explain what "additional information" and "defamatory accusations" were added to the Melendez Declaration. Nor could Wigdor plausibly do so given that the two are substantially similar, and the few differences are of facts referenced in the Rule 11 letter.

Second, Wigdor misrepresents the content (and the length) of Defendant's Rule 11 letter.

That detailed, four-page letter identified the precise conduct justifying sanctions—the failure to investigate notwithstanding multiple red flags, supported by evidence casting serious doubt on numerous allegations in the Complaint and on Plaintiff's credibility, which Wigdor would have discovered had it conducted even a cursory investigation. Wigdor was clearly on notice of the grounds for sanctions, and cannot credibly complain that it was unable to "prepare a defense." *See* Opp. at 15 (quoting *Star Mark*, 682 F.3d at 170).

## V.    WIGDOR'S ANTI-SLAPP ARGUMENT IS MERITLESS.

Finally, Wigdor makes a last-ditch effort to evade sanctions by arguing—without citing any legal authority—that Defendant's motion "is a transparent attempt to circumvent" New York's Anti-SLAPP Statute. Opp. at 17. This argument is meritless. Defendant, for his part, has not found any case in which a court has held that a motion for sanctions could somehow constitute a "claim" for purposes of New York's anti-SLAPP statutes. Nor does Wigdor cross-move for sanctions pursuant to New York's anti-SLAPP statutes, seek leave to amend Plaintiff's complaint to add a claim under the New York's anti-SLAPP statutes, or seek any other relief based on Defendant's alleged violation of the spirit—but not the actual letter—of New York's anti-SLAPP laws.

Wigdor's contention that Defendant's request for sanctions is just a defamation claim in disguise is premised on a blatant mischaracterization of Defendant's motion, which is about Wigdor's duty to conduct an inquiry. Had Wigdor undertaken even a perfunctory inquiry, it would have quickly discovered evidence that casts serious doubt on Plaintiff's account and that raises serious questions about her credibility. Wigdor's failure to do so, or its reckless decision to file the Complaint despite having uncovered such information, is what warrants sanctions here.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion and impose appropriate sanctions against Wigdor and Christensen.

Dated: October 30, 2023
New York, New York

ESTRICH GOLDIN LLP

By:     */s/ Susan Estrich*
        Susan Estrich (pro hac vice)
        947 Berkeley St.
        Santa Monica, CA 90403
        (213) 399-2132

        QUINN EMANUEL URQUHART
          & SULLIVAN, LLP
        Michael B. Carlinsky
        Jennifer J. Barrett
        51 Madison Avenue, 22nd Floor
        New York, NY 10010
        (212) 849-7000
        *Counsel for Defendant Leon Black*