UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

                      Plaintiff,

      -against-

LEON BLACK,

                      Defendant.

23-CV-6418 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

      Plaintiff Jane Doe brings this action under the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") alleging that Defendant Leon Black sexually assaulted her in 2002, when she was a minor. The truth or falsity of that allegation is not the question at this stage. Instead, the question before the Court is whether the amendment reviving claims under the VGMVPL (the "VGMVPL Revival Statute") is preempted by the Child Victims Act ("CVA"). Because Defendant has failed to demonstrate that the state legislature occupied the relevant field of legislation with the CVA or that the VGMVPL Revival Statute conflicts with the CVA, the Court finds that the VGMVPL Revival Statute is not preempted by the CVA. Accordingly, Defendant's motion to dismiss is DENIED. The Court also DENIES Defendant's motion to stay as moot, GRANTS in part and DENIES in part the parties' motions to seal, and DENIES Defendant's motion for sanctions.

**LEGAL STANDARD**

      In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]hen considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

## DISCUSSION

The Court first denies Defendant's motion to dismiss, finding that the VGMVPL Revival Statute is not preempted by the CVA. The Court next denies Defendant's motion to stay as moot. The Court then grants in part and denies in part Defendant's motion to seal, finding that only the proposed redactions to protect Plaintiff's anonymity and her medical information are warranted. Finally, the Court denies Defendant's motion for sanctions, finding that the factual record is insufficient at this juncture to make a determination as to sanctions.

### I.     Defendant's Motion to Dismiss is Denied[1]

The New York City Council adopted the VGMVPL in 2000 in response to the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), which struck down the Violence Against Women Act ("VAWA") on Commerce Clause grounds. N.Y.C. Admin. Code

---

[1] On August 20, 2024, Plaintiff filed a motion for leave to amend the Complaint. *See* ECF No. 91. Defendant acknowledges that the proposed amended complaint "has absolutely no effect on the pending motion to dismiss." *See* ECF No. 94. Thus, the Court decides the motion to dismiss herein; the Court will decide upon the motion for leave to amend and related sealing motions at a later date.

2

§ 10-1102. The VGMVPL provides for a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." *Id*. § 10-1104. The VGMVPL defines "crime of violence" as:

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id*. § 10-1103. The VGMVPL further defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id*.

The VGMVPL allows for actions to be commenced within seven years after the alleged crime of violence motivated by gender. *Id*. § 10-1105(a). If a potential plaintiff is unable to bring a claim within the seven years for certain enumerated reasons, including infancy, "the time within which the action must be commenced shall be extended to nine years after the inability to commence the action ceases." *Id*. Under such limitations period, Plaintiff's claim would have expired approximately eleven years ago, as the alleged crime of violence motivated by gender occurred in 2002 when she was sixteen. *See* ECF No. 1 ("Compl.") ¶¶ 1–2.

On January 9, 2022, the New York City Council adopted an amendment to the VGMVPL – the VGMVPL Revival Statute – stating:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

3

City of New York, L.L. 21/2022 § 2. Plaintiff claims that she timely filed suit, because she brought her action on July 24, 2023, less than two years and six months after September 1, 2022. *See* Compl. ¶ 99.

Defendant argues that the VGMVPL Revival Statute is preempted by the CVA, and therefore that Plaintiff's claim is untimely. ECF No. 41 ("Mot."). The CVA states:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . . which is barred as of the effective date of this section because the applicable period of limitation has expired . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

C.P.L.R. § 214-g. The CVA was first enacted on February 14, 2019, allowing actions to be commenced between August 14, 2019 and August 14, 2020. 2019 N.Y. Sess. Laws, ch. 11 (S. 2440). In 2020, the CVA's revival window was extended until August 14, 2021. 2020 N.Y. Sess. Laws, ch. 130 (S. 7082).

In part, the CVA revives previously barred actions related to the sexual abuse of children. C.P.L.R. § 214-g. The Sponsor Memorandum provides that the CVA "would also establish a one-year window in which adult survivors of child sexual abuse would be permitted to file civil actions . . . ." Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7.

