

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

October 4, 2024

**VIA ECF**

The Honorable Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20C
New York, New York 10007

Re: *Doe v. Black*, Case No. 1:23-cv-06418-JGLC

Dear Judge Clarke:

We represent Plaintiff Jane Doe ("Plaintiff") in the above-captioned matter. We write this letter in response to Defendant Leon Black's ("Defendant" or "Black") October 1, 2024 letter to Your Honor requesting the Court's authorization to serve three subpoenas for immediate third-party document discovery. Defendant's request is improper for multiple reasons and should be denied.

## I. Rule 26 Does Not Permit the Relief Defendant Seeks

The Court has ordered that the initial pretrial conference in this matter take place on October 29, 2024, and that a proposed Civil Case Management Plan and Scheduling Order be filed by October 22, 2024. ECF No. 106. Defendant's request is plainly improper under Fed. R. Civ. P. 26 ("Rule 26"). First, it is blatantly premature. The parties have not yet met and conferred to discuss discovery in this matter pursuant to Rule 26(f). Under Rule 26(d)(1):

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

Defendant's request does not come close to any of the exceptions. This proceeding is not "exempted from initial disclosure under Rule 26(a)(1)(B)," nor is it "authorized by these rules." Defendant does not attempt to argue otherwise. To receive an order granting expedited discovery, Defendant must provide a compelling basis. He fails to offer one because none exists. In this district, for example, courts allow expedited discovery only after "examin[ing] the discovery request on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citations omitted). Courts also apply "particularly careful scrutiny [when the party] not





only seeks expedition, but also moves on an ex parte basis." *Id.* Courts also consider the potential prejudice suffered by the non-requesting party if discovery is expedited, and "that which will be experienced by the [requesting party] if denied the opportunity for discovery at this stage." *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006).

Here, Defendant does not provide "a valid, narrow reason" why this discovery is needed now as opposed to after the parties have conferred pursuant to the Federal Rules and after the initial pretrial conference scheduled for October 29, 2024. *Doe 1 v. Congregation of the Sacred Hearts of Jesus & Mary*, No. 21 Civ 6865 (VSB), 2022 WL 2901403, at *2 (S.D.N.Y. July 22, 2022) (denying expedited discovery where the moving party did not "[offer] a valid, narrow reason" for the request, which was "unreasonable, unduly burdensome, and overly prejudicial" to the nonmoving party). Where expedited discovery requests have been granted, it is because absent expedited discovery, the relevant information sought may become unobtainable. *See Ayyash*, 233 F.R.D. 325 at 327 (plaintiffs had urgent need to seek information about defendants' potential assets because defendants were "foreign individuals and corporations who ha[d] both incentive and capacity to hide their assets"). There is no urgency to move for the requested subpoenas and Defendant fails to explain how the information he seeks will become unavailable at any point soon, if ever. As to whether the subpoenas to the various law firms, including counsel for Plaintiff, would prejudice Plaintiff, as explained below, that is a decision for another court.

## II. <u>Defendant's Request is an Attempt to Circumvent the Court in Another Matter</u>

Critically, Black is not entitled to ask this Court for permission to subpoena information from the lawyers serving as Class Counsel and those appointed to act as Claims Administrator for the Class in the matter entitled *Jane Doe 1, et al., v. JPMorgan Chase Bank, N.A.,* Case No. 22-CV-10019 (JSR). Defendant must seek permission from the district court overseeing it, which in this instance is Judge Jed S. Rakoff. Defendant knows this, yet improperly asks Your Honor to issue frivolous nonparty subpoenas just days after the Court denied his motion to dismiss, to circumvent Judge Rakoff. While Defendant speculates to this Court about what did or did not take place before Judge Rakoff, Defendant fails to cite to a single item on the docket from *Doe 1, et al., v. JPMorgan Chase Bank*, much less point this Court to anything on the record to support nonparty subpoenas to multiple law firms in this action. Indeed, Defendant wants this Court to authorize subpoenas to the Class Counsel serving in *Doe 1, et al., v. JPMorgan Chase Bank*, as well as the Claims Administrator for the Class simply because Black's latest conspiracy theory is that an "evidentiary hearing" was held about Defendant Black. If Black believes that Judge Rakoff did or did not do something in *Doe 1, et al., v. JPMorgan Chase Bank* concerning Black, the only proper course is to make a request to Judge Rakoff. Defendant feigns ignorance of the correct process and wants this Court to circumvent another court's discretion. Respectfully, it is Judge Rakoff's decision as to whether any information can be obtained from *Doe 1, et al., v. JPMorgan Chase Bank* as part of Defendant's discovery in this action. It is fundamentally improper to seek an end-run around a matter Judge Rakoff has handled for almost two years by attempting to subpoena various law firms that participated in the matter by going to a different district court for permission.





This recent request by Defendant, requiring the Court to devote its already limited time and resources to, is one more example of Black's belief that he is above the rules everyone else must abide by. We respectfully ask Your Honor to deny Defendant's request to issue the three nonparty subpoenas now or at any subsequent date and defer to Judge Rakoff's decision on this issue.

