**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

          Plaintiff,

     v.

LEON BLACK,

        Defendant.

Case No. 1:23-cv-06418

**ORAL ARGUMENT REQUESTED**

**DEFENDANT LEON BLACK'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR A STAY OF DISCOVERY**

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
(213) 399-2132

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, New York 10010
(212) 849-7000

PERRY LAW
E. Danya Perry
Peter A. Gwynne
157 East 86th St., 4th Floor
New York, NY 10028
(212) 213-3070

*Counsel for Defendant Leon Black*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND AND PROCEDURAL POSTURE ....................................................3

I.    PLAINTIFF ALLEGES ABUSE AS PART OF HER ALLEGED
      TRAFFICKING BY EPSTEIN..........................................................................3

II.   PLAINTIFF AND COUNSEL LIE TO THIS COURT. ....................................5

III.  DEFENDANT 'S MOTION TO DISMISS. ......................................................9

ARGUMENT ..............................................................................................................10

IV.   DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF
      DEFENDANT'S MOTION TO DISMISS ......................................................10

      A.    Legal Standard .....................................................................................10

      B.    Plaintiff's Claim Is Meritless ..............................................................11

      C.    Fact Discovery Would Impose A Substantial Burden ..........................11

      D.    Plaintiff Faces No Risk Of Unfair Prejudice In The Event Of A Stay .................13

      E.    In The Alternative, Discovery Should Be Limited To Threshold Issues
            Underpinning Plaintiff's Claims ..........................................................13

CONCLUSION............................................................................................................14

# **TABLE OF AUTHORITIES**

## **Cases**

*In re Agent Orange Prod. Liab. Litig.*,
517 F.3d 76 (2d Cir. 2008).................................................................13

*Chrysler Cap. Corp. v. Century Power Corp.*,
137 F.R.D. 209 (S.D.N.Y. 1991) ...................................................11, 12

*Spiro ex rel. Estate of Torres v. Healthport Technologies, LLC*,
73 F. Supp. 3d 259 (S.D.N.Y. 2014)...................................................11

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009)........................................10

*New York by James v. Pennsylvania Higher Educ. Assistance Agency*,
2020 WL 605944 (S.D.N.Y. Feb. 7, 2020)...........................................10

*O'Sullivan v. Deutsche Bank AG*,
2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018)........................................10

*Rezende v. Citigroup Glob. Markets Inc.*,
2011 WL 1584607 (S.D.N.Y. Mar. 11, 2011) (ordering limited discovery into
allegations of fraud on the court), *report and recommendation adopted in
part*, 2011 WL 1584603 (S.D.N.Y. Apr. 27, 2011) ................................13

*Rivera v. Heyman*,
1997 WL 86394 (S.D.N.Y. Feb. 27, 1997)...........................................13

*Sec. & Exch. Comm'n v. Cohen*,
332 F. Supp. 3d 575 (E.D.N.Y. 2018) ...........................................10, 12

*Spinelli v. Nat'l Football League*,
2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015)........................................13

*Trs. of New York City Dist. Council of Carpenters Pension Fund v. Showtime on
Piers LLC*,
2019 WL 6912282 (S.D.N.Y. Dec. 19, 2019) ....................................11, 12

## **Statutes**

Federal Rule of Civil Procedure 26(c) .................................................10

Defendant respectfully submits this memorandum of law in support of his motion for a stay of discovery pending the Court's resolution of his Motion to Dismiss.

## PRELIMINARY STATEMENT

This case is cratering on both factual and legal grounds, both of which require staying discovery until threshold issues are resolved.  Regarding the facts, Plaintiff and her counsel are perpetrating a fraud on this Court by recklessly publishing completely false and egregious allegations that Defendant sexually assaulted a 16-year-old autistic girl with Mosaic Down Syndrome.  All counsel have an obligation to investigate the validity of their claims prior to filing and to speak truthfully before the Court.  This obligation is even more important when alleging the kind of heinous, life-ruining allegations that the Plaintiff advances here.  Yet Plaintiff and her counsel did no such investigation and have not proceeded with candor.

