**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

              Plaintiff,

      v.

LEON BLACK,

           Defendant.

Case No. 1:23-cv-06418

**ORAL ARGUMENT REQUESTED**

**DEFENDANT LEON BLACK'S MEMORANDUM**
**OF LAW IN SUPPORT OF HIS MOTION TO AMEND**
**THE CAPTION TO DISCLOSE PLAINTIFF'S NAME**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

   I.    PLAINTIFF ALLEGES THAT SHE WAS TRAFFICKED BY EPSTEIN. ..................... 2

   II.    PLAINTIFF REQUESTS AND IS GRANTED PERMISSION TO PROCEED
ANONYMOUSLY BASED ON MISREPRESENTATIONS. ................................................... 4

   III.    DEFENDANT DISCOVERS PLAINTIFF HAS SPOKEN FREQUENTLY AND
PUBLICLY ABOUT EPSTEIN AND HER ABUSE. ............................................................. 6

ARGUMENT ............................................................................................................................. 9

   I.    LEGAL STANDARD.............................................................................................. 9

   II.    All But One Of The Factors Weigh Strongly Against Anonymity.............................. 11

      A.    Plaintiff Has Not Kept Her Identity Confidential....................................... 11

      B.    Defendant Will Be Prejudiced If Plaintiff Continues to Proceed Anonymously. ...... 12

      C.    Plaintiff Has Not Substantiated Any of Her Claims About Alleged Harm If She
Discloses Her Real Name. .................................................................................... 14

      D.    The Remaining Factors Weigh in Favor of Defendant.............................................. 16

   III.    The Sensitive And Personal Nature Of Plaintiff's Claims Is Insufficient To Overcome
The Presumption Of Openness. ........................................................................................ 18

CONCLUSION.......................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Doe 1 v. Branca USA, Inc.*,
  No. 22 Civ. 3806, 2022 WL 2713543 (S.D.N.Y. July 13, 2022) .............................................9

*Doe v. Black Diamond Cap. Mgmt. LLC*,
  No. 22 Civ. 3194, 2023 WL 2648017 (S.D.N.Y. Mar. 27, 2023) ...........................................9

*Doe v. Combs*,
  2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) (Clarke, J.)................................................. *passim*

*Doe v. Freydin*,
  No. 21 Civ. 8371, 2021 WL 4991731 (S.D.N.Y. Oct. 27, 2021) .........................................18

*Doe v. Gooding*,
  No. 20 Civ. 6569, 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022).........................................15

*Doe v. Sarah Lawrence Coll.*,
  No. 22 Civ. 5905, 2022 WL 2866473 (S.D.N.Y. July 20, 2022) .........................................18

*Doe v. Skyline Autos., Inc.*,
  375 F. Supp. 3d 401 (S.D.N.Y. 2019)............................................................................ *passim*

*Doe v. Townes*,
  No. 19 Civ. 8034, 2020 WL 2395159 (S.D.N.Y. May 12, 2020)....................................16, 18

*Doe v. Weinstein*,
  484 F. Supp. 3d 90 (S.D.N.Y. 2020)...............................................................10, 16, 17, 18

*Rapp v. Fowler*,
  537 F. Supp. 3d 521 (S.D.N.Y. 2021)........................................................................... *passim*

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008)...............................................................................................10

*United States v. Pilcher*,
  950 F.3d 39 (2d Cir. 2020)..................................................................................................9

**Statutes & Rules**

28 U.S.C. § 1746....................................................................................................................4

Federal Rules of Civil Procedure Rule 10(a)...............................................................................9

Federal Rules of Civil Procedure Rule 17(a)(1) ..........................................................................9

Defendant Leon Black ("Mr. Black" or "Defendant") respectfully submits this memorandum of law in support of his motion, pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, to amend the caption to disclose Plaintiff Jane Doe's ("Plaintiff") true name.

## PRELIMINARY STATEMENT

Last year, Plaintiff moved the Court to allow her to proceed anonymously as "Jane Doe." In her motion papers, including the declaration that her attorney, Jeanne Christensen, filed in support, Plaintiff and Christensen insisted that Plaintiff had never "spoken publicly about the incidents that underly the causes of action in her Complaint." Defendant and the Court took Plaintiff and Christensen at their word. Defendant did not object to the motion (but reserved the right to revisit it later), and the Court granted it, in heavy reliance on Christensen's declaration and Defendant's consent. Because, among other things, Plaintiff's assertion is a bald-faced lie, Defendant now moves to revise the caption to require Plaintiff to use her real name.

