**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
JANE DOE,                                              :
                                                       :
                              Plaintiff,               :        Civil Action No.: 1:23-cv-06418-JGLC
                                                       :
             v.                                        :
                                                       :
LEON BLACK,                                            :
                                                       :
                              Defendant.               :
                                                       :
---------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO FORCE JANE DOE TO DISCLOSE HER FULL NAME PUBLICLY**</u>


**WIGDOR LLP**

Jeanne M. Christensen
Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY .................................................................................................. 2

LEGAL ARGUMENT ........................................................................................................... 3

I.      Applicable Second Circuit Law: *Sealed Plaintiff v. Sealed Defendant* ............................. 3

II.     Defendant Black's Misapplication of *Sealed Plaintiff v. Sealed Defendant* ...................... 4

III.    Defendant's History of Retaliation Illustrates the Extremely High Risk of Harm to Ms. Doe and Innocent Non-Parties ................................................................................................ 7

IV.     Medical Corroboration with a Motion to Proceed Under a Pseudonym is Not Required ... 9

V.      Ms. Doe's Developmental and Neurological Disabilities Make Her Particularly Vulnerable to the Harms of Disclosure ............................................................................... 14

VI.     Defendant Black Has Not and Will Not be Prejudiced if Ms. Doe is Allowed to Continue Anonymously ........................................................................................................................... 15

VII.    Defendant Black's Inaccurate Description of Ms. Doe's Social Media Use .................... 17

VIII.   No Alternative Mechanisms Can Adequately Protect Ms. Doe's Confidentiality ........... 18

IX.     Defendant Black's Motion Relies on Precedent that Incorrectly Included Irrelevant Factors that Prejudiced Plaintiff .......................................................................................... 19

CONCLUSION ....................................................................................................................... 19

## **TABLE OF AUTHORITIES**

Cases                                                                                            Page(s)

Black v. Ganieva,
    619 F. Supp. 3d 309 (S.D.N.Y. 2022)......................................................................... 8

Coker v. Georgia,
    433 U.S. 584 (1977)............................................................................................... 1

Doe #1 v. Syracuse Univ.,
    No. 18 Civ. 496 (FJS) (DEP), 2018 WL 7079489 (N.D.N.Y. Sept. 10, 2018) .............. 5, 10, 16

Doe No. 2 v. Kolko,
    242 F.R.D. 193 (E.D.N.Y. 2006) ............................................................................ 1, 15

Doe on behalf of Doe No. 1 v. Nygard,
    No. 20 Civ. 6501 (ER), 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020) .................................. 10

Doe v. Baram,
    No. 20 Civ. 9522 (ER), 2021 WL 3423595 (S.D.N.Y. Aug. 5, 2021) ...................................... 6

Doe v. Combs,
    No. 23 Civ. 10628 (JGLC), 2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) ............................... 14

Doe v. Daedone,
    No. 24 Civ. 4434 (JAM), 2024 WL 3897078 (E.D.N.Y. Aug. 22, 2024) ................................. 5

Doe v. Deschamps,
    64 F.R.D. 652 (D. Mont. 1974) .............................................................................. 3, 4

Doe v. Kachalia,
    No. 23 Civ. 10395 (DEH), 2023 WL 845446 (S.D.N.Y. Dec. 6, 2023)..................................... 9

Doe v. Niagara Univ.,
    No. 23 Civ. 1311 (LJV), 2024 WL 1363676 (W.D.N.Y. Apr. 1, 2024).............................. 8, 11

Doe v. Smith,
    No. 19 Civ. 1121 (GLS) (DJS) 2019 WL 6337305 (N.D.N.Y. Nov. 27, 2019) ...................... 10

Doe v. Stegall,
    653 F.2d 180 (5th Cir. 1981) ................................................................................. 3, 14

Doe v. United Services Life Ins. Co.,
  123 F.R.D. 437 (S.D.N.Y. 1988) .................................................................. 3

Doe v. Zeumer,
  No. 23 Civ. 10226 (AT), 2024 WL 1586032 (S.D.N.Y. Mar. 6, 2024) .................................... 5

Does 1-4 v. Foukas,
  No. 20 Civ. 5516 (DG) (SJB), 2021 WL 8892823 (E.D.N.Y. Mar. 20, 2021)...................... 8, 9

Does I thru XXIII v. Advanced Textile Corp.,
  214 F.3d 1058 (9th Cir.  2000) ...................................................................... 3

EW v. New York Blood Ctr.,
  213 F.R.D. 108 (E.D.N.Y. 2003) ................................................................... 10

Rapp v. Fowler,
  537 F. Supp. 3d 521 (S.D.N.Y. 2021)............................................................... 14

Sealed Plaintiff v. Sealed Defendant,
  537 F.3d 185 (2d Cir. 2008)................................................................... passim

Trooper 1 v. New York State Police,
  No. 22 Civ. 893 (LDH) (TAM), 2024 WL 1345516 (E.D.N.Y. Mar. 29, 2024)...................... 9


