**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JANE DOE, | Case No. 1:23-cv-06418 |
|         Plaintiff, | |
|    v. | |
| LEON BLACK, | **ORAL ARGUMENT REQUESTED** |
|         Defendant. | |

**DEFENDANT LEON BLACK'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF HIS MOTION TO
AMEND THE CAPTION TO DISCLOSE PLAINTIFF'S NAME**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff Mischaracterizes the Governing Law. ................................................................. 2

    II.    Defendant Will Be Prejudiced in Discovery if Plaintiff's Anonymity Continues. ....... 3

    III.    Plaintiff Alleges Nothing More Than Speculative and Generalized Harm to Herself or Third Parties if She Discloses Her Real Name. ....................................................................... 5

    IV.    Plaintiff Mischaracterizes Her Prior Public Statements on This Matter. ..................... 8

    V.    Plaintiff Is Not Particularly Vulnerable to the Harms of Disclosure .......................... 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Black v. Ganieva*,
  Index No. 158062/2023, 2024 WL 4250653 (Sup. Ct. N.Y. County Sept. 20,
  2024) ...................................................................................................................................7

*Doe v. Combs*,
  No. 23 Civ. 10628, 2024 WL 863705 (S.D.N.Y. Feb. 29, 2024) ......................................3, 4, 7

*Doe v. Combs*,
  No. 24 Civ. 8054, 2024 WL 4635309 (S.D.N.Y. Oct. 30, 2024) ......................................5, 6, 8

*Doe v. Intel Corp.*,
  No. 24 Civ. 6117, 2024 WL 4553985 (S.D.N.Y. Oct. 22, 2024) ...............................................8

*Doe v. Skyline Autos., Inc.*,
  375 F. Supp. 3d 401 (S.D.N.Y. 2019) .......................................................................................8

*Rapp v. Fowler*,
  537 F. Supp. 3d 521 (S.D.N.Y. 2021) ................................................................................4, 10

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) ..........................................................................................2, 9, 10

**Rules**

Fed. R. Civ. P. 17(c) .....................................................................................................................11

**PRELIMINARY STATEMENT**

As Defendant showed in his opening brief (ECF Doc. No. 117) ("Mot."), the enumerated *Sealed Plaintiff* factors overwhelmingly weigh against permitting Plaintiff to continue to proceed anonymously. Most notably, Defendant will be significantly prejudiced if Plaintiff is permitted to remain anonymous now that discovery has commenced (Mot. at 12-14), and Plaintiff fails to articulate any countervailing harm that would warrant her continued anonymity (Mot. at 14-16). Moreover, Plaintiff's own actions indicate that she is more than willing to be publicly identified in connection with her allegations—and indeed she employed various means to amplify her public statements and attract significant attention—without any apparent concern for keeping her identity confidential (Mot. at 11-12).

In her opposition brief (ECF Doc. No. 127) ("Opp"), Plaintiff fails entirely to show otherwise. She contends that the *Sealed Plaintiff* factors are "non-exhaustive" and should not be applied as "a mechanical test," (Opp. at 4), but nowhere identifies any additional factors the Court should consider, or why it should ignore the factors identified by the Second Circuit and applied in countless cases in this District—and by this very Court. She baselessly cites "retaliation" as a reason to maintain her anonymity, but elides the fact that Defendant already knows Plaintiff's identity and fails to identify any retaliation that he has taken or any non-speculative risk of retaliation if *the public* were to learn her name. She fails to even identify any particularized, non-speculative harm that she will suffer if she were to proceed using her true name—let alone to substantiate or corroborate any such harm. She unsuccessfully attempts to minimize the prejudice to Defendant's ability to conduct discovery and disprove her false allegations. And she fails to acknowledge and honestly confront her long and well-documented history of making public statements about her supposed trafficking by Jeffrey Epstein, a subject to which Plaintiff devotes a substantial portion of her Complaint.

1

In short, Plaintiff asks the Court to bless her efforts to hurl heinous, reputation-destroying, fabricated allegations against Defendant (and innocent third parties) from behind a protective cloak of anonymity, while frustrating Defendant's right and ability to defend himself. Plaintiff simply has not carried her burden of showing any privacy interest that outweighs the clear prejudice to Defendant and the strong presumption that litigants must proceed under their true names. For all of these reasons, and as discussed in more detail below and in Defendant's opening brief, the Court should grant Defendant's motion and compel Plaintiff to proceed using her true name.

