Ob72DoeC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JANE DOE,

4                  Plaintiff,              New York, N.Y.

5           v.                             23 Civ. 6418 (JGLC)

6    LEON BLACK,

7                  Defendant.

8    ------------------------------x      Conference

9                                         November 7, 2024
                                          11:10 a.m.
10
     Before:
11
                     HON. JESSICA G. L. CLARKE,
12
                                          District Judge
13

14                          APPEARANCES

15
16   WIGDOR LLP
          Attorneys for Plaintiff
17   BY:  JEANNE-MARIE BATES CHRISTENSEN
          MEREDITH A. FIRETOG
18        DOUGLAS. H. WIGDOR

19
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
20        Attorneys for Defendant
     BY:  SUSAN R. ESTRICH
21        MICHAEL B. CARLINSKY
          JENNIFER J. BARRETT
22

23   E. DANYA PERRY, PLLC
          Attorneys for Defendant
24   BY:  E. DANYA PERRY

25
```

Ob72DoeC

```
 1            THE COURT:  Good morning.  We are here for an initial
 2   pretrial conference in Doe v. Black.
 3            Who do we have here for the plaintiff?
 4            MS. CHRISTENSEN:  Good morning, your Honor.  Jeanne
 5   Christensen, from Wigdor LLP, and I'm here with Meredith
 6   Firetog and Doug Wigdor.
 7            THE COURT:  Good morning.
 8            MR. WIGDOR:  Good morning, your Honor.
 9            THE COURT:  And for the defendant.
10            MS. ESTRICH:  Susan Estrich for Mr. Black, along with
11   Mr. Carlinsky.
12            MR. CARLINSKY:  Good morning, your Honor.
13            MS. PERRY:  Danya Perry.  Good morning.
14            MS. BARRETT:  Good morning.  I'm Jennifer Barrett from
15   Quinn Emanuel.
16            THE COURT:  Good morning.
17            So we have a number of things to accomplish today.  I
18   have a number of motions pending before me.  There are two that
19   I am going to rule on now.  Those are the defendant's motion
20   for an interlocutory appeal and plaintiff's motion to amend the
21   complaint.  So I will rule with respect to those on the record
22   today.
23            After that, we will turn to defendant's motion to
24   unseal plaintiff's name.  I want to hear further argument with
25   respect to that motion.  I am unlikely to rule today and will
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    likely reserve ruling with respect to that motion, but I do

2    want to hear from the parties a bit more with respect to that

3    motion.

4          After that, we will take up the schedule in this case,

5    the parties' proposed confidentiality order, and one of the

6    discovery disputes that I have before me.  So that's what I

7    have for my agenda today.

8          Anything else before we get to those items,

9    Ms. Christensen?

10          MS. CHRISTENSEN:  Nothing from plaintiff, thank you.

11          THE COURT:  Ms. Estrich?

12          MS. ESTRICH:  Nothing, your Honor.  Thank you.

13          THE COURT:  All right.  So I have reviewed the

14    parties' submissions regarding defendants's motion for an

15    interlocutory appeal at ECF no. 122.  I'm going to rule on the

16    record now.

17          The Court grants defendant's motion pursuant to 28

18    United States Code 1292(b).  A district court is permitted to

19    certify an interlocutory order for appeal when: (1) the order

20    involves a controlling question of law; (2) as to which there

21    is substantial ground for difference of opinion; and (3) an

22    immediate appeal from the order may materially advance the

23    ultimate termination of the litigation.  There is no dispute

24    that the first and third elements are met here.  The only

25    question is whether there is a substantial ground for a

Ob72DoeC

1    difference of opinion.  This element can be met either where:

2    "(1) there is conflicting authority on the issue; or (2) the

3    issue is particularly difficult and of first impression for the

4    Second Circuit."  That is from *Capital Records LLC v. Vimeo*

5    *LLC,* 972 F.Supp.2d 537, 551 (S.D.N.Y. 2013).  The Court agrees

6    that both circumstances are present.

7            Although the Court disagrees with the conclusion

8    reached by Judge Kaplan in *Bellino*, that decision does suggest

9    that there is grounds for a difference of opinion.  That

10    decision also supports that the issue of preemption here is a

11    particularly difficult one——not only because of *Bellino* but

12    also the relative lack of analogous case law, particularly on

13    the issue of conflict preemption.  And, this is a question that

14    the Second Circuit has not yet answered, nor has the New York

15    Court of Appeals.  The Court therefore grants defendant's

16    motion but will not stay this case while that appeal is

17    pending.

