

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

November 12, 2024

<u>**VIA EMAIL**</u> **- submitted** *in camera*

The Honorable Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20C
New York, New York 10007

      Re:      <u>Doe v. Black</u>, Case No. 1:23-cv-06418-JGLC

We represent Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe") in the above-captioned matter. We write in connection with Your Honor's order of November 8, 2024 (ECF 153), directing Plaintiff to submit to the Court additional information regarding her Twitter account.

**I.    Mr. Black's Prior Claims Regarding Ms. Doe's Twitter Account**

Defendant Leon Black ("Mr. Black") claimed that starting in July 2022, Ms. Doe began posting and speaking on Twitter about having been trafficked and abused by Jeffrey Epstein and his associates. ECF 117 at 6. These posts supposedly included hashtags such as "#Epstein" and "#JeffreyEpstein." *Id.* Although Ms. Doe deleted her account in approximately May 2023, Mr. Black claims that he has unearthed several posts in which Ms. Doe identifies herself as a victim of Jeffrey Epstein. *Id.* at 7. He does not claim that any of these posts mention or refer to Mr. Black in any way.

According to Mr. Black's private investigator, two separate Twitter users—Twitter User 1 and Twitter User 2—"met Ms. Doe through social media and interacted with Ms. Doe both on social media and offline." ECF 120 at ¶¶ 9, 11. According to the investigator, Twitter User 1 stated that sometime in fall 2022, Ms. Doe identified herself as a victim of Jeffrey Epstein in a number of live video chats called Twitter Spaces from fall 2022 to April 2023. *Id.* ¶ 10. There is no allegation that Ms. Doe mentioned Leon Black's name or this litigation during these Twitter Spaces or in conversations with Twitter User 1. Mr. Black's investigator further states that Ms. Doe relayed to Twitter User 2 "and another individual specific allegations about Mr. Black, using his name, that were substantially similar, if not identical to those in the Complaint in this action." *Id.* at ¶ 12. Mr. Black's investigator provides no further detail, such as when or where Ms. Doe supposedly made these statements and does not suggest such communications were made publicly on Twitter (as opposed to in a private conversation). Nor does he indicate who the third individual was. In his memorandum of law in support of his Motion to Disclose Plaintiff's name, he represents that these conversations were via text message. ECF 117 at 8.



At the Initial Pre-Trial Conference held before Your Honor on November 7, attorneys for Mr. Black again reiterated their position that there are Twitter direct messages between Ms. Doe and two other individuals that refer to Mr. Black. Counsel for Ms. Doe is unaware of any such communications, but shared information with the Court regarding the knowledge counsel does have of communications between Ms. Doe and others regarding Mr. Epstein, and offered to share those communications with the Court.

## II. Attached Evidence Contradicting Mr. Black's Claims

We are attaching several documents contradicting Mr. Black's claims about the nature of Ms. Doe's communications with others and her use of her now-deactivated Twitter account. Because Ms. Doe deactivated her Twitter account in May 2023, we only have access to what Ms. Doe has saved on her phone. We believe there may be more messages from individuals she met via Twitter, but nothing we have seen mentions Mr. Black and we do not believe her communications ever concerned him or this litigation.

The documents attached hereto include:

- Messages between Ms. Doe and Natalie Jacoby, the woman we believe set up the "Twitter Spaces" mentioned in Mr. Black's submissions, and further tried to get Ms. Doe to speak on various podcasts[1];
- A screenshot showing multiple men engaged in direct messages with Ms. Doe following her appearance on Ms. Jacoby's Twitter Spaces;
- Messages between Ms. Doe and certain men who reached out to her via direct message, including:

    o One man who commented following Ms. Doe's appearance on Twitter Spaces, acknowledging that it was Ms. Jacoby's "space" and sending Ms. Doe "love." We understand that this man also later publicly posted pictures of Ms. Doe on Twitter.

    o One man, who we believe is over the age of 70, who posted publicly about Ms. Doe, referring to her as his "daughter." This same man repeatedly called Ms. Doe and left disturbing messages and voicemails, which we also share with the Court.

    o Another man who mentioned both Ms. Doe and her adoptive mother by name in his Tweets.

---

[1] We understand that Ms. Jacoby has now completely deleted and deactivated her Twitter account, so we are unable to locate anything substantiating Black's claims concerning the "Twitter Spaces" Ms. Doe participated in.



Hon. Jessica G. L. Clarke
November 12, 2024
Page 3

Once Ms. Doe's adoptive mother learned about these interactions, she consulted with a lawyer to consider sending a cease-and-desist letter to Natalie Jacoby, the woman who enticed Ms. Doe to speak on Twitter Spaces, and her mother further worked with a professional by the name of ████████ ████████, a specialist for adults with developmental disabilities, to draft a "safety protocol" concerning any further use of Twitter by Ms. Doe. Given the nature of the interactions she had with individuals as a result of her presence on Twitter, as evidenced by our submissions to the Court, Ms. Doe deactivated her account. We attach a copy of the draft safety protocol here as well which identifies how her developmental disabilities made social media an especially difficult medium to navigate.

As made clear in these materials, Ms. Doe never discussed Mr. Black with any of these individuals, nor did she post anything publicly on Twitter regarding this case or Mr. Black.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*Jeanne Christensen*

Jeanne M. Christensen