

E. DANYA PERRY
Founding Partner
212-840-7939 PHONE
dperry@danyaperrylaw.com EMAIL

November 22, 2024

**VIA ECF**

Hon. Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007
Email: ClarkeNYSDChambers@nysd.uscourts.gov

**Re:** *Jane Doe* v. *Leon Black*, 1:23-cv-06418-JGLC: Additional Information Regarding Plaintiff's Failure to Keep Her Identity Confidential in Support of Defendant's Motion to Amend Caption (ECF No. 116)

Dear Judge Clarke:

We write to provide additional information regarding Plaintiff's failure to keep her identity confidential, as ordered by the Court following the initial pre-trial conference ("IPTC") (ECF No. 153.) During the IPTC, Plaintiff's counsel challenged Defendant's assertion that Plaintiff discussed the specific allegations against Defendant in private messages with at least two individuals she befriended on Twitter, stating that Plaintiff had never brought up Defendant in any of her communications, and that Plaintiff's counsel was not aware of any instance in which Plaintiff spoke specifically about Defendant. Plaintiff's counsel also specifically referenced direct messages between Plaintiff and other users on Twitter. Your Honor stated that it would be helpful to see those messages, and subsequently ordered Plaintiff's counsel "to submit all Twitter messages referenced at the IPTC (i.e., direct messages wherein Plaintiff allegedly disclosed to others what occurred with Defendant Leon Black)[.]" (ECF No. 153.) The Court's order also permitted Defendant to "submit any additional information regarding Plaintiff's alleged failure to keep her identity confidential[.]" (*Id.*) After the parties made *ex parte* submissions, the Court directed Plaintiff to file her submission on the public docket (with appropriate redactions) and permitted Defendant to "supplement" his initial submission to respond to Plaintiff's submission. (ECF No. 160.)

***Plaintiff Specifically Disclosed Defendant's Name and Allegations Against Him to At Least Two Individuals Whom She Knew Only Through Social Media***

Pursuant to the Court's Orders, Defendant submits the relevant portions of the messages referenced in support of his motion to amend the caption to disclose Plaintiff's name (*see* ECF Nos. 117, 144), which are attached as Exhibits A and B to this letter. Defendant's investigator received copies of these messages from the individuals to whom Plaintiff disclosed her allegations against Defendant and whom Plaintiff knew only from interactions on Twitter (*see* ECF No. 118). Although Plaintiff's counsel specifically referenced Twitter direct messages during the IPTC and in her submission (*see* ECF Nos. 160, 161 at 2), the relevant exchanges occurred over text

The Honorable Jessica G. L. Clarke
November 22, 2024

message[1] in early 2023. According to a recorded interview of one of the individuals ("Individual 1"), Plaintiff met these individuals through Twitter and subsequently exchanged phone numbers with them so she could communicate with them off the platform.[2] As reflected in the attached screenshots, Plaintiff did disclose Defendant's name to both individuals.

According to Individual 1,[3] shortly before filing the Complaint in this action, Plaintiff relayed that she was assaulted by a "billionaire" and shared graphic details of the alleged assault. Plaintiff then offered, unprompted, to share the name of her alleged attacker, and asked that Individual 1 delete the message with his name after reading it. After Plaintiff provided Defendant's name, Individual 1 did subsequently delete the message disclosing Defendant's name. As Individual 1 told the investigator (emphasis added):

> **Individual 1:** She always, always talked about being an Epstein survivor. She never ever, but she brought up, yeah, I mean, she always talked about Epstein and how she was his special girl. That's what she always mentioned.
>
> **Investigator:** And then did she ever mention any other abuse or rape or anything by any other people, or she only referred always to Epstein?
>
> **Individual 1:** Not in the, well, not in the [Twitter] spaces directly, no. But *she texted me unsolicited*, you know, here's the, you know, I have, you know, the story of, you know, who did it. And I, in my text, I'm like, *I don't, I don't want to hear it.*
>
> **Investigator:** And did she actually tell you the name?
>
> **Individual 1:** And then she said, **here's the name of the person who did it.** I said, please don't tell me. And then she said, just delete it after. And I was like, I don't want it, so, but I did, and I did**. So in my text messages, she gave me Leon [Black]'s name, and I deleted it right after.** And I was like, I don't even know who the hell he is. Like, you know, so, like, she was, this, and this was with her getting her case together.

