

E. DANYA PERRY
Founding Partner
212-840-7939 PHONE
dperry@danyaperrylaw.com EMAIL

November 26, 2024

**VIA ECF**

Hon. Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007
Email: ClarkeNYSDChambers@nysd.uscourts.gov

> Re: *Jane Doe* v. *Leon Black*, 1:23-cv-06418-JGLC: Joint Letter re Defendant's Request to Quash or Modify Subpoenas.

Dear Judge Clarke:

Pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices in Civil Cases, the parties respectfully submit this joint letter raising a discovery dispute concerning Defendant Leon Black's request to quash or modify deposition subpoenas Plaintiff seeks to serve on three of Mr. Black's attorneys and Mr. Black's wife. Per Rule 4(k), Defendant would request an informal conference. Plaintiff does not agree that a conference is necessary.

On the evening of October 16, 2024, counsel for Plaintiff gave notice that she would be serving at least 16 non-party subpoenas. The eleven document subpoenas were all returnable on November 15, and the five depositions were noticed for dates between November 19 and November 23, including the depositions of Mrs. Black on November 20, and the three attorneys in question on November 21-23. On October 22, 2024, counsel for Defendant sent counsel for Plaintiff an email setting forth the bases for Defendant's objections to the subpoenas. Counsel for the parties thereafter met and conferred telephonically for 30 minutes on October 25, 2024. In attendance were Peter Gwynne, Alexander Parachini, Susan Estrich, and Ryan Rakower for Mr. Black, and Jeanne Christensen and Meredith Firetog for Plaintiff. After Defendant sent Plaintiff his portion of this draft letter on November 11, 2024, the parties agreed to postpone the depositions pending resolution of this dispute. The parties were unable to resolve the dispute on their own.

**Plaintiff's Position**: Ample Second Circuit case law exists to show that Plaintiff is squarely within Rule 26 to conduct depositions of Mrs. Black, Mr. Karp, Mr. Ehrlich and Mr. Laufer.

**Plaintiff is Entitled to Depose Debra Black**

Plaintiff seeks to depose Black's spouse because she has relevant information about the frequency and nature of his socialization, business dealings, and overall relationship with Jeffrey Epstein. Spouses regularly testify in depositions and at trial in civil matters. Adverse spousal testimony privilege "permits an individual to refuse to testify in a criminal proceeding against her or his spouse," but in civil cases such as this one, that privilege does not apply, a narrower, more limited

privileged applies to Mrs. Black. *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK), 2019 WL 2235882, at *1 (S.D.N.Y. May 13, 2019) (*quoting United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067, 1070 (2d Cir. 1995)). In *Chevron v. Donziger*, the defendant's wife asserted spousal privilege in refusing to respond to written questions and appear at a deposition, but the Court required her to appear at the deposition and held that privilege "must be asserted in response to particular questions and a proper foundation for it established." 2019 WL 2235882, at *1-2.

Plaintiff alleges that Black's sexual assault of her took place in a home owned by Epstein that was very close to the Black residence. Public articles report that Epstein frequently hosted Black at his mansion, usually for breakfast or lunch. Mrs. Black can testify to her personal observations regarding how often Black went to Epstein's and for what purposes, if she knows. She can testify about whether she went with Black to Epstein's, and if so, who was there and about conversations. Mrs. Black's conversations with Epstein are not privileged. Additionally, from 1998 to 2012, Mrs. Black was the Vice President of the Leon Black Family Foundation, Inc. ("Family Office"), where Black was the President and Treasurer, and Epstein served as Director. For these 14 years he was the only other officer alongside Mrs. Black and Black. Her communications with Epstein regarding the Family Office from 1998 through 2012 are not privileged. The Dechert Report[1] speaks about the various charities that Black and Epstein contributed to for one another, and the Family Office gave to numerous charities. Black admits in the Report that "Epstein provided substantive advice to the Family Office" on various topics. To the extent Mrs. Black was involved in philanthropic endeavors with Black and Epstein, whether through the Family Office or otherwise, she can testify without invoking privilege. Finally, the Report confirms that Mrs. Black travelled with Black to visit Epstein at his other homes outside of NYC, including Paris, New Mexico and St. James Island in the USVI. These subjects and others that will be detailed in Plaintiff's response to Defendant's motion to quash all that fall squarely outside of the common law marital privilege and are relevant to this case.

