UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
Jane Doe,

    Plaintiff,

Case No.: Doe v. Black, Case No.1:23-cv-06418 (JGLC)

  - against -


Leon Black,

    Defendant.
----------------------------------------------------------------

Jane Doe
P.O. Box 286
Haymarket, VA 20168
Email on Record

August 4, 2025

Via Email To: Pro Se Office

The Honorable Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11B
New York, NY 10007

Re: *Jane Doe v. Leon Black*, No. 1:23-cv-06418-JGLC
Plaintiff's Updated Notice of Intent to Seek Emergency Appellate Relief

To the Honorable Judge Clarke:

This filing is not intended as a sur-reply to any pending motion. Rather, it serves as a good faith update to Plaintiff's prior submission of July 24, 2025, and provides factual context regarding newly arising safety threats, escalating retaliatory concerns, and Plaintiff's reserved appellate rights. Plaintiff respectfully resubmits this updated version through the Pro Se Office, as the original filing has not been docketed or acknowledged by the Court, defense counsel, or former

counsel. Plaintiff is concerned that this silence—now more than one week since submission—may create procedural uncertainty or inadvertently impact how her concerns are perceived. In light of the seriousness of the threats described and the lack of formal recognition to date, Plaintiff believes a renewed submission is warranted.

Plaintiff Jane Doe hereby notifies the Court of her intent to seek emergency appellate relief if necessary, in light of the Court's absence of a protective response thus far to address an escalating and deeply traumatic pattern of witness intimidation, retaliation, and privacy violations. This absence not only compromises Plaintiff's due process rights, but re-traumatizes a neurodivergent, sexual abuse survivor in a manner that is unconstitutional. The situation and surrounding circumstances are ethically unconscionable.

To date, Plaintiff has reported contact from seven different violent male inmates, each convicted of violent crimes including murder, rape, child sexual abuse, or involuntary manslaughter. These incidents have occurred nine separate times across six different states—Kansas, Kentucky, Texas, Ohio, Virginia, and North Carolina. Despite repeated documentation and reports to this Court, including sealed filings and email correspondence between Plaintiff's mother and prison officials, no protective action has been taken. Most recently, two separate contacts from violent male inmates occurred on July 24, 2025, at 5:09 PM and 7:01 PM, respectively—one of whom had already contacted Plaintiff in early May. The other is a new individual convicted of rape and has served time for involuntary manslaughter. These contacts occurred after the Court instructed that no further filings be made, thereby leaving Plaintiff unable to formally report these new incidents through proper channels.

**[Update as of August 4, 2025]**
Since Plaintiff's July 25 filing to chambers, inmate contact has escalated further. There have now been **twelve** separate inmate contact attempts across **seven** states. On July 25 at 10:36 PM, Plaintiff received contact from an inmate in Wisconsin charged with three counts of second-degree reckless homicide. On July 28 at 9:17 AM, Plaintiff was contacted by an inmate in North Carolina with charges including habitual felon; malicious conduct; robbery; assault; and contributing to the delinquency of a minor. Most significantly, on July 31 at 4:18 PM, Plaintiff was contacted via CorrLinks, the federal Bureau of Prisons' email system. CorrLinks requires a federal inmate to manually enter a specific external email address in order to initiate communication. Inmates do not have internet access or any ability to look up information online. Thus, the only way this federal inmate could have initiated contact using Plaintiff's litigation-specific email address is if someone outside the prison system intentionally provided it to him. This fact reinforces a disturbing pattern of deliberate targeting, rather than coincidence. All contacts have been documented and corroborated with identifying details by Plaintiff and may be submitted under seal if the Court so requests.

This is not speculation. Prison officials themselves have confirmed that these inmates could not have obtained Plaintiff's litigation-specific contact information without outside assistance. The pattern is undeniable. These contacts began only after Plaintiff became pro se, and have disproportionately involved sex offenders with histories of targeting minors.

