**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

      PLAINTIFF,

  -AGAINST-

LEON BLACK,

      DEFENDANT.

§
§
§
§
§
§
§
§
§
§

Case No. 1:23-cv-06418-JGLC

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND TO UNSEAL MOTION FOR CASE-TERMINATING SANCTIONS AND RELATED FILINGS

Dated: April 22, 2026

Respectfully submitted,

**ZUCKERMAN SPAEDER LLP**

Blair G. Brown
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1829
Fax: (202) 822-8106
bbrown@zuckerman.com

Shawn P. Naunton
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: (646) 746-8655
Fax: (212) 704-4256
snaunton@zuckerman.com

*Counsel for Dana Chasin*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.     BACKGROUND ......................................................................................................... 2

          A.     Ms. Doe's initial complaint and Defendant's first motion for sanctions. ............... 2

          B.     Ms. Doe's amended complaint and Defendant's sealed motion for case-terminating sanctions. ......................................................................................... 3

          C.     Ms. Doe's journal and her former attorney's communications with prosecutors are released. ................................................................................................................ 5

II.    MR. CHASIN IS ENTITLED TO INTERVENE TO SEEK TO UNSEAL THE CTS MOTION AND RELATED FILINGS. ................................................................................. 7

III.   THE CTS MOTION AND RELATED FILINGS SHOULD BE UNSEALED. ................. 9

          A.     The strong common law presumption of access to dispositive motions requires unsealing of the CTS Motion and related filings. .................................................. 10

          B.     The First Amendment requires the CTS Motion and related filings be made public. .................................................................................................................. 13

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ...................................................................................................... 11

*Centauri Shipping Ltd. v. W. Bulk Carriers KS*,
528 F. Supp. 2d 197 (S.D.N.Y. 2007) ............................................................................... 11, 14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .................................................................................................................. 11

*Doe v. Columbia Univ.*,
No. 23 Civ. 10393 (DEH), 2024 WL 4149252 (S.D.N.Y. Sept. 11, 2024) ............................... 7

*Doe v. Combs*,
No. 24 Civ. 7776 (NRB), 2025 WL 1079038 (S.D.N.Y. Apr. 9, 2025), *aff'd* 2026 WL 742650
(2d Cir. Mar. 17, 2026) ........................................................................................................... 12

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) .................................................................................................... 8

*Doe v. Weinstein*,
484 F. Supp. 3d 90 (S.D.N.Y. 2020) ....................................................................................... 12

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014) ................................................................................................... 7

*Giuffre v. Dershowitz*,
19 Civ. 3377 (LAP), 2021 WL 5233551 (S.D.N.Y. Nov. 10, 2021) ......................................... 8

*Giuffre v. Maxwell*,
146 F.4th 165 (2d Cir.), *cert. denied*, 144 S. Ct. 1011 (2025) ........................................... 10, 11

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*,
457 U.S. 596 (1982) .................................................................................................................. 7

*Gov't of United States Virgin Islands v. JPMorgan Chase Bank, N.A.*,
807 F. Supp. 3d 301 (S.D.N.Y. 2025) ...................................................................................... 14

*Grae v. Corr. Corp. of Am.*,
57 F.4th 567 (6th Cir. 2023) ..................................................................................................... 8

*Herman v. City of New York*,
334 F.R.D. 377 (E.D.N.Y. 2020) ............................................................................................. 14

*In re Bank of New York Derivative Litig.*,
  320 F.3d 291 (2d Cir. 2003) .................................................................................. 7

*In re OpenAI, Inc., Copyright Infringement Litig.*,
  No. 25-MD-3143 (SHS) (OTW), 2025 WL 3697877 (S.D.N.Y. Dec. 19, 2025) .............. 10, 14

*In re Petrobras Sec. Litig.*,
  393 F. Supp. 3d 376 (S.D.N.Y. 2019) ...................................................................... 7

*In re Pineapple Antitrust Litig.*,
  No. 04 md. 1628 (RMB)(MHD), 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) ..................... 8

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982) ........................................................................... 11, 15

*Kelly v. City of New York*,
  No. 01 Civ. 8906 (AGSDF), 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003) ............................... 8

*Lively v. Wayfarer Studios LLC*,
  No. 24-cv-10049 (LJL), 2025 WL 3295147 (S.D.N.Y. Nov. 26, 2025) ..................... 9, 11, 12

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ................................................................ 10, 11, 14, 15

