UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
Jane Doe,

      Plaintiff,

                   Case No.: 1:23-cv-06418 (JGLC)

  - against -


Leon Black,

      Defendant.
-----------------------------------------------------------------

Jane Doe
P.O. Box 286
Haymarket, VA 20168
Jane.doe06418@gmail.com
202-407-6947

May 18, 2026

Via Email To: Pro Se Intake

The Honorable Jessica G. L. Clarke
United States District Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601

Re: *Jane Doe v. Leon Black*, No. 1:23-cv-06418-JGLC

Dear Judge Clarke:

Plaintiff respectfully submits this response concerning communications with reporter Johanna Berkman and the publication of the recent Guardian article.

Plaintiff first wishes to clarify certain factual implications arising from Defendant's filing concerning Plaintiff's interactions with Ms. Berkman surrounding the Second Circuit oral argument, held on December 17, 2025. From Plaintiff's understanding, it was Ms. Berkman's

1

longstanding practice to attend hearings involving litigation connected to Defendant and related matters she had previously reported on, including proceedings involving other alleged victims. Because Plaintiff was traveling to New York and intended to appear personally while continuing to proceed solely as Jane Doe, Plaintiff agreed that Ms. Berkman could accompany Plaintiff to the courthouse and join Plaintiff for lunch afterward, provided Plaintiff's pseudonymity continued to be respected.

Plaintiff notes that Defendant's recent filing does not reference that Ms. Berkman and Ms. Perry spoke with one another at the courthouse on the day of the oral argument prior to lunch with Plaintiff. During lunch afterward, Ms. Berkman explained that she and Ms. Perry had known one another for many years and had attended school together. Plaintiff includes this context solely because Defendant's filing presents an incomplete account of the interactions occurring that day. Ms. Berkman did not disclose the substance of her conversation with Ms. Perry.

Because Plaintiff had traveled to the oral argument with materials prepared for the proceeding, including portions of Plaintiff's own redacted medical documentation and redacted educational records, Plaintiff did show Ms. Berkman limited portions of those materials in order to demonstrate that Plaintiff had not been fabricating or misrepresenting Plaintiff's autism diagnosis, related medical conditions, or educational history, which Plaintiff believed had been repeatedly mischaracterized publicly during the course of the litigation. Plaintiff did not understand doing so to be improper given that the records were Plaintiff's own redacted personal documents, had previously been shared by Plaintiff with other individuals outside the litigation context.

Plaintiff briefly showed Ms. Berkman three limited highlighted excerpts from portions of a transcript connected to the related JPMC proceeding after Ms. Berkman asked questions concerning matters Plaintiff understood her to have already independently researched and generally understood. Plaintiff understood this to be off the record. Plaintiff did not provide or transmit the transcripts themselves, nor provide filings in this case that are or were previously under seal to Ms. Berkman or any other parties at The Guardian in connection with this reporting, and none of the limited excerpts shown were used, quoted, or referenced in the published article.

At the time, Plaintiff understood substantial aspects of the surrounding proceedings and related litigation history to already be publicly known or otherwise publicly accessible through public filings, reporting, docket activity, and Defendant's own public filings discussing proceedings before Judge Rakoff. See ECF Nos. 108 and 114. Those materials also remained accessible through public docket aggregation services such as CourtListener. Plaintiff therefore did not understand the limited viewing of the excerpts described above to be improper and includes this information in an effort to be fully candid with the Court concerning the nature and scope of the interaction.

Plaintiff further notes that additional public accessibility and disclosure issues were later discussed in the record, including the accessibility issues previously acknowledged in ECF No. 281 and disclosures involving sealed materials discussed in ECF Nos. 362 and 378. Although Plaintiff has proceeded throughout this litigation under pseudonym status and has refrained from substantive public commentary concerning the merits of the case, Defendant and Defendant's counsel have repeatedly made public statements concerning Plaintiff and the surrounding proceedings. Plaintiff's own limited comments to Ms. Berkman were directed primarily toward broader concerns regarding the impact of the proceedings on victims, and neither Plaintiff nor anyone affiliated with Plaintiff had any role in drafting, editing, publishing, or otherwise controlling the content or editorial presentation of the article. Plaintiff includes this context solely because Defendant's filing appears to assume that any subsequent public reporting concerning these matters necessarily originated from intentional disclosures orchestrated by Plaintiff or Plaintiff's family, which Plaintiff disputes.

Plaintiff has additionally inquired of Plaintiff's adoptive parents concerning Defendant's present allegations, and both have stated that they did not provide filings in this case that are or were previously under seal to Johanna Berkman or any other parties at the Guardian in connection with this reporting. Plaintiff further notes that Plaintiff's adoptive mother was herself asked for comment in connection with the article, but provided only broad responses and expressly indicated that certain matters could not be discussed due to confidentiality concerns.

Plaintiff further notes that she unexpectedly encountered Mr. Wigdor in public areas of the courthouse, including near the security line and courtroom gallery. Other than a brief wave exchanged in passing, Plaintiff did not communicate with Mr. Wigdor during the proceedings. Any interaction was incidental and occurred openly in a public courthouse setting. Furthermore, since Wigdor LLP's withdrawal over one year ago, Plaintiff has not substantively communicated or otherwise engaged with members of the firm apart from limited logistical or docket-related email communications on which all counsel of record, including Defendant's counsel, were copied.

Plaintiff also respectfully wishes to clarify that she is the author of her own filings and submissions in this matter and does not have third parties drafting filings or acting on her behalf in connection with this litigation. Plaintiff further notes that the oral arguments before the Second Circuit are publicly accessible on the appellate docket in *Doe v. Black*, No. 25-564, and the Court may readily determine from listening to those proceedings that Plaintiff herself speaks for and writes on her own behalf.

Plaintiff respectfully submits that many of the misunderstandings, communication difficulties, and procedural issues referenced throughout these proceedings cannot reasonably be evaluated without accounting for Plaintiff's documented autism spectrum disorder and PTSD, both repeatedly disclosed throughout this litigation. Plaintiff's autism substantially affects communication, interpretation of language, responses to stress, and interactions with authority figures, particularly under conditions of significant procedural and emotional pressure. While

proceeding *pro se*, Plaintiff at times struggled to fully process and navigate extraordinarily complex overlapping proceedings, evolving procedural obligations, public attention, and emotionally distressing circumstances. Plaintiff does not raise these conditions to evade responsibility, but to provide relevant context concerning Plaintiff's understanding of the surrounding proceedings and interactions at issue.

Plaintiff respectfully states that she never intended to violate any order of this Court or undermine the integrity of these proceedings. Plaintiff recognizes the seriousness of the Court's concerns and respectfully apologizes for any misunderstanding, confusion, or additional complication arising from these events. Plaintiff further submits that she did not understand her actions to constitute a violation of any Court order and did not knowingly or intentionally violate any such order. To the extent any misunderstanding or technical violation occurred, Plaintiff understood herself to be navigating overlapping proceedings involving unusual sealing structures, cross-case references, publicly accessible docket materials, and procedurally irregular circumstances while proceeding *pro se,* and did not act with any intent to disregard the authority of the Court. Plaintiff remains respectful of this Court and respectfully requests that the Court consider the full procedural context and extraordinary circumstances under which Plaintiff has attempted to navigate this litigation alone.

Respectfully submitted,

/s/ *Jane Doe*
Jane Doe
Plaintiff, *Pro Se*

4