## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

     PLAINTIFF,

  -AGAINST-

            Case No. 23-cv-06418-JGLC

LEON BLACK,

     DEFENDANT.


## DEFENDANT LEON BLACK'S CONSOLIDATED RESPONSE TO MOTIONS TO RECONSIDER

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................... 1

PROCEDURAL AND FACTUAL HISTORY............................................................................. 2

ARGUMENT ................................................................................................................................ 5

    I.   Wigdor's motion is meritless. ......................................................................................... 5

        A.    This Court's exhaustive opinion overlooked nothing................................................... 5

        B.    Jeanne Christensen lied to and misled the Court. ....................................................... 7

    II.    Doe's motion is meritless—but if this Court reconsiders, it should grant discovery and an evidentiary hearing. ..................................................................................................... 13

        A.    Doe offers nothing to justify reconsideration. ........................................................... 13

        B.    If the Court is inclined to reconsider, it should order discovery and an evidentiary hearing.................................................................................................................... 14

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394 (S.D.N.Y. 2010)................................ 13

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 439 F. Supp. 3d 169 (S.D.N.Y. 2020)....... 13

*Dep't of Com. v. New York*, 588 U.S. 752 (2019).............................................................. 7

*Dietrich v. Bauer*, 198 F.R.D. 39 (S.D.N.Y. 2001) ......................................................... 6

*Dubose v. Jimenez*, No. 22 CV 2124 (VB), 2023 WL 5610299 (S.D.N.Y. Aug. 30, 2023)............ 7

*Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805 (S.D.N.Y.

2001) ......................................................................................................... 8

*In re Reyes*, 651 B.R. 99 (Bankr. S.D.N.Y. 2023), *aff'd*, No. 23-CV-04185 (PMH), 2023 WL

8184933 (S.D.N.Y. Nov. 25, 2023) ................................................................... 8

*Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA) Inc.*, No. 23-CV-1312

(JGLC), 2024 WL 2882215 (S.D.N.Y. June 7, 2024)............................................ 6, 7

*Loughrin v. United States*, 573 U.S. 351 (2014).............................................................. 8

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) ........................................... 9

*Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104 (2d Cir. 2013) ................................. 9

*Ohio v. EPA*, 603 U.S. 279 (2024) .............................................................................. 7

*Rankin v. City of Niagara Falls*, 293 F.R.D. 375 (W.D.N.Y. 2013), *aff'd sub nom. Rankin v. City

of Niagara Falls, Dep't of Pub. Works*, 569 F. App'x 25 (2d Cir. 2014) ................. 9

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 924 F. Supp. 2d 505 (S.D.N.Y.

2013) ......................................................................................................... 9

*Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323 (2d Cir. 1999) ............................ 10

*Shrader v. CSX Transp., Inc.*, 70 F.3d 25 (2d Cir. 1995) ............................................... 6

*United States v. Gilkeson*, 431 F. Supp. 2d 270 (N.D.N.Y. 2006)................................................... 10

*United States v. Mandanici*, 729 F.2d 914 (2d Cir. 1984)................................................... 8

*United States v. Stanchich*, 550 F.2d 1294 (2d Cir. 1977) ........................................... 7

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43 (2d Cir. 2008) ....................................... 8

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009)............................... 10

iii

## PRELIMINARY STATEMENT

Plaintiff Jane Doe fabricated evidence, and her lawyers at Wigdor LLP repeatedly lied to the Court and spoliated evidence. *See* Opinion and Order on Motion for Case Terminating Sanctions ("Op."), ECF No. 388. Even after this Court imposed sanctions, Doe kept offending. Just this week, she admitted that she selectively leaked sealed documents to the media, while telling this Court and the Second Circuit that unsealing those same documents would irreparably injure her. ECF No. 431.

