**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

                *Plaintiff,*

                                 Case No. 1:23-cv-06418-JGLC

    v.


LEON BLACK,

                *Defendant.*


PLAINTIFF JANE DOE'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
<u>AND/OR CLARIFICATION</u>


Jane Doe
Plaintiff, *Pro Se*
P.O. Box 286
Haymarket, VA 20168
202-407-6947
jane.doe06418@gmail.com

**PRELIMINARY STATEMENT**

Plaintiff Jane Doe respectfully submits this Reply in further support of her Motion for Reconsideration and/or Clarification.

Defendant's opposition substantially mischaracterizes both the scope and purpose of Plaintiff's motion. Plaintiff did not seek wholesale relitigation of the sanctions proceedings, factual reopening, or expansive discovery. To the contrary, Plaintiff repeatedly stated that she did "not seek to relitigate every aspect of the sanctions ruling," but instead sought limited reconsideration and clarification directed toward ensuring that sanctions-related findings against Plaintiff personally do not extend beyond the presently developed record and do not create unnecessary prejudice concerning unresolved merits issues. ECF No. 410 at 1, 11. Plaintiff sought limited clarification and narrowing concerning attribution of intent, unresolved procedural issues, contemplated prejudice, and preservation of unresolved merits questions. Defendant's response instead reframes Plaintiff's motion as though Plaintiff sought wholesale reopening of the sanctions proceedings and relitigation of every factual dispute. Plaintiff sought no such relief.

Furthermore, Defendant is improperly attempting to transform limited reconsideration briefing into a renewed sanctions-expansion proceeding. Plaintiff did not seek reopening of discovery, broad third-party subpoenas, evidentiary expansion, or sweeping factual relitigation. Nevertheless, Defendant's opposition attempts to use Plaintiff's narrow reconsideration motion as yet another vehicle to pursue expansive, one-sided discovery that Defendant has repeatedly sought throughout this litigation through multiple procedural avenues.

1

This pattern is not new. Throughout these proceedings, Defendant has repeatedly attempted to obtain what the Court itself previously described as "back door" and "one-sided discovery," despite the fact that discovery remains stayed and the Court has already recognized that Defendant "cannot now obtain such broad and sweeping discovery through the back door, particularly where Plaintiff would be unable to request and receive any discovery of her own." ECF Nos. 306, 427. Discovery remains stayed. The Court has repeatedly acknowledged the limited procedural posture of this case and the minimal discovery that has occurred. Nevertheless, Defendant continues attempting to secure expansive discovery directed solely toward Plaintiff, Plaintiff's former counsel, and various third parties.

Defendant's present request for sweeping discovery, depositions, subpoenas, and evidentiary expansion bears no reasonable relationship to the limited relief actually sought in Plaintiff's motion. Rather, Defendant again seeks to leverage ancillary sanctions-related disputes into a mechanism for obtaining unilateral discovery that has repeatedly been denied, restricted, or deferred throughout the course of this litigation.

Particularly striking is Defendant's insistence that expansive discovery and evidentiary hearings are suddenly necessary to "fully unearth" misconduct, while Defendant himself has repeatedly declined to proceed through the ordinary discovery process applicable to the underlying merits of this case. Defendant's opposition thus attempts to convert narrow reconsideration briefing into an asymmetric collateral discovery proceeding focused exclusively on Plaintiff, despite the Court's repeated acknowledgment that this case remains in an early procedural posture and that ordinary merits discovery has barely commenced.

2

Plaintiff respectfully submits that reconsideration briefing is not a proper procedural vehicle for the sweeping sanctions expansion, collateral discovery, and one-sided evidentiary campaign Defendant again attempts to pursue here.

## ARGUMENT

### I. Defendant's Opposition Largely Responds to Arguments Plaintiff Did Not Make

Defendant's opposition repeatedly attributes positions, motives, and litigation objectives to Plaintiff that Plaintiff never advanced. Rather than respond to the limited reconsideration issues actually raised, Defendant reframes Plaintiff and former counsel as a single unified entity pursuing a coordinated litigation strategy, despite Plaintiff's motion expressly distinguishing between counsel-directed conduct, unresolved attribution questions, and Plaintiff's own limited requests for clarification and narrowing. Much of Defendant's response therefore addresses arguments Plaintiff did not make and relief Plaintiff did not seek.

