**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

                    Plaintiff,

    v.

LEON BLACK,

                  Defendant.

Case No. 1:23-cv-06418-JGLC

**DEFENDANT LEON BLACK'S APPLICATION FOR**
**ATTORNEYS' FEES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .........................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ..............................................................................................................................5

I.      LEGAL STANDARD..........................................................................................................5

II.     QUINN EMANUEL'S AND PERRY LAW'S HOURLY RATES ARE
        REASONABLE...................................................................................................................7

        A.      Quinn Emanuel's Rates Are Reasonable ..............................................................7

        B.      Perry Law's Rates Are Reasonable .....................................................................10

III.    THE NUMBER OF HOURS EXPENDED BY QUINN EMANUEL AND
        PERRY LAW IS REASONABLE.......................................................................................12

        A.      The Scope Of The Work Was Substantial ...........................................................13

        B.      Responding To Wigdor's And Doe's Opposition Filings Was Unusually
                Burdensome.........................................................................................................14

        C.      Doe's And Wigdor's Conduct Increased The Burden On Black's Counsel .........15

IV.     WIGDOR'S OBJECTIONS TO THE FEE REQUEST PROVIDE NO BASIS
        FOR A REDUCTION ........................................................................................................16

        A.      The Court Has Already Determined Wigdor's Responsibility And The
                Scope Of The Fee Award ....................................................................................16

        B.      Black's Fee Request Is Conservative And Understates The Cost Of The
                Motion .................................................................................................................18

        C.      Wigdor's Remaining Objections Lack Merit.......................................................19

CONCLUSION..........................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
   2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) ............................................................................6, 7

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC,*
   2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021) ...................................................................................9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) ......................................................................................................5, 7

*An v. Despins*,
   2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) ..................................................................................9

*AMF Bowling Ctrs., Inc. v. Tanase*,
   No. 3:23-cv-448 (HEH) (E.D. Va. Apr. 16, 2025) ...........................................................................8

*Blattman v. Siebel*,
   No. CV 15-530-CFC (D. Del. Dec. 6, 2021) (ECF No. 434) ..........................................................8

*Cerco Bridge Loans 6 LLC v. Schenker*,
   768 F. Supp. 3d 559 (S.D.N.Y. 2025)..............................................................................................9

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
   337 F.R.D. 47 (S.D.N.Y. 2020)........................................................................................................6

*Clark v. Castor and Pollux Ltd. Liab. Co.*,
   2019 WL 4467117 (Sup. Ct. N.Y. Cnty. Sep. 18, 2019) .................................................................8

*Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*,
   34 F.3d 1148 (2d Cir. 1994) ............................................................................................................6

*Custodio v. Am. Chain Link & Constr., Inc.*,
   2014 WL 116147 (S.D.N.Y. Jan. 13, 2014) ...............................................................................6, 12

*H&N Mgmt. Grp. v. Couch*,
   2019 WL 6620822 (Del. Ch. Dec. 4, 2019)......................................................................................9

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................................................17

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
   No. 17-14-JFB-SRF (D. Del. Dec. 16, 2019) ..................................................................................9

ii

*Millea v. Metro-North R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011) ................................................................................5

*N.Y. State Ass'n for Retarded Child., Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) ..................................................................... 6, 12, 19

*Proofpoint, Inc. v. Vade Secure, Inc.*,
  No. 19-cv-04238-MMC (RMI) (N.D. Cal. Dec. 17, 2020) ........................................8

*Rudi v. Wexner*,
  2022 WL 1682297 (S.D. Ohio May 16, 2022) ...........................................................8

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ................................................................................5, 11

*Surveillance Tech. Oversight Project v. N.Y. City Police Dep't*
  (Sup. Ct. N.Y. Cnty. Jan. 24, 2024) ......................................................................8

*Transweb, LLC v. 3M Innovative Props. Co.*,
  No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) ..................................9

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
  2018 U.S. Dist. LEXIS 102224 (S.D.N.Y. May 24, 2018) .........................................9

## Other Authorities

Fed. R. Civ. P. 11...............................................................................................2, 13

Fed. R. Civ. P. 11(c)(1) ....................................................................................16, 17

Fed. R. Civ. P. 37(e)..........................................................................................2, 13

Erin Mulvaney, *Top Lawyers' Fees Have Skyrocketed. Be Prepared To Pay
  $3,400 An Hour*, THE WALL STREET JOURNAL (Feb. 18, 2026)...................................9

Defendant Leon Black ("Black") respectfully submits this application for attorneys' fees incurred in connection with his Motion for Sanctions (the "Motion"), pursuant to this Court's Opinion and Order dated April 23, 2026 (ECF No. 388) (the "Opinion") and the Court's May 12, 2026 Order (ECF No. 418).