### A. The VGMVPL Revival Statute Is Not Preempted by the CVA

The Court thus analyzes whether the VGMVPL Revival Statute is preempted by the CVA. Under the New York State Constitution's "home rule" provision, municipalities are able to adopt local laws pertaining to the "government, protection order, conduct, safety, health and well-being of persons or property therein," as long as such local laws are "not inconsistent" with

4

the state constitution or general state laws. NY Const., art. IX, § 2(c)(10). "Local laws may be inconsistent with and preempted by state law either because the legislature has occupied the relevant field of regulation" – field preemption – or "because the local law conflicts with state law" – conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423 (2023).

Both parties rely on *Engelman v. Rofe*, 144 N.Y.S.3d 20 (1st Dep't 2021), to support their arguments regarding preemption. *Engelman*, though providing useful context, is not directly applicable. In *Engelman*, the court analyzed whether the seven-year limitation period for a claim under the VGMVPL was preempted by C.P.L.R. § 215(3), which provides for a one-year limitation period for assault, finding that it was not. 144 N.Y.S.3d at 23. The court held that the "[VGMVPL's] construct is consistent with the City's broad policing power to enact legislation to protect its residents from discrimination, including gender-related violence." *Id*. at 25 (cleaned up). In so holding, the court found that "the legislative intent of the [VGMVPL] was to create a civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of limitations for a particular class of assaults." *Id*. at 25–26. Here, however, the provision of the VGMVPL at issue is specifically about the statute of limitations – extending the time for which potential plaintiffs can bring causes of action. Therefore, this case does not resolve the issue before the Court: whether the VGMVPL Revival Statute is preempted by the CVA by either field or conflict preemption.

1. **Field Preemption Does Not Bar the VGMVPL Revival Statute**

The Court next turns to analyzing the VGMVPL under field preemption. "Field preemption prohibits a local government from legislating in a field or area of the law where the legislature has assumed full regulatory responsibility." *Police Benevolent Ass'n*, 40 N.Y.3d at

423 (cleaned up). "Permitting such laws 'to operate in a field preempted' by the state 'would tend to inhibit the operation of the state's general law and thereby thwart the operation of the state's overriding policy concerns.'" *Id.* (quoting *Jancyn Mfg. Corp. v. Cnty. of Suffolk*, 71 N.Y.2d 91, 97 (1987)). However, "the mere fact that a local law may deal with some of the same matters touched upon by state law does not render the local law invalid." *Id.* at 425 (quoting *People v. Judiz*, 38 N.Y.2d 529, 531–32 (1976)). Instead, "[a] desire to pre-empt may be implied from a declaration of State policy by the Legislature or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area." *Consol. Edison Co. of New York v. Town of Red Hook*, 60 N.Y.2d 99, 105 (1983) (internal citations omitted). Here, Defendant's field preemption arguments fail for the reasons stated below.

### a. The CVA Does Not Indicate an Intent to Occupy the Field

The state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases.[2] Defendant points to several statements by the legislature with respect to the CVA in an attempt to demonstrate field preemption. They are that (1) the CVA applies to "'every civil claim . . . brought against any party . . . as a result of conduct which would constitute a sexual offense' against a minor as defined in, among other provisions, 'article one hundred thirty of the New York State penal law'"; (2) passage of the CVA "will finally allow justice for past and future survivors of child sexual abuse"; (3) the CVA "will finally give . . . all survivors of childhood sexual abuse in the state of New York the justice that they deserve"; (4) the CVA was "on behalf of all of New York's survivors"; and (5) passing the CVA meant "finally getting something done that helps every single victim in this state." Mot. at 17–18 (quoting

---

[2] The Court does not consider the exhibits filed at ECF No. 105, which are not part of the legislative history of the CVA.

6

C.P.L.R. § 214-g; New York Bill Jacket, 2020 S.B. 7082, Ch. 130, at 8; N.Y. Senate Debate on Senate Bill S2440, Jan. 28, 2019, at 754, 762, 773).