**III. Black's Outlandish Conspiracy Theories Do Not Provide a Basis For Nonparty Subpoenas**

From the onset of this case, Defendant has presented the Court with outlandish conspiracy theories as to why Plaintiff filed this lawsuit seeking to hold him accountable for acts of sexual violence she alleges he committed against her as a minor. Black will do anything to deflect attention from his own conduct and has created absurd theories for why Plaintiff filed the action, all centering around his delusion that Wigdor LLP ("Wigdor") is out to destroy his reputation. To deflect from allegations of his sexual violence, Black asserted a RICO criminal enterprise theory against Wigdor and its former client, Guzel Ganieva, who alleged claims against Black for defamation and under the Gender Motivated Violence Act, in a lawsuit entitled, *Leon Black v. Guzel Ganieva, Wigdor LLP, and John Does 1-3*, Index No. 21 Civ. 08824, in the United States District Court for the Southern District of New York. Black alleged that Wigdor and unknown persons (the "RICO defendants") used lies and falsehoods about Black in a concerted effort to "destroy his reputation." On June 30, 2022, District Judge Paul A. Engelmayer dismissed Black's lawsuit with prejudice, and held that the RICO allegations were "glaringly deficient in fundamental respects." 619 F. Supp. 3d 309, 351 n.24 (S.D.N.Y. 2022). The District Court held that it would be "futile to allow repleading" and denied Black's request to amend his complaint a second time. *Id*. On March 2, 2023, a three-judge panel of the Second Circuit unanimously upheld the District Court's dismissal in its entirety and its decision to deny Black the opportunity to file a second amended complaint. *See Black v. Ganieva, et al.*, No. 22 Civ. 1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

Black elaborated on this conspiracy theme, and its parallel claim that his version of events was the "truth," and everything alleged about his sexual violence was false, when he filed two state court complaints against Wigdor in connection with their representation of women who alleged he sexually assaulted them, including Plaintiff in this action. *See Black v. Wigdor LLP, et al.,* Index No. 158062/2023 (N.Y. Sup. Ct. 2023); *Black v. Ganieva et al.,* Index No. 654108/2022 (N.Y. Sup. Ct. 2022). Black mistakenly believes that his lawsuits claiming that Plaintiff's counsel is engaged in multiple "manufactured" claims of sexual assault against him serve as a basis for nonparty subpoenas to Wigdor, and to law firms in *Doe 1, et al., v. JPMorgan Chase Bank.*[1] They do not.[2] His strategy centers on a course of conduct to malign, shame, blame and destroy the

---

[1] Black conveniently leaves out the fact that an appeal of Ms. Ganieva's case is scheduled to be heard by the New York Appellate Division, First Department on October 9, 2024, and that Wigdor has filed a notice of appeal in Black's retaliatory malicious prosecution action. *See Ganieva v. Black,* Appellate Case No. 2023-05694 (1st Dep't); *Black v. Ganieva et al.,* Index No. 158062/2022 (N.Y. Sup. Ct. 2022), Dkt. No 74 (Notice of Appeal to 1st Dep't).

[2] Black's defense against the allegations of sexual violence is essentially a strategy of filing SLAPP claims that are clearly prohibited by New York State's "Strategic Lawsuits Against Public Participation"





women who have dared to publicly seek recourse through our legal system, including Plaintiff, as well as Wigdor, the law firm hired to represent them. Black knows that if he filed counterclaims in the instant case for defamation or malicious prosecution, he would be met immediately with New York's anti-SLAPP law. Instead, he believes he can circumvent the law by filing separate lawsuits. Black's conspiracy theories are all the same – he wants to divert attention away from his own conduct, especially his well-documented close personal friendship with the now-deceased Jeffrey Epstein ("Epstein"). Black cannot escape from the truth that he inexplicably paid Epstein at least $178 million and then paid another $62.5 million in 2023 to the Attorney General of the U.S. Virgin Islands ("USVI") for a total of at least $240.5 million he paid relating to Epstein.[3]

Continuing his pattern of setting forth outrageous and unsupported theories as to the legitimacy of the instant action before Your Honor, Black contends that Plaintiff's proposed amended complaint, ECF No. 103 is part of another conspiracy concerning an entirely separate action before Judge Rakoff. While Black's letter makes clear that he inappropriately inserted himself into those proceedings to try to discredit Plaintiff, Black's suggestion that this is the impetus for Plaintiff's clarifying proposed amended complaint is unfounded. Plaintiff's proposed changes conform her allegations to contemporaneous journal records kept by Plaintiff which were uncovered after the filing of the initial Complaint in this case. Plaintiff's theory of the case, that she was trafficked by Epstein to Black, who then violently raped her, has not changed, and nothing in the proposed amended complaint changes the gravamen of her claims against Black.

We thank the Court for its attention to this matter.

Respectfully submitted,

Jeanne M. Christensen

cc: All counsel of record (*via* ECF)

---

or "SLAPP" statute (Civil Rights Laws § 76-a and § 70-a) against the victims themselves, by bringing lawsuits against the victims' lawyers.

[3] On January 20, 2023, Black engaged in a mediation session with the USVI wherein it was agreed that Black would pay $62.5 million to settle the USVI's potential legal claims against him in connection with Epstein's Little St. James. Black refuses to answer how or why he voluntarily agreed to the $62.5 million settlement, acting as if such a substantial settlement by a private citizen with the Attorney General of the USVI is normal.