Plaintiff's false allegations, many of which are described in detail in Defendant's motion for sanctions, include claiming that in high school she lived with and was groomed by her cheerleading coach, "Elizabeth," that she was "shipped out" to Jeffrey Epstein's estates on a private plane most weekends resulting in her missing most of her junior year, and that at some point during such trips she was trafficked to and assaulted by Mr. Black.  ECF No. 1 at ¶¶16-18, 44.  Plaintiff and her counsel also falsely claim that Plaintiff has not spoken publicly about the incidents underlying her Complaint.  ECF No. 7 at ¶18.  All of these claims are demonstrably false.  Defendant's initial investigation has already revealed that:

- Plaintiff did not live with "Elizabeth" when she was in high school and did not miss "countless Fridays and Mondays from her junior year of high school, almost causing her to fail";

  o In fact, in 2020, as an adult, Plaintiff posted glowing comments about her former cheerleading coach, explaining that the coach "█████████████████████████ █████████";

  o And, according to Plaintiff's own mother and sister, Plaintiff lived with them and

1

missed almost no school;

- On information and belief, Plaintiff does not appear in travel or visitor records of the Epstein estate and there are no records at all of Plaintiff on Epstein's flight logs, as there necessarily would be were she telling the truth about her "weekly" trips, and indeed no documentary or other evidence that Plaintiff even met Epstein (let alone Defendant)—all of which is corroborated by the fact that she never brought any claims against the Epstein estate for his alleged conduct toward her; and

- Beginning in approximately ████, Plaintiff frequently tweeted about and spoke about her alleged trafficking and abuse at the hands of Epstein dozens of times on live events on Twitter containing as many as 6,300 viewers.

Regarding the law, as explained in Defendant's Motion to Dismiss, this case could and should properly be decided on preemption grounds without resolving any issues of fact. That alone is sufficient to warrant a complete stay of discovery, because the decades-old claims at issue may be found to be untimely.

In the absence of a stay of discovery, Plaintiff has already made it known that she intends to immediately seek broad discovery, which will be expensive, time consuming and completely unnecessary once Plaintiff's fraudulent claims are fully exposed and/or the Court rules that Plaintiff's claims are untimely. In addition, if Wigdor's past behavior in other matters is prologue, they intend to use discovery as a way to obtain irrelevant tabloid fodder about the Defendant that they can use to further their ongoing campaign to destroy him.

Before subjecting the Defendant to such burdensome and harassing discovery, the Court should stay discovery until after resolution of the motion to dismiss. In the alternative, discovery should be limited or phased so as to first determine whether there even exists a good faith, objectively reasonable basis for the central elements of Plaintiff's already dubious claims. Defendant's initial investigation has already cast serious doubt on the veracity of Plaintiff's foundational allegations in the Complaint, namely, that Plaintiff, as a 16-year-old with autism and Mosaic Down Syndrome, was groomed by her cheerleading coach and trafficked to Jeffrey

Epstein, flying on his private jet and visiting his properties nearly every weekend, including countless Mondays and Fridays when her own family unequivocally says she was in fact in class at her high school.

Accordingly, if any discovery is permitted to proceed at this point, it should be limited to these threshold issues: whether Plaintiff ever even met Epstein; whether she frequently missed school to travel to Epstein's homes, as she claims; whether her medical records confirm that she suffers from many of the various conditions and disabilities she claims; and whether her counsel conducted any pre-filing investigation at all before publishing Plaintiff's outrageous and ruinous allegations.  If Plaintiff's claims have any good faith basis, then she can proceed with her discovery.  If not, as will certainly be the case, then Plaintiff's fraud will be exposed and needless expensive discovery will be prevented.