Plaintiff lied about her public statements in the motion papers, and Christensen repeated that lie in her declaration. It is patently and demonstrably false that Plaintiff has "not spoken publicly" about her purported trafficking by Jeffrey Epstein and the abuse that she allegedly faced as a result. Although prior to ▮▮▮▮▮▮ Plaintiff never uttered so much as a word to her family or friends about any abuse or trafficking by Epstein, Plaintiff thereafter repeatedly took to social media and tweeted about her alleged experiences with Epstein. Not content to share this information with her limited group of Twitter followers, she attempted to amplify her message by repeatedly using Epstein-related hashtags and by allying herself with individuals with large Twitter followings who would share her stories about Epstein with an even larger audience.

She also spoke at various live events on Twitter Spaces on more than ***four dozen*** occasions with as many as 6,300 viewers. Witnesses who attended some of these events recall that she usually spoke about her experiences as a purported Epstein survivor. On at least two occasions of which

we are aware, she provided the few specific allegations contained in the Complaint about Defendant, by name, to people that she had never met in person and only was aware of from social media.

There were other lies in Plaintiff's motion and repeated in Christensen's declaration. In addition to completely mischaracterizing the voluntary interviews that Defendant's investigators conducted with Plaintiff's family, Christensen and Plaintiff told the harrowing tale of a suspicious white Chevrolet Suburban that menacingly parked near Plaintiff's home, which they claimed was an attempt at intimidation by Defendant. That was another lie. The vehicle belongs to Plaintiff's neighbors, who had recently purchased it.

Plaintiff is a known pathological liar, and Plaintiff's lies about her public silence warrant revoking her anonymous status. ***Nine of the ten*** factors generally considered in analyzing the issue now weigh toward naming the Plaintiff, and it is black letter law that the tenth—the highly sensitive, personal nature of the allegations—is insufficient to support anonymity standing alone, a principle this Court recently reaffirmed. *Doe v. Combs*, 2024 WL 863705, at \*3 (S.D.N.Y. Feb. 29, 2024) (Clarke, J.). That, along with the fact that Defendant has revoked his consent to the motion to anonymize because of Plaintiff's fraudulent papers, leave no legal basis for the Court to continue to allow Plaintiff to proceed as "Jane Doe."

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PLAINTIFF ALLEGES THAT SHE WAS TRAFFICKED BY EPSTEIN.

On July 25, 2023, Plaintiff filed her complaint. ECF Doc. No. 1 ("Compl."). The Complaint tells a lurid story of abuse, grooming, and sex trafficking, first by Plaintiff's cheerleading coach, "Elizabeth," and then by Jeffrey Epstein and his cohort of notorious associates. Plaintiff alleges that, as part of this lengthy and elaborate trafficking conspiracy, Epstein facilitated a single encounter culminating in a heinous sexual assault allegedly at the hands of Mr. Black—the only

defendant in this action.

Plaintiff alleges that, "in the late summer of 2001," she was taken to "an adult 'party' in a suburb outside of Washington D.C.," where she was introduced to Ghislaine Maxwell. *Id.* ¶¶ 13, 27-31. "The very next week," Plaintiff alleges, she was "put" on "a private plane from Virginia to Palm Beach," where Plaintiff was introduced to Epstein. *Id.* ¶ 37. Once there, Plaintiff alleges that Maxwell and Epstein "began exposing Plaintiff to their sexual deviance," and Plaintiff was instructed in how to sexually pleasure Epstein. *Id.* ¶¶ 38-42. Plaintiff alleges that she was thereafter "shipped out" to Epstein's homes in Palm Beach and the U.S. Virgin Islands "[m]ost weekends" to give Epstein massages and, as a result, "missed countless Fridays and Mondays from her junior year of high school, almost causing her to fail." *Id.* ¶¶ 44-45. Plaintiff also alleges that on two occasions she was "shipped out" to New York City, where she stayed with Epstein and Maxwell at Epstein's townhouse. *Id.* ¶¶ 55-59.

Plaintiff alleges that Epstein soon began "hand[ing] [Plaintiff] off" to other men to give them massages and have sexual intercourse. *Id.* ¶¶ 46-47. Plaintiff does not identify any of these other men. Plaintiff would thereafter be "shipped back" to Elizabeth, who would subject Plaintiff to "intensified physical and psychological abuse" if she did not get a "good report" from Epstein and Maxwell. *Id.* ¶¶ 48-49. Each time, Epstein and his associates would send Plaintiff back to Elizabeth with an envelope of money, in an apparent payment for their use of Plaintiff. *Id.* ¶¶ 50-52.