Statutes

New York's Civil Rights Law, Section 50-b ....................................................... 11, 12


Rules

Fed. R. Civ. P. 11 ..................................................................................... 2

Fed. R. Civ. P. 10(a) .................................................................................. 1


Other Authorities

Anonymous Plaintiffs and Sexual Misconduct,
  50 Seton Hall L. Rev. 955........................................................................... 7

Plaintiff Jane Doe submits this memorandum of law in opposition to Defendant's motion to prevent her from continuing to proceed in this action as Ms. Doe, a motion he disingenuously characterizes as a "motion to amend the caption" of the case.  ECF 117.  For the reasons set forth below, the request should be denied, and Ms. Doe should be allowed to continue in the case under pseudonym.

## PRELIMINARY STATEMENT

It is within the Court's discretion to permit Plaintiff to continue in this action as Jane Doe. She has not requested that the docket be sealed from the public nor asked that the public is denied access to filings.  Instead, as a victim of sex trafficking seeking justice for a brutal rape that took place when she was a minor, she previously asked that the public docket does not contain her name. ECF 6, 8.  On August 18, 2023, the Court granted this request, and Defendant did not object.  ECF 15-16.  Suddenly, now that his motion to dismiss was denied, Black asks that Plaintiff no longer be able to use a pseudonym.  Black's basis for the newfound objection is as meritless as it would have been had he it made it in August 2023 – when it appears that he was in possession of the same information offered to the Court presently.

Plaintiff's request to proceed at this juncture as Ms. Doe must be balanced with Federal Rule of Civil Procedure 10(a) which requires that a complaint "include the names of all the parties."  Fed. R. Civ. P. 10(a).  While the public has a right of access to judicial proceedings, federal courts allow a party to proceed under a pseudonym when special circumstances warrant anonymity.  "Sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).  The Supreme Court has held that "short of homicide, [rape] is the ultimate violation of self." *Coker v. Georgia*, 433 U.S. 584, 597 (1977).  Sexual assault victims should not be violated again by being forced to relive

their trauma through the publication of their identities in civil actions. This relief, granted by countless courts to victims of rape, is currently what Plaintiff is receiving. Defendant fails to offer persuasive necessity to alter her Doe status, and a denial of her ability to proceed using a pseudonym would be manifest injustice given the facts in this specific case. As detailed below, Defendant's argument relies upon a misapplication of the relevant Second Circuit legal principles, and his motion should be denied.[1]

## PROCEDURAL HISTORY

On July 25, 2023, Plaintiff Jane Doe commenced this action by filing a Complaint against Defendant Leon Black, alleging that he raped her in Jeffrey Epstein's townhouse in New York City when she was 16. ECF 1. Simultaneous with her Complaint, she filed a motion to proceed using a pseudonym. ECF 6. Defendant did not file an opposition. Instead, he filed a motion for sanctions under Fed. R. Civ. P. 11 against counsel for Plaintiff, but not against Plaintiff. ECF 22. Defendant thereafter filed a motion to dismiss the Complaint, ECF 40, and a motion to stay discovery. ECF 74. On September 27, 2024, the Court issued an order ("Order") that denied Defendant's motion to dismiss in its entirety, denied his motion for sanctions, and mooted his motion to stay discovery. ECF 106.

Presently, a pretrial scheduling conference is scheduled for October 29, 2024. Defendant filed the instant motion on October 7, 2024. ECF 117.

## LEGAL ARGUMENT

## I.    Applicable Second Circuit Law: *Sealed Plaintiff v. Sealed Defendant*

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008), the Second Circuit established the guidelines for determining when a party may be allowed to maintain an

---

[1]    Black would be able to renew his motion before trial.

action under a pseudonym.  The Second Circuit held that to determine "whether a plaintiff may be allowed to maintain an action under a pseudonym," courts must balance "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Id.*  In arriving at this result, the Second Circuit reasoned:

> We endorse the Ninth Circuit's formulation and hold that when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant.  This balancing of interests entails the consideration of several factors that have been identified by our sister Circuits and the district courts in this Circuit.  We note with approval the following factors**, with the caution that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration**.

*Id.* at 189-90 (emphasis added).[2]  Following the Ninth Circuit, the Second Circuit provided a "non-exhaustive" list of factors that a court *may* consider in determining whether a plaintiff may proceed under a pseudonym:

> (1) Whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the … party [seeking to proceed anonymously] or even more critically, to innocent non-parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically

---

[2]      In reaching its decision, the Second Circuit relied heavily on the Ninth Circuit decision in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir.  2000), which in turn relied on cases involving a myriad of factual patterns, specifically: *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (permitting FLSA plaintiffs to use pseudonyms to protect them from employer reprisals); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (allowing plaintiff to sue insurance company anonymously to protect against identification as a gay man), and *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) (permitting plaintiff in abortion suit to use pseudonym due to the personal nature of pregnancy).

weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (citations omitted). *Sealed Plaintiff* did not issue a multi-factor test for mechanical application. Rather, it directed a court to engage in a subjective balancing test based upon the unique facts before it making clear that it would be highly unlikely that all ten factors applied to a given case, in which instance it should apply only those relevant factors, as well as all additional factors the court in its discretion determined were needed.