## ARGUMENT

As explained in Defendant's opening brief (Mot. at 9-10), anonymity is the exception and not the rule, and a party seeking to proceed anonymously bears the burden of establishing a privacy interest that outweighs the strong presumption against anonymity. The Second Circuit has identified ten factors that should guide this analysis, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), which countless courts in this District have applied in similar cases. Nine of the ten factors weigh against anonymity, and Plaintiff has not shown otherwise.

### I.    Plaintiff Mischaracterizes the Governing Law.

Plaintiff begins her Opposition by asserting that Defendant's entire argument is invalid, because he supposedly treats the "non-exhaustive list in *Sealed Plaintiff* . . . as if it is a mechanical test[.]" (Opp. at 4). She makes much of the Second Circuit's statement that courts "should take into account other factors relevant to the particular case under consideration," *Sealed Plaintiff*, 537 F.3d at 190, but never identifies any "other factors" the Court should consider here. At the same time, she declares that the Court need not consider certain of the enumerated *Sealed Plaintiff* factors, because they are "nonrelevant." (Opp. at 4). In doing so, Plaintiff wrongly conflates the question of how to weigh the factors with whether to consider the factors at all. Moreover, Plaintiff never explains why the factors she seeks to exclude are not relevant, other than they all weigh

2

against anonymity here, effectively conceding the points. (*See* Opp. at 19 (addressing factors five and nine)). Ultimately, Plaintiff concedes—as she must, that the ten *Sealed Plaintiff* factors are the "established . . . guidelines" in this Circuit for assessing a party's request for anonymity (Opp. at 2) and offers no reason why this Court should depart from those guidelines.

**II.     Defendant Will Be Prejudiced in Discovery if Plaintiff's Anonymity Continues.**

Plaintiff places great weight on the timing of Defendant's motion, implying—but stopping short of seriously contending—that Defendant was required to make his motion as soon as he became aware of evidence inconsistent with his previous position on Plaintiff's request for anonymity. Of course, the governing law imposes no such requirement—and indeed, Plaintiff herself acknowledges that "[t]he right to proceed anonymously can be challenged at any time in the litigation." (Opp. at 15). She further contends that Defendant faces no greater prejudice now than he did a year ago, and only filed the instant motion at this stage to retaliate against Plaintiff as "there is no reason for Defendant to be raising this motion at this time." (*Id.* at 14-15). But of course there is well-established good reason: as this Court has recognized, the prejudice to a defendant is, in fact, at its greatest now that this case is proceeding to discovery. *See Doe v. Combs*, No. 23 Civ. 10628, 2024 WL 863705, at *6 (S.D.N.Y. Feb. 29, 2024) (ordering that plaintiff represented by Wigdor could not proceed anonymously, but staying the effect of the order until the case proceeded to discovery because "the prejudice to Defendants … is at its greatest if this matter were to proceed to discovery"). Contrary to Plaintiff's assertions, the timing of Defendant's motion is not indicative of malicious intent, but rather of the particular and heightened need for disclosure of Plaintiff's identity at the current stage of litigation.

Defendant became aware of Plaintiff's prior public statements as early as December 2023 (and indeed, Defendant discussed these statements at length in his motion seeking a stay of discovery). (ECF Doc. Nos. 75, 76). However, Defendant did not object to plaintiff's anonymous

3

status at the time because he believed there was a strong possibility that his motion to dismiss would be granted, rendering the issue moot. *See Combs*, 2024 WL 863705, at *6 ("If the Court were to dismiss this action, it would do so for a purely legal reason, where Plaintiff's identity is irrelevant to that decision."). Furthermore, because discovery did not proceed while Defendant's motion to dismiss and motion to stay discovery were pending, the prejudice to Defendant flowing from Plaintiff's anonymous status was lessened. *See id.*

Plaintiff wrongly contends that it is "only now that discovery must proceed that Defendant believes this evidence justifies challenging Plaintiff's anonymity in this lawsuit." (Opp. at 17). To the contrary, Defendant has long known that Plaintiff is not entitled to proceed anonymously, not least because of her prior public statements about the allegations in her Complaint. But commencement of discovery brought the issue to a head, and made immediate Defendant's concerns that he would be prejudiced in discovery by the "asymmetry in fact-gathering" resulting from Plaintiff's anonymity. *See Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021).