18            With respect to plaintiff's motion for leave to amend

19    the complaint, which is at ECF No. 91, I have reviewed the

20    parties' briefing on this issue as well.  The Court grants

21    plaintiff's motion to amend the complaint.  Rule 15(a) of the

22    Federal Rules of Civil Procedure provides that leave to amend

23    "shall be freely given when justice so requires."  "Under this

24    liberal standard, a motion to amend should be denied only if

25    the moving party has unduly delayed or acted in bad faith, the

Ob72DoeC

opposing party will be unfairly prejudiced if leave is granted,

or the proposed amendment is futile." *Agerbrink v. Model*

*Services LLC*, 155 F.Supp.3d 458, 452 (S.D.N.Y. 2016).  The

nonmovant bears the burden of showing prejudice, bad faith, and

futility.  *See United States v. Bon Secours Health System,*

*Incorporated,* 567 F.Supp.3d 429, 438 (S.D.N.Y. 2021).

        Here, there is no undue delay.  We are at the outset

of this case.  Discovery has yet to commence, and as such,

there is no undue delay and no prejudice to defendant related

to plaintiff amending the complaint at this time.

        Defendant has also not met his burden with respect to

bad faith.  Defendant argues that bad faith is established here

because of the delay in making these changes.  He also argues

that the substance of the proposed amendment is suspect because

the new allegations do not bear on the sufficiency of

plaintiff's claim.  Neither of these arguments demonstrate bad

faith.  First, courts regularly allow delays of this length and

even longer without finding bad faith.  *See Agerbrink*, 155

F.Supp.3d at 253 (collecting cases).  Also, delay alone is not

enough.  Second, plaintiff contends that the amendments are

simply to clarify what was previously alleged.  That also does

not indicate bad faith.  And defendant, who bears the burden

here, has not pointed to anything to credibly indicate bad

faith in the timing of this requested amendment.

        Lastly, defendant has not demonstrated futility.

Ob72DoeC

1    Although defendant contends that the additions to the complaint

2    would not survive a Rule 12(f) motion, that is not the standard

3    for futility.  Amendments are futile if they fail to cure prior

4    deficiencies or fail to state a claim under Rule 12(b)(6).  *See*

5    *Pyskaty v. Wide World of Cars LLC*, 856 F.3d 216, 224-225

6    (2d Cir. 2017).  Defendant has not, and cannot, argue that the

7    amendments fail to state a claim or fail to cure prior

8    deficiencies.  As such, defendant fails to identify how any of

9    the changes are futile and, for those reasons, the Court grants

10    plaintiff's motion.

11            I know that there was a sealing motion that was also

12    attached to this motion as well.  The parties are directed to

13    refile the documents relevant to this motion with redactions

14    consistent with the Court's order at ECF No. 106.

15            All right.  So that takes care of those two motions.

16            I want to now turn to the motion to unseal plaintiff's

17    name.  I have reviewed what the parties submitted.  I want to

18    specifically focus on a few factors in particular from the

19    Sealed Plaintiff factors.  Those are, first, whether the

20    plaintiff has kept her identity with respect to the allegations

21    in this case against Mr. Black confidential; second, the

22    prejudice to defendant; third, the particularized harm to

23    plaintiff from disclosure; and, fourth, plaintiff's

24    vulnerabilities.

25            So with that, I will start with counsel for defendant

Ob72DoeC

1    first since you brought this motion, and we will hear from you

2    all with respect to it.

3        MS. PERRY:  Thank you, your Honor.

4        With respect to the first factor that your Honor

5    identified, the plaintiff's -- whether or not she has kept her

6    identity confidential previously, the answer to that is firmly

7    no, and I don't think there is a serious counterargument to

8    that.

9        The plaintiff went far out of her way to publicize

10   claims of her alleged trafficking at the hands of Jeff Epstein.

11   She courted, by using hashtags and DMs—direct messages—to

12   people with large followings.  She courted a public following

13   on Twitter, as it was then known.  She also went on Twitter

14   Live—Twitter Spaces I believe it is called—where --

15   approximately four dozen times, by the way, where she had

16   thousands and thousands of viewers in realtime.  And according

17   to witnesses, on every occasion, or nearly every occasion, she

18   stated and restated the allegations that have come up in this

19   complaint.