***

> **Individual 1:** I was originally I was like, no, don't like I don't want to hear her story. I didn't know she was going to blast her story, but she gave me her full. You know, exact. **Like what she put in the [complaint] is the text that she sent me. And then she says, I will tell you once you read it, who the redacted name is.** And I said, you know, after reading that, I was, you know, may I tell you his name?

---

[1] Unless they have been deleted/spoliated, these text messages should be available to Plaintiff on her phone, which, Plaintiff's counsel admits to accessing to retrieve the messages included in Plaintiff's submission. (ECF Nos. 161, 162 at 2.)

[2] Contrary to Plaintiff's counsel's assertions at the IPTC, neither Individual 1 nor Individual 2, the second individual to whom Plaintiff revealed Mr. Black's identity, were 50- or 60-year-old men who, according to Plaintiff's counsel, asked Plaintiff to send inappropriate pictures of herself. Instead, these are two adult women whom Plaintiff contacted voluntarily, and with whom she exchanged text messages and volunteered details of her alleged assault.

[3] Defendant can provide the relevant portions of the audio recording of the interview at the Court's request.

The Honorable Jessica G. L. Clarke
November 22, 2024

> And if I do, can you delete it? I said, I'm going to delete everything, which I didn't. And I said, I don't know who that is.
>
> **Investigator:** And so she said that that's also March 7th. So it's all the same part of the same conversation. And she said, I'm going to come out and file and I'll tell you the name of the person and so forth. OK.
>
> **Individual 1**: Yeah. ***And it was all it was all like unprovoked. Like I didn't ask.*** You know, I like my things were, you know, like help to keep you positive. Like I'm here to help just for positivity. You know, I said that your mental health and your future are most important.

(Emphasis added.) The text messages that Individual 1 provided in Exhibit A show that this is exactly what happened. Plaintiff texted Individual 1 "I will tell you once you'[v]e read it who the redacted name is," and "may I tell you his name? And if I do, can you delete it right after?" After Individual 1 agreed, Plaintiff said "Okay his name was" and then provided Mr. Black's name, which Individual 1 told investigators that she deleted.

After her interview, Individual 1 contacted Individual 2, another person who had interacted with Plaintiff on Twitter, and then via text message. Individual 2 provided her text messages with Plaintiff to investigators through Individual 1.

Those messages, provided in Exhibit B, are remarkably similar to Individual 1's. Plaintiff asked Individual 2, "Okay so I'm going to type a name and then can you delete it as soon as I type it?" Plaintiff did so, and Individual 2 acknowledged that she had deleted Mr. Black's name.

As discussed at the IPTC, these messages demonstrate that Plaintiff has not in fact kept her identity confidential in connection with the allegations concerning Defendant in the First Amended Complaint ("FAC") (ECF No. 152). Indeed, she freely and insistently offered up the details of her alleged assault and Defendant's identity to at least two individuals—both of whom were virtual strangers she "knew" only through social media—without even being asked and even though one of them expressly said she did not want to hear about it.

Moreover, these two individuals are merely the people that Defendant is aware of *so far*, without having the ability to learn more due to Plaintiff's anonymity, and only because one of them made the connection to this case based on the similarity between what Plaintiff told her and the allegations in the Complaint. Plaintiff had thousands of contacts on social media, regularly described her supposed connection to Epstein in Twitter Spaces events attended by thousands of participants, and posted frequently about her alleged connection to Epstein, employing hashtags and other methods to maximize the reach of her posts, all of which relate to Plaintiff's allegations in the FAC and are sufficient, standing alone, to weigh against Plaintiff's continued anonymity. These two individuals are in all likelihood just the tip of the proverbial iceberg, and we expect that more witnesses will come forward if Plaintiff's name is disclosed. *See, e.g.*, *Doe v. Combs*, No. 23 Civ. 10628, 2024 WL 863705, at *4 (S.D.N.Y. Feb. 29, 2024) (Clarke, J.); *Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021). Those witnesses possess crucial information that Defendant has a right to use in his defense.