**Plaintiff is Entitled to Depose Brad Karp, Andrew Ehrlich, and Gregory Laufer**

Plaintiff seeks to depose Karp, Ehrlich, and Laufer—as fact witnesses—concerning relevant information about Black's relationship with Epstein, Paul Weiss's involvement and knowledge of the Dechert Report, and to depose Karp about his general knowledge of Black given their friendship, which spans multiple decades. To be covered under the attorney client privilege, Karp, Ehrlich and Laufer have to show that a communication was made in confidence between Black and themselves for the purpose of obtaining legal assistance for the client. Even if a communication contained both legal and business advice, it is not covered unless the primary purpose of the communication was to obtain legal advice. Here, Karp is a fact witness whose testimony does not necessarily involve attorney client privilege. Indeed, according to a July 26, 2022 *Business Insider* profile of Karp, he no longer represents Black. He is not Black's lawyer of

---

[1] In October 2020, a committee of the Apollo Global board of directors (a company founded by Black) asked Dechert LLP to conduct an investigation of Black's "relationship" with Jeffrey Epstein, defined as "including any financial, business or personal dealings between Black and any Black affiliate, on the one hand, and Epstein and any Epstein affiliate on the other." This resulted in a published report, known as the "Dechert Report." The Report revealed that Black had paid Epstein $158 million, as well as other large eight-figure sums. *See* https://www.sec.gov/Archives/edgar/data/1411494/000119312521016405/d118102dex991.htm.

The Honorable Jessica G. L. Clarke
November 26, 2024

record in this litigation. Therefore, any conversations Karp has had with Black about or concerning potentially relevant information about the action would not be privileged. This is also true for Ehrlich and Laufer.

Additionally, Paul Weiss attorneys were part of Dechert Report, assisting in the collection of more than 60,000 records and documents for Dechert and participating as witnesses in the investigation (the Report notes that "interviews with current and former legal counsel" were conducted "to obtain their recollection of events that may have been relevant to Dechert's investigation."). To the extent these lawyers have information about the Report, these communications are not privileged, given that the publication and filing of the Report waived any such privilege. And as such, Karp, and likely Ehrlich and Laufer have relevant information as fact witnesses to Black's relationship with Epstein. Plaintiff is entitled to ask about the documents provided to Dechert at their depositions and seek to examine anything if relevant. Communications between Karp and Epstein would not be subject to attorney client privilege. Communications between Karp and any agents for Epstein, including lawyers for Epstein are not privileged.

Furthermore, Karp, Ehrlich and Laufer's communications with Susan Estrich, Danya Perry or the Quinn Emanuel lawyers serving as counsel of record in this action would not be privileged. Their communications with any public relations firms regarding Black are similarly not privileged. Because Plaintiff brings asserts a GMVA claim, proof regarding gender-based animus is relevant, and evidence suggesting or tending to bolster the inference of animus towards women, by Black, and any patterns of such animus, is relevant. Karp has known Black for decades, and has served on foundations, nonprofits, and other private groups alongside Black. To the extent Karp has personal knowledge regarding Black's treatment of women or any specific instances that would be relevant to suggest or infer gender-based animus or a pattern engaged in by Black with other women, such knowledge is not protected under attorney client privilege. Similarly, Ehrlich and Laufer have worked with and alongside Black for a number of years. Numerous publications show Karp and Black in social situations together, including with spouses, and conversations in any social setting with Black would not be privileged.

Ultimately, retainer agreements for legal services are not privileged documents and therefore, if Karp or the other attorneys wish to demonstrate that they are in fact serving as legal counsel in *Doe v. Black* or that they otherwise have an attorney-client relationship concerning any of these topics, they can produce the retainer. But numerous interactions between these lawyers and Black, and agents of Black, as well as Black's family members, show that ample communications having nothing to do with confidential legal advice took place. Plaintiff is entitled to conduct the depositions and if privilege regarding a certain question exists, it can be raised and objected to at that time. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003).

**Plaintiff's compromise position**: Defendant seeks to quash deposition subpoenas and he should brief the issues. We do not agree that asking the Court to engage in an "informal conference" to essentially limit scope of discovery at depositions is proper. Plaintiff's proposal is to allow discovery to take place, during which counsel can make appropriate objections on the basis of privilege as it arises.

3

The Honorable Jessica G. L. Clarke
November 26, 2024

**Defendant's Position:** Plaintiff's attempt to subpoena Mr. Black's attorneys and his wife is an attempt to annoy, embarrass, and harass the recipients, and Mr. Black, without the slightest chance of obtaining evidence that is relevant to Plaintiff's claim or that could not be obtained from other sources. Instead, the subpoenas demand information and materials that are clearly protected by the attorney-client and spousal privileges, respectively, from individuals who are indisputably *not* witnesses to any of the events at issue in this case.[2] Any non-privileged information these individuals possess is irrelevant to Plaintiff's lone claim that she was purportedly raped by Defendant in 2002 at Jeffery Epstein's residence in New York City, and the Plaintiff has refused to (or is unable to) provide any legitimate relevance for the requested testimony. The subpoenas should be quashed.