Despite these facts, defense counsel Danya Perry submitted a letter to the Court on July 22, 2025, that mocked Plaintiff's safety concerns and engaged in open victim-blaming, falsely

suggesting that Plaintiff "invited" inmate contact by referencing [redacted][1] and filing documents as required by the Court's pro se protocols. Perry went so far as to assert that Plaintiff's allegations were "fantastical", demonstrably false, and part of "conspiracy theories" against Mr. Black. The letter ignored repeated warnings from prison authorities, as well as the sealed materials previously submitted to this Court.

The assertion that Plaintiff fabricated her personal history is both offensive and false. [Redacted.] Plaintiff maintains a documented paper trail of [redacted], some of which have already been submitted in her opposition filings, and others which she has retained for future filings and potential oversight review.

It is irrational and deeply inappropriate for Ms. Perry to dismiss the recurring prisoner contact as mere "conspiracy theories," particularly given that multiple correctional officials across several states have confirmed that inmates would not have access to Plaintiff's pro se, obscure litigation materials without outside assistance. This is not a common occurrence in civil litigation, and it is alarming that opposing counsel would attempt to minimize a clear and repeated pattern of intimidation rather than express concern for the safety and well-being of a pro se, pseudonymous plaintiff.

Plaintiff respectfully clarifies that she has never alleged that Defendant himself was responsible for the prisoner contact. In fact, Plaintiff has repeatedly acknowledged that the source of these breaches remains unknown. Prison officials themselves have stated that these disclosures most likely originated from external actors with close knowledge of the case. Plaintiff has taken great care not to speculate or attribute blame without evidence. Her primary concern has always been and remains the protection of her safety and dignity, not assigning blame in the absence of proof.

This is not merely about public exposure of contact information. It is about the deliberate and repeated re-traumatization of a vulnerable pro se litigant, who has made every effort to comply with the Court's rules. Plaintiff followed guidance from the Pro Se Office by acquiring a PO Box, litigation phone number, and dedicated email address. The Court has not sealed or redacted those filings, despite Plaintiff's requests [redacted]. Despite Plaintiff's efforts to raise legitimate and well-documented safety concerns, defense counsel was permitted to portray those concerns as baseless and to suggest that Plaintiff "invited" inmate contact by referencing her ties to [redacted] and following pro se protocol. This assertion—that a victim of sexual abuse and retaliation is to blame for the threats against her—was allowed to remain on the record without correction, clarification, or censure. The Court's silence in response to this tactic has deepened the sense of procedural imbalance and communicated to Plaintiff that disparaging and retraumatizing a vulnerable pro se litigant is an acceptable strategy in this proceeding.

Despite the Court's awareness of Plaintiff's autism, medical conditions, and history of sexual abuse, Plaintiff has not once been allowed to speak in open court or present these concerns directly. This prolonged silence and procedural imbalance are not neutral. They are retraumatizing.

---

[1] Redactions reflect previously submitted sealed materials and are made here solely to respect confidentiality and sealing protocol.

Plaintiff respectfully notes that she reserves the right to disclose and pursue oversight or redress regarding [redacted], whose actions have resulted in serious due process violations, ethical breaches, and demonstrable harm.

In light of this absence of intervention and continued targeting, Plaintiff has contacted the U.S. Marshals Service under 18 U.S.C. §1512 to report these escalating incidents. She is willing to submit the documentation under seal, if requested.

Plaintiff fully respects the demands on this Court's time and the complexity of the matters before it. She recognizes that this litigation presents unique challenges, and she does not take lightly the responsibilities placed upon the Court. But while these concerns may appear procedural or peripheral, the reality is that no one—especially not a trauma survivor navigating this system without counsel—should be subjected to such repeated intimidation, emotional harm, or victim-blaming within a federal proceeding. Plaintiff did not choose to be abandoned in this litigation. She did not choose to have her identity and privacy violated. And she most certainly did not choose to be retraumatized by the very process that was supposed to protect her. She asks only for what is lawful, humane, and basic: to be treated with fairness, protected from harm, and allowed to be heard. Whilst Plaintiff would never engage in victim blaming, one thing she and Ms. Perry do agree upon is that enough is enough.

Respectfully submitted,
/s/ *Jane Doe*
Jane Doe
Pro Se Plaintiff