*Lyell Theatre Corp. v. Loews Corp.*,
  682 F.2d 37 (2d Cir. 1982) ............................................................................. 11, 15

*Matter of New York Times Co.*,
  828 F.2d 110 (2d Cir. 1987) ............................................................................ 14, 15

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................. 7

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) .................................................................................... 8

*Robinson v. De Niro*,
  No. 19-cv-9156(LJL)(KHP), 2022 WL 2712827 (S.D.N.Y. July 13, 2022) ........................... 14

*Schiller v. City of New York*,
  No. 04 Civ. 7921 (KMK), 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) .............................. 8

*Stafford v. Int'l Bus. Machs. Corp.*,
  78 F.4th 62 (2d Cir. 2023) ................................................................................... 10

*Trump v. Deutsche Bank AG*,
  940 F.3d 146 (2d Cir. 2019) .................................................................................. 7

*United States v. Amodeo* ("*Amodeo I*"),
44 F.3d 141 (2d Cir. 1995) .................................................................................... 10

*United States v. Amodeo* ("*Amodeo II*"),
71 F.3d 1044 (2d Cir. 1995) ..................................................................... 10, 11, 13

*United States v. Erie Cnty., N.Y.*,
763 F.3d 235 (2d Cir. 2014) ................................................................................ 14

*United States v. Hudson*,
11 U.S. 32 (1812) .................................................................................................. 11

*United States v. M/Y Amadea*,
No. 23 Civ. 9304 (DEH), 2025 WL 754124 (S.D.N.Y. Mar. 10, 2025) ............... 11, 12, 13, 14

*United States v. Yonkers Bd. of Educ.*,
747 F.2d 111 (2d Cir. 1984) ................................................................................... 8

**OTHER AUTHORITIES**

Daniel Lippman, *Dan Osborn cancels fundraiser after co-host's Epstein link surfaces*, Politico
(Feb. 10, 2026), https://www.politico.com/live-updates/2026/02/10/congress/dan-osborn-
dana-chasin-fundraiser-00775138 (last visited Apr. 15, 2026) .................................................. 6

Kaylie McLaughlin, *U.S. Rep. Sharice Davids sends campaign funds to charity after past
donor's name found in Epstein files*, Johnson County Post (Feb. 17, 2026),
https://johnsoncountypost.com/2026/02/17/rep-davids-donor-epstein-link-279921/ (last visited
Apr. 15, 2026) ................................................................................................................ 6

**RULES**

Fed. R. Civ. P. 24 ..................................................................................................... 7

Fed. R. Civ. P. 41(b) ........................................................................................... 11, 15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .......................................................................................... 9, 13, 15

**INTRODUCTION**

In 2023, Plaintiff Jane Doe sued Defendant Leon Black, claiming that she was sexually assaulted by Mr. Black while being trafficked by Jeffrey Epstein as a minor in the early 2000s. Many of the details in her Amended Complaint are drawn from a journal she purportedly kept at the time. In January of this year, the Department of Justice ("DOJ") released that journal, as well as communications between Ms. Doe's former attorney and DOJ prosecutors. In those documents, Ms. Doe and her former attorney claim that Ms. Doe once travelled to Jeffrey Epstein's New York City home on a plane belonging to Dana Chasin. Those statements are false. Mr. Chasin never met Jeffrey Epstein. He never communicated with Jeffrey Epstein. He never visited any of Jeffrey Epstein's properties. And he has never owned or leased a plane. Despite the utter falsehood of Ms. Doe's fabrications, their release caused Mr. Chasin immediate and severe harm.

The public record in this case already contains significant evidence that Ms. Doe's entire tale of trafficking and abuse is a fiction. Ms. Doe's immediate family, for instance, deny key elements of Ms. Doe's story and assert that she "has a history of making up alternate realities, particularly when they might gain [her] attention." ECF No. 55. But the most serious evidence of Ms. Doe's fabrications—filed in connection with Defendant's Motion for Case-Terminating Sanctions ("the CTS Motion")—remains under seal. As this Court has recognized, Defendant's motion "raises serious questions about the validity of this action," "calls into question the veracity of key evidence cited in the operative Amended Complaint[,] and raises questions about the plausibility of [Ms. Doe's] allegations. . . . " ECF No. 258.