Now, moving to reconsider, the co-conspirators point their fingers at each other. Doe does not deny that Wigdor and its partner, Jeanne Christensen (collectively "Wigdor"), engaged in "serious, sanctionable misconduct." Op. at 1. Wigdor, for its part, does not deny that Doe did the same. Each, then, concedes that their erstwhile collaborator tried to defraud the Court. Each concedes that the Court got it half right—though they disagree about which half. And each wants to relitigate whether they, themselves, have any culpability in what was indisputably a deceit-ridden scheme. Wigdor asks this Court to reopen Leon Black's sanctions motion and consider purportedly "overlooked" evidence. Memorandum of Law In Support of Non-Parties Wigdor LLP and Jeanne M. Christensen's Motion for Reconsideration at 1, ECF No. 406 ("Wigdor Mot."). Doe, meanwhile, repeatedly laments that this Court failed to hold an "evidentiary hearing" before imposing sanctions. Plaintiff Jane Doe's Motion for Reconsideration and/or Clarification of the April 23, 2026 Opinion and Order at 2, ECF No. 410 ("Doe Mot.").

The Court's factual determinations and conclusions of law were correct, but its ruling evidently left Doe and Wigdor (together, the "Movants") unrepentant. They maintain a debunked narrative of innocence—and Doe, at least, continues her pattern of misconduct undeterred. The motions for reconsideration should be denied outright, but if this Court gives Movants what they

1

want and reopens the sanctions proceeding, it should order targeted discovery into the communications between and among Movants; convene an evidentiary hearing to take testimony from them; fix blame where it belongs; and fully unearth Movants' misconduct.

**PROCEDURAL AND FACTUAL HISTORY**

To recap Doe's false allegations is to debunk them. In Doe's submissions to the JPMC Claims Administrator (signed by Jeanne Christensen on behalf of Wigdor LLP) and Doe's testimony in the JPMC proceedings, she claimed that she birthed four of Jeffrey Epstein's fictional children; suffered at least six forced abortions as a teenager; was trafficked to at least 50 prominent individuals in less than three years; and often traveled to and with Epstein—all without being noticed by a single witness or appearing on any flight logs. *See* Defendant Leon Black's Memorandum of Law in Support of His Motion for Case-Terminating Sanctions at 2, ECF No. 225. Perhaps strategically, Wigdor omitted these facially implausible allegations from Doe's Complaint here. But when Doe and Wigdor made a cash-grab at settlement funds set aside for real Epstein survivors in the JPMC proceedings, her fantastical allegations were finally subjected to scrutiny and her credibility was destroyed. Her testimony there, before Judge Rakoff, revealed that—as Class Counsel for actual Epstein survivors put it—Jane Doe "never met" Jeffrey Epstein. Op. at 16.

Doe's credibility on Epstein is everything to her suit against Leon Black, because she says Epstein trafficked her to Black. If she didn't meet Epstein, she didn't meet Black. So Doe and Wigdor hatched and implemented a scheme to connect Doe with Epstein.

*First*, Doe fabricated evidence. She produced "newly discovered" diaries that, according to Doe and Wigdor, contained sonogram images of unborn children fathered by Epstein. But expert testimony showed that all the journals were doctored and manipulated to obscure and conceal

identifying information—and that those sonograms, in particular, were from a later pregnancy and not from her teenage years when the journals purported to have been kept. *See* Op. at 50–51.

*Second*, Wigdor changed its story. They amended their original Complaint to eliminate allegations that were debunked before Judge Rakoff—but they falsely told this Court that the amendments had nothing to do with the JPMC proceeding. Op. at 40–41.

*Third*, Wigdor lied to discredit the JPMC inquiry and Judge Rakoff. Christensen falsely told this Court—which had not yet seen the JPMC transcripts—that Judge Rakoff had subjected Doe to the third degree and excluded Wigdor from the interrogation. Op. at 37–38.

*Fourth*, Wigdor lied about the testimony before Judge Rakoff to cover for Doe's own obvious lie—that Epstein had fathered her children. Christensen told this Court that Doe had said no such thing. But the transcripts revealed the truth. Op. at 40.