This repeated collapsing of distinct parties, procedural postures, and disputed factual issues into sweeping, inflammatory, and unsupported misconduct narratives has become a recurring feature of Defendant's litigation approach. But Plaintiff's motion did not ask the Court to revisit every disputed issue in this case, reopen the entire sanctions proceeding, or adjudicate broad allegations concerning former counsel. Plaintiff instead sought limited clarification concerning the extent to which certain sanctions-related findings should be construed against Plaintiff personally given the undeveloped procedural posture, unresolved factual disputes, and acknowledged involvement of counsel-directed conduct throughout portions of the litigation.

To the extent Defendant's opposition attempts to transform Plaintiff's limited motion into a

vehicle for reasserting expansive, inflammatory, and unsupported allegations concerning purported coordinated misconduct, extortion schemes, speculative crime-fraud theories, or sweeping discovery demands, those accusations substantially exceed the scope of the limited reconsideration relief actually sought here.

## II. Defendant's "Unclean Hands" Narrative Materially Mischaracterizes Plaintiff's Limited Communications

Defendant devotes substantial portions of his opposition to constructing an "unclean hands" narrative based upon Plaintiff's limited communications with journalist Ms. Berkman. However, Defendant's characterization materially exaggerates both the substance and scope of the communications actually at issue while omitting the broader procedural and public context already reflected throughout the docket history of these proceedings.

### A. Plaintiff Did Not Disseminate Sealed Records As Defendant Suggests

At no point did Plaintiff disseminate sealed filings, provide access to confidential court materials, or engage in the sweeping disclosure campaign Defendant now theatrically suggests.

Rather, as Plaintiff previously explained, the discussion at issue involved only limited excerpts and contextual references during what Plaintiff understood to be an off-the-record conversation. The referenced materials were not disseminated or published in the manner Defendant now implies. Nor did Plaintiff "strategically pass sealed documents to the media".

Importantly, many of the limited matters referenced during the discussion were already inferable from Defendant's own public filings, docket activity, and surrounding litigation history. For example, references concerning the existence of the JPMC proceedings, the approximate timing of hearings, the involvement of particular counsel, and Defendant's connection to those

4

proceedings had already appeared in public filings before this Court well before the Guardian article at issue.

Similarly, the few contextual references Plaintiff made did not involve disclosure of unknown confidential factual material inaccessible absent improper dissemination. Rather, they concerned matters already connected through existing public filings, procedural activity, and litigation developments visible on the public docket.

Accordingly, Defendant's repeated attempts to portray Plaintiff as having engaged in broad "leaking" or dissemination of sealed materials substantially distort the actual record.

**B. Defendant Ignores His Own Extensive Public Litigation Conduct Concerning the JPMC Proceedings**

Defendant's present attempt to portray any public awareness of the JPMC proceedings as uniquely attributable to Plaintiff is particularly difficult to reconcile with Defendant's own prior public litigation conduct.

By way of example, on September 27, 2024, this Court denied Defendant's first motion to dismiss. Mere days later — as though it were already understood that undocketed materials and collateral proceedings would soon become central to Defendant's litigation strategy — Defendant filed a public letter motion on October 1, 2024 expressly seeking authorization to pursue third-party discovery relating to the sealed proceedings before Judge Rakoff concerning Plaintiff's JPMC settlement claim. ECF No. 108. That filing itself publicly connected Defendant, Defendant's counsel, Class Counsel Brad Edwards, Judge Rakoff and the JPMC proceedings themselves. The pattern continued on October 7, 2024, when Defendant filed another public letter discussing the same proceedings. ECF No. 114. In that filing, Defendant's counsel

expressly represented that "…an evidentiary hearing was held before Judge Rakoff on or around March 15, 2024," further referencing communications from Judge Rakoff's chambers concerning the hearing itself.