## PRELIMINARY STATEMENT

Over the course of more than seven months, Black's counsel investigated, researched, prepared, and briefed the Motion, which included an opening brief supported by eight declarations and thirty-two exhibits, and two separate reply briefs replying to Wigdor's and Doe's voluminous opposition papers. Black's Motion resulted in a 76-page Opinion finding that Plaintiff's former counsel at Wigdor LLP ("Wigdor") and Jeanne Christensen ("Christensen") had "lied repeatedly to the Court and to opposing counsel," directed Plaintiff to destroy relevant evidence, and engaged in other serious misconduct. ECF No. 388 at 1-2. The Court sanctioned Wigdor and Christensen and ordered that they "must pay Defendant's reasonable attorneys' fees and costs in bringing this Motion." *Id.* at 2. The Court held Wigdor and Christensen "responsible for Defendant's reasonable attorneys' fees incurred between January 15, 2025, and August 22, 2025, that are related to the cost of bringing the instant motion." *Id.* at 63.

Black was represented in connection with the Motion primarily by two firms: Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and Perry Law. As set forth herein and in the accompanying declarations and exhibits, Black seeks a total of $1,622,916.70 in reasonable attorneys' fees incurred during the Court-defined fee period (the "Fee Period"):

|  | Hours | Amount |
|---|---|---|
| Quinn Emanuel Attorneys' Fees | 762.45 | $1,103,211.70 |
| Perry Law Attorneys' Fees | 421.10 | $519,705.00 |
| **Total Attorneys' Fees** | 1,183.55 | **$1,622,916.70** |

1

The fee figures reflect only time that is directly related to the Motion. All time related to unrelated work has been excluded. For mixed entries that involved both Motion-related and unrelated tasks, Quinn Emanuel and Perry Law applied a conservative, qualitative analysis to allocate only the recoverable portion.

The fees incurred were reasonable and, indeed, necessary. The Motion required counsel to review an extensive sealed record from the JPMC Action before Judge Rakoff, including approximately 600 pages of claims submissions, court orders, expert reports, declarations, correspondence, and other related documents, as well as 179 pages of sealed hearing transcripts. Counsel then prepared a 41-page opening brief supported by thirty-two exhibits and eight declarations. After Wigdor withdrew as counsel for Plaintiff, Black was required to respond to two separate oppositions—one from Wigdor (51 pages and 22 exhibits consisting of more than 500 pages) and one from Doe, proceeding *pro se* (filed across multiple submissions and totaling more than 375 pages of briefing, declarations, and exhibits)—as well as numerous additional letters filed by both Doe and Wigdor throughout the briefing period. That opposition practice itself generated the need for two reply briefs (ECF Nos. 323 and 326), each running approximately 23 pages and each responding to different sets of arguments.

As the Court recognized, Wigdor's and Christensen's conduct was "objectively unreasonable," warranting a fee award under both Federal Rule of Civil Procedure 11 and Rule 37(e). ECF No. 388 at 63-64. The fees and hours set forth below were reasonably incurred in bringing the Motion that exposed that misconduct. In the alternative, Black respectfully requests that the Court appoint a special master under Rule 53 to review his counsel's unredacted invoices *in camera* and to determine whether the attorneys' fees that Black seeks in connection with the Motion are reasonable.

2

## BACKGROUND

The background of this dispute is set forth at length in the Court's Opinion.  ECF No. 388 at 4-24.  As relevant here, on January 15, 2025, Black notified the Court of his intent to file a motion for case-terminating sanctions in light of a letter from Judge Rakoff disclosing that Christensen had made "numerous material misrepresentations" to this court.  ECF No. 198 at 1-2; ECF No. 388 at 21.  The Court granted Black leave to proceed and stayed discovery.  ECF Nos. 205, 209.

Black's counsel then undertook the substantial work required to prepare the Motion.  This included, among other things: (a) reviewing the sealed documents and transcripts from the JPMC Action that the Court transmitted from Judge Rakoff's chambers (ECF No. 182), including three hearing transcripts totaling 179 pages; (b) conducting extensive legal research into standards for case-terminating sanctions, fraud on the court, and spoliation; (c) retaining and working with a forensic document examiner, Larry Stewart, whose physical inspection of the journals and resulting report confirmed that sonograms in Plaintiff's journals were falsified (ECF No. 226-2); (d) recovering and analyzing certain of Plaintiff's deleted Twitter posts; (e) obtaining and incorporating declarations from Plaintiff's biological family members and other witnesses; and (f) drafting the Motion itself (ECF No. 225), a 41-page memorandum of law filed on March 3, 2025, supported by eight declarations and thirty-two exhibits (ECF Nos. 226-233).

The scope of briefing expanded considerably when Wigdor withdrew as counsel for Plaintiff, and Plaintiff and Wigdor proceeded to oppose the Motion independently.  ECF Nos. 238, 241.  This resulted in two separate opposition briefs for Black to address: Wigdor filed a 51-page memorandum of law (ECF No. 271) with more than 500 pages of exhibits, and Doe filed her own opposition papers across multiple submissions totaling more than 375 pages, including a principal opposition, declarations, and supporting exhibits.  ECF Nos. 258, 274-275, 277, 283.

3

Even setting aside the dual opposition papers, this was hardly a typical, straightforward sanctions motion. Both Doe and Wigdor filed numerous additional letters with the Court throughout the briefing period, each requiring review and often a response. Between May and August 2025, there were more than 70 filings in this case, with Doe alone filing at least eight separate letters addressing topics ranging from safety concerns to purported procedural objections to a request for an emergency stay. *See, e.g.*, ECF Nos. 263, 295, 304. Wigdor similarly filed 15 letters and submissions (excluding certificates of service)[1] requiring attention.