None of these statements support a finding of field preemption on the matter of statutes of limitations. Instead, they merely indicate that the legislature intended for the CVA to benefit all New York child sexual assault victims. This is not the same as "an expression of need for uniform State-wide control" that has been found to support field preemption. *See Vatore v. Comm'r of Consumer Affs. of City of New York*, 83 N.Y.2d 645, 650 (1994). These general statements about helping all New Yorkers are similar to statements made with respect to the New York State Human Rights Law ("NYSHRL"). The NYSHRL states that its purpose is to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" free from discrimination. N.Y. Exec. L. § 290(3). Nonetheless, the New York Court of Appeals (the "Court of Appeals") found the New York City Human Rights Law, which overlaps substantially with the NYSHRL, not to be preempted. *See New York State Club Ass'n, Inc. v. City of New York*, 69 N.Y.2d 211, 217–18 (1987), *aff'd*, 487 U.S. 1 (1988).

Cases where courts have found that the state has expressed a need for complete control in a field are readily distinguishable. For example, in *Consolidated Edison*, the Court of Appeals found that a state law providing that all decisions regarding where new major steam electric generating facilities should be located were to be determined by a state siting board preempted a local law requiring that people obtain a license from the town board to begin a site study for a power plant. 60 N.Y.2d at 103, 105. The desire to preempt was implied from legislative declarations of state policy that the purpose of the state law was "to provide for the expeditious resolution of all matters concerning the location of major steam electric generating facilities presently under the jurisdiction of multiple state and local agencies, including all matters of state

7

and local law, in a single proceeding" and that "there is a need for the state to control determinations regarding the proposed siting of major steam electric generating facilities within the state." *Id*. at 105. The court also found relevant that the governor approved the law as "the establishment of a unified certificating procedure." *Id*.

Likewise, the Court of Appeals found similar language in the Alcoholic Beverage Control Law ("ABC Law") to be indicative of field preemption. In *People v. De Jesus*, the court considered whether a local law about the sale and offering of alcohol after a certain time was preempted by the ABC Law. 54 N.Y.2d 465 (1981). The ABC Law declared that it was the goal of the state, through the statute, to "regulate and control the manufacture, sale and distribution within the state of alcoholic beverages." *Id*. at 470. Stating that the policy behind the legislation was not "left to the imagination" by this language, the court concluded that the local law was indeed preempted. *Id*.

Here, no similar statements were made in the context of the CVA. Instead, the statements Defendant has pointed to do not support field preemption but instead focus on the benefits the CVA would provide all child victims. The statements do not indicate a desire by the state to assume full control or regulation of this issue.

### b. The CVA Is Not a Comprehensive and Detailed Regulatory Scheme

The CVA is not the kind of scheme – one that is "comprehensive and detailed" – that would support a finding of field preemption. *See Consol. Edison*, 60 N.Y.2d at 105. The cases Defendant cites only further this conclusion. First, in *Consolidated Edison*, the Court of Appeals found field preemption where the statute regulating the siting of new major steam electric generating facilities was "comprehensive and detailed." *Id*. There, the state law included provisions that encouraged prospective applicants to consult state agency staffs regarding

preapplication site studies, instructed applicants to request exceptions or variances from municipal regulations, allowed the state board to waive compliance with municipal regulations, and required information to be gathered in carefully prescribed site studies prior to filing an application. *Id*. at 106.

Second, in *ILC Data Device Corporation v. County of Suffolk*, the Second Department held that the state legislature intended to preclude local regulation in the field of employee safety in the workplace with the enacting of a "comprehensive regulatory scheme." 588 N.Y.S.2d 845, 850 (2d Dep't 1992). The New York Commissioner of Labor (the "Commissioner") was given "expansive authority to engage in inspections, investigations, and enforcement" with regard to workplace safety and health as well as the authority to establish and maintain local branch offices, "thereby facilitating the application of State-wide regulation by State officials at the local level." *Id*. at 850–51. The state law provided the Commissioner with the authority to allow variations from health and safety standards, to inspect physical premises and books and records, and to issue subpoenas and conduct hearings. *Id*. at 851. Moreover, the state law set forth comprehensive procedures for administrative and judicial review, governed the employment of minors, controlled work hours and wages, and authorized the Commissioner to identify and ameliorate dangers in machinery and equipment. *Id*. The law also regulated the adoption, implementation, and enforcement of health and safety standards for private employees in New York. *Id*.