## BACKGROUND AND PROCEDURAL POSTURE

### I.    PLAINTIFF ALLEGES ABUSE AS PART OF HER ALLEGED TRAFFICKING BY EPSTEIN.

Plaintiff filed her Complaint on July 25, 2023.  The centerpiece of Plaintiff's Complaint—indeed, the very chain of events that allegedly led her to meet Defendant—is her account of being trafficked at the hands of the notorious Jeffrey Epstein.  Plaintiff claims that she has autism and Mosaic Down Syndrome.  ECF No. 1 at ¶10.  She alleges that, when she was 15, she participated in a county cheerleading program for 8-12-year-old girls.  *Id.* ¶¶13-14.  She then alleges that she was groomed by the adult who ran the program, whom Plaintiff refers to as "Elizabeth," and soon began living at Elizabeth's house, while still a high school student.  *Id.* ¶¶15-18.  Plaintiff claims that, while living with Elizabeth, she was subjected to horrific physical, psychological, and emotional abuse.  *Id.* ¶¶19-21, 24-25.  Plaintiff further alleges Elizabeth began "sexually grooming" Plaintiff, including forcing Plaintiff to watch Elizabeth and her "friend" have sex.  *Id.*

¶¶22-23.

Plaintiff alleges that, "in the late summer of 2001," she was taken to "an adult 'party' in a suburb outside of Washington D.C.," where she was introduced to Ghislaine Maxwell. *Id.* ¶¶13, 27-31. "The very next week," Plaintiff alleges, Elizabeth "put Plaintiff on a private plane from Virginia to Palm Beach," where Plaintiff was introduced to Epstein. *Id.* ¶37. Once there, Plaintiff alleges that Maxwell and Epstein "began exposing Plaintiff to their sexual deviance," and Plaintiff was instructed in how to sexually pleasure Epstein. *Id.* ¶¶38-42. Plaintiff alleges that she was thereafter "shipped out" to Epstein's homes in Palm Beach and the U.S. Virgin Islands "[m]ost weekends" to give Epstein massages and, as a result, "missed countless Fridays and Mondays from her junior year of high school, almost causing her to fail." *Id.* ¶¶44-45. Plaintiff also alleges that on two occasions she was "shipped out" to New York City, where she stayed with Epstein and Maxwell at Epstein's townhouse. *Id.* ¶¶55-59.

Plaintiff alleges that Epstein soon began "hand[ing] [Plaintiff] off" to other men to give them massages and have sexual intercourse. *Id.* ¶¶46-47. Plaintiff does not identify any of these other men. Plaintiff would thereafter be "shipped back" to Elizabeth, who would subject Plaintiff to "intensified physical and psychological abuse" if she did not get a "good report" from Epstein and Maxwell. *Id.* ¶¶48-49. Each time, Epstein and his associates would send Plaintiff back to Elizabeth with an envelope of money, in an apparent payment for their use of Plaintiff. *Id.* ¶¶50-52.

Plaintiff alleges that, after at least nine months of horrific grooming, abuse, and trafficking, she met Defendant for the first and only time. As described in the Complaint, Epstein played a major role in this encounter. Plaintiff alleges that, "[i]n or around late spring of 2002 or early summer," she was driven to New York to meet Epstein's "special friend." *Id.* ¶60. Once at

Epstein's townhouse, Plaintiff alleges that Epstein personally introduced Plaintiff to Defendant, and instructed her to give Defendant "the same kind of 'massage treatment' that she gives Epstein." *Id.* ¶¶63, 66. Plaintiff alleges that, once in the massage room, Defendant violently raped her. *Id.* ¶¶67-80. The allegations about Defendant (and indeed, about Epstein, whom, on information and belief, Plaintiff never met) are patently false. Plaintiff does not allege that she ever encountered Defendant again. Plaintiff alleges that Epstein continued to traffic her to other men after this alleged assault, *id.* ¶83, but she does not identify any of these other men or state when or how she escaped from Epstein's fold. Nor has she ever asserted any claims against Epstein, his estate, or Maxwell, despite the highly publicized and accessible claims process created for Epstein's true victims. Estrich Decl. ¶34.