Plaintiff alleges that, after at least nine months of horrific grooming, abuse, and trafficking, she met Defendant for the first and only time. As described in the Complaint, Epstein played a major role in this encounter. Plaintiff alleges that, "[i]n or around late spring of 2002 or early summer," she was driven to New York to meet Epstein's "special friend." *Id.* ¶ 60. Once at

Epstein's townhouse, Plaintiff alleges that Epstein personally introduced Plaintiff to Defendant, and instructed her to give Defendant "the same kind of 'massage treatment' that she gives Epstein." *Id.* ¶¶ 63, 66. Plaintiff alleges that, once in the massage room, Defendant violently raped her. *Id.* ¶¶ 67-80. Plaintiff does not allege that she ever encountered Defendant again. Plaintiff alleges that Epstein continued to traffic her to other men after this alleged assault, *id.* ¶ 83, but she does not identify any of these other men or state when or how she escaped from Epstein's fold.

## II.    PLAINTIFF REQUESTS AND IS GRANTED PERMISSION TO PROCEED ANONYMOUSLY BASED ON MISREPRESENTATIONS.

In the Complaint, Plaintiff noted that she intended to file a motion to proceed anonymously. Compl. at 1 n.1. On August 10, 2023, Plaintiff filed that motion, including a declaration in support from Christensen. ECF Doc. Nos. 6-11 (the "Anonymity Motion").[1] Both the motion and Christensen's declaration contained several blatant lies, misrepresentations, and mischaracterizations, many of which are discussed in detail in Defendant's motion to stay discovery. *See* ECF Doc. Nos. 75, 77. Two of those misrepresentations are of particular relevance to this motion.

First, Christensen declared that "[i]n this action, Plaintiff has not spoken publicly about the incidents that underly the causes of action in her Complaint." ECF Doc. No. 7 ¶ 18. This statement is demonstrably false. As explained in detail below, for more than a year prior to filing her Complaint, Plaintiff made numerous and frequent public statements on Twitter that discuss her purported trafficking and sexual abuse as an underage victim of Jeffrey Epstein, often using Epstein-related hashtags to amplify statements. She also spoke publicly about her trafficking and abuse at the hands of Epstein dozens of times during live events on Twitter. ECF Doc. Nos. 76

---

[1] Notably, that declaration was not submitted under penalty of perjury, as required. See 28 U.S.C. § 1746. We are left to wonder why that was.

(sealed), 78 (redacted) ("Estrich Decl.") ¶¶ 23-31. On at least two separate occasions that Defendant is currently aware of, Plaintiff also identified Mr. Black to individuals that she knew only through Twitter, relaying allegations substantially similar, if not identical to those in the Complaint. Declaration of Carlos Melendez dated October 3, 2024 ("Melendez Decl.") ¶ 12.

Second, Christensen misrepresented and mischaracterized facts to suggest that Defendant was supposedly "harass[ing] and intimidate[ing]" Plaintiff. ECF Doc. No. 8 at 1. Among other things, she referred to a "large white Suburban" that "parked outside Ms. Doe's residence" and remained "just feet from the family's driveway,"[2] and included a picture of the vehicle. ECF Doc. No. 7 ¶¶ 5-6 & Ex. 1. As Defendant has explained more than once, ECF Doc. Nos. 15, 75, 77, the implication that Defendant was behind this incident is demonstrably false. Defendant has submitted a sworn statement that no investigator working on Defendant's behalf ever parked the car in question outside of Plaintiff's home, ECF Doc. No. 15-2 ¶ 15, and has subsequently learned that that the vehicle in question belongs to Plaintiff's neighbors, ECF Doc. Nos. 75, 77, at 9.

Christensen also suggested that investigators working on Defendant's behalf inappropriately questioned and attempted to intimidate Plaintiff's immediate family. ECF Doc. No. 7 ¶¶ 7-14; ECF Doc. No. 8 at 1-2. This story, too, is false. As Defendant has explained previously, ECF Doc. Nos. 15, 15-2, the investigators working on Defendant's behalf were at all times polite, respectful, and professional. Plaintiff has essentially conceded as much, as she has never subsequently contested the sworn testimony of Mr. Melendez, the lead investigator. Nevertheless, Christensen's falsehood-filled declaration remains on the public docket.

On August 14, 2023, Defendant submitted his response to the Anonymity Motion. ECF Doc. No. 15. In his response, Defendant explained that he did not oppose Plaintiff's request for

---

[2] Which somehow became "just inches from the family's driveway" in Plaintiff's memorandum of law. ECF Doc. No. 8 at 1.

anonymity at that time but noted that it "is possible that the time will come" when he would oppose the motion. *Id.* at 8.

On August 18, 2023, the Court granted the Anonymity Motion. ECF Doc. No. 16. In addition to noting the highly sensitive and personal nature of the litigation and that Plaintiff's name had been disclosed to Defendant, the Court cited the now-debunked claim that "Plaintiff has not spoken publicly about the incidents that underly the cause of action in the Complaint," citing the false statement in Christensen's declaration, and "accord[ed] substantial weight to the fact that Defendant [did] not oppose Plaintiff's request for anonymity." *Id.* at 3. The former point is demonstrably false, and the latter is no longer the case.