Indeed, the *Sealed Plaintiff* decision suggests that a district court should not apply nonrelevant factors listed as potential considerations, as the factors set forth should not be applied as mechanical test. To do so would create prejudice to the moving party by taking what is not relevant yet assigning value where none exists, and subsequently weighing it as part of an equation. There can be no question about the Second Circuit's intent when it wrote,

> Of course, a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion.

*Id.* at 191, n.4. Thus, a court has the discretion to assign more weight or importance to certain facts in a particular case and unquestionably, is not expected to, much less required to analyze all ten factors listed in *Sealed Plaintiff.*

## II.  Defendant Black's Misapplication of *Sealed Plaintiff v. Sealed Defendant*

Using the non-exhaustive list in *Sealed Plaintiff,* Defendant attempts to argue the various factors as if it is a mechanical test with cursory application of the facts. ECF 117 at 11-19. Despite citing to *Sealed Plaintiff's* directive that courts are <u>not required</u> to list each factor as long as it is clear the "court balanced the interests at stake," Defendant's motion does exactly that. *Id.* Further, discussed *infra*, Defendant attempts to assign weight to multiple factors with no relevance to this action.

4

Contrary to *Sealed Plaintiff*'s instructions, Defendant's motion rigidly lists the ten considerations, claiming that they are the "relevant" factors.   ECF 119 at 11.   In addition, Defendant failed to adhere to the Second Circuit's instructions that "[w]e … caution that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration."  *Sealed Plaintiff*, 537 F.3d at 190.  *See Doe #1 v. Syracuse Univ.*, No. 18 Civ. 496 (FJS) (DEP), 2018 WL 7079489, at *4 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, No. 18 Civ. 00496 (BKS) (ML), 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) ("in *Sealed Plaintiff*, the Second Circuit did not espouse the wooden application of those considerations.").  This Court's prior ruling appropriately followed this instruction, considering four factors along with the Defendant's consent to the motion, while disregarding irrelevant or non-dispositive factors.  At this juncture, the Court should once again decide which factors are relevant to the task at hand, "[balancing] the plaintiff's interest in anonymity … against both the public interest in disclosure and any prejudice to the defendant."  *Sealed Plaintiff*, 537 F.3d at 189, *see also Doe v. Daedone*, No. 24 Civ. 4434 (JAM), 2024 WL 3897078, at *5 (E.D.N.Y. Aug. 22, 2024) (considering only factors one, six, eight, and ten in granting anonymity to plaintiffs alleging sexual assault).

Here, a clear majority of the *Sealed Plaintiff* factors relevant weigh in favor of the Court extending permission for Plaintiff to proceed anonymously.   Overall, the public interest in disclosure and the potential prejudice to Defendant that may result from Ms. Doe's anonymity pale in comparison to her interest in remaining anonymous.   Factor one[3] indisputably weighs in favor of anonymity.  *Doe v. Zeumer*, No. 23 CIV. 10226 (AT), 2024 WL 1586032, at *1 (S.D.N.Y. Mar. 6, 2024) (internal citations and quotations omitted) ("Allegations of sexual assault involve highly

---

[3]    Asking "[w]hether the litigation involves matters that are highly sensitive and [of a] personal nature."  *Sealed Plaintiff*, 537 F.3d at 190.

sensitive matters of a personal nature, weighing in favor of anonymity."); *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) (identifying rape and sexual assault as "matters that are highly sensitive and personal in nature"); *Doe v. Daedone*, 2024 WL 3897078, at *4 ("Allegations of sex trafficking and sexual assault involve highly sensitive matters of a personal nature and thus favor a plaintiff's use of a pseudonym."). In this case, the allegations concern sexual assault of a particularly violent and sensitive nature. As set forth in the Complaint, Black "threw [Ms. Doe] down on the massage table on her back, so hard he knocked the wind out of her," proceeded to rip off her clothing, called her "demeaning, shameful, disgusting names" as he pinned her down, used adult toys to penetrate multiple orifices, bit Ms. Doe's vagina, and then used his excessive weight to anally rape Ms. Does with such force "she felt he was crushing her pelvic and hip bones." ECF 1 ¶¶ 70-78 This vicious attack caused Ms. Doe serious physical and mental harm, including internal abrasions and panic attacks. *Id.* ¶¶ 83-84. There is thus no question that the first *Sealed Plaintiff* factor is satisfied here; indeed, the extreme nature of the alleged statutory rape makes this factor especially important in the Court's consideration of Defendant's request to reveal her identity to the public.