That prejudice is hardly hypothetical. Defendant cannot conduct effective third-party discovery without running afoul of the Court's Order allowing Plaintiff to proceed anonymously. (ECF Doc. No. 16). For example, Plaintiff alleges that she "missed countless Fridays and Mondays from her junior year of high school, almost causing her to fail." Compl. ¶ 44. In order to properly test those allegations—which Plaintiff's family members have denied—Defendant must request attendance and academic records from the schools Plaintiff attended, which necessarily requires disclosing Plaintiff's name so that the schools can search for and locate those records. Similarly, Defendant cannot effectively obtain information from individuals who knew Plaintiff during the time period in which she alleges to have been trafficked, or medical records or information concerning the damages Plaintiff seeks in this lawsuit, without identifying Plaintiff. Defendant

4

simply would be unable to defend himself against these life-ruining accusations if Plaintiff is permitted to remain anonymous. *See Doe v. Combs*, No. 24 Civ. 8054, 2024 WL 4635309, at *5 (S.D.N.Y. Oct. 30, 2024) ("If damaging information about only one side is aired through the litigation, Defendants cannot mitigate the damage to their reputations."). This concrete and undeniable prejudice to Defendant weighs strongly against Plaintiff's continued anonymity.

### III. Plaintiff Alleges Nothing More Than Speculative and Generalized Harm to Herself or Third Parties if She Discloses Her Real Name.

In her Opposition, Plaintiff asserts that she must remain anonymous in order to prevent further harm to herself and innocent third parties, namely, members of her family (Opp. at 7-9)— ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ But Plaintiff fails to even identify, let alone substantiate, any specific or particularized mental or physical harm she will suffer if she is identified publicly. Instead, Plaintiff offers only speculative, generalized claims of harm, mischaracterizes both Defendant's arguments and the governing law, and baselessly misconstrues Defendant's ordinary (and absolutely necessary, given the allegations) investigative efforts as evidence that he will use her identity to harass or retaliate against her and her family.[1] Again, these claims are entirely unfounded, especially considering Defendant already knows Plaintiff's identity, and has not inflicted any such harm to date.

Plaintiff first contends that Defendant has used his wealth and influence to harass her and her family, and asserts that disclosing her identity will only enable him to amplify those efforts. (*Id.*). Specifically, she complains that Defendant has employed private investigators to contact members of her biological family and her former classmates. (*Id.*). But what she describes as "prior threats" (*id.* at 9), are nothing more than ordinary investigative tactics intended to gather facts

---

[1] Plaintiff already falsely accused Defendant of harassing her by parking a "white Suburban" mere "inches from her family's driveway." (ECF No. 8 at 1). In fact, the vehicle belonged to Plaintiff's neighbors. (ECF No. 112 ¶ 10).

5

about Plaintiff's credibility and the validity of her claims. *See Combs*, 2024 WL 4635309, at *3 (where the plaintiff has publicly leveled serious charges against the defendant, he is "entitled to investigate her background and challenge her allegations and her credibility"). Defendant's trained and certified investigator contacted these individuals not to intimidate them, but to gather information—and was able to do so because the individuals willingly cooperated and answered his questions, confirming on the record in consensually recorded interviews that they were speaking with the investigator voluntarily and with no coercion or inducement. (ECF Doc. No. 52 ¶ 9; *see also* ECF Doc. No. 53 ¶ 21 (witness declaration confirming that she has "not been threatened in any way or offered any money to make this Declaration")). Indeed, Plaintiff accuses Defendant of "go[ing] so far as to imply that she has somehow made up the fact" that she has autism (Opp. at 13), but that is based in part on Defendant's accurate recitation of what Defendant's investigator was told by Plaintiff's biological family (ECF Doc. No. 52 ¶ 13).

More fundamentally, Plaintiff offers *nothing* in support of her bare assertion that disclosure of her identity would allow Defendant "to 'instigate third parties to cause Plaintiff [and her family] harm.'" (Opp. at 8 (quoting *Does 1-4 v. Foukas*, No. 20 Civ. 5516, 2021 WL 8892823, at *2 (E.D.N.Y. Mar. 20, 2021))). All of the supposed examples of "retaliation" and "harassment" she (falsely) cites involved Defendant or his agents—all of whom already know Plaintiff's identity. Plaintiff gives no explanation—other than anecdotes about other individuals—of why she is at risk of "retaliation" or "backlash" from the general public. (*See* Opp. at 7-8). As for her assertion that Defendant has a "history" of retaliation and intimidation, Plaintiff relies primarily on a case in which Defendant's malicious prosecution claim, which was brought against the very same lawyers who filed this case, was *sustained* over Plaintiff's counsel's motion to dismiss. *See Black v. Ganieva*, Index No. 158062/2023, 2024 WL 4250653 (Sup. Ct. N.Y. County Sept. 20, 2024).