20       Now, she really hadn't said a word of any alleged

21   trafficking until approximately July of 2022, whereupon she

22   launched effectively a blitz on Twitter and made these claims

23   and then amplified them as much as possible.  So a lot of the

24   allegations in this complaint are out there publicly.  And with

25   respect to Mr. Black in particular, she told at least two

Ob72DoeC

1    people that she had befriended on Twitter the allegations that

2    she makes in this complaint against him specifically.  Now, we

3    have been hampered in our ability to reach further witnesses

4    because she has remained anonymous on the caption, which I know

5    your Honor will —— you know, that that is what we are here for.

6           And that also goes to another factor of prejudice to

7    defendant.

8           THE COURT:  Just on this factor with the two people

9    that she did tell, that's not the equivalent of publicly

10   revealing her identity with respect to the allegations in this

11   case, right?

12          MS. PERRY:  It was on a public forum but, correct,

13   your Honor, it was via direct message.  But there were people

14   who were strangers to her who she was talking to about the

15   general trafficking allegations and who she offered, willingly,

16   voluntarily, and initiated this contact and these allegations.

17   So we do not know how many people she has said this to.  These

18   are just people who we happened to speak with.  But there are

19   no doubt many others, and we would see that if we were

20   permitted to proceed without her being able to cloak herself in

21   anonymity.

22          THE COURT:  How would you be able to see that if her

23   name was revealed?

24          MS. PERRY:  Well, we believe and this is one of the

25   factors, to jump ahead to prejudice to defendant.  Many courts

1    have found that it is —— including your Honor in a recent case,

2    *Doe v. Combs*, that this asymmetry in discovery is highly

3    prejudicial, so we are now at a moment when we are about to

4    proceed with discovery and so the landscape has shifted.  We

5    did not oppose anonymity previously because we hoped and

6    believed that our motion to dismiss would be granted and it

7    would be unnecessary.  Of course your Honor has ruled, and we

8    now believe that in order to conduct a full-throated discovery,

9    including of third parties, that we need to be able to use her

10   name, just as she is able to use Mr. Black's name and has in a

11   severely reputation-ruining way.

12        Your Honor has found, and other courts in this

13   district have found, that this kind of asymmetry is more

14   profound in cases involving substantial publicity, and that is

15   exactly where we are.  This case and attending cases have

16   attracted a tremendous amount of publicity.  Mr. Black has been

17   branded a child rapist to the world, and he needs to be able to

18   defend himself; and we believe that, in order to do so, we need

19   to be able to use her name, including with, again, third

20   parties and the discovery that ——

21        THE COURT:  Well, if you aware of who the third

22   parties are, right, you haven't been prevented from

23   interviewing witnesses.  It sounds like you all have

24   interviewed quite a few, right?  I think —— so what is

25   preventing from you interviewing further witnesses with her

Ob72DoeC

1    name ——

2         MS. PERRY:  Well, we have been very careful, your

3    Honor, in those interviews.  We did not put any information out

4    there.  We did not initially ourselves use her name.  And it

5    was obvious who some of those people were.  She made claims

6    about having been trafficked as a 16-year-old and having missed

7    countless days of school, so of course we are going to want to

8    speak with her family, who is more than willing to speak with

9    us and to debunk her story.  So it was easy enough to go to her

10   parents, to her sister, her friends, you know, people that were

11   in that close circle, and ask them, hey, what do you know, if

12   anything, about this.  It was really very open ended.

13        We would obviously like to do more targeted discovery.

14   And even now in the subpoenas that have been issued, her name

15   isn't being used.  So I think it is just a —— it is a

16   significant burden for us to have to keep this kind of care.

17   And again, we won't have potential witnesses reaching out to us

18   unless her name is disclosed.

19        THE COURT:  I understand that point, that there

20   aren't —— without her name being identified, people aren't sort

21   of like, oh, I know who this person is and coming to you with

22   information that may be relevant.  But what prevents you —— it

23   sounds like —— I'm not hearing anything that is preventing you

24   from reaching out to witnesses who you are already aware of and

25   gathering information with respect to the plaintiff.

Ob72DoeC

1          MS. PERRY:  Well, the witnesses that we are aware of,

2     we have spoken with them.  Of course, every time we do that in

3     a very orderly and respectful way, we are accused of

4     retaliation.  But we have done that to an extent, but we can

5     only go so far.

6          We can't subpoena her school records.  We can't

7     subpoena other witnesses just out of the blue and use her name

8     as they have.  They have sent out a battery of third-party

9     subpoenas, which I know we will talk about, that they can ask

10    whatever — they have free range.  They can ask whatever they

11    want.  We are not permitted to do that right now.  We are being

12    extremely careful in following your Honor's ruling, but we

13    would like the opportunity, now that we are in discovery, to be

14    able to meet like with like and be able to issue subpoenas as

15    well without fear of violating your Honor's order or being

16    accused of retaliation.