The Honorable Jessica G. L. Clarke
November 22, 2024

***Plaintiff's Submission Is Non-Responsive and Raises Serious Concerns About Spoliation***

Plaintiff's submission (ECF Nos. 161, 162) is entirely non-responsive to the Court's instruction; provides no evidence that Plaintiff kept her identity confidential in connection with her allegations concerning Defendant; and fails to rebut Defendant's evidence that she did not.[4] First and foremost, contrary to Plaintiff's counsel's assertion at the IPTC, none of the Twitter users referenced in Plaintiff's letter are individuals that Defendant's investigators have even spoken with, and are not the two individuals referenced in Defendant's motion. (*See* ECF Nos. 117, 119 at 5.) Second, other than a single Direct Message exchange (ECF Nos. 161-1, 162-1), Plaintiff's submission consists entirely of cherry-picked communications *to* Plaintiff, and provides no evidence of what Plaintiff communicated to others. Third, none of the communications included with her submission are even related to the two topics at issue—namely, Epstein and Defendant. In short, Plaintiff's submission is bewildering: her apparent non-response to direct messages that do not even so much as mention Epstein or Defendant says nothing about what Plaintiff affirmatively did say about Epstein and Defendant to other individuals.

It is entirely unclear how or why Plaintiff selected these particular communications to prove that she has not spoken with anyone about her allegations against Defendant. Plaintiff noticeably omits from her submission one of the few specific communications her counsel mentioned during the IPTC, a Direct Message in which an individual supposedly asked Plaintiff to send him inappropriate pictures of herself. These messages appear to have been selected without rhyme or reason and have no bearing on the issue of whether Plaintiff should be required to proceed under her real name.

Beyond its non-responsiveness, Plaintiff's submission raises serious concerns about spoliation. In her submission, Plaintiff represents that she deleted her Twitter account "in approximately May 2023" (ECF Nos. 161, 162 at 1)—only two months before she commenced this lawsuit. As a result, Plaintiff's counsel reports, they "only have access to what Ms. Doe has saved on her phone." (*Id.* at 2.) Plaintiff was a prolific user of Twitter, and her now-lost Twitter account—both her public posts about Epstein and her communications with other users about Epstein and Defendant—contained highly relevant and material information about her allegations in this lawsuit, the identities of potential witnesses, and information relevant to Plaintiff's credibility. Defendant will undoubtedly by highly prejudiced by the deletion of this information (and the preservation of only the subset of materials Plaintiff believes is helpful to her cause).

Moreover, by her own admission, Plaintiff appears to have been represented by counsel and was either contemplating or actively engaged in litigation concerning Epstein and/or Defendant at the time she deleted her Twitter account. In February 2023, Plaintiff told Individual 2, whom she knew only through social media that "in March . . . my case starts against the estate of Jeffrey Epstein."[5] Shortly thereafter, she told Individual 2 about another case involving "a man

---

[4] As Defendant has shown elsewhere, Plaintiff frequently spoke about being trafficked by Epstein, both in her public posts on Twitter and in live Twitter Spaces events attended by thousands of participants. (*See, e.g.*, ECF Nos. 75 at 8-9; 76 at ¶¶ 23-31 & Exs. 11-14.) Plaintiff's allegations about being trafficked to and by Epstein comprise a substantial portion of her First Amended Complaint—covering more paragraphs than her account of her alleged rape by Defendant.

[5] A copy of this text message exchange is attached as Exhibit C.

...

The Honorable Jessica G. L. Clarke
November 22, 2024

that Jeffrey literally gave me to as a 'gift,'"[6]—using language nearly identical to what would later appear in her pleadings in this action—before disclosing Defendant's name on the condition that Individual 2 would immediately delete it. And in March 2023, she told Individual 1, whom she also knew only from social media that she was "literally currently in a court battle with two of the most powerful billionaires on the planet"[7] and went on to recount allegations that appeared nearly verbatim a few months later in the complaint in this action, indicating that Plaintiff's plan to sue Mr. Black was already underway by then.

***Conclusion***

As the foregoing makes clear, Plaintiff has not kept her identity confidential with respect to her allegations in this case—neither with respect to her allegations about Epstein nor with respect to her allegations about Defendant. But ultimately, whether or not Plaintiff has kept her identify confidential is just one of the relevant factors, and eight of the nine other factors plainly weigh against Plaintiff's continued anonymity. For all of these reasons, and for the reasons set forth in Defendant's motion papers, we respectfully request that the Court grant Defendant's motion and amend the caption to disclose Plaintiff's name. We thank the Court for its attention to this matter, and are available to discuss at the Court's convenience if necessary.

Respectfully submitted,

*/s/ E. Danya Perry*

---

[6] A copy of this text message exchange is attached as Exhibit D.
[7] A copy of this text message exchange is attached as Exhibit E.