*The subpoenas only seek information that is both privileged and irrelevant.* Plaintiff seeks to issue deposition subpoenas to three of Mr. Black's attorneys at the law firm of Paul, Weiss—Brad Karp, Andrew Ehrlich, and Gregory Laufer. But, any "knowledge" they could conceivably have that is in any way relevant to the claims and defenses in this matter would have been obtained exclusively in the course of their representation of Mr. Black, and any communications that they had with Mr. Black or any of his agents or representatives are by consequence privileged. None of those attorneys are percipient witnesses to any of the events at issue, and they certainly had no connection to the case in 2001-02, when those supposed events occurred. Neither Mr. Ehrlich nor Mr. Laufer had yet even begun the practice of law, and Mr. Karp did not even meet Mr. Black until 2008. Nor does the Dechert Report provide a basis to depose Mr. Black's counsel. The information these three lawyers may have is the result of representing Mr. Black in that investigation, and thus privileged. And, Plaintiff is flat wrong that communications between Mr. Black's lawyers in other matters and counsel of record in this case would not be privileged. Indeed, any information these lawyers could possibly provide in response to the subpoena is necessarily privileged, or, at minimum, could be obtained through other, more direct sources. *See Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005), *aff'd,* 332 F. App'x 643 (2d Cir. 2009) (quashing subpoena to law firm because of "the unlikelihood of obtaining relevant information, and the existence of attorney-client privilege for all documents.").

Perhaps even more remarkably, Plaintiff seeks to serve a deposition subpoena on Mr. Black's wife in a transparent and offensive attempt to harass, embarrass, burden, and annoy Mr. and Mrs. Black. Mrs. Black also is not a percipient witness, and Plaintiff has refused to provide any reason, beyond rank speculation, as to why her testimony would have any relevance. Any knowledge she might have was obtained through her confidential communications with Mr. Black—she has no independent knowledge of any potentially relevant information and is not mentioned in Plaintiff's complaint. Accordingly, any information she could provide in response to the subpoena is

---

[2] Counsel for Mr. Black also represents Mrs. Black, who has standing to quash her subpoena and seeks to do so with this letter-motion. Fed. R. Civ. P. 45(d)(3). Mr. Black has standing to seek the relief requested in this letter because the subpoenas seek privileged material. *See Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) ("Because Orascom was claiming a privilege regarding the material sought in the subpoena, it had standing to challenge the subpoena served on White & Case LLP."). In addition, Mr. Black plainly has standing pursuant to Fed. R. Civ. P. 26(c)(1), which authorizes "[a] party" to seek a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." And regardless, the Court has inherent authority to manage discovery and determine its appropriate scope. *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019); *Trooper 1 v. New York State Police*, 2024 WL 168326, at *5 (E.D.N.Y. Jan. 16, 2024); *Allstate Ins. Co. v. All County, LLC*, 2020 WL 5668956, at *2 (E.D.N.Y. Sept. 22, 2020); *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 405 (D. Conn. 2020).

4

The Honorable Jessica G. L. Clarke
November 26, 2024

protected by the marital communications privilege, is irrelevant, or could be obtained through other, more direct sources. *See, e.g.*, *Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 572 (S.D.N.Y. 2021); *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011).

For all of these reasons, Defendant's initial position is that the Court should quash the subpoenas in their entirety, or enter a protective order pursuant to Rule 26(c)(1) precluding the depositions of Brad Karp, Andrew Ehrlich, Gregory Laufer, and Debra Black.

*Defendant's compromise position*. Pursuant to Your Honor's Individual Rule 4(k), during the meet-and-confer Defendant's counsel repeatedly asked Plaintiff's counsel to explain what relevant, non-privileged information any of these witnesses could provide. In response, Plaintiff's counsel refused to provide any meaningful response, other than to speculate that Mrs. Black and one of the attorneys subject to the proposed subpoenas may have communicated with Mr. Black and Jeffrey Epstein many years ago. But even if that were true, Plaintiff's professed explanation in no way supports her sweeping and intrusive subpoenas, not to mention the fact that any such communications would *still* have no material bearing on the allegations in this case. Counsel for Defendant also raised the possibility of the parties agreeing to a protective order that expressly prohibited Plaintiff from seeking information from the deponents related to specific irrelevant and/or privileged topics.[3] But again, Plaintiff's counsel refused to explain how any topic or document request was relevant or not subject to a privilege. Without this information, it is impossible to craft language that would adequately protect the deponents and Mr. Black. In short, while we tried to have a substantive, good faith discussion in an attempt to reach some resolution, counsel's highly unusual position, coupled with their failure to meaningfully engage in the meet-and-confer process, leaves us with no choice but to make this application.

The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/ *E. Danya Perry*

---

[3] In this letter, Plaintiff suggests fully briefing the motion as part of her statement of her compromise position. Although that does not appear to be contemplated by the Individual Rules, Defendant is ready to brief the issue if that would be of assistance to the Court.