Mr. Chasin and the public have a right to view Defendant's motion and the evidence supporting it. Ms. Doe's false statements about Mr. Chasin have already caused him immense harm. What's more, her fabrications do a disservice to Jeffrey Epstein's real victims, and to all survivors of sexual abuse seeking justice. Mr. Chasin does not seek to reveal Ms. Doe's identity,

- 1 -

but her falsehoods should not be permitted to fester uncorrected while evidence of Ms. Doe's fraud languishes under seal. Mr. Chasin has no relationship with Defendant Leon Black and has no access to sealed materials through Mr. Black or his counsel. Mr. Chasin therefore moves to intervene to seek the unsealing of Defendant's CTS motion and related filings.

## I.    BACKGROUND

### A.    Ms. Doe's initial complaint and Defendant's first motion for sanctions.

In July 2023, Plaintiff Jane Doe sued Defendant Leon Black claiming that she was sexually abused by Mr. Black at Jeffrey Epstein's New York City townhouse in 2002. *See* Compl. ¶¶ 1–4, 10, ECF No. 1. In her complaint, Ms. Doe—who claims to be autistic and to suffer from mosaic Down syndrome—alleged that she joined a cheerleading program for 8 to 12-year-olds while in high school, moved in with the woman running that program, and was subsequently trafficked by that woman to Jeffrey Epstein and Ghislaine Maxwell, who in turn trafficked Ms. Doe to other powerful men, including Mr. Black. *See id.* ¶¶ 10–85.

An investigation by the Defendant quickly raised doubts about Ms. Doe's allegations. On September 20, 2023, the Defendant filed a partially redacted motion for sanctions. *See* ECF Nos. 43, 54. In support of that motion, he filed the declaration of an investigator who conducted voluntary, recorded conversations with Ms. Doe's mother, father, sister, aunt, and cousin. *See* Decl. of Carlos Melendez ¶¶ 7-9, ECF No. 55. These conversations directly contradicted Ms. Doe's allegations and revealed that Ms. Doe "has a history of making up alternate realities, particularly when they might gain Ms. Doe attention." *Id.* ¶ 13. For instance, Ms. Doe "was not diagnosed with either autism or Mosaic Down Syndrome during her childhood or while she lived at home throughout high school and did not display symptoms or behaviors of either condition." *Id.* Instead, Ms. Doe began intentionally displaying the symptoms of autism in her twenties and did not claim she had mosaic Down syndrome until her thirties, "after a cousin posted on social media about her

child with Down Syndrome and received positive support and attention." *Id.* The individuals interviewed by the investigator also reported that, contrary to the allegations in complaint, "Ms. Doe lived at home throughout high school, and did not travel to Florida, New York, or the Virgin Islands during that time[,]" and that the cheerleading program in which Ms. Doe participated was open to high school students, not restricted to children aged 8-12. *Id.* This Court denied Defendant's initial motion for sanctions as premature. Opinion and Order at 19, ECF No. 106. At the same time, the Court permitted the parties to redact information related to Plaintiff's identity and medical records, treatment, and diagnosis, but did not allow other redactions or sealing. *Id.* at 16-19.

### B. Ms. Doe's amended complaint and Defendant's sealed motion for case-terminating sanctions.

In August 2024, Ms. Doe moved for leave to file an amended complaint. In her amended complaint, Ms. Doe alleged that she had documented her trafficking and abuse in a "contemporaneous journal." *See* First Amended Compl. ¶ 48, ECF No. 152; *see also id.* ¶¶ 1-4, 68, 99. The Court granted Ms. Doe's motion in November 2024. ECF No. 153.

Two months later, on January 15, 2025, Defendant wrote a sealed letter to this Court seeking leave to file a motion for case-terminating sanctions and to stay discovery. *See* ECF No. 198. The Court granted Defendant's request the next day. ECF Nos. 204, 205. The Court instructed the parties that "defendant's motion for sanctions and any opposition and reply should be filed under seal" "[f]or now," but reserved judgment on whether the documents should ultimately remain sealed. *See* Transcript of January 16, 2025, Discovery Conference at 5:3-13, ECF No. 209; *see also* Order, ECF No. 241 (continuing to reserve the issue of sealing).

In February 2025, Defendant filed another sealed letter with the Court in which he requested to inspect "certain of plaintiff's documents in advance of his forthcoming motion" for

- 3 -

sanctions. *See* Text Only Order (Feb 19, 2025). Defendant attached several sealed exhibits, including "Journal Year 16," "Journal Year 17," "Journal Year 18," and "Journal Year 19," "Sonogram Comparison," and "2006 Sonogram." *See* ECF No. 219. The Court granted Defendant's inspection request, extended the briefing schedule because of "the relevance of the inspection to Defendant's forthcoming motion," and granted Defendant's request to exceed the page limit "given the complexity and seriousness of the issues to be discussed." ECF No. 223.