This was not the first time Doe and Wigdor had tried to conceal inconvenient facts: before commencing this action, Doe and Wigdor spoliated evidence. At Wigdor's direction, Doe deleted her Twitter account, which contained messages contradicting her allegations here. Op. at 59. These instances of sanctionable misconduct were not isolated mistakes: they were part of a pattern of deliberate deceit aimed at creating and then salvaging an extortion plot.

Now, moving for reconsideration, Wigdor does not contest that it directed Doe to destroy evidence. Wigdor does not contest that it relied, in this Court and in a parallel proceeding before Judge Rakoff, on evidence from journals that Doe fabricated. It does not contest that it knowingly left an "incorrect" Complaint before this Court for at least nine months. It does not contest that it filed two Complaints riddled with unexplained and inexplicable "inconsistencies." It does not contest that Christensen took a "troublingly" "flippant approach" towards her duty of candor to the Court.

In other words, Wigdor concedes spoliation; it concedes that it relied on fabricated evidence and implausible claims; it concedes strategic dishonesty; it concedes playing fast-and-loose with the truth in its court filings. It does not even really contest that Christensen intended to mislead this Court about the testimony before Judge Rakoff. But it says that the Court cannot impose sanctions because Christensen's lies and misleading statements were "literally true" and because this Court supposedly "overlooked" counsel's post-hoc rationalizations of Ms. Christensen's misconduct. Wigdor Mot. at 7, 9–10.

Doe's motion mirrors Wigdor's. She does not contest that her lawyers misled the Court about their real reason for amending the Complaint; that her lawyers lied about her testimony before Judge Rakoff; and that she spoliated evidence. She does not even pretend that the purported Epstein sonograms were real. But Doe insists that the Court lacked an adequate factual record to hold *her* accountable for *her* fabricated sonograms in *her* purported diaries, which were introduced in *her* cash-grab before Judge Rakoff and then used to bolster *her* fake claims against Black. Doe Mot. at 7. Five times, she tells this Court that it should not have ruled against her without an "evidentiary hearing." Doe Mot. at 1–3, 7. Four times, she complains that she was unduly prejudiced by sanctions without "discovery." *Id*. at 1, 2, 7.

This Court ordered Black to file this consolidated response to the reconsideration motions from Wigdor and Doe. Scheduling Order, ECF 412.

Doe then took an interlocutory appeal to the Second Circuit seeking relief from this Court's unsealing order, which was bound up with its merits ruling on the sanctions. At the same time, Doe sought a stay pending appeal from both this Court and the Second Circuit. *See* Motion for Administrative Stay and Stay Pending Appeal, No. 26-1320 (May 13, 2026), Docket No. 7. This Court denied that stay and the portion of Doe's motion aimed at the unsealing order, and relieved

Black of the obligation to respond to that portion of the reconsideration motion. ECF No. 420. However, the Second Circuit has entered an administrative stay pending decision by a panel on Doe's motion for stay. ECF No. 428.

Even as Doe contested this Court's unsealing order at the Second Circuit, though, she was leaking sealed documents to the media. On May 6, a *Guardian* journalist boasted of obtaining "extensive court records, many of which are still under seal." ECF No. 408 at 2 (Black's letter detailing the breach). Black called that breach to the Court's attention, ECF No. 408, and Wigdor promptly replied with a letter denying that it had shared any sealed records with the journalist. ECF No. 409. This Court then ordered Doe to disclose whether she had shared any sealed documents. ECF No. 411.

The answer, however caveated and artfully couched, is *yes*. On May 20, Doe filed a letter acknowledging that she violated the Court's order: "Plaintiff briefly showed Ms. Berkman three limited highlighted excerpts from portions of a transcript connected to the related JPMC proceeding." ECF No. 430 at 2. But, her letter protested, this Court should excuse her selective and strategic leaking, because she did it surreptitiously to avoid detection: "Plaintiff understood this to be off the record." *Id*.