Those filings were publicly accessible through ordinary docket platforms. Defendant also appeared as an intervening party on the JPMC docket itself on November 12, 2024 (See *Doe 1 v. JP Morgan Chase & Co.*, 1:22-cv-10019, (S.D.N.Y.) at ECF No. 306) — nearly **nine** months after Ms. Susan Estrich's first ex parte letter — while related proceedings involving Class Counsel Brad Edwards and overlapping submissions appeared on Plaintiff's docket before this Court, including Edwards' appearance through counsel on January 8, 2025. ECF No. 188.

These were not obscure or unknowable connections requiring improper disclosure by Plaintiff. Rather, they constituted precisely the type of publicly accessible litigation "breadcrumbs" routinely pieced together through ordinary review of public filings and docket activity.

Accordingly, Defendant's suggestion that public awareness concerning the existence or approximate nature of the JPMC proceedings could only have originated through improper disclosures by Plaintiff is simply inaccurate.

**C. Defendant's Framing Ignores Prior Public Exposure Events Already Reflected On The Docket**

Defendant's opposition likewise ignores that substantial public exposure events concerning these materials had already occurred independently of Plaintiff's limited communications.

Most notably, Plaintiff's opposition filings and related declarations remained publicly accessible for an extended period following an acknowledged error by the Pro Se Intake Office

— an event already documented on this Court's docket and previously addressed through remedial orders of the Court. ECF No. 281.

Thus, long before the present dispute regarding Ms. Berkman, significant public speculation, discussion, and dissemination concerning aspects of these proceedings had already occurred through separate public exposure events reflected directly within the docket history itself.

Defendant's repeated attempt to portray Plaintiff as the singular source of all public dissemination therefore ignores both Defendant's own extensive public filings concerning the JPMC proceedings and the separate public accessibility events already recognized by this Court.

**D. Plaintiff's Use of "Off The Record" Reflected Privacy Concerns, Not Consciousness Of Wrongdoing**

Defendant additionally attempts to portray Plaintiff's use of the phrase "off the record" as evidence of concealment or guilty knowledge. That characterization again substantially distorts the actual circumstances.

Because of the extraordinary procedural history of these proceedings — including repeated sealing disputes, public filings concerning intensely personal matters, ongoing public scrutiny, and persistent fear that virtually any communication may later be publicly filed, sensationalized, or weaponized — Plaintiff has increasingly and reflexively used phrases such as "off the record" even in ordinary personal conversations. Defendant's attempt to transform that reflexive language into evidence of clandestine misconduct is yet another example of the recurring theatrical embellishment consistently permeating Defendant's filings.

Importantly, the conversation at issue was hardly centered on the underlying litigation from

Plaintiff's perspective. Rather, Ms. Berkman relayed information she believed Plaintiff should know concerning unsolicited communications she received from class counsel Mr. Brad Edwards after reviewing Plaintiff's public docket and noticing his involvement in overlapping proceedings. According to Ms. Berkman, Mr. Edwards contacted her despite her having no prior relationship with him, repeatedly characterized Plaintiff as "a fraud," repeated statements nearly verbatim to those Defense counsel had publicly advanced only hours earlier in giving comment, echoed similarly inaccurate and inflammatory assertions Defendant continues to make, and urged her not to publish reporting concerning Plaintiff's allegations against Defendant. Plaintiff found this information particularly significant because, at that time, Plaintiff had not yet even entered the JPMC claims process, raising obvious questions regarding how Class Counsel Brad Edwards — with whom Plaintiff had *never* personally communicated — possessed such extensive "information," including Defendant-supplied, incorrect information concerning Plaintiff, as well as such significant interest in discouraging reporting related to Defendant Black at such an early stage.