In response to these dual oppositions and the attendant letter practice, Black's counsel prepared and filed two reply briefs: one addressing Doe's arguments (ECF No. 323) and one addressing Wigdor's arguments (ECF No. 326), each filed on August 22, 2025. The Motion was then fully briefed. ECF No. 388 at 24.

Black was represented in connection with the Motion by Quinn Emanuel and Perry Law. Quinn Emanuel served as lead counsel and performed the bulk of the work, and Perry Law served as co-counsel. Other lawyers at other firms, such as Estrich Goldin LLP ("Estrich Goldin"), also contributed to the briefing on the Motion. However, Black does not seek any fees for their work. Black seeks only Quinn Emanuel's and Perry Law's fees here, and the fees of each firm are supported by separate, contemporaneous time records and declarations, described below.

Pursuant to the Court's Order, on May 19, Quinn Emanuel and Perry Law provided Wigdor with redacted time entries supporting their fee calculation. On May 27, representatives from Quinn Emanuel and Perry Law conferred with Wigdor in good faith regarding those entries and the

---

[1] Although each of these collateral filings required time and attention, Black is not seeking fees for work related to them. But they serve to illustrate the complexity of the circumstances surrounding the Motion, and the multiplication of work caused by Wigdor's and Doe's own conduct.

amount of fees owed.  On this call, Wigdor questioned Black's counsel regarding the review of time entries and allocation of block bills, and counsel confirmed that not all time entries were reviewed by the billing attorney for that entry.  The following morning, in response to Wigdor's questions during the meet and confer, Quinn Emanuel and Perry Law did two things.  First, they produced spreadsheets to Wigdor detailing the portions of mixed time entries that were allocated to their calculation of recoverable fees.  *See* Declaration of Ryan A. Rakower ("Quinn Emanuel Decl.") ¶ 9.  Second, in response to Wigdor's questions, Quinn Emanuel and Perry Law asked core attorneys on the matter to review their redacted and unredacted time entries for the Fee Period to confirm whether the time was properly allocated in the Motion.  Those attorneys each then signed sworn declarations.

Despite these good faith efforts, on June 1, Wigdor informed Quinn Emanuel and Perry Law that it was willing to pay only $325,000 of the approximately $1.6 million in fees initially requested, leaving more than $1.275 million in reasonable fees unaddressed.  Having reached an impasse, Black now submits this application for attorneys' fees.  As set forth herein and in the accompanying declarations and exhibits, the attorneys' fees Black incurred preparing and filing the Motion were reasonable and necessary.  Accordingly, Black respectfully requests an award in the full amount of these fees reasonably attributable to his counsel's work performed on the Motion.

**ARGUMENT**

## I.    LEGAL STANDARD

In determining whether a request for attorneys' fees is reasonable, courts in this Circuit begin with the "presumptively reasonable fee."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  The "presumptively reasonable fee" is "the product of a reasonable hourly rate and the reasonable number of hours required by the

5

case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). A reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay," given that such a client "wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 522 F.3d at 184).

An application for attorneys' fees "must document the application with contemporaneous time records … specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The fee applicant need not provide actual bills or invoices; rather, "[t]ranscriptions of contemporaneous time records containing the above information have been found to satisfy this requirement." *Custodio v. Am. Chain Link & Constr., Inc.*, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)).

The Court's sanctions award is not limited to attorneys' fees. The Court ordered Wigdor and Christensen to pay Black's "reasonable attorneys' fees *and costs*" in bringing the Motion, and directed counsel to submit "an accounting of their reasonable attorneys' fees and costs related to bringing the instant motion." ECF No. 388 at 2, 75 (emphasis added). Reasonable costs include the fees of an expert whose work was necessary to develop the motion. *See, e.g.*, *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020) (court has discretion to "award attorneys' fees *and costs* to the moving party, to the extent reasonable to address any prejudice" (emphasis added)); *see also* ECF No. 388 at 64 (citing *Charlestown* as authority for the award here).

**II.    QUINN EMANUEL'S AND PERRY LAW'S HOURLY RATES ARE
    REASONABLE**

"A reasonable starting point for determining the hourly rate for purposes of a presumptively

reasonable fee calculation is the attorney's customary rate." *Amaprop Ltd. v. Indiabulls Fin. Servs.

Ltd.*, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) (internal quotation marks and brackets

omitted).  The Court should also "look to market rates prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (internal

quotation marks omitted).  Additionally, the Second Circuit has equated the "reasonable hourly

rate" with the rate a "reasonable, paying client would be willing to pay."  *Id.* (quoting *Arbor Hill

Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184).

The rates charged by Black's counsel are well within the range of prevailing market rates

for attorneys of comparable experience at peer firms in New York.