Third, in *Wholesale Laundry Board of Trade, Inc. v. City of New York*, the court concluded that the state law regarding minimum wage "indicate[d] a purpose to occupy the entire field." 234 N.Y.S.2d 862, 865 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 998 (1963). This was because

9

the "provisions for amendment of the wage fixed formulate an elaborate machinery for the determination of an adequate wage in any occupation and in any locality." *Id*.

And lastly, in *Lansdown Entertainment Corporation v. New York City Department of Consumer Affairs*, the Court of Appeals affirmed that the regulatory system of the ABC Law was comprehensive and detailed. 74 N.Y.2d 761, 762–63 (1989). The court cited to *De Jesus*, which explained that the ABC Law gave the State Liquor Authority the power to grant licenses under defined circumstances, provided for criminal sanctions against unauthorized purveyors of alcoholic beverages, specified when alcoholic beverages could be sold and consumed at retail venues, included a provision against disorderliness, and imposed direct controls at the local level by creating local alcoholic beverage control boards and granting certain powers to those boards. *See id*.; *De Jesus*, 54 N.Y.2d at 469.

Here, the CVA does not come close to enacting a comprehensive scheme. The details of the schemes relied upon in the cases Defendant cites do not exist in the instant matter. The state did not create a commissioner or board with investigatory or enforcement power. The state did not impose direct controls at the local level. The state did not set forth comprehensive procedures for administrative and judicial review. Simply put, there is no detailed and comprehensive scheme. *See Hertz Corp. v. City of New York*, 80 N.Y.2d 565, 569 (1992) (holding that the statutory scheme was not "so broad in scope or so detailed as to require a conclusion that all local law in the area of rental vehicle company practices is preempted" when "statutes merely proscribe discriminatory practices against renters or the imposition of additional rental fees").

Defendant claims that the CVA is comprehensive because the state did more than revive statute of limitations for child sex abuse cases. It has also extended the statute of limitations for certain criminal cases involving sex offenses against minors (N.Y. Crim. Proc. L. § 30.10(3)(f));

extended the time for which civil actions related to sexual offenses against minors could be brought (N.Y. C.P.L.R. § 208(b)); and instructed the judiciary to promulgate rules for the timely adjudication of revived actions brought pursuant to N.Y. C.P.L.R. § 214-g (N.Y. Judiciary L. § 219-d). Mot. at 18. Extending the time for certain criminal and civil cases related to sexual offenses does not meet the bar of a comprehensive and detailed regulatory scheme. It is not "so broad and detailed in scope as to require a determination that [the CVA] has precluded all local regulation in the area . . . ." *Vatore*, 83 N.Y.2d at 650.

Accordingly, the VGMVPL Revival Statute is not preempted by the CVA under field preemption.

### 2. Conflict Preemption Does Not Bar the VGMVPL Revival Statute

The Court next turns to conflict preemption. "Under the doctrine of conflict preemption, a local law is preempted by a state law when a right or benefit is expressly given by State law which has then been curtailed or taken away by the local law." *Sunrise Check Cashing & Payroll Servs., Inc. v. Town of Hempstead*, 933 N.Y.S.2d 388, 395 (1st Dep't 2011), *aff'd sub nom. Sunrise Check Cashing v. Town of Hempstead*, 20 N.Y.3d 481 (2013) (cleaned up). "For a local law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit the conduct the local law prohibits or provide 'some other indication that deviation from state law is prohibited.'" *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617–18 (2018)). Conflict preemption exists where "there is a head-on collision between" the local law and the state law. *Lansdown*, 74 N.Y.2d at 764. However, the Court of Appeals has made clear not to read conflict preemption principles too broadly, because doing so "carries with it the risk of rendering the power of local governments illusory." *Ctr. for Indep. of Disabled v. Metro. Transportation Auth.*, 125 N.Y.S.3d

697, 704 (1st Dep't 2020) (citing *Garcia*, 31 N.Y.3d at 617). And the mere "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict." *Garcia*, 31 N.Y.3d at 617 (cleaned up).