## II.    PLAINTIFF AND COUNSEL LIE TO THIS COURT.

A quick investigation into Plaintiff, which apparently her counsel did not conduct prior to bringing this complaint, reveals a history of lies and fabrication, as partially chronicled in Defendant's Rule 11 motion, ECF No. 30 at 8. For example, Plaintiff alleges that she began living "nearly full-time" with her cheerleading coach, Elizabeth, while Plaintiff was still in high school. ECF No. 1 at ¶18. That was news to her parents and ▇▇▇▇ who remembered that she did not miss high school for any significant amounts of time, in fact drove her ▇▇▇▇▇▇▇ to school nearly every day ▇▇▇▇▇▇▇▇▇▇▇▇▇, and did not leave the country except on one occasion, to the Bahamas. ECF No 31 at ¶13. And she never claimed to have autism or Down Syndrome, never displayed any symptoms or behaviors of either condition, and was never diagnosed with either (let alone any of the other serious maladies she has elsewhere made claim to), during her childhood. *Id.* Indeed, Plaintiff only first made such claims as an adult, after observing that others were treated sympathetically, receiving positive support and attention, in relation to those conditions. *Id.* It took Defendant's investigators very little time to learn these facts, which Wigdor,

at best, willfully ignored.

On August 25, 2023, Defendant's counsel sent a Rule 11 letter to Plaintiff and her counsel, warning that the people closest to Plaintiff had contradicted or cast serious doubt on the entire factual basis of their Complaint. Wigdor refused to withdraw the Complaint or change even a word of it, claiming that they were entitled to ignore all of the waving red flags and to refuse to conduct the objectively reasonable investigation that the law requires, especially for salacious charges such as these. Notably, in their opposition to Defendant's Rule 11 motion, ECF Nos. 59, 60, Wigdor never once pointed to *any* investigation it had done to confirm their client's discredited account.

Since the filing of Defendant's Rule 11 motion, even more of Plaintiff's lies have come to light. Plaintiff attempted to spoliate her extensive Twitter history by deleting her account a few months before filing the Complaint. Estrich Decl. ¶5. Despite these efforts to destroy evidence relevant to her lawsuit before filing it, some of Plaintiff's tweets are publicly available through the Internet Archive. These tweets contradict specific allegations in Plaintiff's complaint and indicate an intent to defraud the Court. They also indicate that Plaintiff often fabricates her own reality, just as her family members told Defendant's investigators. She graphically and frequently claims conditions, illnesses, and difficult life circumstances in order to garner online attention and sympathy from her many social media followers.

In sharp contrast to the Complaint, as an adult in 2020, Plaintiff tweeted fondly of her former cheerleading coach, "██████████████████████

██████" Estrich Decl. ¶7. This praise and these fond memories are consistent with the information that "Elizabeth" provided during her interview with Defendant's investigators (other than Plaintiff ever telling "Elizabeth" that she had autism) and paint a very different picture than

the allegations of abuse and trafficking that Doe alleged in the Complaint.  ECF No. 32 at ¶¶6, 9.

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

Plaintiff has also tweeted repeatedly about being diagnosed with numerous serious and rare medical conditions, in addition to being diagnosed with Mosaic Down Syndrome and autism.  *Id.* ¶¶11-14.  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  Her family was unaware of any of these conditions; and they said her claims to have autism and Mosaic Down Syndrome—and displaying characteristic behavioral symptoms for the first time—followed third parties receiving sympathy, support, and attentions when discussing those conditions.  *Id.* ¶13.  Further, Plaintiff's ████████████████████████████████, stated

that Plaintiff only began displaying such behaviors in her twenties, and did so intentionally in order to present herself as a person with autism. *Id.* ¶14.