## III.  DEFENDANT DISCOVERS PLAINTIFF HAS SPOKEN FREQUENTLY AND PUBLICLY ABOUT EPSTEIN AND HER ABUSE.

Contrary to the statement in Christensen's declaration, Plaintiff has repeatedly spoken publicly about the incidents that underly the cause of action in the Complaint. Although she said nothing about alleged abuse by Epstein until ▮▮▮▮,[3] she has since repeatedly posted and spoken about her alleged trafficking by Epstein as a child and the abuse that occurred as a result. Plaintiff made these posts using a Twitter handle that matches the current version of what Plaintiff considers her name, and had previously used a handle—on the same account—that reflected her true last name. Estrich Decl. ¶ 24. Not content to relay these messages to her followers, she used various methods to amplify her online voice, such as including hashtags such as "#Epstein" and "#JeffreyEpstein" to increase her audience, and by connecting with various Twitter users with larger followings who related her messages to their followings. Estrich Decl. ¶ 23. In addition, on

---

[3] Plaintiff's family members confirm that she never previously claimed any connection whatsoever to Epstein. *See, e.g.*, ECF Doc. No. 15-2 at ¶ 14. In ▮▮, Plaintiff posted about Epstein on social media without ever mentioning her alleged trafficking—in sharp contrast to her later behavior. *See, e.g.*, https://twitter.com/▮▮▮▮/status/▮▮▮▮

at least two occasions that we know of so far, Plaintiff relayed the specific allegations against Defendant (using his name) to other Twitter users that she had never met in real life.  Melendez Decl. ¶ 12.

Although Plaintiff deleted her Twitter account in approximately ███████, not long before filing this Complaint,[4] many of her posts are available via the Internet Archive, the so-called "wayback machine." References to Twitter posts in this memorandum refer to the posts as available on that database (https://web.archive.org/).



On ████████████████████████, Ms. Doe tweeted, "███████████████ ████████████████████████████████████████████████████ ██████████████████."[5] ███████████ she posted that she "████████████ ████████████████████████████████████████████████."[6]

On ██████████, while ████████████████████████████████, Ms. Doe tweeted that "███████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████."[7]

On ████████████, Ms. Doe said that ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████[8]

---

[4] The deletion of this account raises serious issues of possible spoliation of evidence that Defendant will address through discovery.
[5] https://twitter.com/████████/status/████████ (Estrich Decl. Ex. 11).
[6] https://twitter.com/████████/status/████████ (Estrich Decl. Ex. 12).
[7] https://twitter.com/████████/status/████████ (Estrich Decl. Ex. 13).
[8] https://twitter.com/████████/status/████████ (Estrich Decl. Ex. 14).

In addition, on **51 occasions** (that we currently know about), Plaintiff spoke during live online meetings on Twitter called "Twitter Spaces" containing as many as 6,300 viewers. Estrich Decl. ¶ 30 and Exs. 10, 15, 16; Melendez Decl. ¶ 10. Individuals who attended these meetings have told Defendant that Plaintiff usually spoke about her trafficking and abuse during these events. Estrich Decl. ¶ 31; Melendez Decl. ¶ 10. Indeed, Plaintiff typically introduced herself during these Spaces event as a "survivor" or "victim" of Epstein, even though these Spaces events were related to politics and had nothing to do with Epstein, sex trafficking, or sexual assault. Melendez Decl. ¶ 10. At least one individual who attended these and other Twitter Spaces events in which Plaintiff participated reported that Plaintiff spoke in a high-pitched voice and displayed childlike mannerisms and affectations in those Spaces events where she introduced herself as a "survivor" or "victim" of Epstein, but spoke in a more typically "adult" voice and did not display those mannerisms and affectations in other Spaces events, which were related to fashion and hosted by a different user. *Id.*

Further, last year, Plaintiff discussed the specific allegations against Defendant, by name, with at least two individuals who Plaintiff knew only from Twitter. *Id.* ¶ 12. She appears to have relayed allegations nearly verbatim from the Complaint to these two individuals via text message. *Id.*

Accordingly, Plaintiff's representation that she has not "spoken publicly about the incidents that underly the causes of action in her Complaint," ECF Doc. No. 7 ¶ 18; ECF Doc. No. 8 at 9, is simply false.