Although factor one is not sufficient to justify anonymity on its own, courts in this Circuit have given it relatively strong weight – notably, Ms. Doe is unable to locate a case in which a court in this circuit has applied *Sealed Plaintiff* and granted anonymity without finding that factor one favors such a finding. Further, Defendant mischaracterizes both the facts of the case and several of the *Sealed Plaintiff* factors; his motion is nothing but a feeble, coercive attempt to retaliate against Ms. Doe after this Court denied his motion to dismiss.

III.    **Defendant's History of Retaliation Illustrates the Extremely High Risk of Harm to Ms. Doe and Innocent Non-Parties**

Defendant chose to file his motion to reveal Ms. Doe's name in a blatant effort to threaten her; if this motion is granted, Defendant will abuse the litigation process and amass his vast resources to encourage media outlets and social media commentators to target Ms. Doe and those close to her.  His repeated false claims about Ms. Doe and her legal counsel are specifically intended to invite retaliation, victim-blaming, and ridicule.  ECF 54-56, 111-113.  This is specifically what the second *Sealed Plaintiff* looks for: the "risk of retaliatory physical or mental harm to the party seeking to proceed anonymously.  *Sealed Plaintiff*, 537 F.3d 185 at 190.  Factor two also accounts for the risk of retaliatory harm Ms. Doe's family would face upon disclosure of her identity.  *Id.*  Ms. Doe's biological and adoptive families, both of which have minors in their homes, are undoubtedly non-parties who would be attacked and scrutinized if Ms. Doe's name were released publicly.  And victims' families are all too often subjected to the same retaliation. *E.g.* Jayne S. Ressler, *Anonymous Plaintiffs and Sexual Misconduct*, 50 Seton Hall L. Rev. 955, 975 ("when a fourteen-year-old girl went public with rape allegations against a seventeen-year-old star football player in their small Missouri town, her family was nearly destroyed by the backlash. The girl's mother was fired from her job in a veterinary clinic, the girl attempted suicide, and their house was mysteriously burned down. The family was forced to relocate to another city.").  Defendant has repeatedly brought non-parties into this litigation.  *See* ECF 30 (describing in specific detail the ways in which his investigator questioned Ms. Doe's family members and high school classmates in an effort to intimidate Plaintiff).  Factor two is especially relevant to this case because of the tangible risks that disclosure of Ms. Doe's identity would pose to her family

members, friends, and acquaintances.[4]  Other courts have held that factor two weighs in favor of
anonymity when forcing a plaintiff to reveal her name would "escalate" the "harassment and
intimidation" she has already been subjected to.  *Doe v. Niagara Univ.*, No. 23-CV-1311-LJV, 2024
WL 1363676, at *2 (W.D.N.Y. Apr. 1, 2024).  Defendant has argued that since Defendant is already
aware of Ms. Doe's identity, disclosure would not increase the risk of retaliation.  ECF 119 at 15-
16.  But disclosure would also allow Defendant—as he has already done—to "instigate third
parties to cause Plaintiff [and her family] harm."  *Does 1-4 v. Foukas*, No. 20-CV-5516-DG-SJB,
2021 WL 8892823, at *2 (E.D.N.Y. Mar. 20, 2021) (holding that the risk of such instigation tilted
factor two towards favoring anonymity).  Here, Ms. Doe's fear of such instigation is more than
speculative; Defendant has a history of using his wealth and influence to intimidate those who get
in his way.  His engagement of private investigators to track down Ms. Doe's biological family
and former acquaintances is only one such example.  He has also directed his agents to file
aggressive and defamatory motions and lawsuits against any woman who speaks out about his
abuse and counsel who represents those women, including the sanctions motion in this case (ECF
49-55), a malicious prosecution case against counsel for Plaintiffs (*Black v Wigdor et al.*, No.
158062/2023, N.Y. Supreme Court), and a retaliatory RICO action against counsel for Plaintiff
whose dismissal has been affirmed by the Second Circuit (*Black v. Ganieva*, 619 F. Supp. 3d 309
(S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023)).  Indeed, only
a few months ago, Black's counsel threatened to file another sanctions motion and report Plaintiff's
counsel to the bar if Ms. Doe's proposed amended complaint were to be filed on the docket.  ECF
90.

---

[4]      This is particularly true in light of Ms. Doe's proposed First Amended Complaint, which clarifies
details related to her trafficking.

In the *Foukas* case, the court held that the defendant's "prior threats" against the plaintiffs along with the possibility of the defendant "instigat[ing] third parties to cause Plaintiffs harm if the Plaintiffs were not allowed to proceed anonymously" made the risk of retaliation tangible. *Id.* The same concerns are present here; Defendant has demonstrated that threatening plaintiffs who accuse him of sexual misconduct is his *modus operandi*. And he is unafraid to use his wealth and power to induce others into carrying out his threats. Since the risk of retaliatory harm to Ms. Doe and innocent nonparties would increase if she was forced to proceed under her real name, factor two weighs heavily in favor of anonymity.