6

Plaintiff's concerns about the well-being of her family members are shocking, given that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████ (*see* ECF Doc. No. 92-2 ¶¶ 1-2, 26, 34, 37, 57, 98)—no doubt in response to the fact that these family members gave truthful information to Defendant that destroys Plaintiff's claims (*see* ECF Doc. No. 52 ¶¶ 8, 10-11, 13). ███████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████ These are not the actions of one is who genuinely concerned about shielding her own or her family members' identities in a highly publicized case. To assert that Defendant cannot utilize this same information in his own discovery efforts is not only hypocritical, but deeply prejudicial. If Plaintiff insists on involving her family in this litigation, Defendant must be allowed to identify her and them. Plaintiff's supposed concern about bringing non-parties into this litigation (Opp. at 7, 9), is similarly disingenuous, given that Plaintiff has issued subpoenas to numerous innocent individuals and institutions with no ties to the allegations in the Complaint, many of which do not even mention either party to this action (ECF Doc. No. 132).

Plaintiff next contends that she is not required to submit evidence to substantiate and corroborate her alleged harm. (Opp. at 9). In doing so, Plaintiff ignores decisions from this Court and numerous others "look[ing] for corroboration from medical professionals that detail the risk to plaintiff." *Combs*, 2024 WL 863705, at *3 (collecting cases). Moreover, even if "supporting affidavits" (Opp. at 9) are not required, something more than mere speculation and broad conclusions plainly is. *See, e.g.*, *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019); *Combs*, 2024 WL 4635309, at *2-3. Plaintiff fails to clear even that bar.

Instead, Plaintiff asserts that, as an alleged rape victim, she will obviously be "re-traumatized" and suffer untold "psychological harm" if her identity is disclosed. (Opp. at 10). But all she offers in support are statistics regarding assault victims' reluctance to speak publicly about their experiences and examples of victims and families who have been harassed by their alleged attackers. (*Id.* at 7, 10-11). While those reports are certainly upsetting, they are insufficient to establish any harm, or threat of harm, *particular to Plaintiff* that justifies continued anonymity. *See Doe v. Intel Corp.*, No. 24 Civ. 6117, 2024 WL 4553985, at *3-4 (S.D.N.Y. Oct. 22, 2024); *Combs*, 2024 WL 4635309, at *2-3. Plaintiff's alleged membership in a particular group is not enough—she must show a real risk of harm that is more than "speculative in nature," based on "direct evidence linking disclosure of [her] name to a specific physical or mental injury or threat thereof." *Intel Corp.*, 2024 WL 4553985, at *3-4 (citation and quotation omitted).

### IV. Plaintiff Mischaracterizes Her Prior Public Statements on This Matter.

Plaintiff has, on multiple occasions, falsely represented to Defendant and this Court that she has kept her identity confidential, including her counsel's prior certification that "Plaintiff has not spoken publicly about the incidents that underly the causes of action in her Complaint." (ECF Doc. No. 7 ¶ 18). In fact, as documented in Defendant's opening brief, Plaintiff frequently posted on Twitter that she survived alleged trafficking by Epstein, including, for example, Tweeting that she was "████████████████████████████████████[.]" (*See* ECF Doc. No. 76 ¶ 28 & Exs. 11-14). Plaintiff also introduced herself as a "survivor" or "victim" of Epstein dozens of times during Twitter Spaces events attended by thousands of viewers (ECF Doc. No. 120 ¶ 10).

Despite being confronted with her own public statements, Plaintiff doubles down on her position in her Opposition, flatly declaring that "none" of her social media posts discussing her alleged trafficking by Epstein "concerned the allegations **made in this case**," the posts "never mentioned . . . the incidents detailed in the Complaint," and "Plaintiff has never publicly disclosed

8

the allegations she has made in this case." (Opp. at 17 (emphasis in original)). These representations are categorically and knowingly false, and do not tip the seventh *Sealed Plaintiff* factor ("whether the plaintiff's identity has thus far been kept confidential") to favor anonymity. 537 F.3d at 190; s*ee* Mot. at 11-12.