17         THE COURT:  And just to clarify, there are specific

18    witnesses that you are aware of that you have not subpoenaed

19    because you believe you are prohibited from doing so?

20         MS. PERRY:  Yes, your Honor.  We have included those

21    in our brief as well.  It does include academic records,

22    medical records, people who knew her before she claimed in the

23    past couple of years to have autism, down syndrome, and the

24    like.

25         THE COURT:  All right.  Why don't you move to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ob72DoeC

1    particularized harm to plaintiff.

2              MS. PERRY:  Yes, your Honor.

3              We believe that she hasn't articulated any.  She has

4    just said that she will be harmed.  What she does say, she

5    lists two factors.  One, she claims that Mr. Black has already

6    retaliated against her, but she has not been able to show that.

7    We have known for over a year this woman's identity and there

8    has been absolutely no form of retaliation.  The one specific

9    incident that they cite has been debunked and that is that

10   there was an ominous, large, white Suburban parked outside her

11   house.  Turns out that was a neighbor's car.  So there really

12   is nothing.

13             The plaintiff has a burden to articulate something

14   that is more than just general harm that every plaintiff

15   accuses someone of sex trafficking would feel or sexual

16   violence would feel.  And so I think certainly the burden is on

17   them there, and they haven't done anything other than to say

18   she will be harmed.  And they are required to provide some

19   backup for it and they haven't done so.

20             THE COURT:  All right.  In terms of plaintiff's

21   vulnerabilities here, obviously she is not currently a minor.

22   What she alleges is that she was a minor at the time of the ——

23   relevant to the claim here.  But unlike the decision —— my

24   decision in *Combs*, there do appear to be other vulnerabilities

25   that this plaintiff in particular has alleged with respect to

Ob72DoeC

1    medical concerns and disabilities that were not present in

2    *Combs*.  So why isn't that sufficient to meet the vulnerability

3    factor here?

4              MS. PERRY:  Your Honor, there is no law that says that

5    a person who has reached the age of majority, even if they have

6    other vulnerabilities, that they should remain unanimous.  Now,

7    I understand the factors, the ten-factor test is not exhaustive

8    and your Honor is free to consider anything your Honor thinks

9    relevant, but I do want to point out that we have found and

10   they have cited to no law that would be on point.

11             But more than that, your Honor, it is true that she

12   claims these things.  It is also true that we have significant

13   evidence that belies those things.  But I understand your

14   Honor's taking the allegations.  But she is claiming to have

15   the developmental age of a 12-year-old, and yet she filed under

16   her own name.  She did not ask for a guardian.  She filed in

17   her own name, so she is competent to make these types of

18   decisions and there is no evidence that she cannot.  She filed

19   a — I won't even characterize the allegations, but they are

20   horrific by any standard and very, very detailed and very

21   graphic and very particular from events that she claims

22   happened over 20 years ago.  Clearly this is a woman who went

23   to high school, to college and, according to her, law school.

24   So she has the ability to be able to prosecute this case, as we

25   have seen, and to conduct discovery under her own name.  There

Ob72DoeC

1    is no law to the contrary.

2              THE COURT:  Thank you.

3              MS. PERRY:  Thank you, your Honor.

4              THE COURT:  One final question for you.  The

5    identities of the plaintiffs in the case before Judge Rakoff

6    involving Jeffrey Epstein have been kept confidential, correct?

7              MS. PERRY:  Yes, your Honor.

8              THE COURT:  What would your response be to the

9    argument that it would be somewhat unfair to reveal plaintiff's

10   name here when sort of similarly situated plaintiffs names have

11   been kept confidential?

12             MS. PERRY:  Your Honor, that is a completely different

13   situation than this case, where no one has asked that they be

14   deanonymized.  That has been unopposed.  We did not oppose the

15   anonymization initially, as your Honor noted in weighting that

16   as a significant factor in your Honor's previous ruling.  Now,

17   because we have reached the point of discovery, the situation

18   has changed, the landscape has shifted, and we do need to be

19   able to conduct full-throated discovery.  So I would just say,

20   your Honor, that is not the same as this case.  Were we to

21   agree to continue in anonymity, obviously we wouldn't be here

22   and your Honor wouldn't have to spend any time ruling.