Defendant subsequently filed his Motion for Case-Terminating Sanctions on March 3, 2025. ECF No. 224. While the CTS Motion, the accompanying memorandum, and the supporting exhibits are under seal, the public docket indicates that one of those exhibits is a declaration from Larry F. Stewart. *See* ECF No. 226. Larry F. Stewart is a forensic scientist and president of Global Forensic Services, a forensic laboratory "specializing in . . . Questioned Document Analysis." *See* Larry Stewart, LinkedIn (last viewed April 15, 2026), https://www.linkedin.com/in/larry-stewart-8383046/; *see also* Global Forensic Services, LLC (last viewed April 15, 2026), http://www.stewart4n6.com. The CTS Motion is also supported by sealed declarations from six witnesses and a declaration from Defendant's counsel with 32 exhibits. *See* ECF Nos. 227–33.

On April 4, 2025, one week before Plaintiff's response to Defendants' Motion was due, Plaintiff's attorneys filed a sealed motion to withdraw, which the Court promptly granted. *See* ECF Nos. 238, 241.

Ms. Doe then submitted letters requesting, among other things, that the Court appoint her pro bono counsel. *See* Mem. Op. & Order at 1, ECF No. 258. The Court denied that request. It explained the factors courts typically consider when deciding whether to appoint counsel, including "whether the plaintiff's position appears likely to be of substance," "weigh[ed] against appointing counsel. . . . " *Id.* at 2. In so holding, the Court explained that "Defendant's motion

raise[d] serious questions about the validity of this action." *Id.* Specifically, the motion "call[ed] into question the veracity of key evidence cited in the operative Amended Complaint and raise[d] questions about the plausibility of the allegations raised [therein]." *Id.*

Ms. Doe and her former counsel both submitted oppositions to the motion for Case-Terminating Sanctions, along with exhibits and declarations. *See, e.g.,* ECF Nos. 271, 277. Much of that material, as well as Defendant's replies in support of his motion and the accompanying exhibits and declarations, remains under seal.

> **C.    Ms. Doe's journal and her former attorney's communications with prosecutors are released.**

While Ms. Doe's case against Mr. Black was pending, Ms. Doe's counsel was also in contact with prosecutors in the Southern District of New York. In 2024, Ms. Doe's counsel provided a copy of Ms. Doe's "journal" to the government. *See* EFTA02731512.[1] The journal consists largely of magazine clippings and strings of letters. *See, e.g.,* EFTA02731393– EFTA02731409. Ms. Doe's counsel therefore provided a "decoded" version for "each page [of the journal] in which there was at least a full sentence written in code. . . ." EFTA02731512. In addition to describing her purported sexual abuse by Jeffrey Epstein, Leon Black, and others, Ms. Doe claims in her journal to have been used as a "human incubator" by Jeffrey Epstein, becoming pregnant multiple times, resulting in at least one miscarriage and two live births. *See, e.g.*, EFTA02731361-68, EFTA02731373, EFTA02731379, EFTA02731385, EFTA02731395, EFTA02731405, EFTA02731471. The journal also includes images of sonograms. *See* EFTA00155044, EFTA00155046.

---

[1] Documents released by the Department of Justice in Response to the Epstein Files Transparency Act are available here: https://www.justice.gov/epstein. These documents all have Bates numbers beginning with "EFTA."

Ms. Doe's journal contains references to numerous celebrities and influential people Ms. Doe claims to have met (and, in some instances, been abused by) while being trafficked by her cheerleading coach and Jeffrey Epstein. *See, e.g.*, EFTA02731426. Mr. Chasin is mentioned on a single page of the journal, where Ms. Doe writes "that plane Mr. Dana had me on was scary!" EFTA02731425. Ms. Doe's counsel elaborated on this allegation in a lengthy March 2024 email to prosecutors summarizing Ms. Doe's claims. EFTA02731722. Ms. Doe's counsel disclosed Mr. Chasin's name and stated that Ms. Doe had gotten air sick on Mr. Chasin's "small prop plane" on a trip to Epstein's New York City townhouse. *Id.*

Again, these claims are false. Mr. Chasin has never owned or leased a plane, much less a "small prop plane," and he never met Jeffrey Epstein, communicated with Jeffrey Epstein, or visited any of his properties. But when the Department of Justice released copies of Ms. Doe's journals and of her counsel's communications with prosecutors at the end of January 2026, the damage to Mr. Chasin's reputation was swift and severe. Mr. Chasin is a policy advisor and political fundraiser. After Ms. Doe's false claims became public, a political fundraiser that Mr. Chasin was set to co-host was cancelled.[2] A candidate he previously supported redirected his donations to charity.[3] Employees at his organization quit, and he has been unable to hire replacements. Many of his personal and professional contacts stopped associating with him.