An intent to conceal misconduct is not exculpatory, of course: it is proof of guilty knowledge. So, on May 20, Black filed a letter renewing his motion for case terminating sanctions. ECF No. 431.

## ARGUMENT

### I. Wigdor's motion is meritless.

#### A. This Court's exhaustive opinion overlooked nothing.

Wigdor's   disagreement   with   this   Court's   sanctions   ruling   is   not   grounds   for

reconsideration. Instead, the firm must show that the Court (1) "overlooked" either (2) "controlling decisions" or "factual matters" that were (3) "put before it on the underlying motion" and that (4) "might reasonably be expected to alter the conclusion reached by the court." *Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA) Inc.*, No. 23-CV-1312 (JGLC), 2024 WL 2882215, at *1 (S.D.N.Y. June 7, 2024) (citing *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001)); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). They fail every element of that test.

*First*, the material that the Court supposedly overlooked is a letter from Wigdor's own counsel (the "Ross Letter"). That letter is neither a "controlling decision" (precedent) nor a "factual matter" (evidence). It is unsworn, post-hoc advocacy from the same lawyer who represents Wigdor here. Wigdor had every opportunity to put "factual material" before the Court—including through Christensen's affidavit, which was submitted with Wigdor's opposition. *See* Memorandum of Law In Support of Non-Party Wigdor LLP's Opposition to Defendant's Motion for Case-Terminating Sanctions, ECF No. 271. They "failed": the Court correctly concluded that "Wigdor's response to the instant motion, which included a declaration from Ms. Christensen, failed to counter Defendant's arguments that she misled the Court." Op. at 56.

*Second*, the Ross Letter was not before the Court "on the underlying motion." It was filed at ECF No. 202, in January 2025. But Defendants' Motion for Case-Terminating Sanctions—the "underlying motion" here—was filed in March 2025, at ECF No. 224, and Wigdor filed its opposition in June 2025. ECF No. 271. That opposition did not even mention the Ross Letter, let alone argue that it "addressed each of the accusations of misrepresentation" at issue here, as Wigdor now contends. *See* Wigdor Mot. at 10. It was Wigdor's opposition, in other words, that "overlooked" the Ross Letter. The Court properly took Wigdor's opposition as written, not as

supplemented *sub silentio* and *nunc pro tunc*.

*Third*, there is no reason to think that the Court did "overlook" the Ross Letter. This is not an APA claim: the Court need not expressly confront and reject every frivolous and self-interested argument that any party advances. *Cf. Ohio v. EPA*, 603 U.S. 279, 281, 293 (2024) (APA petitioners likely to prevail where agency "offered no reasoned response" to rulemaking comments). Wigdor cites two inapposite cases in which courts granted reconsideration after neglecting to review all properly-presented, relevant evidence on the underlying motion. *See, e.g.*, *Int'l Cargo Loss Prevention*, 2024 WL 2882215, at *1 (reconsidering where the Court did not "consider[] email exhibits … attached to its motion to dismiss"); *Dubose v. Jimenez*, No. 22 CV 2124 (VB), 2023 WL 5610299, at *3 (S.D.N.Y. Aug. 30, 2023) (reconsidering where "the Court has determined it overlooked an exhibit."). The Ross Letter is not proper evidence, and it was not attached to either the underlying motion or the opposition to that motion. Wigdor's motion amounts to a plea that the Court believe the Ross Letter rather than its own eyes and ears. But this Court was entitled to be unconvinced by the Letter's unconvincing arguments.

*Fourth*, for all the reasons given below, the Ross Letter changes nothing. Even with the Letter, the record shows, by clear and convincing evidence, that movants both lied to and misled the Court.