The broader conversation then shifted into discussions concerning Ms. Perry, including highly personal matters regarding Ms. Perry's background and Ms. Berkman's longstanding relationship with her — a relationship notably absent from Defendant's repeated characterization of Ms. Berkman as Plaintiff's purported "preferred journalist." Plaintiff initially refrained from publicly describing the actual substance of those discussions precisely out of an effort to avoid unnecessarily embarrassing Ms. Perry and other non-parties through further public disclosure of intensely personal matters having no relevance to the underlying litigation. ECF No. 430.

8

Unfortunately, Defendant's repeated decision to publicly litigate the interaction in increasingly inflammatory and distorted terms has now substantially diminished Plaintiff's ability to preserve that restraint while still correcting the record. Plaintiff notes that, despite *not* having been afforded similar restraint nor basic respect throughout these proceedings, Plaintiff nevertheless continues to refrain from publicly detailing the actual substance of the discussion out of human decency for Ms. Perry and the highly personal nature of the matters involved. Should the Court believe it necessary to better understand the actual context of the conversation and determine for itself that the discussion was not, in fact, centered upon litigation but instead involved highly personal matters concerning Ms. Perry, Plaintiff would respectfully be willing to address those matters in camera. Plaintiff would strongly prefer, however, to avoid further public dissemination of intensely personal information having no relevance to this case that need not be made part of the public record.

Plaintiff had intended to address the concerns regarding Mr. Edwards calling Ms. Berkman on behalf of Defendant through more formal channels at an appropriate procedural juncture. Instead, Defendant now attempts to recast the conversation as evidence of some improper disclosure campaign while omitting the actual context in which the discussion occurred.

Accordingly, Plaintiff's use of the phrase "off the record" reflected an effort — perhaps a naive one — to preserve some remaining measure of privacy, dignity, and restraint concerning matters that could generate extraordinary public humiliation and sensationalism. It did not reflect consciousness of wrongdoing, clandestine coordination with journalists, or participation in the sweeping, unsupported and nonsensical misconduct narrative Defendant again attempts to construct here.

9

Defendant's repeated attempts to portray Plaintiff as possessing "unclean hands" are particularly difficult to reconcile with the actual procedural history of this case. Most notably, Defendant's recent filings *again* publicly reference and discuss material drawn from still-sealed submissions, including identification of third parties and details not expressly referenced within the Court's April 23, 2026 Opinion & Order. This is not an isolated occurrence.

Indeed, ECF No. 378 is highly instructive. There, the Court addressed disputes concerning public statements made by counsel and expressly noted that it had reviewed statements provided to the press and determined that "...most of the statements comply with the Protective Order," while nevertheless admonishing "all counsel to adhere to the Protective Order." ECF No. 378.

Plaintiff respectfully submits that this context is highly relevant to Defendant's present accusations because many of the narratives publicly circulated throughout these proceedings derived from matters that were themselves sealed, confidential, or deeply intertwined with sealed proceedings — including profoundly traumatic and intensely personal allegations concerning Plaintiff's private life.

Importantly, many of those public narratives did not originate from Plaintiff personally, but instead reflected characterizations, framing, and disclosures advanced by others, including Class Counsel Brad Edwards. Yet despite the extraordinarily inflammatory and prejudicial nature of those public statements, Defendant and his extensive legal team have repeatedly been afforded substantial latitude under the banner of "advocacy," even while continuing to publicly reference and disclose material connected to sealed proceedings — including in Defendant's most recent filing presently before the Court.

10

Plaintiff — an autistic, trauma-impacted litigant now proceeding *pro se* — is meanwhile being made to defend limited contextual communications that concerned matters already referenced in public filings, docket activity, and litigation proceedings accessible through the public record.

At minimum, Defendant's present effort to construct a sweeping "unclean hands" narrative against Plaintiff while simultaneously ***continuing*** to publicly litigate and reference matters connected to sealed proceedings presents a considerably more complicated procedural picture than Defendant's opposition acknowledges.

## III. Defendant Improperly Collapses Distinct Parties, Conduct, And Procedural Issues Into A Unified Misconduct Narrative

Defendant's opposition repeatedly collapses Plaintiff, former counsel, disputed attribution issues, and unresolved factual questions into a single sweeping, inflammatory, and unsupported narrative of purported coordinated misconduct. In doing so, Defendant substantially mischaracterizes both the substance and scope of Plaintiff's limited reconsideration motion.