**A.    Quinn Emanuel's Rates Are Reasonable**

Quinn Emanuel is one of the nation's preeminent litigation firms, with recognized expertise

in complex litigation and sanctions practice.  The attorneys who worked on the Motion ranged

from partners with decades of trial experience to associates and staff attorneys performing legal

research, document review, and drafting.  Their billing rates during the relevant period ranged

from $595 to $2,410 per hour, reflecting each attorney's level of experience and responsibility.

The following table summarizes the primary timekeepers, their roles, experience, billing

rates, hours worked on the Motion during the Fee Period, and total fees:

| Timekeeper | Role | Attorney Experience | Rate | Hours | Fees |
|---|---|---|---|---|---|
| Michael B. Carlinsky | Co-Managing Partner of QE | 37 years | $2,410 | 31.00 | $74,710.00 |
| Jennifer J. Barrett | Co-Managing Partner of NY Office | 32 years | $1,995 | 59.52 | $118,742.40 |

7

| | | | | | |
|---|---|---|---|---:|---:|
| Ryan A. Rakower | Partner | 10 years | $1,645 | 123.84 | $203,716.80 |
| Jacqueline M. Stykes | Associate | 8 years | $1,465 | 154.40 | $226,196.00 |
| Himanshu Patel | Associate | 6 years | $1,395 | 131.88 | $183,972.60 |
| Kelsey Sullivan | Associate | 6 years | $1,395 | 4.00 | $5,580.00 |
| Vincent R. Parascandolo | Associate | 4 years | $1,195 | 90.72 | $108,410.40 |
| Emery Staton | Associate | 4 years | $1,195 | 103.58 | $123,778.10 |
| Elizabeth Bishop | Associate | 3 years | $1,195 | 3.70 | $4,421.50 |
| Emily Erickson | Associate | 2 years | $940 | 47.31 | $44,471.40 |
| Abigail Graegin | Associate | 2 years | $940 | 2.50 | $2,350.00 |
| Alex Lefkowitz | Associate | 2 years | $940 | 2.50 | $2,350.00 |
| Moshe Schwartz | Law Clerk | 1 year | $595 | 4.30 | $2,558.50 |
| Julius Crockwell | Managing Clerk | NA | $620 | 1.50 | $930.00 |
| Robert Andon | Managing Clerk | NA | $620 | 0.50 | $310.00 |
| Noah Lewine | Paralegal | NA | $595 | 0.60 | $357.00 |
| Maeve Anderson | Paralegal | NA | $595 | 0.60 | $357.00 |
| **TOTAL** | | | | **762.45** | **$1,103,211.70** |

These rates are in line with the customary billing rates at Quinn Emanuel and with the prevailing rates for attorneys of comparable skill, experience, and reputation at peer firms in New York. Courts in this District and beyond have repeatedly found Quinn Emanuel's rates to be reasonable. *See Clark v. Castor and Pollux Ltd. Liab. Co.*, 2019 WL 4467117, at *19 (Sup. Ct. N.Y. Cnty. Sep. 18, 2019) ("Quinn Emanuel's rates are reasonable for a firm of its stature and comparable to those charged by other leading firms."); *Surveillance Tech. Oversight Project v. N.Y. City Police Dep't* (Sup. Ct. N.Y. Cnty. Jan. 24, 2024) (Index No. 151747/2023), NYSCEF No. 44 (noting that "Quinn Emanuel is a top law firm, and thus their rates may be more than others,

but [they] do not seem to be exorbitant"); *AMF Bowling Ctrs., Inc. v. Tanase*, No. 3:23-cv-448 (HEH) (E.D. Va. Apr. 16, 2025) (ECF No. 206 at 20) (finding that Quinn Emanuel's rates are reasonable and "not atypical rates for New York City law firms of similar caliber, experience, and size"); *Rudi v. Wexner*, 2022 WL 1682297, at *5 (S.D. Ohio May 16, 2022) (finding Quinn Emanuel's "hourly rates are reasonable under the circumstances"); *Blattman v. Siebel*, No. CV 15-530-CFC (D. Del. Dec. 6, 2021) (ECF No. 434) (finding Quinn Emanuel's fee request reasonable); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI) (N.D. Cal. Dec. 17, 2020) (finding Quinn Emanuel attorneys are "experienced and seasoned practitioners" employed at a firm "with a highly regarded reputation" and their fees are reasonable); *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-14-JFB-SRF (D. Del. Dec. 16, 2019) (finding Quinn Emanuel's "hourly rates and [] hours spent [are] reasonable"); *H&N Mgmt. Grp. v. Couch*, 2019 WL 6620822, at *6 (Del. Ch. Dec. 4, 2019) (finding that Quinn Emanuel's and its co-counsel's attorneys' fees were "fair and reasonable"); *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) (special master finding Quinn Emanuel a "premier litigation firm" and total fees of $26,146,493.45 reasonable).