Here, the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state. The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA. *Cf. Lansdown*, 74 N.Y.2d at 764–65 (holding that city ordinance conflicted with state law when state law allowed patrons to remain on premises consuming alcohol until 4:30 a.m. but city ordinance prohibited such).

There is also no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action. *See Vatore*, 83 N.Y.2d at 650 (finding no conflict preemption when "the local law would only further the State's policy interests"). The CVA sought to remedy the injustices to survivors of child sexual abuse by extending New York's statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse. Senate Introducer's Mem. in Support, Bill Jacket, L 2019, ch. 11 at 7. The legislative history for the extension of the revival window states that "[e]xtending the length of the revival window would provide more time to notify New Yorkers about the new law and allow more survivors to seek the justice that was denied them by New York's formerly prohibitive civil statute of limitations." *Id*. Similarly, the VGMVPL Revival Statute "would give survivors of gender-motivated acts of violence more time to pursue civil actions by extending the statute of limitations."[3] These statutes serve the same purpose.

---

[3] New York City Council, *Creating a Two Year Look-Back Window to the Gender-Motivated Violence Act, and Extending Its Statute of Limitations*, https://legistar.council.nyc.gov/ LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

12

Furthermore, as *Engelman* recognized, the VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents from gender-related violence. *Engelman*, 144 N.Y.S.3d at 23. Preventing the City from enacting its own deadline to file a claim under its own law to protect its residents, risks rendering that power illusory.

Defendant relies on several cases in support of conflict preemption; none change the Court's conclusion. First, Defendant argues that *Turnpike Woods v. Town of Stony Point*, 70 N.Y.2d 735 (1987), supports his proposition that a local law is preempted by a state law when the local law attempts to extend or alter a limitation that the state has fixed. *See* Mot. at 14–15. However, that case dealt with supersession, not preemption, and therefore is not on point.

Second, Defendant cites to an out-of-state case that does not analyze New York law so is not applicable here. *See id*. at 15 (citing *Lafayette Trees v. City of Lafayette*, 32 Cal. App. 5th 148, 162 (Cal. Ct. App. 2019)).

And lastly, Defendant cites *Bellino v. Tallarico*, No. 24-CV-712. The Court acknowledges that a different result was reached in that case. There, the court issued an order dismissing a case brought under the VGMVPL. In part, the court, adopting the position set forth in the defendant's brief, found that "the limitations provision of the [VGMVPL] is preempted by the state's adoption of the Child Victims Act and the Adult Survivors Act [("ASA")], substantially for the reasons set forth by the defendant." Memorandum and Order, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 21, 2024). The defendant in *Bellino* argued that the CVA and ASA "clearly occupy the field regarding the revival of claims derived from state penal sexual assault law," relying on *Engelman* and *Doe v. Gooding*, No. 20-CV-6569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022), for support. Brief of Defendant at 14–15, *Bellino v. Tallarico*, No. 24-CV-712 (LAK) (S.D.N.Y. Feb. 2, 2024). For the reasons stated above, this Court finds otherwise.

13

**II.     The Motion to Stay is Denied**

Because the Court has decided on Defendant's motion to dismiss, Defendant's motion to stay is denied as moot.