In the Complaint, Plaintiff alleges that she regularly traveled by plane to Epstein's houses in Palm Beach and the U.S. Virgin Islands. She apparently has also claimed to others that she appears on the Epstein flight logs and personally knows two of his pilots, "Mr. Larry" and "Mr. Gary," who were well acquainted with her. *Id.* ¶32. (Notably, the names of Epstein's pilots—like all the Epstein-related information in the Complaint, is widely publicized.) But according to Defendant's investigation thus far, Plaintiff's name does not appear on a single flight log for Epstein's planes and helicopters. *Id.* ¶33. And despite these allegations, upon information and belief, Plaintiff has not submitted any claim with the Epstein estate. *Id.* ¶34. Plaintiff further claims that she ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiff's Twitter history also exposes blatant false representations to this Court in her motion to proceed anonymously, ECF Nos. 6-11, and Wigdor LLP's ("Wigdor") declaration in support of the motion. Wigdor declares that "[i]n this action, Plaintiff has not spoken publicly about the incidents that underly the causes of action in her Complaint." ECF No. 7 at ¶18. This statement was demonstrably false when Wigdor made it. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Wigdor lied and mischaracterized the facts in other ways, attempting to gain sympathy for their client and to smear Defendant. In a declaration in support of Plaintiff's motion to proceed

anonymously, Wigdor tells the tale of a "large white Suburban: that parked outside Ms. Doe's residence" and remained "just feet from the family's driveway," including a picture of the vehicle. ECF No. 7 at ¶¶5-6 & Ex. 1.  In Plaintiff's memorandum in support of the motion, she explained that one example of the ways that Defendant was "harass[ing] and intimidate[ing]" the Plaintiff was by parking this "large white Suburban . . . just inches from the family's driveway."  ECF Doc. No. 8 at 1.

The entire story is demonstrably false.  In response to the motion, Defendant submitted a sworn statement that no investigator working on Defendant's behalf ever parked the car in question outside of Plaintiff's home.  ECF Doc. No. 15-2 ¶15.  Subsequently, Defendant discovered that the vehicle in question belongs to Plaintiff's neighbors, a young married couple who bought the vehicle a few weeks before Christensen filed the motion and her false declaration.  The couple lives ███ doors down and across the street from Plaintiff.  Estrich Decl. ¶10.  Even though the vehicle has remained with her neighbors for the three months since the motion was filed, Christensen and Plaintiff have made no effort to correct the false statements they made in their filings.

## III.    DEFENDANT 'S MOTION TO DISMISS.

Defendant has moved to dismiss Plaintiff's complaint—which is based on a fictitious sexual assault that allegedly occurred more than 21 years ago, when Plaintiff was a 16-year-old minor—on the basis that it is untimely.  ECF Nos. 40-41.  Plaintiff seeks to overcome that fatal defect by invoking a recently-enacted New York City law that purports to revive otherwise time-barred claims under New York City's Victims of Gender-Motivated Violence Protection Law if they are commenced in a two-year window extending from March 2023 to March 2025.  But, as discussed in Defendant's Motion, that law cannot revive Plaintiff's claim because under the New York Constitution, municipal ordinances may not conflict with the laws of New York State.  While

Defendant's motion is pending, however, Plaintiff has indicated an intent to take aggressive discovery, which, if permitted to proceed, will require significant time and investment preparing harassing discovery related to fake claims that are over two decades old.

## ARGUMENT

## IV.    DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF DEFENDANT'S MOTION TO DISMISS

### A.    Legal Standard

"[U]pon a showing of good cause," the Court has "considerable discretion to stay discovery" under Federal Rule of Civil Procedure 26(c).  *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009).  "In some circumstances," a pending motion to dismiss will constitute "good cause for a protective order staying discovery."  *O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585, at *4 (S.D.N.Y. Apr. 26, 2018) (quotation marks and citation omitted).  "The Court analyzes good cause by application of three factors: (1) whether a defendant has made a strong showing that the [claimant's] claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay."  *New York by James v. Pennsylvania Higher Educ. Assistance Agency*, 2020 WL 605944, at *1 (S.D.N.Y. Feb. 7, 2020) (quotation marks and citation omitted).  Those factors each favor a stay here.