On December 18, 2023, Defendant filed a motion seeking a stay of discovery pending resolution of his motion to dismiss the complaint. ECF Doc. Nos. 75, 77 (the "Stay Motion"). In his Stay Motion (which the Court has since denied as moot), Defendant laid out all of the foregoing

facts, and, notably, exposed Plaintiff's numerous public statements about her alleged trafficking by Jeffrey Epstein, which forms the backbone of her Complaint, as well as her discussion of specific allegations against Defendant with individuals Plaintiff knew only through social media. In their opposition to the Stay Motion, neither Plaintiff nor her attorneys denied or even so much as attempted to address these public statements, nor did they withdraw or retract Ms. Christensen's false statement that "Plaintiff has not spoken publicly about the incidents that underly the causes of action in her Complaint." ECF Doc. No. 7 at ¶ 18.

## ARGUMENT

### I.    LEGAL STANDARD.

Rule 10(a) of the Federal Rules of Civil Procedure requires that "[t]he title of the complaint must name all the parties," and Rule 17(a)(1) states that an action "must be prosecuted in the name of the real party in interest." Accordingly, there is a "strong presumption that litigants must proceed under their true names." *Doe v. Black Diamond Cap. Mgmt. LLC*, No. 22 Civ. 3194, 2023 WL 2648017, at *2 (S.D.N.Y. Mar. 27, 2023); *see also United States v. Pilcher*, 950 F.3d 39, 42 (2d Cir. 2020) ("Identifying parties in a proceeding 'is an important dimension of publicness,' as 'people have a right to know who is using their courts.'" (citation omitted)). "'[P]seudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption.'" *Doe 1 v. Branca USA, Inc.*, No. 22 Civ. 3806, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022) (quoting *Pilcher*, 950 F.3d at 45).

"District courts have discretion to grant an exception to Rule 10(a)" and allow a plaintiff to proceed anonymously "only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 526-27 (S.D.N.Y. 2021) (quotation and citation omitted).

9

The Second Circuit has developed a "non-exhaustive" list of factors that courts should consider in balancing these interests:

> (1)    whether the litigation involves matters that are highly sensitive and of a personal nature,
>
> (2)    whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties,
>
> (3)    whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,
>
> (4)    whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age,
>
> (5)    whether the suit is challenging the actions of the government or that of private parties,
>
> (6)    whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court,
>
> (7)    whether the plaintiff's identity has thus far been kept confidential,
>
> (8)    whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity,
>
> (9)    whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and
>
> (10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008) (quotations and citations omitted). The district court is not required "to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 189, 191 n.4. A plaintiff seeking to proceed anonymously "must base their allegations about these competing interests on more than just mere speculation." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 93 (S.D.N.Y. 2020) (quotation and citation omitted).

## II.    All But One Of The Factors Weigh Strongly Against Anonymity.

All of the relevant factors, except for the nature of Plaintiff's allegations,[9] weigh strongly against permitting her to continue to proceed anonymously. Although Defendant did not oppose Plaintiff's initial motion to proceed anonymously—a fact to which the Court "afforded substantial weight" (ECF Doc. No. 16 at 13)—in light of subsequent developments in this case and additional information that has come to light, Defendant can no longer consent to Plaintiff continuing to proceed anonymously.

### A.    Plaintiff Has Not Kept Her Identity Confidential

In granting Plaintiff's initial motion to proceed anonymously, the Court relied heavily on the representation by Plaintiff's counsel regarding the seventh factor, that "Plaintiff has not spoken publicly about the incidents that underly the cause of action in the Complaint. ECF Doc. No. 16 at 3 (citing Christensen Decl. ¶18). Defendant had no reason to doubt that representation at the time, but subsequent investigation has proven it to be patently false. Since ███, Plaintiff has repeatedly and publicly shared comments on social media about the allegations in her Complaint.

As explained above, since ████████, Plaintiff repeatedly used her Twitter account to communicate about her alleged trafficking by Epstein and the resultant abuse to the broadest possible audience. Her account was not anonymous; rather, she posted under the current version of what Plaintiff considers her name (and had previously used her real last name as part of her Twitter handle, which is easily traceable), and used her real last name in a post that she made on March 6, 2022—four months before the first of her Epstein related posts. Estrich Decl. ¶¶ 18, 24, and Ex. 5. She publicly announced that she was a "████████████████," a "████████████████" and that she was "████████████████████████████," using

---

[9] *See infra*, Section III.

multiple hashtags to amplify her message to the widest possible audience. Plaintiff also connected and engaged with various Twitter users with larger followings (and who were seeking to increase the size of their followings) who relayed her messages to their followers. Estrich Decl. ¶¶ 23, 27-29 and Exs. 11-14.

Additionally, Plaintiff spoke dozens of times during events held on Twitter Spaces. Estrich Decl. ¶ 30; Melendez Decl. ¶ 10. On many, if not most, of those occasions, Plaintiff spoke about her alleged trafficking and abuse. Estrich Decl. ¶ 31; Melendez Decl. ¶ 10. She also specifically named Defendant to at least two individuals whom Plaintiff appears to have known only through social media, relaying allegations about the Defendant nearly identical to what she would later allege in her the Complaint. Melendez Decl. ¶ 12. Plaintiff has not kept her identity confidential, and Christensen's declaration to the contrary is, at best, factually incorrect, and at worst, intentionally misleading.