## IV.    Medical Corroboration with a Motion to Proceed Under a Pseudonym is Not Required

It would be reversible error to hold that in order to satisfy the third *Sealed Plaintiff* factor,[5] Plaintiff <u>must</u> submit evidence to corroborate her harm. The Second Circuit has never held that a party, including a rape victim, must submit corroboration to justify her anonymity. Court decisions in this circuit both before *Sealed Plaintiff* in 2008 and after, have ruled that parties can proceed with a pseudonym without supporting affidavits. *See*, *e.g.*, *Trooper 1 v. New York State Police,* No. 22 Civ. 893 (LDH) (TAM), 2024 WL 1345516 (E.D.N.Y. Mar. 29, 2024) (sexual assault); *Doe v. Kachalia*, No. 23 Civ. 10395 (DEH), 2023 WL 845446 (S.D.N.Y. Dec. 6, 2023) (permitting plaintiff to proceed anonymously because of the potential harm from his sexual assault and resulting medical and psychological treatment records becoming public); *Does 1-4 v. Foukas*, No. 20 Civ. 5516 (DG) (SJB), 2021 WL 8892823, at *2 (E.D.N.Y. Mar. 20, 2021) (finding that sex trafficking victims' risks to their physical and psychological well-being were "more than

---

[5]    "[W]hether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Sealed Plaintiff*, 537 F.3d at 190 (internal citation omitted).

speculative" without medical testimony); *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020) (granting sexual assault survivors' motion to proceed anonymously in a suit against a "world-renowned fashion designer" without medical testimony affirming that they would suffer harm from identification); *Doe #1 v. Syracuse Univ.*, No. 18 Civ. 496 (DEP) (JS), 2018 WL 7079489, at *10 (N.D.N.Y. Sept 10, 2018), *report and recommendation adopted*, No. 18 Civ. 496 (BKS) (SML), 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) (holding that plaintiff would proceed anonymously because of the "plainly . . . serious stigma" associated with allegations that plaintiff's actions were discriminatory); *Doe v. Smith*, No. 19 Civ. 1121 (GLS) (DJS) 2019 WL 6337305, at *3 (N.D.N.Y. Nov. 27, 2019) (holding that the sensitive nature of the sexual assault lawsuit outweighed the public's interest in knowing plaintiff's identity); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (holding that plaintiff who "made no particularized showing of any specific harm or stigma . . . caused by prosecuting the case under her own name" was entitled to proceed pseudonymously because the case involved issues of "great intimacy" related to plaintiff's sexual conduct).

Defendant argues that since Ms. Doe has not submitted supporting "medical documentation," there is no tangible risk of psychological harm resulting from her public identification. He further contends that since Plaintiff has "thrust herself into the public discourse," she has no right to "complain" about what would undoubtedly happen if she was forced to continue this litigating her claims without the protection of anonymity. To suggest that a rape victim, who was a minor at the time and experienced horrific rape, including anal penetration, would not be "harmed" if re-traumatized by disclosing her identity is ridiculous. There is a large amount of publicly available data about the reluctance of rape victims in particular to report, and among violent crimes, sexual assault is one of the most underreported, with federal government reports

showing that only 310 of 1000 sexual assaults are reported to the police.  *The Criminal Justice System: Statistics, Rape, Abuse & Incent Nat'l Network*, https://rainn.org/statistics/criminal-justice-system (citing reports issued by the Department of Justice and the Federal Bureau of Investigation).  Such data proves the continued stigma in our society associated with being a rape victim.  There is no justification for continuing to impede victims further in connection with civil claims.  The public has a strong interest in holding perpetrators and third-party institutions that help facilitate sexual crimes accountable.  Civil financial penalties encourage companies to take the steps needed to protect people from sexual crimes.  The public wants victims to pursue justice because that is critical to addressing public safety, especially given that less than 1% of reported rapes result in criminal prosecution.  Holding that a victim who was a minor at the time of the rape, and one that involved anal rape, must be forced to disclose her name publicly would impede this public interest.  The public does not have a strong interest in the identity of a sexual assault victim. This is why the New York legislature adopted New York's Civil Rights Law, Section 50-b, to protect rape victims from the harm inherent in public scrutiny.  *See Doe v. Niagara Univ.*, No. 23 Civ 1311 (LJV), 2024 WL 1363676, at *2 (W.D.N.Y. Apr. 1, 2024) ("although the public has an interest in this litigation, that does not necessarily mean that the public has a similarly strong interest in learning the identities of all the individuals involved.").

The Complaint details horrifying events.  It says that Plaintiff, as a minor, was trafficked, violently physically abused, and raped – including underline forceful anal penetration against her will.  As set forth in the Complaint:

- Defendant threw Ms. Doe down onto a massage table so violently that he knocked the wind out of her.

- Defendant covered Ms. Doe's mouth with his hand to prevent her from screaming as he ripped off her shirt and underwear.

11

- Defendant called Ms. Doe "demeaning, shameful, disgusting names" as he pinned her down.  He laughed at her helplessness and mocked her while she cried.