While it is true that Plaintiff's alleged trafficking by Epstein, who is deceased, does not form the basis for any *causes of action* in the Complaint, Plaintiff intentionally places Epstein at the center of her Complaint. The Complaint contains more references to Epstein than to Defendant—and ███████████████████████████████████—despite the fact that Mr. Black is the sole defendant in this action. Plaintiff repeatedly and in great detail alleges in her Complaint that she was trafficked to and by Epstein, and that such trafficking is what led to her alleged assault by Defendant. (*See, e.g.*, ECF Doc. No. 1 ¶¶ 16, 44-45, 56, 60-66, 83). Plaintiff's numerous public declarations that she was trafficked by Epstein undeniably relate to these allegations for purposes of this motion.

Here, again, Plaintiff seeks to have her cake and eat it, too. She filled the Complaint with irrelevant Epstein references to garner attention and sensationalize her claims. Yet, now, she argues that these same allegations are not relevant to her claims in this lawsuit.[2] But Plaintiff made these irrelevant allegations and put them in the Complaint, and cannot now protest that her public statements about those allegations should not weigh against her continued anonymity.

As detailed in Defendant's opening brief, Plaintiff also discussed the specific allegations against Defendant, by name, with at least two individuals she knew only through social media.

---

[2] They should also not be used as a basis to foist a host of irrelevant, harassing, and burdensome discovery on Defendant and third parties. Mr. Black is mentioned in less than seventeen percent of the requests (71 of 419) included in the subpoenas *duces tecum* that the Plaintiff has noticed to date. Gwynne Decl. ¶ 5. On the other hand, the subpoenas are rife with references to Epstein, his cohorts, and various business and political leaders (including former President Clinton, two former United States Senators, two former cabinet officers, several owners of professional sports franchises in Washington, D.C., and a Hall of Fame football coach) that appear to be pulled from the conspiracy-theory laced recesses of the dark web and are completely irrelevant to the allegations against Mr. Black. *Id.* ¶ 6.

9

(Mot. at 8). Although she shared these details in direct messages rather than public posts, there is no evidence that Plaintiff received assurances of confidentiality from either individual, both of whom were virtual strangers to her and in fact readily shared this information with investigators. *See Rapp*, 537 F. Supp. 3d at 529. Accordingly, Plaintiff's public statements weigh strongly in favor of disclosing her identity.

## V.     Plaintiff Is Not Particularly Vulnerable to the Harms of Disclosure.

Defendant previously showed that Plaintiff is not "particularly vulnerable to the possible harms of disclosure," *Sealed Plaintiff*, 537 F.3d at 190, because even if the conduct alleged in the Complaint occurred when Plaintiff was a minor, Plaintiff is now an adult. (Mot. at 16). In her Opposition, Plaintiff acknowledges that courts in this district have only treated this factor as favoring anonymity when the plaintiff is a minor at the time the lawsuit is brought. (*See* Opp. at 14 (citing *Rapp*, 537 F. Supp. 3d at 530; *Combs*, 2024 WL 863705, at *4)). But Plaintiff wrongly asserts that this factor weighs in favor of anonymity in this case because "she alleges that she is developmentally about 12 years old" and "currently has the emotional characteristics of a 12-year-old." (Opp. 14-15). Put differently, Plaintiff contends that her legal age is irrelevant here, because her alleged "disabilities make her vulnerable . . . in exactly the way a child would be" and therefore her "disabilities place her squarely into the class of persons the fourth factor aims to protect." (Opp. at 14-15). But that simply is not the law, and Plaintiff does not point to even a single case adopting her reasoning. Moreover, if, as Plaintiff alleges, she is so developmentally and neurologically disabled that she should be considered the legal equivalent of a child, then her allegations raise serious questions about whether Plaintiff is even competent to bring this action on her own. *See* Fed. R. Civ. P. 17(c) (a minor or an incompetent person may bring suit only through a general guardian, committee, conservator, fiduciary, next friend, or guardian ad litem). Of course, Plaintiff and her counsel have never sought to go this route, which speaks volumes.

## **CONCLUSION**

For the foregoing reasons and as set forth in his opening brief, Defendant respectfully requests that the Court grant his motion and amend the caption to disclose Plaintiff's name.

Dated: November 4, 2024
      New York, New York

Respectfully submitted,

*/s/ E. Danya Perry*

PERRY LAW
E. Danya Perry
Peter A. Gwynne
445 Park Avenue, 7th Floor
New York, NY 10022
Tel: (212) 213-3070
Facsimile: (646) 849-9609
dperry@danyaperrylaw.com
pgwynne@danyaperrylaw.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
51 Madison Avenue
22nd Floor
New York, NY 10010
Tel: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
Tel: (213) 399-2132
susan@estrichgoldin.com

*Attorneys for Defendant Leon Black*