23             Thank you, your Honor.

24             THE COURT:  Thank you.

25             Ms. Christensen.

Ob72DoeC

1          MS. CHRISTENSEN:  Thank you.

2          Thank you, your Honor.  I am just going to start, if I

3     may, right where we just left off because on one hand, the

4     defendant has claimed that they are hindered in discovery and

5     one of the examples of that was that witnesses aren't coming

6     forward.  Yet at the same time, they just told your Honor that

7     thousands and thousands of followers on Twitter somehow knew

8     who our client is.  So they both can't be true.  So if it's

9     true that she has already disclosed her identity in connection

10    with this case, then you would think those thousands of people

11    would have come forward.  So that's my point on that issue.

12         THE COURT:  Let me follow up on the prejudice to

13    defendant here and their claims with respect to not being able

14    to obtain discovery.

15         MS. CHRISTENSEN:  Right.

16         THE COURT:  What is your response to their claim that

17    they cannot issue subpoenas or get medical records or school

18    records?  Is it your position that they are prevented from

19    doing so?

20         MS. CHRISTENSEN:  No, your Honor.  That's what I was

21    going to move to next in that we do have a protective order

22    that was filed yesterday in this case.  There is an easy

23    work-around for that.  We can add an addendum to the protective

24    order that if a nonparty subpoena goes out, the person signs

25    that agreement that her name could be used with those nonparty

Ob72DoeC

1    subpoenaed witnesses.  We certainly, for example, would not

2    have an objection to defendant filing his own request to the

3    school for her records, although we can also give them to

4    defendant in discovery.  But again, to use her name for a

5    purpose like that, we would not have an objection to.  So I

6    think with a protective order and having nonparties who are

7    subpoenaed to sign that, that it would be perfectly reasonable

8    to expect that her name is disclosed.  I mean that's something

9    that we were considering ourselves.  We just didn't do it yet

10   because we didn't have the protective order in place, so we

11   didn't use her name in our subpoenas.  But I imagine we might

12   be reissuing some of them with the copy of the protective

13   order, and then we would disclose the name.  So I think there

14   is a work around on that.

15          We obviously dispute the allegations about her telling

16   thousands and thousands of people on Twitter anything about

17   Leon Black.  And I think that the glaring omission in the

18   argument is if she was saying something about Jeffrey Epstein,

19   it doesn't mean that it was also about Leon Black.  And so I

20   haven't seen anything or heard anything that she spoke

21   specifically about Leon Black.

22          As to the two people evidently who they have spoken to

23   who directly messaged our client, one of them——and if your

24   Honor would like an extra submission——asked her to send dirty

25   pictures of herself to him, okay?  So that's who we are talking

Ob72DoeC

1    about.  People reached out to our client from something on

2    Twitter.

3              So I am fully confident that she was not interacting

4    with 50- or 60-year-old men on Twitter about Leon Black, and we

5    haven't seen anything about that.

6              THE COURT:  I'm not sure —— I think it would be

7    helpful if I saw those messages, because I'm not exactly

8    understanding the context here.  These are two random people

9    who reached out to her and then she disclosed what happened

10   with respect to Leon Black?

11             MS. CHRISTENSEN:  No.  She never brought up Leon —— to

12   the people that they wrote about in their motion, my

13   understanding is they were people when she said she was a

14   survivor —— a survivor of Epstein reached out to her.  It is

15   true that people did reach out to her and in fact that's one

16   reason she went off Twitter.  It's not easy for her to know

17   exactly who might be a good person versus somebody who is

18   trying to, in a nuanced way, convince her to send photos of

19   herself without clothes on.  That is why she is not on Twitter.

20   I don't believe there is a single message or anything from

21   Twitter that ever mentions Leon Black's name.  I have not seen

22   that.

23             THE COURT:  So it is just these —— as far as you know,

24   these two people who she did not know before at all who

25   seemingly had bad motives to reach out to her who she disclosed

Ob72DoeC

1    this to?

2            MS. CHRISTENSEN:  I don't even know what exactly

3    defendant says she disclosed.  It was in connection with saying

4    she was an Epstein victim, but she made that post.

5            THE COURT:  Right.  But what did she disclose to these

6    two people?

7            MS. CHRISTENSEN:  I don't believe anything more than

8    that.  I would have to go back and read the messages.  It's

9    been a while.  I apologize, your Honor.  There is no

10   specific —— certainly nothing about this case, but I don't

11   believe any specifics about what actually happened to her with

12   Epstein.

13           THE COURT:  What about with Leon Black?

14           MS. CHRISTENSEN:  Definitely not with Leon Black.

15           THE COURT:  All right.  So just to be clear, you

16   dispute there were two people that she randomly shared this

17   information with with respect to Leon Black specifically.