---

[2] See Daniel Lippman, *Dan Osborn cancels fundraiser after co-host's Epstein link surfaces*, Politico (Feb. 10, 2026), https://www.politico.com/live-updates/2026/02/10/congress/dan-osborn-dana-chasin-fundraiser-00775138 (last visited Apr. 15, 2026).

[3] Kaylie McLaughlin, *U.S. Rep. Sharice Davids sends campaign funds to charity after past donor's name found in Epstein files*, Johnson County Post (Feb. 17, 2026), https://johnsoncountypost.com/2026/02/17/rep-davids-donor-epstein-link-279921/ (last visited Apr. 15, 2026).

## II.    MR. CHASIN IS ENTITLED TO INTERVENE TO SEEK TO UNSEAL THE CTS MOTION AND RELATED FILINGS.

The public has "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). To secure this right, non-parties must have an opportunity to seek the unsealing of judicial records. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 609 n.25 (1982); *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019).

Courts in this district are split on whether a non-party must intervene to seek the unsealing of judicial records. *Compare In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 386 n.11 (S.D.N.Y. 2019) ("[A] party need not intervene to make a motion to unseal documents. . . . ") *with Doe v. Columbia Univ.*, No. 23 Civ. 10393 (DEH), 2024 WL 4149252, at *7 (S.D.N.Y. Sept. 11, 2024) (stating that intervention under Federal Rule of Civil Procedure 24 "is the proper mechanism for a non-party . . . to gain access to information generated through judicial proceedings") (citation omitted). Should the Court determine that intervention is necessary to move to unseal the CTS Motion, Mr. Chasin moves to intervene for that limited purpose.

To intervene by permission or right under Federal Rule of Civil Procedure 24, the intervenor must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014).[4] A motion to intervene for the purpose of unsealing documents "should be

---

[4] Courts in this district have permitted intervention to seek unsealing both as a matter of right under Fed. R. Civ. P. 24(a)(2) and permissively under Fed. R. Civ. P. 24(b). *See In re Pineapple Antitrust Litig.*, No. 04 md. 1628 (RMB)(MHD), 2015 WL 5439090, at *1 (S.D.N.Y. Aug. 10, 2015). Courts consider "[s]ubstantially the same factors" under both parts of the Rule, *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003), so many district courts chose to analyze motions to intervene under the more discretionary standard applicable to

granted absent some compelling justification for a contrary result."[5] *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at \*1; *accord Kelly v. City of New York*, No. 01 Civ. 8906 (AGSDF), 2003 WL 548400, at \*3 (S.D.N.Y. Feb. 24, 2003).

Mr. Chasin easily satisfies the requirements for intervention. To begin, Mr. Chasin's motion is timely. Because Mr. Chasin seeks to intervene solely for the purpose of unsealing records, there is no risk that his intervention will unduly delay the proceedings. *See Giuffre v. Dershowitz*, 19 Civ. 3377 (LAP), 2021 WL 5233551, at \*4 (S.D.N.Y. Nov. 10, 2021); *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at \*2. Moreover, Mr. Chasin's interest in this litigation arose only recently, after Ms. Doe's false statements about him were made public on January 30, 2026.

Mr. Chasin also has a clear interest in accessing the CTS Motion and related filings: He has been severely harmed by Ms. Doe's false statements, and the documents he seeks are likely to show those allegations are false.[6] And Mr. Chasin's interests are not adequately protected by any

---

permissive intervention. *See Schiller v. City of New York*, No. 04 Civ. 7921 (KMK), 2006 WL 2788256, at \*2 (S.D.N.Y. Sept. 27, 2006).

[5] Although many cases involving motions to intervene to unseal judicial records involve the press, the right of access to judicial documents "is widely shared among the press and the general public alike[.]" *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014); *accord United States v. Yonkers Bd. of Educ.*, 747 F.2d 111, 113 (2d Cir. 1984) ("[T]he First Amendment does not guarantee reporters a right of access to information greater than that of the general public."). Thus, the fact that Mr. Chasin is not a member of the press has no bearing on his right to intervene to seek unsealing of judicial documents.