### B. Jeanne Christensen lied to and misled the Court.

#### 1. Literal truth is no defense to misleading a federal court.

Courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977)). This Court properly read Christensen's false statements in the context in which they were made—by a lawyer who does not even contest that she spoliated evidence and

7

flippantly files untrue complaints, to a Court that lacked access to the sealed record before Judge Rakoff—and reached the right conclusion: Christensen lied to and misled this Court to discredit Judge Rakoff and cover for her evidence-fabricating client.

Even if Christensen's statements had been "literally true" as Wigdor protests (and for the reasons below, they were not), this Court's sanctions were properly imposed. Wigdor Mot. at 7. Wigdor would hold this Court to the standard applicable in perjury prosecutions, where "a defendant may not be convicted … on the basis of a statement that is, although misleading, literally true." *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984). But literalism, the last refuge of squirrely lawyers, is not a shield against Rule 11 and inherent power sanctions. Rule 11 bars attorneys from making "false, *misleading*, improper, *or* frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (emphasis added). That list is disjunctive: an attorney can be sanctioned for a representation that is misleading even if not false. *See Loughrin v. United States*, 573 U.S. 351, 357 (2014) ("To read the next clause, following the word 'or,' as somehow repeating that requirement, even while using different words, is to disregard what 'or' customarily means. As we have recognized, that term's 'ordinary use is almost always disjunctive…'").

Courts in this District have repeatedly sanctioned counsel, under both Rule 11 and in the exercise of their inherent powers, for statements that may be literally true but are still intended to mislead: "It is not a defense to claim that, while factual statements to the Court were materially misleading, they were not literally false." *Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001); *see also In re Reyes*, 651 B.R. 99, 143 (Bankr. S.D.N.Y. 2023), *aff'd*, No. 23-CV-04185 (PMH), 2023 WL 8184933 (S.D.N.Y. Nov. 25, 2023) ("An attorney cannot excuse [her] lack of candor by pointing [out] that [s]he did not technically

8

lie."); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (sanctioning attorney who misled the court by "creating [a] false impression"); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 924 F. Supp. 2d 505, 507 (S.D.N.Y. 2013) (sanctioning attorney who misled the Court by skipping out on a hearing and claiming he had to "appear" in another court – where it turned out that the "appearance" was only by telephone). The question is whether the attorney acted with "subjective bad faith," not whether her intentionally misleading statements are literally true. *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013); *and see Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 392 (W.D.N.Y. 2013), *aff'd sub nom. Rankin v. City of Niagara Falls, Dep't of Pub. Works*, 569 F. App'x 25 (2d Cir. 2014) (attorney is properly sanctioned under Rule 11 when she makes "misleading representations in subjective bad faith for an improper purpose.").

Here, the evidence clearly and convincingly shows both subjective bad faith and improper purpose. There is no way to read Christensen's statement except as literal lies and deliberate attempts to bolster her crumbling case by misleading this Court.

### 2. Christensen lied about Doe's testimony before Judge Rakoff.

This Court correctly found that Christensen "lied to this Court about the substance of Doe's testimony by claiming that Plaintiff never said she was the mother of Epstein's children." Op. at 40. Remember what Christensen told the Court: "[I]t is completely false that Plaintiff said she was the mother of Epstein's children." Op. at 39. Christensen went so far as to characterize Defendant's allegations to the contrary as "preposterous," and "reckless and vindictive." Letter to Judge Clark at 8, ECF 184. And yet, here is Doe's testimony before Judge Rakoff:

> THE COURT:       Was he the father?
> THE WITNESS:     Yes, your Honor.

ECF 233-7 at 55:7–8. Judge Rakoff asked again:

THE COURT:       And of those five [children you gave birth to], how many, is it your understanding, Jeffrey Epstein was the father of?"

THE WITNESS:   Four, your Honor.