Plaintiff's motion expressly distinguished between Plaintiff personally, former counsel, unresolved attribution questions, and conduct occurring within the context of counsel-directed litigation strategy. Plaintiff specifically raised concerns regarding the extent to which certain sanctions-related findings could improperly extend beyond the presently developed record or create unnecessary prejudice concerning unresolved merits issues. Plaintiff did not seek wholesale relitigation of the sanctions proceedings, reopening of discovery, sweeping factual adjudications, or expansive collateral proceedings directed toward former counsel.

Nevertheless, Defendant's opposition repeatedly refers collectively to terms such as Movants and co-conspirators, while advancing sweeping, unsupported, theatrical theories of purported coordinated misconduct and attributing positions, motives, and litigation objectives to Plaintiff that Plaintiff never advanced. Indeed, substantial portions of Defendant's opposition appear directed not toward the limited reconsideration issues actually raised by Plaintiff, but toward constructing a broader, inflammatory, and unsupported narrative of coordinated misconduct extending far beyond the relief sought in Plaintiff's motion.

That distinction matters. Plaintiff's motion did not ask this Court to adjudicate Defendant's sweeping, absurd, unsupported, and repeatedly insinuated allegations of coordinated misconduct between Plaintiff and former counsel, nor did Plaintiff invite the expansive and inflammatory narrative Defendant again attempts to construct throughout his opposition. Rather, Plaintiff sought limited reconsideration and clarification concerning narrow issues of attribution, procedural posture, unresolved factual questions, and preservation of unresolved merits issues in a case where ordinary merits discovery has barely commenced.

Defendant's repeated effort to merge distinct parties, distinct procedural postures, and distinct categories of conduct into a singular theory of coordinated wrongdoing is particularly inappropriate within the context of limited reconsideration briefing. Reconsideration is not a procedural vehicle for transforming narrow clarification requests into sprawling collateral accusations that are unsupported, detached from reality, and grounded in speculation, insinuation, and broad misconduct theories untethered to the actual relief sought in Plaintiff's motion.

Nor does Defendant's repeated rhetorical escalation alter the procedural reality that Plaintiff's motion remained narrowly directed throughout. Plaintiff did not seek to reopen sanctions proceedings, relitigate every disputed factual issue, or initiate expansive collateral proceedings concerning former counsel. Defendant's opposition nevertheless repeatedly responds as though Plaintiff requested precisely such relief.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the limited reconsideration and/or clarification relief requested in Plaintiff's Motion.

As Plaintiff previously stated, Plaintiff's motion was made in substantial part to preserve and clarify issues for the record and for any future appellate review. Plaintiff recognizes the difficult procedural posture of this case and respectfully acknowledges that she is proceeding entirely *pro se* during extraordinarily complex sanctions proceedings.

Plaintiff has never sought through this Motion to relitigate every aspect of the sanctions ruling, reopen sanctions proceedings, or initiate expansive collateral litigation concerning former counsel. Rather, Plaintiff respectfully sought a fair opportunity to clarify portions of the record that Plaintiff believes may overstate Plaintiff's personal intent, conflate counsel-directed conduct with Plaintiff's own actions, or create unnecessary prejudice concerning unresolved merits issues in a case where ordinary merits discovery has barely commenced.

Defendant's opposition repeatedly attempts to transform Plaintiff's limited reconsideration motion into something far broader than the motion actually filed. Plaintiff respectfully submits that the Court should evaluate Plaintiff's Motion based upon the narrow relief actually sought

13

therein, rather than the substantially expanded, inflammatory and unsupported misconduct narrative Defendant attempts to superimpose upon it.

Accordingly, Plaintiff respectfully requests that the Court grant such limited reconsideration, clarification, or other relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Jane Doe*
Jane Doe
Plaintiff, *Pro Se*

14