Moreover, courts in this District have routinely approved partner-level billing rates in this range for complex litigation. *See Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 588-90 (S.D.N.Y. 2025) (finding hourly rate of $2,035 for partners at a large, global law firm to be reasonable); *An v. Despins*, 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (finding a partner rate of $1,990 per hour at a large, full-service law firm to be reasonable); *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 U.S. Dist. LEXIS 102224, at *15-16 (S.D.N.Y. May 24, 2018) (approving hourly rates up to $1,260 in 2018 as "not excessive in the New York City 'big firm' market"); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2021 WL 1353756, at *6 (S.D.N.Y. Apr. 12, 2021) (rates of $1,350 per hour for partners at a large firm "[were] comparable to rates

9

awarded in this jurisdiction"). Those rates have only continued to increase since then, and the rates here are consistent with the current New York market for complex litigation at a peer firm. Industry surveys confirm as much: leading firms now commonly bill associates between $1,400 and $2,000 per hour and partners between $2,500 and $3,400 per hour—ranges that comfortably fit within the rates billed here. *See* Erin Mulvaney, *Top Lawyers' Fees Have Skyrocketed. Be Prepared To Pay $3,400 An Hour*, THE WALL STREET JOURNAL (Feb. 18, 2026).

The Court's award expressly extends to Black's reasonable "fees *and costs*" in bringing the Motion. ECF No. 388 at 2, 75 (emphasis added). However, out of an abundance of caution and to avoid unnecessary motion practice, although it had included costs associated with the retention of expert Larry Stewart in its initial estimates, Quinn Emanuel has now excluded the costs of retaining Mr. Stewart from its calculation. *See* Quinn Emanuel Decl. ¶ 4.

**B.    Perry Law's Rates Are Reasonable**

Perry Law's rates are likewise reasonable. The firm is led by E. Danya Perry, a former Deputy Chief for the Criminal Division for the Southern District of New York, a professor at NYU School of Law, and a nationally recognized trial and investigations attorney. Declaration of E. Danya Perry (the "Perry Decl.") ¶ 2. Perry Law is an elite litigation boutique built by lawyers with deep government, public interest, and private sector experience, whose lean teams go toe-to-toe with New York's biggest and most prestigious law firms. Perry Law and Ms. Perry have been recognized with the country's most prestigious legal awards, including out-of-the-gate and current Chambers rankings in three distinct practice areas, and recognition from every leading legal publication. *Id.* ¶ 3. As just a few examples, in her short time as a founding partner, Ms. Perry has been: honored with the National Law Journal's Elite Boutique Trailblazer award; twice named City & State's New York Trailblazer in Law and one of their "Power 100" ranked attorneys; twice featured as one of Crain's New York Business's Notable Women in Law; twice awarded New

10

York Law Journal's Distinguished Leader Award; recognized as a Benchmark Litigation Labor & Employment Star; featured across multiple years on Lawdragon's 500 lists of Leading Litigators in America, Leading Civil Rights & Plaintiff Employment Lawyers, and Leading Corporate Employment Lawyers; and featured as one of Law360's White Collar Crime MVPs. *Id.*

As set forth in the Perry Declaration, Perry Law's timekeepers billed at rates ranging from $900 to $1,650 per hour during the relevant period, reflecting each timekeeper's experience and role. *Id.* ¶¶ 6-8. Those rates are consistent with—and in most instances below—the prevailing market rates for litigators of comparable skill, experience, and reputation in New York, including the rates discussed above. *See Simmons*, 575 F.3d at 174. Indeed, Perry Law's rates in this matter are significantly lower than those Perry Law currently charges new clients. Perry Decl. ¶ 8. As an example, Ms. Perry regularly bills clients over $2,000 per hour, but her rates in this case were discounted to $1,650 per hour. *Id.* Other Perry Law attorneys were discounted proportionally. *Id.* In all events, Perry Law's rates in this matter are lower than the Quinn Emanuel rates that courts have found reasonable. *See supra*.

The following table summarizes the principal Perry Law timekeepers, their roles, experience, billing rates, hours worked on the Motion during the Fee Period, and total fees:

| Timekeeper | Role | Attorney Experience | Rate | Hours | Fees |
|---|---|---|---|---|---|
| E. Danya Perry | Founding Partner | 30 years | $1,650 | 48.90 | $80,685.00 |
| Peter Gwynne | Partner | 22 years | $1,400 | 83.10 | $116,340.00 |
| Alexander K. Parachini | Counsel | 15 years | $1,200 | 190.70 | $228,840.00 |
| David Russell | Associate | 9 years | $1,100 | 26.40 | $29,040.00 |
| Brittany Hanke | Associate | 3 years | $900 | 72.00 | $64,800.00 |
| | | | **TOTAL** | 421.10 | $519,705.00 |

Out of an abundance of caution and to avoid unnecessary motion practice, Perry Law excluded from its calculation time billed by non-attorney (*i.e.*, analyst or paralegal) timekeepers and certain associates who worked only a small number of hours on the Motion.  Perry Decl. ¶ 7.[2]

## III.    THE NUMBER OF HOURS EXPENDED BY QUINN EMANUEL AND PERRY LAW IS REASONABLE

An application for attorneys' fees "must document the application with contemporaneous time records … specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  The applicant need not provide actual bills or invoices; rather, "[t]ranscriptions of contemporaneous time records containing the above information have been found to satisfy this requirement."  *Custodio*, 2014 WL 116147, at *9.