**III.    The Motion to Seal is Granted in Part and Denied in Part**

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *See Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id*. at 120.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Id*. Under the First Amendment "experience and logic" test,

14

the Court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### A. Competing Considerations Outweigh the Presumption of Access for Some of the Materials in Question

Defendant seeks to file his Memorandum of Law in Support of his Motion for a Stay of Discovery (ECF Nos. 75, 77) as well as the accompanying Estrich Declaration and exhibits thereto (ECF Nos. 76, 78) with redactions. ECF No. 73 at 1. Plaintiff seeks to file her opposition to the motion to stay (ECF Nos. 80, 81) under seal, or alternatively, with redactions. ECF No. 79 at 2. Defendant argues that Plaintiff proposed additional redactions that Defendant does not believe are necessary and that the only redactions that should be applied are those that protect Plaintiff's anonymity. ECF No. 73 at 3. Plaintiff argues that not only would information contained in these documents lead to Plaintiff's identity being revealed, but also that Defendant seeks to make the information public in order to embarrass, disparage, and intimidate Plaintiff. ECF No. 79 at 2.

The supporting materials in connection with a motion to stay are judicial documents. *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015). Thus, there is a presumption of public access that attaches to the documents. *Id*. The documents may only be filed under seal or with redactions if the parties are able to overcome the presumption in favor of public access. *Id.*; *see also Lugosch*, 435 F.3d at 119–20.

15

Thus, the Court balances the "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. Established "competing considerations" include "the privacy interests of those resisting disclosure." *Id.* Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo*, 71 F.3d at 1051. Parties "opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id*.

The Court agrees with the parties that "information tending to reveal [Plaintiff's] identity" should be redacted, as the privacy interest of Plaintiff outweighs the presumption of public interest. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 3759161, at *1 (S.D.N.Y. Mar. 15, 2019). This includes information such as the contents of Plaintiff's tweets, which could be reverse-engineered to determine Plaintiff's identity. Although Defendant argues that the Court should not allow redactions of "information about the country of origin from which [Plaintiff] falsely claims that various members of her family emigrated," the Court finds that it is unclear at this juncture what information regarding Plaintiff's family and country of origin is true, and therefore allows this information to be redacted. *See infra* Section IV; ECF No. 83 at 2.

Accordingly, the following information related to Plaintiff's identity, including her name, her tweets, information about her family, information about her country of origin, and other information tending to reveal her identity may be properly redacted. The Court also directs that

the below redactions should be made in conformity with the redactions in the Sanctions Memorandum and ECF No. 55 ("Melendez Decl."), which the Court previously ruled upon, and which the parties, for the most part, agreed upon. *See* ECF Nos. 45, 47.

- Plaintiff's name. ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24).

- Plaintiff's Twitter handle, the content and/or description of her tweets and the dates of her tweets. ECF No. 77 at 1 (ECF No. 75 at 1), language from tweets in the second bullet point; ECF No. 77 at 6 (ECF No. 75 at 6), language from tweets in the last paragraph; ECF No. 77 at 8 (ECF No. 75 at 8), last sentence of second full paragraph; ECF No. 78 ¶¶ 7, 16–20, 26–29 (ECF No. 76 ¶¶ 7, 16–20, 26–29), dates related to the tweets and the content and/or description of the tweets; ECF No. 78 ¶ 24 (ECF No. 76 ¶ 24), Twitter handles; ECF No. 78 ¶ 25 (ECF No. 76 ¶ 25), date; ECF No. 78 ¶ 35 (ECF No. 76 ¶ 35), description of Plaintiff's tweets; ECF Nos. 78-1–16 (ECF Nos. 76-1–16).

- Information about Plaintiff's family. ECF No. 77 at 7 (ECF No. 75 at 7), after "Plaintiff's" to "stated" in the last line; ECF No. 78 ¶ 14 (ECF No. 76 ¶ 14), after "Plaintiff's" to "stated."

- Information regarding Plaintiff's country of origin. ECF No. 77 at 7 (ECF No. 75 at 7), first full paragraph; ECF No. 78 Section III Heading (ECF No. 76 Section III Heading), the proposed redaction; ECF No. 78 ¶ 15 (ECF No. 76 ¶ 15), bullet points; ECF No. 78 ¶ 16 (ECF No. 76 ¶ 16), after the redacted date to "Ms."; ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), remainder of sentence following "by her own admission"; ECF No. 78 ¶ 21 (ECF No. 76 ¶ 21); ECF No. 78 ¶ 22 (ECF No. 76 ¶ 22); ECF No. 80 at 6–7 (ECF No. 81 at 6–7), references to family members and bullet points in full.