In addition, because "[a]llowing discovery to proceed with respect to claims that appear to be time-barred on the face of a plaintiff's complaint would constitute 'entertain[ing]' those claims," which the statute of limitations "clearly prohibits," courts routinely stay discovery pending the resolution of a motion to dismiss on statute of limitations grounds.  *Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 587 (E.D.N.Y. 2018); *see also Trs. of New York City Dist. Council of Carpenters Pension Fund v. Showtime on Piers LLC*, 2019 WL 6912282, *1 (S.D.N.Y.

Dec. 19, 2019) (staying discovery pending the outcome of a motion to dismiss based on statute of limitations); *Chrysler Cap. Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (same).

### B.    Plaintiff's Claim Is Meritless

Defendant's motion to dismiss makes a strong showing that Plaintiff's claims should be dismissed as untimely as a matter of law.  By Plaintiff's own account her alleged assault occurred more than 21 years ago.  Plaintiff attempts to cure her untimeliness by invoking a recently enacted New York City law that purports to revive otherwise time-barred VGMVPL claims if they are commenced in a two-year window extending from March 2023 to March 2025.  As set forth further in Defendant's memorandum of law in support of his motion to dismiss, New York City's newly enacted law directly contradicts New York State's Child Victims Act ("CVA"), which permitted the specifically defined set of expired claims to be revived only during a two-year window that extended from August 2019 to August 2021.  Under the New York Constitution, municipal ordinances cannot conflict with the laws of New York State.  Thus, the New York City law Plaintiff relies upon is preempted by CVA.  The City cannot countermand the State's judgment by adopting a conflicting revival period for the same claims and neither can Plaintiff.  Plaintiff's claims are accordingly time barred.

### C.    Fact Discovery Would Impose A Substantial Burden

The substantial burden of fact discovery regarding Plaintiff's time-barred claims likewise tips the scales strongly in favor of granting an immediate stay.  The purpose of a statute of limitations is to prevent cases from proceeding where documents and witnesses are too stale to be reliable. *Spiro ex rel. Estate of Torres v. Healthport Technologies, LLC*, 73 F. Supp. 3d 259, 277-78 (S.D.N.Y. 2014) ("[T]he important policy considerations underlying New York's statute of limitations [are] to protect 'parties from the prosecution of stale claims, when, by loss of evidence

from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth.'") (citation omitted). For these reasons, courts regularly stay discovery pending the resolution of a motion to dismiss on statute of limitation grounds. *See Trs. of New York City Dist. Council of Carpenters Pension Fund v. Showtime on Piers LLC*, 2019 WL 6912282, *1 (S.D.N.Y. Dec. 19, 2019) (staying discovery in part pending the outcome of a motion to dismiss based on statute of limitations); *Chrysler Cap. Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (same); *Sec. & Exch. Comm'n v. Cohen*, 332 F. Supp. 3d 575, 587 (E.D.N.Y. 2018) ("[a]llowing discovery to proceed with respect to claims that appear to be time-barred on the face of a plaintiff's complaint would constitute 'entertain[ing]' those claims" which the statute of limitations "clearly prohibits").

Plaintiff has already attempted to notice depositions for Defendant and a non-party. Estrich Decl. ¶2. Both depositions are expected to relate to issues from more than 20 years ago that, as explained in the motion to dismiss, fall outside the statute of limitations period. The depositions, if permitted to proceed, will therefore be unnecessarily costly, time-consuming, and irrelevant. Defendant and non-party witnesses will be forced to sit for depositions regarding decades-old events (or non-events), and will need to gather and pore over documents dating from even before the routine use of email in order to refresh their recollections and prepare for questioning. Without a stay of discovery, Defendant and third parties will incur significant attorneys' fees and costs, and will be forced to sit for depositions regarding events that allegedly occurred far beyond the constraints of anyone's memory. All of this costly and unreliable discovery will be eliminated if the Plaintiff's untimely claims are dismissed. Therefore, Defendant's motion to dismiss, if it is granted (as it should be), will more than just "significantly narrow" the scope of discovery; it will remove the need for discovery altogether, which further supports Defendant's request for a stay.

*Rivera v. Heyman*, 1997 WL 86394, *1 (S.D.N.Y. Feb. 27, 1997).

#### D.    Plaintiff Faces No Risk Of Unfair Prejudice In The Event Of A Stay

There is zero risk of unfair prejudice to Plaintiff, who has already waited 21 years to bring

her claim and is proceeding anonymously, for the moment.  Even if Defendant's motion to dismiss

is not granted, Plaintiff would have the exact same opportunity to continue with depositions and

proceed with fact discovery after the Court's resolution of the motion as she does now.  *See Spinelli*

*v. Nat'l Football League*, 2015 WL 7302266, *2 (S.D.N.Y. Nov. 17, 2015) (granting stay pending

motion to dismiss even though parties were two years into the litigation, holding that "with the

viability of the new Complaint unresolved, a delay in discovery, without more, does not amount

to unfair prejudice").  Accordingly, the third factor also supports a stay.

#### E.    In The Alternative, Discovery Should Be Limited To Threshold Issues Underpinning Plaintiff's Claims

Should the Court allow discovery to proceed, it should be phased or limited to examining

Plaintiff's foundational allegations and determining whether her account has any factual basis, and

understanding Plaintiff's background and motives and what investigation, if any, Wigdor

performed prior to bringing this action.  *See Rezende v. Citigroup Glob. Markets Inc*., 2011 WL

1584607, at *16 (S.D.N.Y. Mar. 11, 2011) (ordering limited discovery into allegations of fraud on

the court), *report and recommendation adopted in part*, 2011 WL 1584603 (S.D.N.Y. Apr. 27,

2011); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (the "district court

has wide latitude to determine the scope of discovery").

As illustrated above, Defendant's initial investigation has revealed Plaintiff's claims to be

false and without any factual basis, and revealed Plaintiff to be a fabulist and attention-seeker with

a long history of making false and contradictory statements to wide audiences.  Despite numerous

opportunities to explain what, if any, diligence it conducted, to this day, Wigdor has refused to

even confirm that it performed any investigation prior to filing these heinous, false allegations.  If any discovery is permitted, it should be limited to threshold issues of Plaintiff's background and motives and the sufficiency of Plaintiff's pre-filing diligence, assuming any diligence was even conducted.[1]  In particular the Court should limit discovery to the following discrete topics: (i) Epstein's records and flight logs, to determine whether Plaintiff's claims on Twitter that she is on the flight logs and that she was trafficked to Epstein are accurate; (ii) Plaintiff's school records to determine the veracity of Plaintiff's claim that she repeatedly missed school for travel to Epstein's homes and almost failed as a result; (iii) Plaintiff's medical records, to clarify what maladies, if any, she suffers from—a topic that, once again, Plaintiff herself has put at issue; and (iv) Wigdor's pre-filing investigation, if any, into Plaintiff's claims and reliability.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion for a stay pending resolution of his motion to dismiss.

---

[1]  Defendant is in possession of direct messages between Plaintiff and third parties who have asked to remain anonymous, we suspect for fear of retaliation.  Targeted discovery would allow such information to be sought under the protection of discovery including a confidentiality order. Estrich Decl. ¶6.

Dated: December 8, 2023
New York, New York

Respectfully,

*/s/ Susan Estrich*
_____

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
Tel: (213) 399-2132
susan@estrichgoldin.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, New York 10010
Tel: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com

PERRY LAW
E. Danya Perry
Peter A. Gwynne
157 East 86th St., 4th Floor
New York, NY 10028
Tel: (212) 213-3070
Facsimile: (646) 849-9609
pgwynne@danyaperrylaw.com
dperry@danyaperrylaw.com

*Counsel for Defendant Leon Black*