**B.      Defendant Will Be Prejudiced If Plaintiff Continues to Proceed Anonymously.**

Permitting Plaintiff to continue to proceed anonymously will prejudice Defendant in two distinct ways. First, Defendant will be (and has been) prejudiced in his ability to collect information from third parties. During his initial investigation, Defendant has had to exercise extraordinary caution in reaching out to some third parties, and has refrained from contacting others, out of an abundance of caution and to avoid violating even the spirit of the Court's order permitting Plaintiff to proceed anonymously. For example, Defendant's efforts to contact Plaintiff's social media contacts have been limited and hindered by the anonymity requirement. These contacts are valuable sources of information, because Plaintiff discussed with them, among other things, her alleged trafficking by Epstein, her litany of alleged medical conditions, Defendant's name and the specific allegations made against him in the Complaint, and accounts of her past that differ considerably from her story in the Complaint. Similar information is likely

known by other social media contacts, not to mention other third parties who have communicated with Plaintiff.

In her initial motion to proceed anonymously, Plaintiff asserted that Defendant will not be prejudiced in conducting discovery because Defendant is already aware of Plaintiff's real name. *See* ECF Doc. No. 8 at 8. But the court in *Rapp* rejected this exact reasoning:

> Spacey has shown that he would be prejudiced during discovery because C.D.'s use of a pseudonym likely would prevent persons with information about C.D. or his allegations that would be helpful to Spacey's defense, but that now are unknown to Spacey, from coming forward. If they do not know who this accuser is, they likely would have no way of knowing that their information would be pertinent. *Contrary to C.D.'s assertions, this asymmetry in fact-gathering would not be avoided by the fact that C.D. already has provided Spacey with his name*. . . . Highly publicized cases can cause unknown witnesses to surface. By keeping C.D.'s identity confidential, information about only one side may thus come to light. This not only would prejudice Spacey, but would hinder the judicial interest in accurate fact-finding and fair adjudication.

*Rapp*, 537 F. Supp. 3d at 531 (emphasis added) (quotation and citation omitted). This Court held similarly in a recent case, noting that the "asymmetry in fact-gathering" that results from one party's anonymity "is more profound in cases involving substantial publicity, because information about only one side may come to light as a result." *Doe v. Combs*, No. 23 Civ. 10628, 2024 WL 863705, at *4 (S.D.N.Y. Feb. 29, 2024) (Clarke, J.) (quotation and citation omitted). Because public lawsuits often cause unknown witness to come forward, "[p]ermitting Plaintiff to remain anonymous undermines Defendants' ability to discover relevant information about Plaintiff." *Id.*

Second, Defendant has already been and will continue to be prejudiced by the reputational damage from Plaintiff's heinous allegations. As other courts in this District have explained, "[i]nformation and allegations that are highly sensitive and of a personal nature can flow both ways." *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019). That is, the very allegations that Plaintiff contends entitle her to anonymity also expose Defendant to stigma and

13

public opprobrium, which is harder to mitigate against while Plaintiff remains anonymous. *See Rapp*, 537 F. Supp. 3d at 531.

Furthermore, numerous courts in this District have held that defendants are prejudiced when they are "required to defend themselves publicly," while plaintiffs are permitted to "make[] accusations from behind a cloak of anonymity." *Combs*, 2024 WL 863705, at *4 (citation omitted); *accord Rapp*, 537 F. Supp. 3d at 531-32; *Skyline*, 375 F. Supp. 3d at 407. Plaintiff has made serious allegations accusing Defendant of reprehensible conduct. She has therefore put her credibility directly at issue, *see Combs*, 2024 WL 863705, at *4, and "[f]airness requires that [she] be prepared to stand behind [her] charges publicly," *Rapp*, 537 F. Supp. 3d at 532 (citation omitted). Permitting her to remain anonymous will continue and compound the prejudice to Defendant. Accordingly, this factor too weighs against Plaintiff's continued anonymity.

### C. Plaintiff Has Not Substantiated Any of Her Claims About Alleged Harm If She Discloses Her Real Name.

In her initial motion to proceed anonymously, Plaintiff asserted that she should be permitted to proceed anonymously because disclosing her identify would "spark more trauma" and cause what she variously described as "mental harm" and "extreme psychological distress." ECF Doc. No. 8 at 7. She further asserted that the risk of retaliation by Mr. Black also weighed in favor of proceeding anonymously. *Id.* at 8. Plaintiff is mistaken on both counts.

"Courts in this District have held that speculative claims of physical or mental harms are insufficient to bolster a request for anonymity." *Skyline*, 375 F. Supp. 3d at 406 (citing *Michael v. Bloomberg L.P.*, No. 14 Civ. 2657, 2015 WL 585592 (S.D.N.Y. Feb. 11, 2015)). Accordingly, "[w]here a plaintiff claims that disclosure will harm that person's mental health, courts in this Circuit look for corroboration from medical professionals that detail the risk to plaintiff." *Combs*, 2024 WL 863705, at *3 (collecting cases). But all Plaintiff has offered to date are speculative,

14

unsubstantiated claims that she will suffer harm if her identify is disclosed. She has not submitted

any medical documentation in support of her claims (or even averred that she would be able to),

*see id.*; *Skyline*, 375 F. Supp. 3d at 406; *Doe v. Gooding*, No. 20 Civ. 6569, 2022 WL 1104750, at

*6 (S.D.N.Y. Apr. 13, 2022), and even the dubious and unsworn declaration from Christensen

stops short of making any such factual assertion, ECF Doc. No. 7. Under settled law, this is

insufficient. Moreover, Plaintiff contends that "having [her] experiences played out in a public

forum could spark more trauma," ECF Doc. No. 8 at 7, but Plaintiff has already thrust herself into

the public discourse (not to mention the discourse on Twitter) by making heinous *public*

allegations about Defendant in her Complaint, and should not be heard to complain about

"unwanted attention from the media," *id.*, especially given her attorneys' extensive efforts to

publicize her allegations.

      As for Plaintiff's claims about retaliation, they are completely unfounded. Defendant

showed in his prior submission that Plaintiff's assertions were overblown and, in many cases,

false. ECF Doc. No. 15 at 3-5. The unrebutted, sworn testimony of Mr. Melendez showed that

Defendant's investigators were at all times entirely professional, never coercive, and that all

witness statements were obtained knowingly and voluntarily. *See* ECF Doc. No. 15-2, ¶¶7-13.

As explained above, the "large white Suburban" allegedly parked either inches or feet outside of

Plaintiff's residence, which featured so prominently in Plaintiff's prior motion and Ms.

Christensen's declaration, in fact belonged to a neighbor.

      Furthermore, Plaintiff has offered nothing whatsoever to show that disclosing her name

to the public creates any risk of retaliation. Defendant already knows Plaintiff's identity—

whether she remains anonymous to the public is thus irrelevant to any risk of retaliation *by*

*Defendant*. *See Gooding*, 2022 WL 1104750, at *5 ("It is self-evident that the risk of retaliation

from Defendant himself would not increase because Defendant already know[s] Plaintiff's real name and identity." (alteration in original) (quotation and citation omitted)); *Weinstein*, 484 F. Supp. 3d at 96 ("Keeping Plaintiff's name confidential from the public does nothing to address her concern about the possibility of private retaliation."). In all events, Plaintiff has offered only speculation and conjecture about retaliation, and hardly the "history of substantiated prior action" necessary to tip this factor in her favor. *Doe v. Townes*, No. 19 Civ. 8034, 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020).

> **D.    The Remaining Factors Weigh in Favor of Defendant.**

The remaining *Sealed Plaintiff* factors all weigh toward amending the caption to remove Plaintiff's pseudonym.

The fourth factor, whether Plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of her age, does not favor anonymity. Plaintiff is an adult now, and the fact that she was a minor when she was allegedly assaulted does not warrant special treatment. *See Rapp*, 537 F. Supp. 3d at 530 ("If a plaintiff is not a child, this factor weighs against a finding for anonymity. Though [plaintiff] brings allegations relating to alleged sexual abuse as a minor, he now is an adult in his 50s who has chosen to level serious charges against a defendant in the public eye. This factor weighs in favor of his shouldering the burden of such accusations.") (citation and quotation omitted); *see also Combs*, 2024 WL 863705, at *4 ("Here, although Plaintiff was a minor when the assault allegedly occurred, she is now an adult in her late 30s.").

The fifth factor, too, weighs against anonymity, because the suit is challenging the actions of a private party, not the government. *Combs*, 2024 WL 863705, at *4; *Rapp*, 537 F. Supp. 3d at 532 (Where plaintiff "brings allegations against a private party," the "factor weighs

against his use of a pseudonym."); *Weinstein*, 484 F. Supp. 3d at 96 (same); *Skyline*, 375 F. Supp. at 406-07 (same).

The eighth factor, whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose her identity, also weighs against Plaintiff's continued anonymity. As a general matter, "the public also has a legitimate interest in knowing the underlying facts of a litigation, including the identities of the litigants." *Combs*, 2024 WL 863705, at *5; *Rapp*, 537 F. Supp. 3d at 532 (same). That interest is even stronger here, because Defendant is a prominent public figure, and Plaintiff also implicates Epstein in her account. *See Combs*, 2024 WL 863705, at *1 (claims against Sean Combs); *Rapp*, 537 F. Supp. 3d at 532 (claims against Kevin Spacey); *Weinstein*, 484 F. Supp. 3d at 97 (claims against Harvey Weinstein). Given the newsworthiness of Plaintiff's allegations, the public deserves to know the accuser's identity.

"The ninth factor looks to whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities." *Rapp*, 537 F. Supp. 3d at 532. Here, Plaintiff's allegations of sexual trafficking and sexual assault are "decidedly factual in nature." *Id.*; *see also Skyline*, 375 F. Supp. 3d at 408 (allegations of sexual assault were "factual in nature" and presented no "abstract questions of law"). Accordingly, this factor too weighs against Plaintiff's continued anonymity.

Finally, the tenth factor, whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff, weighs against anonymity. As numerous courts in this District have recognized, there are a variety of ways to protect a plaintiff's interest short of the drastic remedy of blanket anonymity, such as a protective order or confidentiality agreement between the parties, as well as the redaction of particularly sensitive information in public filings. *See,*

17

*e.g.*, *Combs*, 2024 WL2024 WL 863705, at *5; *Rapp*, 537 F. Supp. 3d at 533; *Weinstein*, 484 F. Supp. 3d at 98; *Skyline*, 375 F. Supp. 3d at 408.

### III. The Sensitive And Personal Nature Of Plaintiff's Claims Is Insufficient To Overcome The Presumption Of Openness.

The sole factor that could be seen to weigh in favor of permitting Plaintiff to proceed anonymously is the sensitive and personal nature of her claims. Plaintiff's lurid allegations of sexual trafficking and a heinous sexual assault are, of course, entirely fabricated—as Defendant will demonstrate in due course—but regardless, courts in this District generally agree that "[a]llegations of sexual assault are generally inherently sensitive and private in nature." *Doe v. Sarah Lawrence Coll.*, No. 22 Civ. 5905, 2022 WL 2866473, at *2 (S.D.N.Y. July 20, 2022). However, it is well-settled that this factor, standing alone, is "not sufficient to entitle a plaintiff to proceed under a pseudonym." *Rapp*, 537 F. Supp. 3d at 528; *see also Combs*, 2024 WL 863705, at *3 (noting that this factor is "not dispositive"). And indeed, numerous courts in this District have withheld permission to proceed anonymously in cases involving allegations of sexual harassment and sexual assault. *See, e.g.*, *Combs*, 2024 WL 863705, at *5-6 (denying motion to proceed anonymously by plaintiff alleging trafficking, sexual assault, and gang rape); *Doe v. Freydin*, No. 21 Civ. 8371, 2021 WL 4991731, at *2-3 (S.D.N.Y. Oct. 27, 2021) (denying motion to proceed anonymously by plaintiff alleging sexual assault, sexual harassment, and surreptitious recording); *Townes*, 2020 WL 2395159, at *1, 7 (denying motion to proceed anonymously in case involving sexual assault); *Weinstein*, 484 F. Supp. 3d at 98 (same); *Skyline*, 375 F. Supp. 3d at 405 (S.D.N.Y. 2019) (denying motion to proceed anonymously despite "highly sensitive" allegations of being "sexually assaulted while unconscious" and subject to "sexual harassment following the incident.").

Because the other factors weigh so heavily against anonymity, the nature of Plaintiff's

allegations cannot, standing alone, rebut the presumption of openness in judicial proceedings. Moreover, "[i]nformation and allegations that are highly sensitive and of a personal nature can flow both ways," *Rapp*, 537 F. Supp. 3d at 531 (citation omitted); *Skyline*, 375 F. Supp. 3d at 407, and Plaintiff should not be permitted to use the sensitive and personal nature of her false allegations as both a sword and a shield, particularly where her allegations are presented in a lurid, sensationalized manner clearly aimed at obtaining press coverage and causing maximal damage to Mr. Black's reputation. For all of these reasons, Plaintiff should no longer be permitted to proceed anonymously and should be required to proceed using her true name.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion and amend the caption to disclose Plaintiff's name.

Dated: October 7, 2024               Respectfully submitted,
        New York, New York         */s/ E. Danya Perry*

PERRY LAW
E. Danya Perry
Peter A. Gwynne
445 Park Avenue, 7th Floor
New York, NY 10022
Tel: (212) 213-3070
Facsimile: (646) 849-9609
dperry@danyaperrylaw.com
pgwynne@danyaperrylaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, NY 10010
Tel: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
Tel: (213) 399-2132
susan@estrichgoldin.com

*Attorneys for Defendant Leon Black*