- Defendant used adult toys to penetrate Ms. Doe's vagina and rectum with "such force that [she] felt tearing in her internal tissue."

- Defendant used his mouth to draw blood from Ms. Doe's vaginal area, causing her to scream and instinctively kick at Defendant.

- Defendant then called her a "whore" and a "slut" before throwing Ms. Doe to the floor and grabbing her by the legs.

- Defendant used his "extreme weight" to brutally rape Ms. Doe with such force that "she felt he was crushing her pelvic and hip bones."

- The "unimaginable pain" Ms. Doe felt was so intense that she "disassociate[d]."  She "felt like she could not breathe."

- After appearing to finish, Defendant grabbed Ms. Doe by the wrists and "slammed her into the wall," ignoring her cries of fear and pain.

- Defendant's brutality caused Ms. Doe to suffer "internal abrasions in her rectum that continue to cause her pain," and panic attacks at the beginning of her menstrual cycle each month, when the sight of blood coming from her body brings back the horrifying memory of Defendant raping her.

ECF 1 ¶¶ 46 to 84.

The psychological trauma to Ms. Doe and her substantial emotional distress as a result of these acts should not be minimized and she should not have to "prove" through documentation – pre-discovery – that it is re-traumatizing to relieve these events in this litigation.  Despite countless courts holding that acts of rape are sufficient to allow a party to proceed anonymously, and no Second Circuit decision holding that she needed to "corroborate" her own experiences, Black claims that her anticipated harm is nothing more than "mere speculation."  ECF 117 at 14-16.  As mentioned above, it is confounding that her harm can be categorized as "mere speculation" despite the fact that New York's Civil Rights Law, Section 50-b was enacted precisely to protect rape victims from the harm *inherent in* public scrutiny.  Moreover, it is easy to imagine plaintiffs who

may not have access to medical professionals, such as those proceeding *pro se*, and it would be a fundamental error to rule that a plaintiff <u>must</u> procure formal letters from health care providers, or other affidavits, to submit to a court to avoid being publicly shamed.

Ms. Doe's allegations involve highly intimate, non-consensual sexual activity, and would engender public ostracism, victim-blaming and "slut-shaming" on account of any role the public would assume Ms. Doe played in the assault. In the Complaint, Plaintiff asserts that she experiences panic attacks and other severe psychological harms resulting from Defendant's rape. ECF 1 ¶ 84. Removing her status as Jane Doe will subject her to additional public scrutiny, especially given the defamatory allegations made by Defendant in his now-denied sanctions motion. He has called Plaintiff a fraudster, accusing her of having specific diagnosed illnesses and a "long history of dreaming up alternate realities." ECF 54 at 1-2, 8. Incredibly, Black has gone so far as to imply that she has somehow made up the fact that she is developmentally and congenitally disabled by "stud[ying] the behavior" of autistic people. *Id.* at 2. He repeatedly alleged that Ms. Doe received particular medical care and attempted to argue that this is evidence that she is a liar. *Id.* at 8-9. Defendant's tactics were intended to convince the public (and this Court) that Ms. Doe is "delusional" and therefore cannot be trusted. And, Black filed his motion for sanctions before the start of discovery knowing that it had no chance of success, instead using the motion to attempt to create a false narrative about Ms. Doe and her counsel. The same backhandedness is apparent here. Defendant claims that "discover[ing that Ms. Doe] has spoken frequently and publicly about Epstein and her abuse" led him to file this motion. ECF 119 at 6. Notwithstanding this contention's falsity, Defendant's supposed "discovery" of this information occurred over one year ago. *See* ECF 55 (Decl. of C. Menendez in support of Motion for Sanctions) ¶ 13, p. 4; ECF 76/112 (Decl. of S. Estrich in support of Motion to Stay Discovery).

Crucially, the timing of Defendant's motion reveals his actual motive: to punish Ms. Doe and those close to her because his motion to dismiss was denied and because her amended complaint is soon to be filed.  The fact that there is no reason for Defendant to be raising this motion at this time in the litigation is telling—and itself shows the lengths he and his counsel will go to try to intimidate Ms. Doe and her counsel.

**V.**    **Ms. Doe's Developmental and Neurological Disabilities Make Her Particularly Vulnerable to the Harms of Disclosure**

Defendant callously ignores the fact that due to Ms. Doe's autism and Mosaic Down Syndrome, she alleges that she is developmentally about 12 years old.  Instead, he argues that even though Ms. Doe was a child when she was trafficked and then raped by Defendant, since she is now over the age of 18, she is not "particularly vulnerable" to the harms of disclosure in the way a child would be.  ECF 119 at 16, *see Sealed Plaintiff*, 537 F.3d at 190 (the fourth factor asks "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age") (internal citations omitted).  While some courts have interpreted this factor to mean that anonymity is only favored if the plaintiff is a minor when the case is filed,  *Rapp v. Fowler*, 537 F. Supp. 3d 521, 530 (S.D.N.Y. 2021); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 863705, at *4 (S.D.N.Y. Feb. 29, 2024),  these cases did not require consideration of the unique facts present here.  Ms. Doe's disabilities make her vulnerable to the harms of disclosure in exactly the way a child would be.  The Fifth Circuit case that *Sealed Plaintiff* cited to makes clear that the spirit of the fourth factor goes to the party seeking anonymity's limited development, not specifically whether they are seventeen or eighteen years old.  *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).  In fact, the Fifth Circuit noted in *Stegall* that "we do not mean to imply that all civil rights suits mounted in the name of children may be prosecuted anonymously."  *Id.  Sealed Plaintiff* and its progeny used generalized language simply because children are usually especially

14

vulnerable.  But nothing in the case itself stands for the idea that a plaintiff who was sexually abused as a child, and who is alleged to be developmentally disabled to the point that she currently has the emotional characteristics of a 12-year-old, is not "particularly vulnerable."  Here, Ms. Doe's disabilities place her squarely into the class of persons the fourth factor aims to protect, and therefore, factor four weighs in favor of anonymity.

## VI.    Defendant Black Has Not and Will Not be Prejudiced if Ms. Doe is Allowed to Continue Anonymously.

This is a civil matter that is in the initial stages of discovery with a trial date far in the future.  The right to proceed anonymously can be challenged at any time in the litigation, including immediately prior to trial.  *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) ("the restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial.").  As stated *infra*, Defendant filed the instant motion at this stage specifically in order to retaliate against Ms. Doe after his motion to dismiss and motion for sanctions were denied.  Defendant neglected to mention that factor six also asks "whether the nature of that prejudice (if any) differs at any particular stage of the litigation."  The supposed "prejudice" that Defendant claims to have suffered is no different now than it was six months or a year ago; indeed, as noted above – Black has been aware of the alleged "evidence" supporting his motion for nearly the entire pendency of this litigation, and yet only now chooses to file this motion to expose Ms. Doe's identity to the public.  And conclusory statements that Defendant's investigation has "been limited and hindered by the anonymity requirement" ring hollow considering the extensive harassment Defendant and his hired guns have already levied on Ms. Doe, her family members, and her acquaintances ever since the Complaint was filed.  The argument that Defendant has been prejudiced by an "asymmetry in fact-gathering" is contradicted by simply looking at the docket.  Defendant has taken every opportunity to parade the results of his investigations to this Court–

regardless of its relevance or veracity, if it helps portray Ms. Doe in a bad light, Defendant will put it in the record. Defendant's present motion seeks only to amplify his attacks on Ms. Doe. The "prejudice" discussed in *Sealed Plaintiff* is nowhere to be found here, especially at the current stage of litigation.

Defendant also focuses on the "stigma and public opprobrium" he has incurred due to being named in the Complaint. But factor six does not concern what, if any level of harm the defendant has experienced in the case from being named; the issue is whether a defendant is "prejudiced by allowing the plaintiff to press his claims anonymously." *Sealed Plaintiff*, 537 F. 3d at 190. Defendant can renew his objection before the action is in front of a jury. Given the severe harm to Ms. Doe by forcing her to publicly out herself as a trafficking and rape victim, the use of such reasoning at this stage is improper. Furthermore, there is no continuing prejudice to Defendant's reputation that would come from allowing Ms. Doe to remain anonymous. Other courts in this circuit have considered whether "any reputational harm to defendants has already been inflicted" in analyzing factor six. *Doe #1 v. Syracuse Univ.*, No. 518CV0496FJSDEP, 2018 WL 7079489, at *8 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, No. 518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020). The *Doe #1* court found that "[a]ny additional reputational impact to defendants would be minimal compared to the harm plaintiffs have already suffered." *Id.* Here, Defendant claims that his reputation was harmed by the "heinous allegations" levied against him. Publicly releasing Ms. Doe's name would not retract these allegations or alter the impact to his reputation. Once again, the timing of Defendant's motion reveals his true motive. Defendant's discovery efforts have in no way been hampered by Ms. Doe's anonymity; otherwise, this motion would have been filed a year ago. The case remains in the same stage of litigation as it has been, and Defendant can renew his objection before the action is in front of a jury.

## VII.    Defendant Black's Inaccurate Description of Ms. Doe's Social Media Use

Black mischaracterizes prior cases in support of his claim that Ms. Doe's alleged conduct prior to commencing this action against Black weighs against the use of a pseudonym.  Black's motion focuses on presenting alleged background facts that he claims show her identity must be revealed.  First, he wrongly concludes that "Plaintiff has not kept her identity confidential," and thus that her Jane Doe status is not supported.  Motion at 12.  Such a conclusion is confounding because Plaintiff's identity has not been disclosed in this action.

Defendant relies exclusively upon Ms. Doe's alleged activity on social media *prior* to her initiation of this lawsuit – all of which no longer exists and all of which ceased entirely prior to Ms. Doe proceeding with this litigation.  Moreover, none of her alleged social media activity concerned the allegations **made in this case**.  Her alleged posts and representations concerning being trafficked never mentioned Defendant or the incidents detailed in the Complaint.  Instead, Black urges the Court to believe that Plaintiff privately disclosed the facts underlying this case to others – but does nothing to substantiate that claim, including by identifying who she supposedly spoke to.  Regardless, Black conflates private conversations about what she alleges here with public disclosure – as he must, because Plaintiff has never publicly disclosed the allegations she has made in this case much less used her name in connection with Black and what she alleges he did to her.  Most incredibly, this is not new information to Defendant and his counsel – these exact same examples of social media activity were attached to Defendant's counsel's declaration in support of his now-mooted motion to stay, which was filed on December 8, 2023.  ECF 74-78.  It is plainly apparent that only now that discovery must proceed that Defendant believes this evidence justifies challenging Plaintiff's anonymity in this lawsuit.

On this record, Plaintiff's identity has been kept confidential at all times, except of course to Defendant and his counsel.  As is obvious from the Rule 11 motion filed over a year ago,

Defendant's for-hire private investigators immediately accessed Plaintiff's immediate family members, including her biological parents and numerous relatives. Defendant's investigators interviewed Ms. Doe's mother, father, sister, aunt, cousin, and numerous others with some connection to Ms. Doe. ECF 55 at 2. The lead investigator failed to even quantify the number of Ms. Doe's high school classmates that he interviewed. *Id.* And the declaration reporting this "investigation" was filed a full year ago. Even as recently as several days ago, Defendant has continued to hound Ms. Doe's biological parents, siblings, relatives, and acquaintances for anything that will help him shape a false narrative.

## VII.    No Alternative Mechanisms Can Adequately Protect Ms. Doe's Confidentiality

Defendant's single sentence explaining why factor ten disfavors anonymity flatly ignores the reason Ms. Doe requested anonymity in the first place: to prevent Defendant from shaming and intimidating her into dropping her claims. Defendant brings up the possibilities of "a protective order or confidentiality agreement between the parties, as well as the redaction of particularly sensitive information in public filings" as suitable alternatives. But none of these alternatives address Ms. Doe's reasonable concern that placing her name in the public docket would allow Defendant to use his vast wealth and influence to harass Ms. Doe and her family without having to admit that he is behind it. As stated in the initial motion to proceed anonymously, Defendant has a history of "us[ing] private investigators to bully and shame women who have accused him of sexual assault." ECF 8 at 3. And in other similar litigation, Defendant's vindictive and retaliatory harassment only increased when the plaintiff dared to litigate using her own name. *Id.*, *see Pierson v. Black*, Index No. 952002/2022, filed on November 28, 2022 in New York Supreme Court, New York County ("Abhorrently, [Defendant] attached over 230 pages as "exhibits" to a baseless "sanctions" motion in the *Pierson* case with information about her past that had absolutely nothing to do with [Defendant]'s legal defenses to the civil claims asserted

against him.  [Defendant]'s intent was pure unadulterated victim shaming.").  Unless Ms. Doe is permitted to continue anonymously, Defendant will attempt the same here.  Nothing short of anonymity will suffice to mitigate his abusive tactics.

## IX.    Defendant Black's Motion Relies on Precedent that Incorrectly Included Irrelevant Factors that Prejudiced Plaintiff

As to factor nine, the facts and legal claims asserted by Ms. Doe against Defendant are not "purely legal in nature."  But courts are not required to weigh this against a plaintiff's request to proceed anonymously.  In fact, courts have generally given this factor relatively little weight, if any at all.  Given that a plaintiff alleging sexual assault by definition presents a "factual issue," such a plaintiff cannot satisfy factor nine.  Yet numerous courts have allowed plaintiffs alleging sexual assault to proceed anonymously; in those cases, other factors were more important given the facts at hand and were therefore assigned more weight.  The same logic should apply to factor five.  The nature of the illegal acts alleged make it unlikely that the government would be a defendant in this case.  Whether or not a plaintiff's rapist was a state actor should have no bearing on the issue of her anonymity.  And if it is to be considered simply for its inclusion in *Sealed Plaintiff*, it should be given relatively little weight compared to the factors that are relevant to this case's fact pattern.  These factors that are relevant tend to favor Plaintiff remaining anonymous, and overall, Ms. Doe's interest in anonymity substantially outweighs any countervailing interests.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's motion and permit Ms. Doe to remain under pseudonym in this case.

Dated: October 21, 2024                          Respectfully Submitted,
       New York, New York

                                                 **WIGDOR LLP**

                                                 By: _____
                                                     Jeanne M. Christensen
                                                     Meredith A. Firetog

                                                 85 Fifth Avenue
                                                 New York, NY 10003
                                                 Telephone: (212) 257-6800
                                                 Facsimile: (212) 257-6845
                                                 jchristensen@wigdorlaw.com
                                                 mfiretog@wigdorlaw.com

                                                 *Counsel for Plaintiff*