18           MS. CHRISTENSEN:  With respect to Leon Black, yes.

19           THE COURT:  All right.  Do you have those messages

20   that they are referring to?

21           MS. CHRISTENSEN:  Not with me today, your Honor.  They

22   weren't in their motion.  I can certainly get them quickly when

23   I get back to the office and send them to you.

24           THE COURT:  All right.

25           MS. CHRISTENSEN:  That segues somewhat into the issue

1    of her individualized harm.  Our client falls into one of those

2    categories where she doesn't fit into a neat box, and so, yes,

3    she did graduate from college and she can do well academically,

4    you know, taking tests and things like that.  Socially, not so

5    well.  And to say that she can't — other, she did remember

6    things specifically and that happened to her a long time ago,

7    but that doesn't mean that she still does not developmentally

8    behave and see life through a lens of a much younger person

9    than her chronological age.  For certain things, she can come

10   across in social situations as behaving like an adult and at

11   other times, you know, she is playing with dolls.  So there is

12   a large disparity between what we are talking about here, I do

13   believe.

14          And defense counsel is correct that she did not need a

15   guardian to commence this action.  So I don't dispute that.  I

16   do believe, though, that her reactions, just as an example, by

17   repeatedly being called a pathological opportunist and a liar

18   in many of these court letters and filings is extremely hurtful

19   and damaging to her and she gets very upset.  So it is not

20   something, as I said, that fits into a neat box, oh, she has

21   this diagnosis and this is what she is, so I can't give you

22   that.

23          THE COURT:  So how does that — obviously anyone being

24   accused of lying in a court filing would be upset, but what is

25   it particular to her and her diagnoses that sort of separates

Ob72DoeC

1    her from others?

2    MS. CHRISTENSEN:  Well, they are actually seizing on

3    her —— she put out there that she is autistic and

4    developmentally disabled, and then they have somehow twisted

5    that and have said multiple times that she is lying about those

6    very things.  To her, that's part of her identity that they are

7    challenging the fact that she is autistic or developmentally

8    disabled and then they are using that both to say that she

9    doesn't know what she is talking about, right, and now they are

10   saying, well, she is probably lying about those things, too, so

11   that can't hurt her in any way.  I would say the part that

12   separates her is chronologically, she is 38, but she in many

13   ways experiences the world like a teenager.

14   Unless your Honor wants to hear about the name

15   calling, I will move on from that right now.

16   The other point that defense counsel brought up in

17   terms of damage to him and all of the publicity in this case,

18   the only reason it is getting all this publicity is the

19   defendant is a guy who everybody knows paid over $160 million

20   to Jeffrey Epstein and then he paid $62.5 million to the U.S.

21   Virgin Islands in connection with Jeffrey Epstein and

22   associated claims, and he was the head of a large private

23   equity firm and so now he is wondering why this is getting so

24   much publicity?  His name has been associated with Jeffrey

25   Epstein for a long time, and we believe strongly that, based on

Ob72DoeC

1    those amounts of money that were paid to Mr. Epstein and the

2    $62.5 million settlement with the U.S. Virgin Islands, that

3    there are other women who Mr. Black has settled claims with.

4    So I don't see how it is any surprise that the media is

5    following a case against Mr. Black.  I don't think there is

6    anything different that they have articulated regarding him

7    versus any other case.  And since we file these cases often and

8    our position is always that if the client wishes to be a

9    Jane Doe that that's how we file the case and that's what we

10   try to do.  And as was alluded to here before, not every

11   defendant disputes that.

12          So if the main argument is that they weren't able to

13   conduct discovery, I think we have a work-around for that.

14          And the second point is that they already, even as she

15   has been a Jane Doe, have interviewed so many people.  They

16   went to and found high school friends of our client who they

17   have interviewed.  So to suggest that no one in those

18   interviews knew who they were talking about is a bit

19   ridiculous.  And they showed up at the home of our client's

20   biological parents.  So, they had private investigators at the

21   doorstep.  When the parents came home and they walked up to

22   their front door, there were private investigators waiting for

23   them.

24          THE COURT:  I understand.  You are not saying that

25   there is anything improper about that, correct?

Ob72DoeC

1          MS. CHRISTENSEN:  In terms of the actual interview,

2     no.  But I'm just saying it hasn't hindered their ability to

3     conduct the discovery that they claim.

4          THE COURT:  Obviously I recently decided a similar

5     issue, this similar issue in *Combs*.  How would you distinguish

6     this case?

7          MS. CHRISTENSEN:  Well, because our client —— it

8     wasn't her choice as a minor when she was told to be in a

9     certain place at a certain time and meet with Mr. Black.  That

10    was not her decision.  And while he is a public figure in the

11    Wall Street circles, I do think when there is a client or a

12    victim who is in a long-term —— any type of a long-term

13    relationship with a public figure, that they themselves have

14    placed them out into the public as identified as a girlfriend

15    or at least a friend or associate of that person and that that

16    is a very different scenario than what happened with our

17    client.  So I think the public figure cases are very different

18    from the cases in which both the plaintiff and the defendant

19    are private individuals, and I do think that the factors under

20    Sealed Plaintiff and Sealed Defendant should be varied when it

21    comes to public figures.  And that's one reason.

22          And the last thing I will say about not submitting

23    proof in the form of —— I'm not sure what exactly they wanted

24    to see, but again, I feel strongly that not every plaintiff or

25    a victim in a sexuality case even has lawyers.  So to suggest

Ob72DoeC

 1   that they are required to get an expert opinion of some sort

 2   just to proceed as a Jane Doe is really placing a high burden

 3   on somebody who might not have those resources.  And there are

 4   plenty of plaintiffs that do meet that category and might

 5   proceed *pro se* and we are establishing a very high bar for

 6   somebody like that; that if you have a lot of money and you can

 7   afford a medical expert of some sort, then you get to be a

 8   Jane Doe.  But if you are poor, then you might not.  And I

 9   don't think that's an appropriate standard to place on a

10   victim, so that's my point.

11            THE COURT:  All right.  Thank you, Ms. Christensen.

12            All right.  Ms. Perry, do you want to respond very

13   briefly?

14            MS. PERRY:  Yes, your Honor.

15            Your Honor, some of Ms. Christensen's points have

16   highlighted the very, very specific and clear prejudice to our

17   client in not being able to use plaintiff's name.  We just

18   found out about a new person today that the plaintiff had

19   reached out to and told these allegations about Mr. Black.  The

20   two people who we are aware of who she told about Mr. Black are

21   both women.  It's not this creepy guy who asked her for photos.

22   So there are other people out there.  And it is important that,

23   as much as Ms. Christensen just now suggested an addendum to a

24   confidentiality agreement we had already worked out, that does

25   not begin to do for us what we need in order to defend this

1  case.  We would like —— so one of the people who we found out

2  about on Twitter figured out that this case was brought by the

3  person she knew from Twitter because the plaintiff had told her

4  exactly the same things.  So I know Ms. Christensen says she is

5  not sure about that.  That is what happened.  The allegations

6  that she had told this woman on Twitter not too long before she

7  filed the complaint very much track what's in the complaint,

8  and this woman put that together and reached out to us, and

9  there are no doubt many other people ——

10        THE COURT:  Let me ask you this:  I think there may be

11  a distinction between a plaintiff confiding in a couple people,

12  right, about what happened to them and that wouldn't sort of

13  necessarily weigh as that person is now not keeping what

14  happened to them confidential, right?  Like if that person is

15  just confiding in a few people, maybe it is somebody who has

16  also experienced trafficking and they want to sort of confide

17  in a person who has a similar experience, that to me doesn't

18  really support the idea that they are now not keeping their

19  claims confidential.  But randomly reaching out to people and

20  just telling whoever asks, that's sort of the underside of that

21  scale.  So where do you see these —— what's happening with

22  plaintiff telling people on that sort of scale?

23        MS. PERRY:  It's on that end of the scale.  So we

24  really need to just start, and I think we can end, with the

25  fact that she told thousands of people on Twitter about the

Ob72DoeC

1    very allegations against Mr. Epstein that she alleges in this

2    complaint.  They cannot elide that fact.  Ms. Christensen

3    started by saying, well, people could have come forward because

4    she did say these comments on Twitter.  So she conceded that.

5    But of course she has not used her name here publicly, so they

6    cannot make those connections.  But that really -- I think we

7    could begin and end there.  A large part of her complaint is

8    that she was trafficked by Jeffrey Epstein to Leon Black, and a

9    lot of that is out there.  It is just dots cannot be connected

10   because she has decided to proceed anonymously.  So it is not

11   just the random outreaches that she initiated to people on

12   Twitter talking about Mr. Black specifically, but it's the

13   thousands of people that she regularly made these allegations

14   to about the core allegations in the complaint.

15          And your Honor, I just wanted to finish one little

16   point, I think there was a strand out there, about this notion

17   of an addendum to our confi.  That would not give us the

18   freedom to just reach out to people ourselves.  Forget even

19   with a third-party subpoena, but just do informal interviews,

20   which we now have conceded there is nothing wrong with it.  He

21   has to be able to do that to defend himself.

22          So unless your Honor has any further questions, thank

23   you.

24          THE COURT:  So I will reserve ruling with respect to

25   that.  I know there are a couple of sealing requests with

Ob72DoeC

 1  respect to this motion as well that I will just handle in one

 2  decision.

 3          So now moving along to the parties' proposed case

 4  management plan, the schedule is fine.  I will so order it and

 5  add a case management conference date, likely May 1 of next

 6  year at 1 p.m. -- excuse me, 11 a.m.

 7          I just want to make a note now about discovery

 8  disputes.  It appears there may be some in the pipeline that

 9  you all have.  I just want to draw your attention to my

10  individual rule with respect to discovery disputes.  They

11  should be submitted via a joint letter after a meet-and-confer

12  process, obviously, as required under all applicable rules.

13  But one point I want to make specifically is that the parties

14  should comply with my rules that require that you all include

15  in the joint letter the position the parties started with at

16  the beginning of the meet-and-confer and each party's final

17  proposed compromise and why the opposing side finds the

18  compromise position insufficient.  So please include that in

19  any joint letter.  Any letters without that information will be

20  denied.

21          I know that this is a tough case and you all have

22  spent a lot of time, I think unnecessarily, attacking one

23  another.  You all should focus on the issues when you bring

24  disputes and do not waste words and space on unnecessarily

25  attacking one another.

Ob72DoeC

1          I have also reviewed the confidentiality proposed

2     order at ECF 149 which is fine, and I will enter that as well.

3          The last issue that I have is the discovery dispute

4     regarding documents in Judge Rakoff's case.  The relevant

5     letters start at ECF No. 107.  I have reviewed the parties'

6     letters regarding that request.  Those are documents before

7     Judge Rakoff that are sealed in his case.  Because of that,

8     counsel for defendant should direct any requests regarding

9     those materials to Judge Rakoff.

10          I know there is also a request to bifurcate discovery

11     in this case with respect to those documents first and then

12     other discovery.  We are not going to do that.  We are moving

13     forward with discovery.  You all should seek those documents

14     through Judge Rakoff's case, and he will make a decision with

15     respect to those documents, and you are all otherwise moving

16     forward with discovery.  They should not be done through

17     subpoenas of third parties and counsel.

18          There is another outstanding discovery dispute related

19     to class counsel from that case before Judge Rakoff.  I will

20     address that in an order after this conference.

21          All right.  I know there were some concerns about some

22     of the subpoenas that plaintiff's counsel has been issuing.  I

23     just want to remind all counsel the issues here I think are

24     clear as to what is appropriate.  What I am hearing is that

25     subpoenas are being sought that are potentially seeking

Ob72DoeC

1    information that's outside the bounds of what is relevant.  So

2    please I think you all should be mindful of what you are

3    seeking here.  It needs to be relevant and not harassing, and I

4    will not hesitate to quash subpoenas if I find that they are

5    outside of those bounds.  I have nothing before me with respect

6    to that.  I just wanted to make clear that I have some

7    concerns, but I will address issues as they come to me.  All

8    right?

9            Is there anything else for us to discuss today,

10   Ms. Christensen?

11           MS. CHRISTENSEN:  No.  Not from the plaintiff.  Thank

12   you.

13           MR. CARLINSKY:  Your Honor was very clear on all the

14   points.  I appreciate it.  We are then going to reach out to

15   Judge Rakoff, and your Honor made clear you don't want us to do

16   it through subpoenas of the parties.  Do we have the Court's

17   approval, though, that we can say to the Court——Judge Rakoff,

18   that is——that we are before your Honor and that the Court's

19   preference is that we address the issues directly with his

20   Honor?

21           THE COURT:  Absolutely.

22           MR. CARLINSKY:  Okay.  Appreciate that.

23           THE COURT:  All right.  Anything further?

24           MS. ESTRICH:  Nothing further, your Honor.

25           THE COURT:  We are adjourned.  Thank you all.
                                oOo