[6] For the same reason, Mr. Chasin has Article III standing to seek the unsealing of the CTS motion. As a general matter, "anyone who seeks and is denied access to judicial records sustains an injury." *Doe v. Pub. Citizen*, 749 F.3d at 263; *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) ("[T]hird parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings."). But even if Mr. Chasin were required to show some "adverse effect" from being denied access to the sealed records, *see Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 (6th Cir. 2023), the devastating fallout from the release of Ms. Doe's allegations suffices to show that Mr. Chasin would be injured if his unsealing request is denied.

party to this litigation. Mr. Chasin seeks to unseal the CTS-motion and related filings to dispel the false association with Epstein created by the public release of Ms. Doe's journal and her former attorney's statements. The parties may have their own interest in maintaining the secrecy of filings in this action, and both parties have in fact sought to seal filings on more than one occasion. With respect to the CTS motion, even the parties' positions on sealing are under seal. *See* ECF No. 209 at 5:11-13. Under these circumstances, Mr. Chasin cannot rely on the parties to vindicate the public's right of access.

Moreover, unlike Mr. Black, Mr. Chasin cannot directly challenge Ms. Doe's allegations in this lawsuit or any other. Ms. Doe has not sued Mr. Chasin, and the false statements by her and her former counsel are the only purported link between Mr. Chasin and Jeffrey Epstein. Indeed, Mr. Chasin only knows of Ms. Doe's false statements about him because the Department of Justice released her journal and her former attorney's communications. Mr. Chasin thus has a unique interest in ensuring the evidence underlying the sanctions motion is made public.

## III.   THE CTS MOTION AND RELATED FILINGS SHOULD BE UNSEALED.

Under the common law and the First Amendment, the public, including Mr. Chasin, has a right to access the CTS Motion and related filings.[7] Indeed, the presumption of access "is at its peak in the context of dispositive motions, including motions for sanctions." *Lively v. Wayfarer Studios LLC*, No. 24-cv-10049 (LJL), 2025 WL 3295147, at *2 (S.D.N.Y. Nov. 26, 2025). No countervailing consideration or higher interest justifies sealing the CTS Motion or related filings.

---

[7] The term "CTS Motion and related filings" refers to Defendant's Motion for Case-Terminating Sanctions (ECF No. 224), Defendant's Memorandum of Law in Support of that Motion (ECF No. 225), the exhibits and declarations filed in support of that motion (ECF Nos. 226-33), Wigdor LLP's Memorandum of Law in Opposition (ECF No. 271), the exhibits and declarations filed by Wigdor LLP in opposition (ECF No. 272), the declarations and exhibits filed by Ms. Doe in opposition (ECF No. 274, 275, 283), Defendants' reply memoranda (ECF Nos. 323, 326) and the declarations and exhibits filed in connection with those replies (ECF Nos. 324, 325).

**A.** **The strong common law presumption of access to dispositive motions requires unsealing of the CTS Motion and related filings.**

The Second Circuit employs a three-part analysis to determine whether a document may be sealed under the common law:

> *First*, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches. *Second*, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. *Third*, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.

*Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir.), *cert. denied*, 144 S. Ct. 1011 (2025) (quoting *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69–70 (2d Cir. 2023) (emphasis added). Here, all three steps require the CTS Motion and related filings be made public.

**First**, the CTS Motion and the filings submitted in support of or opposition to that motion are judicial documents. A filed document is a "judicial document" if it is "relevant to the performance of the judicial function and useful in the judicial process." *Giuffre*, 146 F.4th at 176 (quoting *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995)). "In this context, 'judicial function' refers to a federal court's exercise of power under Article III of the Constitution." *Id.* (quoting *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995)).

The CTS Motion and related filings easily meet this standard. Indeed, "submissions to a district court in support of or opposition to a motion 'can fairly be assumed to play a role in the court's deliberations.'" *Id.* at 179 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)); *accord In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25-MD-3143 (SHS) (OTW), 2025 WL 3697877, at *3 (S.D.N.Y. Dec. 19, 2025) ("Documents submitted to a

court related to a motion for sanctions are generally considered judicial documents"). Accordingly, the CTS Motion and related filings are entitled to a presumption of public access.

***Second***, the CTS Motion and related filing are entitled to a *strong* presumption of public access. A motion for case-terminating sanctions is, by definition, a dispositive motion, and "dispositive motions . . . bear a particularly strong presumption of public access at the second step." *Giuffre*, 146 F.4th at 177; *accord Lively*, 2025 WL 3295147, at *2; *United States v. M/Y Amadea*, No. 23 Civ. 9304 (DEH), 2025 WL 754124, at *2 n.4 (S.D.N.Y. Mar. 10, 2025). As a consequence, documents used by parties to support or oppose dispositive motions can only be sealed for "the most compelling reasons." *Lugosch*, 435 F.3d at 121 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). This is because "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.* (quoting *Joy*, 692 F.2d at 893). This is no less true for a motion for case-terminating sanctions than it is for a motion for summary judgment. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) (explaining that "the sanction of dismissal 'operates as an adjudication upon the merits[.]'") (quoting Fed. R. Civ. P. 41(b)).[8]

---

[8] Moreover, even if the CTS motion were not a dispositive motion, it would still be entitled to a strong presumption of public access. Non-dispositive motions are "subject to at least some presumption of public access," *Giuffre*, 146 F.4th at 177, and the weight of the presumption turns on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (quoting *Amodeo II*, 71 F.3d at 1049). "The more those documents implicate a court's core adjudicative role, the stronger the presumption of access that applies to them." *Giuffre*, 146 F.4th at 181. A court's ability to regulate its own proceedings is an inherent power "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). And because of the potency of this power, it "must be exercised with restraint and discretion." *Id.* at 44. Thus, a court deciding a sanctions motion is exercising a core feature of its judicial power, and one for which public supervision is especially important. *See Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 204 (S.D.N.Y. 2007).

***Third,*** no countervailing factor outweighs the strong presumption in favor of access to the CTS motion and related filings. To the extent that Ms. Doe is concerned about her identity becoming public, it can be protected by limited redactions, to which Mr. Chasin does not in principle object.[9] Indeed, the Court already applied a similar approach to with respect to Defendant's earlier motion for sanctions. *See* Opinion & Order at 14-17 (ECF No. 106). Mr. Chasin does not challenge Ms. Doe's continued use of a pseudonym, he only seeks to unseal information bearing on the credibility of her allegations.

Likewise, Ms. Doe's interest in shielding the details of her alleged abuse from public scrutiny has no bearing on Mr. Chasin's motion. Ms. Doe's allegations have already been made public, both through this lawsuit and through the release of materials her former attorneys shared with the Department of Justice. The degree of any further injury to her privacy from unsealing the CTS Motion would be *de minimis*. And in any event, this is precisely the type of case where open proceedings would "benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Doe v. Combs*, No. 24 Civ. 7776 (NRB), 2025 WL 1079038, at \*4 (S.D.N.Y. Apr. 9, 2025), *aff'd* 2026 WL 742650 (2d Cir. Mar. 17, 2026) (quoting *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020)).

Similarly, to the extent that Ms. Doe's health or medical conditions bear on the CTS Motion, that information should be made public. Where such conditions are "directly relevant" to

---

[9] Such redactions should be limited, however, to information that has no direct relevance to the CTS Motion. While Ms. Doe's privacy interests may be sufficient to justify sealing where identifying information is peripheral to the core issue before the Court, they cannot outweigh the presumption of public access when the same information is "directly relevant" to the sanctions motion. *See M/Y Amadea*, 2025 WL 754124, at \*5 n.6; *accord Lively*, 2025 WL 3295147, at \*3 (distinguishing, for the purposes of sealing, between sensitive information that was relevant to the pending sanctions motion and sensitive information that was not). Mr. Chasin takes no position on whether Ms. Doe's continued anonymity is appropriate under the relevant case law.

a dispositive motion, sealing is not appropriate. *M/Y Amadea*, 2025 WL 754124, at *5 n.6. This is especially rule where the documents at issue raise "credibility concerns" relevant to the motion. *Id.*

Finally, the usual circumstances of this case—in which a great deal of damaging, unverified allegations regarding third-parties have already been disclosed—make unsealing the CTS motion especially important. In previous cases, the Second Circuit has cautioned that "[r]aw, unverified information should not be as readily disclosed as matters that are verified" and instructed courts to consider whether "the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Amodeo II*, 71 F.3d at 1051. Here, however, the "raw, unverified information"—Ms. Doe's journals and her former attorney's statements about Mr. Chasin—have *already* been disclosed, without any opportunity for Mr. Chasin to "respond to [the] accusations contained therein."[10] *Id.* Now that Ms. Doe's accusations against Mr. Chasin have become public, basic fairness requires evidence that those allegations are false be made public as well.

### B.    The First Amendment requires the CTS Motion and related filings be made public.

Mr. Chasin also has a right to access the CTS motion and related filings under the First Amendment. Because sealing the CTS Motion and related filings is neither "essential to preserve higher values" nor "narrowly tailored to serve that interest," they must be made public.

To determine whether there is a First Amendment right of access to a particular judicial document, the Second Circuit applies two tests. "If either test is satisfied, the First Amendment

---

[10] Any argument that Mr. Chasin is seeking these documents for an improper motive is baseless. Mr. Chasin seeks access to these documents for the wholly legitimate purpose of clearing his own name, not out of a desire to shame or ridicule Ms. Doe. Indeed, he does not even seek to learn Ms. Doe's true identity.

right of public access attaches. . . . " *Gov't of United States Virgin Islands v. JPMorgan Chase Bank*, *N.A.*, 807 F. Supp. 3d 301, 308 (S.D.N.Y. 2025). First, under the "experience and logic" test, courts "consider (a) whether the documents 'have historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)." *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *Lugosch*, 435 F.3d at 120). Second, courts consider "the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch*, 435 F.3d at 120 (internal citation and quotation marks omitted). Here, both tests are satisfied.

Experience and logic support a First Amendment right of access to sanctions motions. Courts have consistently recognized that sanctions motions are generally subject to the presumption of access. *See, e.g., In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 3697877, at \*3; *Robinson v. De Niro*, No. 19-cv-9156(LJL)(KHP), 2022 WL 2712827, at \*1 (S.D.N.Y. July 13, 2022); *Centauri Shipping*, 528 F. Supp. 2d at 204. And public access to the records on which sanctions decisions are based is important "in view of the public's legitimate interest in monitoring Article III courts and the longstanding values of openness and self-governance upon which that interest is grounded." *M/Y Amadea,* 2025 WL 754124, at \*5 n.6 (S.D.N.Y. Mar. 10, 2025) (citation omitted). Under the experience and logic test, therefore, motions for sanctions are "quite plainly 'judicial documents' entitled to first amendment access." *Herman v. City of New York*, 334 F.R.D. 377, 393 (E.D.N.Y. 2020).

A similar result follows from the second test. "[T]he constitutional right of access appl[ies] to written documents submitted in connection with judicial proceedings that themselves implicate the right of access." *Matter of New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). In *Lugosch*

- 14 -

*v. Pyramid Company of Onondaga*, the Second Circuit held that a First Amendment right of access applied to oral argument on a summary judgment motion—and thus extended to documents submitted in connection with that motion, whether or not argument was actually held—because "summary judgment is an adjudication, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" 435 F.3d at 124 (quoting *Joy*, 692 F.2d at 893). Again, the same reasoning applies to papers submitted in connection with a dispositive motion for sanctions. "[T]he sanction of dismissal 'operates as an adjudication upon the merits.'" *Lyell*, 682 F.2d at 43 (quoting Fed. R. Civ. P. 41(b)).

Thus, under either test, the public has a First Amendment right of access to the CTS Motion and related filings. They may only be sealed if the Court makes specific findings that sealing is essential "to preserve higher values" and "narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120. "Broad and general findings . . . are not sufficient to justify closure." *Id.* (quoting *Matter of New York Times Co.*, 828 F.2d at 116). Here, no higher values justify sealing. And in any event, sealing would not be "narrowly tailored" to serve those interests.

## CONCLUSION

The Court should grant Mr. Chasin's motion to intervene and promptly grant his motion to unseal the CTS Motion and all related filings. *See Lugosch*, 435 F.3d at 126 (emphasizing "the importance of immediate access where a right to access is found").

Dated: April 22, 2026                                        Respectfully submitted,

- 15 -

*/s/ Shawn P. Naunton*

Blair G. Brown
**ZUCKERMAN SPAEDER LLP**
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1829
Fax: (202) 822-8106
bbrown@zuckerman.com


Shawn P. Naunton
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: (646) 746-8655
Fax: (212) 704-4256
snaunton@zuckerman.com

*Counsel for Dana Chasin*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the word limit of L. Civ. R. 7.1

and contains **5,212** words, excluding the parts of the document exempted by L. Civ. R. 7.1.

*/s/ Shawn P. Naunton*
Shawn P. Naunton
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: (646) 746-8655
Fax: (212) 704-4256
snaunton@zuckerman.com