*Id.* at 56:25–57:2. This was Doe's testimony after she asserted that she had last seen Epstein in 2010 when she went to New York City to give birth to his child, "a little girl." *Id.* at 54:7–25. And immediately after offering this unequivocal testimony, Doe explained that one of these children was taken from her shortly after birth by "Mr. Mark"—that is, Epstein's brother Mark. *Id.* at 59:14–25. That false testimony was not an artifact of any purported misunderstanding: Doe's (fabricated) journals, too, include false claims of carrying Epstein's children. *See* ECF 233-11 at 25; ECF 233-12 at 25; ECF 233-13 at 24, 26; ECF 233-14 at 4, 14.

Christensen falsely told this Court that Doe never said something that Doe inarguably said, at least twice, on the record and in Christensen's presence. This Court was entitled to infer that Christensen was lying in a last-ditch effort to preserve her client's credibility, which is key to her case: after all, if Doe is willing to lie about her own child, she cannot be trusted on anything. *See, e.g.*, *United States v. Gilkeson*, 431 F. Supp. 2d 270, 277 (N.D.N.Y. 2006) ("If a witness has testified falsely as to any material fact, the entire testimony of that witness may be disregarded upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything."). It is hard to imagine a more "improper purpose" than lying to cover up a client's lie. *See Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) ("As with sanctions imposed pursuant to a court's inherent power … bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose[.]"); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Wigdor asserts, irrelevantly and inaccurately, that Christensen "consistently maintained a

10

distinction between what Doe was told by Jeffrey Epstein and whether Epstein was in fact the father of her children." Wigdor Mot. at 1. Doe's testimony did not reflect such a distinction, despite Christensen's coaching and speaking objections. Doe testified that Epstein was the father of her children, full stop. *See supra* at 9. And Christensen's statement to this Court did not try to clarify Doe's testimony or explain this distinction—it was a straightforward (and objectively false) denial that Doe said she birthed Epstein's children.

### 3. Christensen lied to the Court—or at least deliberately misled it—about the proceedings before Judge Rakoff.

This Court properly found that "Ms. Christensen's letter directly mischaracterized the JPMC proceedings and Judge Rakoff's approach." Op. at 37. Again, recall the context: Ms. Christensen was desperate to delegitimize Judge Rakoff's proceedings, which revealed Doe as a serial liar who "never met" Jeffrey Epstein. Op. at 16. So, to discredit Judge Rakoff, Ms. Christensen wrote this Court a dishonest letter:

> As unbelievable as it may sound, it is true that the allocation review process by Judge Rakoff included him questioning Plaintiff under oath without permitting her counsel to be present, knowing of her developmental disabilities and autism but nevertheless subjecting her to his private cross-examination for over an hour. Worse, during this questioning without her counsel, Judge Rakoff asked her highly personal questions having zero connection to Epstein, Ghislaine Maxwell or what the Claims Administrator had reviewed to render her allocation award.

Op. at 21 (citing ECF 184). The Court made specific and correct factual findings that Christensen's assertions were false and misleading.

*First*, Christensen lied (or at least deliberately misled the Court) when she claimed that Judge Rakoff did not "permit" Wigdor to be present when he examined Doe. Wigdor now claims that Christensen's statement was "literally true." Wigdor Mot. at 7. Again, that is not the standard here; it is also wrong. The record shows that Christensen requested an examination without class

11

counsel present. Op. at 37–38 (citing ECF 233-8 at 8).[1] The record further shows that the Claims Administrator told Judge Rakoff that she received Christensen's permission for him to ask questions of Doe while Christensen was not present (but was still "right outside" the hotel room from which Doe testified), and Doe expressly consented to this arrangement. Op. at 18, 38. Christensen still tried to mislead this Court into believing that Judge Rakoff's interview format, to which Christensen herself consented, was somehow coercive.

*Second*, Christensen lied (or at least deliberately misled the Court) when she wrote that "Judge Rakoff asked [Doe] highly personal questions having zero connection to Epstein, Ghislaine Maxwell or what the Claims Administrator had reviewed to render her allocation award." Op. at 38–40. This Court made specific findings of fact refuting Christensen's assertion: every question Judge Rakoff asked went to Doe's story or her credibility, which were very much at issue in the Administrator's allocation award. *Id*. As to improper purpose: the only point of Christensen's false assertion was to discredit the inquiry conducted by a sitting federal judge—in other words, to cast doubt on the impartial administration of justice by misleading this Court with the insinuation that Judge Rakoff was somehow biased.[2]

*Third*, and finally: Christensen lied (or at least deliberately misled the Court) when she denied that Wigdor amended Doe's Complaint because of the JPMC revelations. Op. at 40–41. The Court identified three specific examples of amendments that directly responded to testimony before Judge Rakoff. *Id*. Wigdor's position appears to be that this Court could not make reasonable

---

[1] Contrary to Wigdor's assertion, Wigdor Mot. at 6, the Court did not cite its March 1, 2024, letter as evidence that Wigdor consented to Judge Rakoff questioning Doe without Wigdor present, but as evidence that Christensen "indicated that she thought an examination by only Judge Rakoff, outside of the presence of Class Counsel or counsel for Defendant, would be preferable." Op. at 37.

[2] The crux of Wigdor's objection here seems to be not that the Court's ruling was substantively wrong but that the Court (in Wigdor's view) inaccurately characterized Christensen's statement. *See* Wigdor Mot. at 7. But this Court knew exactly what Christensen said: far from "overlooking" Christensen's statement, the Court quoted it verbatim. Op. at 21.

inferences, from those facts, about Christensen's intent—but the Court is entitled to do just that. *See, e.g.*, *Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 399 (S.D.N.Y. 2010) (in awarding sanctions, courts can infer bad faith from circumstantial evidence).

## II. Doe's motion is meritless—but if this Court reconsiders, it should grant discovery and an evidentiary hearing.

### A. Doe offers nothing to justify reconsideration.

Every contention Doe raises was already before the Court and adequately addressed. For instance: this Court considered Doe's purported diagnoses and pro se posture. Op. at 9, 25, 33.[3] The Court considered the sanctions motion's pre-discovery posture, which Doe raises repeatedly: the posture was, in part, why the Court did not grant case-terminating sanctions. Op. at 66–67. The Court considered and rejected Doe's farfetched excuse that her biological family must have altered her journals: "The Court does not find Plaintiff's explanation credible." Op. at 50–51. The Court also considered, and rejected, the alternative (and incompatible, and equally implausible) proposition that the journals were somehow unintentionally falsified—though the Court gave Doe every benefit of the doubt by not yet reaching the conclusion that the journals were "wholesale fabrications." Op. at 51.

Doe cannot win on the merits, then, because she points to no facts the Court "overlooked," and she cites no law at all. She only offers reargument, not grounds for reconsideration. *See, e.g.*, *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 439 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) (denying motion to reconsider where the "argument appears principally to express disagreement with the Court's ruling, rather than facts or controlling law the Court overlooked").

---

[3] Doe is pro se because her (sanctioned) lawyers quit after Movants could not agree on how to implement their extortionist scheme. She continues to have no lawyer because nobody will represent a client who fabricates evidence. This Court has extended Doe enormous solicitude, but she still has to satisfy the standard for reconsideration.

13

**B. If the Court is inclined to reconsider, it should order discovery and an evidentiary hearing.**

Doe and Wigdor hatched and implemented a scheme to defraud the Court and extort Black, and they were lucky to escape without case-terminating sanctions. The Court should deny their motions to reconsider. But if it is inclined to reconsider, the Court should only do that on a complete record—with targeted discovery and cross-examination at the evidentiary hearing that Doe repeatedly demands. Doe's own submission here, coupled with her post-sanctions behavior, shows why.

*First*, Doe's brief highlights continued uncertainty around the extent of both Wigdor's culpability and Doe's dishonesty. Again and again, Doe's brief suggests that Wigdor perpetrated more misconduct than this Court previously appreciated: Wigdor guided Doe, and she merely followed. Doe Mot. at 4 (the "Order does not sufficiently distinguish between conduct initiated or directed by counsel"). Doe "relied heavily on counsel's framing of allegations." *Id*. at 4. Wigdor failed to "provide [Doe] with many third-party communications or contextual materials during the representation itself." *Id*. at 5. Wigdor told Doe to delete evidence, and Doe simply "understood" those "instructions … as protective measures directed by counsel." *Id*. at 4–5. Either Doe is lying again, or this Court has not yet gotten to the bottom of Wigdor's misconduct. This Court can only decide which by ordering targeted discovery of communications between Doe and Wigdor—which are now discoverable under the crime/fraud exception—and follow-up cross-examination. *See* Defendant Leon Black's Memorandum of Law in Support of His Motion to Compel Documents and Appoint an Independent Examiner at 24–26, ECF 422.

*Second*, Doe and Wigdor are unchastened. This Court declined to dismiss because it trusted that Movants would be adequately deterred by its targeted sanctions. Op. at 65. But Movants return to the Court without a word of regret—and apparently, at least Doe is prepared to continue

14

offending.

Consider Doe's complaints about this Court's unsealing order. This Response does not substantively answer her unsealing arguments, which this Court already rejected. ECF No. 420. Instead, the point here is that Doe does not come before this Court with clean hands. While protesting the Court's unsealing order, she strategically passed sealed documents to the media.

To recap the sequence: Doe asked this Court to seal documents underlying Black's sanctions motion. This Court obliged her. Then, by Doe's own admission, she ate lunch with a reporter and showed her "highlighted excerpts" from a sealed transcript. ECF No. 430 at 2. That reporter published a biased article falsely insinuating that Judge Rakoff was inappropriately biased against Doe. ECF No. 408-1. And then Doe went to the Second Circuit and claimed that she would be irreparably harmed if the public had access to the same documents she showed the Guardian.

The sequence is remarkable for its sheer chutzpah. This Court's targeted sanctions of April 23 were apparently not enough to deter Doe's continued misbehavior.

Given another chance, Movants would do nothing differently. They only want a different outcome. So if the Court does reconsider, it should (1) order the immediate production of all communications between Doe, Wigdor, and any third parties relating to the journals and Doe's pregnancies, (2) authorize depositions of Doe, her adoptive parents, Christensen, and Douglas Wigdor, and grant leave to serve a subpoena on the Fairfax Radiology Center of Alexandria, and (3) once that evidence is obtained, hold an evidentiary hearing, with cross-examination. At that point, nobody should be able to claim (however misguidedly) that this Court "overlooked" anything or failed to hear evidence.

## CONCLUSION

For the above reasons, the Court should deny the Motions for Reconsideration in their

entirety. In the alternative, the Court should order the targeted discovery requested above and hold the evidentiary hearing that Doe seeks.

Dated: May 21, 2026                       By:    */s/ E. Danya Perry*
        New York, New York

PERRY LAW
E. Danya Perry
Alexander K. Parachini
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
dperry@danyaperrylaw.com
aparachini@danyaperrylaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jennifer J. Barrett
Ryan A. Rakower
Jacqueline M. Stykes
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
ryanrakower@quinnemanuel.com
jacquelinestykes@quinnemanuel.com

ESTRICH GOLDIN LLP
Susan Estrich (*pro hac vice*)
947 Berkeley St.
Santa Monica, CA 90403
(213) 399-2132
susan@estrichgoldin.com

*Counsel for Defendant Leon Black*

16

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, E. Danya Perry, an attorney duly admitted to practice, before this Court, hereby certify pursuant to Local Civil Rule 7.1(c), that annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,844 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on May 21, 2026, in New York, New York.

_/s/ E. Danya Perry_
E. Danya Perry