The number of hours billed by Quinn Emanuel is reasonable.  As its contemporaneous time records show, Quinn Emanuel performed at least 762.45 hours in connection with the Motion over a seven-month Fee Period.  *See* Quinn Emanuel Decl. ¶¶ 3-4 & Ex. A (redacted time entries).  As detailed in the Quinn Emanuel Declaration, Quinn Emanuel's work focused on the development, investigation, briefing, and reply work for the Motion, and the firm has excluded from this request all time unrelated to the Motion.  *Id.* ¶¶ 2-13.  Quinn Emanuel's hours are reasonable in light of the scope and complexity of the work required and the volume of filings generated by Wigdor's and Doe's opposition practice.  *Id.*

The number of hours billed by Perry Law is also reasonable.  As its contemporaneous time records show, Perry Law performed at least 421.10 hours in connection with the Motion over a

---

[2] The topline calculation Perry Law initially provided to Wigdor on May 11, 2026, *see* ECF No. 415-1, included all timekeepers (attorney and non-attorney) who worked on the motion for sanctions, and did not reflect certain reductions that Perry Law subsequently applied in a good-faith effort to resolve the attorneys' fees issue and avoid unnecessary motion practice.  Perry Decl. ¶ 13.

seven-month Fee Period, for a total of $519,705 in fees.  Perry Decl. ¶¶ 5-6 & Ex. A.  As detailed in the Perry Law Declaration, Perry Law's work focused on the development, briefing, and reply work for the Motion, and Perry Law has excluded from this request all time unrelated to the Motion.  *Id.* ¶¶ 4–11.  The reasonableness of Perry Law's hours is supported by the same considerations set forth above: the volume of the JPMC record, the two separate oppositions, the two reply briefs, and the extensive collateral letter practice generated by Doe and Wigdor.

Quinn Emanuel's and Perry Law's calculations are supported by declarations from key attorney timekeepers who performed work on the Motion for which Black seeks fees.[3]

### A.    The Scope Of The Work Was Substantial

As a motion for case-terminating sanctions based on a multi-pronged fraud on the court, this was not a routine sanctions motion.  The briefing and preparation involved multiple parties and spanned more than seven months.  The Court's Opinion, which took eight months to prepare given the scope of the record and complexity and gravity of the issues, runs to 76 pages and includes detailed factual findings and conclusions of law on several discrete categories of misconduct: lies to the Court under Rule 11, spoliation of evidence under Rule 37(e), and falsification of evidence under the Court's inherent powers.  ECF No. 388 at 28-65.  Each of these categories required independent factual investigation and legal analysis.

Preparing the initial Motion required counsel to review and analyze the sealed record from the JPMC Action, which the Court transmitted from Judge Rakoff's chambers.  ECF No. 182. That record included claims submissions and supporting materials, correspondence from Class Counsel, orders, and sealed hearing transcripts, including a March 15, 2024 evidentiary hearing

---

[3] As well as declarations from Peter Gwynne and David Russell, who were formerly employed at Perry Law and performed work on the Motion during the Fee Period.

(112 transcript pages), a June 25, 2024 sealed hearing (40 transcript pages), and a July 8, 2024 interview of the claimant (27 transcript pages). *See* ECF No. 388 at 11-18. In total, counsel reviewed and analyzed nearly 800 pages of JPMC materials. This review was indispensable: the Court's Opinion relies extensively on the JPMC record in finding that Christensen's representations to this Court were false.

The initial Motion also required the retention of a forensic document examiner, Larry Stewart, whose inspection and analysis confirmed that sonograms in Plaintiff's journals had been falsified. ECF No. 226-2. The Court credited Stewart's report and relied on it in imposing sanctions. ECF No. 388 at 45-51, 62.

### B. Responding To Wigdor's And Doe's Opposition Filings Was Unusually Burdensome

The hours incurred on reply briefing and related work were driven by the unusual posture of this case: after Wigdor withdrew as counsel, Black faced two separate opposing parties filing independently, each pointing the finger at the other and propounding a distinct set of arguments and supporting materials.

Wigdor filed a 31-page opposition memorandum (ECF No. 271) arguing, among other things, that it had acted in good faith, that Black bore responsibility for the circumstances in the JPMC Action, and that case-terminating sanctions were not warranted. Doe, now proceeding *pro se*, filed portions of her opposition on June 23, 2025 (ECF Nos. 274-277) and refiled it in complete form on June 30, 2025 (ECF No. 283). Her submission was voluminous: two declarations from Doe herself running more than 75 pages (ECF Nos. 274, 275), separate declarations from her adoptive mother (ECF No. 283-2) and others (*e.g.*, ECF No. 283-3), and 80 exhibits spanning more than 230 pages. *See* ECF No. 283-4, 283-5, 283-6. Counsel was required to review and respond to all of it.

14

Because Wigdor's and Doe's arguments were largely distinct, and in some instances, opposed, Black's counsel was required to prepare two separate reply briefs—one addressing Doe's submissions (ECF No. 323, approximately 22 pages) and one addressing Wigdor's (ECF No. 326, also approximately 23 pages). In a typical sanctions motion, a movant files one reply brief. Here, Defendant had to file two.

### C.     Doe's And Wigdor's Conduct Increased The Burden On Black's Counsel

Beyond the formal briefing, both Doe and Wigdor engaged in extensive collateral practice that required the time and attention of Black's counsel throughout the seven-month Fee Period. Between May and August 2025, Doe filed at least eight additional letters with the Court on topics including purported safety concerns (ECF No. 304), requests for an emergency stay of proceedings (ECF No. 295), and objections to Black's submissions, *see, e.g.*, ECF Nos. 263, 295, 304. Each of these filings required review, analysis, and in many instances written responses to the Court. Although Black is not seeking to recover fees for work related to these collateral filings, they certainly contributed to the complexity of preparing and briefing his replies.

Wigdor, for its part, contested the Motion at each stage, multiplying the proceedings—and the hours its conduct required of Black's counsel—at every step. In April 2025, Wigdor moved to withdraw as counsel (ECF No. 238), prompting additional briefing about the terms and conditions of withdrawal (ECF No. 241, and related correspondence). Wigdor then filed its own opposition papers—separate from Doe's—requiring separate analysis. The Court itself recognized this fractured posture, noting that "Wigdor and Ms. Doe, representing herself, each opposed the CTS Motion independently." ECF No. 388 at 23.

These circumstances and the resulting complexity of the Motion were not of Black's making. They were the direct result of the misconduct the Court found warranted sanctions in the

15

first place.   The additional hours counsel expended to navigate this litigation posture were reasonable and necessary.

## IV.   WIGDOR'S OBJECTIONS TO THE FEE REQUEST PROVIDE NO BASIS FOR A REDUCTION

Pursuant to the Court's directive, the parties have met and conferred regarding the fees and costs the Court ordered Wigdor to pay.  *See* ECF No. 418.  Black provided Wigdor a detailed calculation of its fees and costs and supplemental supporting materials and time records.  Rather than engage with that documentation, Wigdor waited until June 1, 2026—three days before this motion was due—to take the position that it should only be responsible for roughly 20% of the documented fees and costs.  *See* June 1, 2026 Wigdor Ltr. ("Wigdor Ltr.").  The objections Wigdor has raised do not withstand scrutiny, and none provides a basis to reduce the reasonable fees and costs established here.

### A.   The Court Has Already Determined Wigdor's Responsibility And The Scope Of The Fee Award

Several of Wigdor's objections are not directed at the reasonableness of the fees at all; they are attempts to relitigate the Opinion.  They fail for that reason alone, because the Court has already determined—twice, in fact, having now denied Wigdor's motion to reconsider in its entirety, ECF No. 439—that Wigdor is responsible for Black's fees and the scope of that responsibility.

Wigdor first contends that, because the sanctioned conduct concerned statements by Christensen—who has suddenly now "retired"—Wigdor should bear little or no responsibility for the award.   Wigdor Ltr. at 3.  The Court already considered and rejected the position that Christensen should be solely responsible.  Although the Court observed that it was "inclined to hold only Ms. Christensen responsible for these lies," it held that "the Federal Rules require otherwise": under Rule 11(c)(1), "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  ECF No. 388

16

at 56-57 (quoting Fed. R. Civ. P. 11(c)(1)). The Court found no exceptional circumstances—"nor did the parties raise any"—and accordingly held "Ms. Christensen and Wigdor … jointly responsible." *Id.* at 57. Christensen's subsequent retirement is not an exceptional circumstance, or a coincidence, and it does not disturb the firm's liability for the fees the Court has already imposed.

Wigdor's related contention that the award should be discounted to reflect only the portion of the briefing addressed to the specific conduct found sanctionable (Wigdor Ltr. at 2-3 & n.1) fares no better because it too contradicts the Opinion. The Court did not limit Black's recovery to fees attributable to particular arguments or to a percentage of the briefing. It held Wigdor responsible for "Defendant's reasonable attorneys' fees incurred between January 15, 2025, and August 22, 2025, that are related to the cost of bringing the instant motion," and it defined that "seven-month period" as running from the Court's receipt of "notice that Defendant planned to file a motion for case-terminating sanctions" through "the date of Defendant's Reply." ECF No. 388 at 63. The Court thus fixed a temporal scope that captures the entire course of the Motion, including the reply briefs Black filed in response to the oppositions. Work that Black's attorneys performed in response to the oppositions filed by Doe and Wigdor falls squarely within that scope, and the conduct that prompted the Motion occurred while Wigdor represented Doe (and indeed, was the reason for Wigdor's withdrawal). Black should not recover less because Wigdor withdrew and because Doe's and Wigdor's oppositions required him to do more. Where, as here, the work involves a "common core of facts," a fee award is not reduced by a mechanical, issue-by-issue parsing of the briefing. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

17

**B.**     **Black's Fee Request Is Conservative And Understates The Cost Of The Motion**

Far from overreaching, Black's request reflects substantial restraint.  The request excludes all costs for retaining the expert Mr. Stewart.  Black also seeks fees for only two firms—Quinn Emanuel and Perry Law—and does not seek a single dollar for the work of any other lawyers who also contributed to the Motion.  The request likewise excludes all time devoted to matters other than the Motion, such as responses to Doe's and Wigdor's multiple related motions and letters, and reflects reductions to time spent on the Motion based on Black's attorneys' exercise of conservative billing judgment.  Wigdor's suggestion that the participation of additional counsel signals duplication (Wigdor Ltr. at 3) has the point backwards: because Black has chosen not to seek fees for that other work, his request understates the true cost of the Motion and cannot be said to seek duplicative recovery for it.  A party that voluntarily limits its request in this way should not be treated as though it had sought everything.

Indeed, Wigdor attempts to weaponize Black's conservative approach and voluntary decision not to seek fees for certain work on the Motion, making much of a supposed "discrepancy" between Black's counsel's initial topline calculation and the lower amount sought in this application.  Wigdor Ltr. at 2.  But as Black's counsel explained during the parties' meet and confer, that "discrepancy" is the result of voluntary reductions based on the exercise of conservative billing judgment and the voluntary exclusion of certain junior and administrative timekeepers in a good-faith effort to avoid unnecessary motion practice.  Wigdor also complains about a "$6,000 discrepancy" between Perry Law's May 11, 2026, and May 28, 2026, calculations. Wigdor Ltr. at 2.  That minor difference—little more than 1% of the total amount Perry Law seeks—was the result of an inadvertent data entry error in Perry Law's May 11 calculation, Perry Decl. ¶ 14, that could have been easily addressed in a subsequent meet and confer had Wigdor

18

responded promptly to Black's counsel's May 28 production, instead of waiting until shortly before the fee application deadline.

### C.  Wigdor's Remaining Objections Lack Merit

Wigdor's remaining objections—that Black's time records are impermissibly vague or block-billed, that the request seeks duplicative work, that Black has billed for too many timekeepers, and that the cost request is unsupported by invoices (Wigdor Ltr. at 1-3)—likewise provide no basis for a reduction.  *First*, Black's fee request is supported by contemporaneous, itemized time records that identify, for each entry, the timekeeper, the date, the task, and the hours expended, together with sworn declarations from the billing attorneys confirming the time devoted to the Motion.  That is the documentation a fee award requires.  *See Carey*, 711 F.2d at 1148.  The records have been redacted solely to protect privileged and confidential information—as the Court's own Order contemplated, *see* ECF No. 418 at 2—not to obscure the nature of the work. The authorities Wigdor invokes are inapposite: they concern fee applicants who offered only generic, one-line task descriptions or undifferentiated hourly totals, unaccompanied by any sworn attestation to the work performed.  Black's submission is materially different.

*Second*, Black's fee request does not seek recovery for duplicative work.  Wigdor's lone example—that several timekeepers from both firms recorded time on August 18, 2025 (Wigdor Ltr. at 3)—omits that those timekeepers were finalizing two separate reply briefs for filing days later, and that the time was divided among several individuals, none of whom billed anything approaching a full day to the task.  Collaborative review and revision of two briefs with supporting declarations in the days before filing is the ordinary and efficient division of labor on a major submission, not duplication.  Moreover, Black already reduced the time recorded that day in the exercise of conservative billing judgment.

19

*Third*, the number of timekeepers reflects the scale of the work necessary to bring the motion, not excess. The vast majority of the hours were billed by a small group of core attorneys, and the limited time billed by junior and support personnel—at correspondingly lower rates—was for discrete tasks reasonably necessary to the Motion. The relevant question is whether the work was useful and necessary to the motion, not whether each individual entered an appearance or attended a hearing.

## CONCLUSION

For the reasons set forth herein and in the accompanying declarations and exhibits, Black respectfully requests that the Court award him a total of $1,622,916.70, consisting of (i) $1,103,211.70 in attorneys' fees reasonably incurred by Quinn Emanuel; and (ii) $519,705 in attorneys' fees reasonably incurred by Perry Law—all incurred in connection with the Motion during the January 15, 2025 through August 22, 2025 Fee Period. In the alternative, Black respectfully requests that the Court appoint a special master under Federal Rule of Civil Procedure 53 to examine his counsel's unredacted invoices *in camera* and to determine whether the requested attorneys' fees are reasonable.

Dated: New York, New York
      June 4, 2026

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

By:  */s/ Michael B. Carlinsky*
     Michael B. Carlinsky
     Jennifer J. Barrett
     Ryan A. Rakower
     Jacqueline M. Stykes
     295 Fifth Avenue
     New York, New York 10016
     (212) 849-7000
     michaelcarlinsky@quinnemanuel.com
     jenniferbarrett@quinnemanuel.com
     ryanrakower@quinnemanuel.com
     jacquelinestykes@quinnemanuel.com

20

PERRY LAW
E. Danya Perry
Alexander K. Parachini
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
dperry@danyaperrylaw.com
aparachini@danyaperrylaw.com

*Counsel for Defendant Leon D. Black*

21

22

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Michael B. Carlinsky, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 6,029 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on June 4, 2026, in New York, New York.

/s/ Michael B. Carlinsky
Michael B. Carlinsky