- Other information tending to reveal Plaintiff's identity. ECF No. 78 ¶ 18 (ECF No. 76 ¶ 18), after "was" to "that" in the second line; ECF No. 78 ¶ 20 (ECF No. 76 ¶ 20), after "received" to "messages"; ECF No. 80 at 7 (ECF No. 81 at 7), quoted language in the last line of the first paragraph.

Requests to redact information regarding Plaintiff's medical records, treatment, and diagnosis are also approved. *See Valentini v. Grp. Health Inc.*, No. 20-CV-9526 (JPC), 2020 WL 7646892, at *2 (S.D.N.Y. Dec. 23, 2020) (noting individuals generally "maintain[] significant privacy rights to [their] medical information," and courts "regularly seal" such information); *see also* S.D.N.Y. ECF Rule 21.4 (stating that litigants should consider redacting documents that

contain medical records, treatment, and diagnosis). Accordingly, the following information may be properly redacted:

- ECF No. 77 at 7 (ECF No. 75 at 7), second sentence in second full paragraph; ECF No. 78 ¶ 11 (ECF No. 76 ¶ 11), bullet points; ECF No. 80 at 2 (ECF No. 81 at 2), the proposed redaction; ECF No. 80 at 5–6 (ECF No. 81 at 5–6), bullet points; ECF No. 80 at 6 (ECF No. 81 at 6), the beginning of the third line in the first full paragraph to "has."

Plaintiff's remaining requests for redaction are denied. The Court will not allow redactions of information that is already public, such as descriptions of information in public docket entries or caselaw parentheticals. *See In re Telegraph Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) (denying motion to seal information that is already a matter of public record). "Because the common law framework is dispositive" of the motions to seal, "the Court need not undertake the First Amendment analysis." *Id*.

### IV. The Motion for Sanctions is Denied

Defendant argues that everything the Complaint says about him is "utterly and demonstrably false" and that Plaintiff's lawyers "failed to conduct a reasonable inquiry." ECF No. 54 at 2. Federal Rule of Civil Procedure 11 requires an attorney filing a pleading to certify that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (internal quotation marks omitted). "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *AJ Energy LLC v. Woori*

18

*Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

The Court finds that because there has not yet been any discovery in this action, there is no basis from which to conclude that the facts alleged in the Complaint are false or that Plaintiff did not undertake a reasonable inquiry as a matter of law. *See Gartenbaum v. Beth Israel Med. Ctr.*, 26 F. Supp. 2d 645, 649 (S.D.N.Y. 1998) (declining to impose Rule 11 sanctions when there had been no discovery since the filing of the complaint); *see also* Decision, *Pierson v. Black*, No. 952002/2022 (N.Y. Oct. 24, 2023). Indeed, many of the cases that Defendant cites in support of issuing Rule 11 sanctions based on insufficient inquiries made surrounding the filing of a pleading were decided during a later phase of litigation. *See*, *e.g.*, *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (deciding Rule 11 motion along with summary judgment). Accordingly, Defendant's motion for sanctions is denied without prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED, Defendant's motion to stay is DENIED as moot, the parties' motions to seal are GRANTED in part and DENIED in part, and Defendant's motion for sanctions is DENIED. The parties are directed to publicly file versions of their materials related to the motion to stay (ECF Nos. 75, 76, and 81) that conform to Section III of this order no later than **October 4, 2024**.

It is hereby ORDERED that the initial pretrial conference in this matter is set for **October 29, 2024** at **12:30 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. A proposed Civil Case Management Plan and Scheduling Order shall be filed by **October 22, 2024**.

The Clerk of Court is directed to terminate ECF Nos. 22, 40, 49, 73, and 74.

Dated: September 27, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge