**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

JANE DOE,                                          :
                                                   :
                        Plaintiff,                 :      Case No.: 1:23-cv-06418
                                                   :
            v.                                      :
                                                   :
LEON BLACK                                          :
                                                   :
                        Defendant.                 :
-------------------------------------------------------------- X

## NON-PARTY WIGDOR LLP'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LEON BLACK'S APPLICATION FOR ATTORNEYS' FEES

**WIGDOR LLP**

Michael J. Willemin
Meredith Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

PRELIMINARY STATEMENT......................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

I.      The Motion for Sanctions and The Court's Order........................................... 2

II.     The Fee Application......................................................................................... 4

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT ................................................................................................................... 9

I.      Defendant's Counsel's Time Records Are Fundamentally Unreliable............................. 9

        A.      Block Billing............................................................................................ 9

        B.      Counsel's Reductions Are Not Dependable ........................................... 10

        C.      The Fee Application Process Indicates Bad Faith ................................. 13

II.     Defendant's Counsel's Requested Hours are Objectively Unreasonable ........................ 14

        A.      Hyperinflated Hours............................................................................... 14

        B.      Hours in Relation to Success on Motion............................................... 15

        C.      Overstaffing ........................................................................................... 16

        D.      Duplicative Work................................................................................... 16

        E.      Vague Time Entries and Internal Inconsistencies................................. 18

        F.      Wigdor Did Not Cause Additional Work .............................................. 19

III.    Defendant's Counsel's Rates Are, With Few Exceptions, Unreasonably Inflated........... 20

        A.      Record-Setting Rates ............................................................................. 20

        B.      Failure to Provide Sufficient Biographical Information ....................... 23

IV.     Granting Defendant's Fee Application Would Create Inequitable Results ...................... 25

A.      Granting Black's Application Would Not Meet the Goal of the Sanction ........... 25

B.      Black's History in this Litigation and Otherwise Cautions Against Granting the Application................................................................................................................ 26

CONCLUSION............................................................................................................................. 28

## TABLE OF AUTHORITIES

Cases                                                                                                Page(s)

*Alexander v. Amchem Prods., Inc.*,
   No. 07 Civ. 6441, 2008 WL 1700157 (S.D.N.Y. Apr. 3, 2008) ................................... 21

*An v. Despins*,
   No. 22 Civ. 10062, 2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024)..................................... 20, 22

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
   2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021).............................................................. 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) .................................................................................. 21

*Bunnell v. Haghighi*,
   183 F. Supp. 3d 364 (E.D.N.Y. 2016) ..................................................................... 10

*Capitol Recs., LLC v. ReDigi Inc.*,
   No. 12 Civ. 95, 2022 WL 3348385 (S.D.N.Y. Aug. 12, 2022) ..................................... 8

*Carrero v. New York City Housing Authority*,
   685 F. Supp. 904 (S.D.N.Y. 1988) ......................................................................... 11

*Carrington v. Garden*,
   No. 18 Civ. 4609, 2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020)............................... 21

*Cerco Bridge Loans 6 LLC v. Schenker*,
   768 F. Supp. 3d 559, 587 (S.D.N.Y. 2025) ............................................................. 22, 23

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
   No. 18 Civ. 4437, 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021) ................................. 11, 12, 23

*Chrysafis v. Marks*,
   No. 21 Civ. 2516, 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023)............................... 18

*Clark v. Castor and Pollux Ltd. Liability Co.*,
   No. 655446/2017, 2019 WL 4467117 (N.Y. Sup. Ct. Sep. 18, 2019)....................... 22

*Creative Resources Grp. of N.J., Inc. v. Creative Resources Grp., Inc.*,
   212 F.R.D. 94 (E.D.N.Y. 2002)............................................................................... 18

*Farbotko v. Clinton Cnty. of New York*,
   433 F.3d 204 (2d Cir. 2005) .................................................................................. 25

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
No. 14 Civ. 1254, 2020 WL 4750600 (S.D.N.Y. Aug. 17, 2020) .............................................. 14

*Guardant Health, Inc. v. Natera, Inc.*,
No. 21 Civ. 04062, 2026 WL 1401006 (N.D. Cal. May 19, 2026)............................................. 28

*Gurung v. Malhotra*,
851 F. Supp. 2d 583 (S.D.N.Y. 2012) ...................................................................................... 23

*Gym Door Repairs, Inc. v. Guardian Gym Equip.*,
No. 23-7924, 2026 WL 891131 (2d Cir. Apr. 1, 2026) ............................................................... 7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................................... 8

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149 (2d Cir. 1998) ....................................................................................................... 8

*Knox v. Varvatos Enters. Inc.*,
520 F. Supp. 3d 331 (S.D.N.Y. 2021) ...................................................................................... 19

*Laba v. JBO Worldwide Supply Pty Ltd*,
No. 20 Civ. 3443, 2023 WL 4985290 (S.D.N.Y. July 19, 2023), *aff'd*, 24-558,
2025 WL 323762 (2d Cir. Jan. 29, 2025)................................................................................. 14

*LaBarca v. GRJH, Inc.*,
No. 16 Civ. 826, 2018 WL 1136918 (N.D.N.Y. Mar. 1, 2018) ................................................ 13

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
No. 12 Civ. 7311, 2016 WL 5812105 (S.D.N.Y. Sept. 22, 2016) ............................................ 10

*Lilly v. City of N.Y.*,
934 F.3d 222 (2d Cir. 2019) ................................................................................................. 7, 22

*Lochren v. County of Suffolk*,
344 F. App'x 706 (2d Cir. 2009) .............................................................................................. 16

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997) ..................................................................................................... 16

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*,
2011 WL 8955840 (S.D.N.Y. Apr. 7, 2011) ............................................................................... 9

*Oakley v. MSG Networks, Inc.*,
17 Civ. 06903, 2025 WL 3041936 at *10 (S.D.N.Y. Oct. 31, 2025) ........................................ 19

*PDV USA, Inc. v. Interamerican Consulting Inc.*,
No. 20 Civ. 3699, 2026 WL 1283316 (S.D.N.Y. May 11, 2026) ............................................... 24

*PharmacyChecker.com LLC v. Nat'l Ass'n of Boards of Pharmacy*,
No. 19 Civ. 07577, 2026 WL 972522 (S.D.N.Y. Apr. 10, 2026) ....................................... *passim*

*Raja v. Burns*,
43 F.4th 80 (2d Cir. 2022) ...................................................................................................... 9

*Scott v. City of New York*,
643 F.3d 56 (2d Cir. 2011) ................................................................................................... 12

*StoneX Grp., Inc. v. Shipman*,
No. 23 Civ. 00613, 2025 WL 1212165 (S.D.N.Y. Apr. 25, 2025) ............................................. 8

*Toussie v. Cnty. of Suffolk*,
No. 1 Civ. 6716, 2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012) ........................................... 8, 13

*Trs. of N.Y. City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Prime Installa*tions *Inc.*,
No. 24 Civ. 8250, 2026 WL 979229 (S.D.N.Y. Mar. 20, 2026) ................................................ 8

*Usherson v. Bandshell Artist Mgmt.*,
No. 19 Civ. 6368, 2020 WL 3483661 (S.D.N.Y. June 26, 2020) ............................................. 25

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ........................................ 21, 23

*Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent. Corp.*,
No. 24 Civ. 01577, 2025 WL 3525044 (S.D.N.Y. Dec. 9, 2025) ....................................... 20, 23

*Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*,
23 Civ. 5262, 2024 WL 3409278 (S.D.N.Y. July 15, 2024) ............................................... 21, 23

Rules

Fed. R. Civ. P. 11 ............................................................................................................... *passim*

v

Non-party Wigdor LLP ("Wigdor") respectfully submits the following in opposition to Defendant Leon Black's ("Defendant" or "Black") Application for Fees, ECF 440.

## **PRELIMINARY STATEMENT**

Leon Black asks the Court to grant him an unprecedented amount of money—six-and-a-half years of an Article III Judge's compensation—for his pursuit of a largely unsuccessful motion, charged at billing rates far in excess of those ever before approved, for the unexplained, redundant and unnecessary work of 20+ individuals. To justify his exorbitant request, Black submits almost entirely redacted invoices that evidence his counsel's practice of block billing and provide little to no insight into what work was actually performed. Black's motion is further undermined by his request that this Court blindly trust a few individuals' non-contemporaneous estimated adjustments to the block-billed time, without explaining how those adjustments were made, or—until Wigdor noted the issue—even asking the individual billers whether the adjustments were accurate.

These underlying issues with the reconstruction of the records are only compounded by other deficiencies. Beyond block billing, Black, a billionaire now seeking to be further enriched, heavily overstaffed this motion, completed duplicative and unnecessary work, provided time entries with vague descriptions, and asked for record-setting hourly rates without providing information on each biller's qualifications and experience, much less biographical information that would justify $1.6mm+ in billing on a single issue in what amounts to a personal injury case. Together, these issues demonstrate the bad faith nature of the request, and, on that basis alone, it is respectfully submitted that Black's motion should be denied in its entirety rather than granted in some arbitrary part. Any other outcome would send a strong message to future applicants for attorneys' fees that filing a grossly unsupported and embellished fee application will only be met with a reduction in the request made.

1

Moreover, Defendant's own bad faith in the fee application process itself should countenance against granting the motion. Black initially defied the Court's order that he provide an accounting of his attorneys' time to Wigdor, instead sending a wholly unsupported dollar figure by email and asserting that it should be paid. When Wigdor requested more information, Black adjusted the amount sought, but again explicitly refused to support the updated request. Only after the Court ordered Black to produce time records did he provide mostly redacted invoices that—due to unilateral after-the-fact adjustments—were unintelligible. And it was only after Wigdor raised these concerns that Black provided his lawyers' non-contemporaneous "estimates" as to how long it took to complete the individual tasks at issue—but even then shared no information on who made those adjustments or how they were made. Then, when presented with additional questions, an offer for resolution, and a request to further meet-and-confer, Black did not even acknowledge receipt and instead proceeded to file this application.

As a result of these and various other reasons, Defendant's motion—aimed at a firm that the Court was not inclined, but was obligated, to sanction—should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    The Motion for Sanctions and The Court's Order

On January 15, 2025, Defendant requested leave to file a motion for case-terminating sanctions. ECF 198. He contended that his anticipated receipt of the materials from Plaintiff's confidential claim submission in the *Doe v. JP Morgan Chase* matter before Judge Rakoff ("JPMC") would indicate Plaintiff's fraud on the Court and form the basis for his anticipated motion. On March 3, 2025, Defendant filed his motion ("Motion"). The gravamen of the Motion was that Plaintiff's claims were not credible, that Plaintiff's evidence was fabricated and that Wigdor did not conduct sufficient diligence in bringing this case or amending the complaint. Of

2

the 34 pages of the opening brief, Black also devoted approximately two pages to rehashing arguments set forth by Judge Rakoff in a December 30, 2024 letter to this Court. ECF 233, Ex. 6.

In early April 2024, Wigdor withdrew as counsel for Plaintiff pursuant to its ethical obligations. ECF 238, 241, 259. Defendant's Motion was fully briefed by the end of August 2025. Wigdor and Plaintiff each filed separate oppositions to Defendant's Motion, and Defendant replied separately to Wigdor and Plaintiff's oppositions. ECF 271, 283, 323-26.

On May 12, 2026, this Court issued an order sanctioning Jeanne Christensen ("Christensen") and, as a result, Wigdor. ECF 388 (the "Order"). The Court rejected most of Black's arguments, including the crux of his motion as to Wigdor, which was that the firm conducted an inadequate investigation of the Complaint and unreasonably delayed in amending the Complaint. Order at 53-55. The Court did, however, sanction Christensen for "mischaracteriz[ing] Judge Rakoff's actions," lying about Plaintiff's prior testimony and directing Plaintiff to delete her Twitter account (*without* an intent to deprive). *Id.* at 57, 60. The Court did not find that any other individual attorney engaged in sanctionable conduct and noted that it was only inclined to levy a sanction against Christensen. *Id*. at 56-57. However, pursuant to Rule 11, the Court was obligated to extend the sanction to Wigdor. *See id.* (citing Fed. R. Civ. P. 11(c)(1)). As a sanction, the Court ordered Christensen to submit notice of the Order to other courts and for Wigdor to "pay Defendant's reasonable attorneys' fees and costs in bringing this Motion" "incurred between January 15, 2025, and August 22, 2025." Order at 2, 63. The Court ordered counsel for Defendant to submit an accounting of their fees and costs to Wigdor by May 7, 2026. *Id.* at 75.

II.    **The Fee Application**

On May 7, in direct violation of the Court's order requiring Defendant to provide an accounting, counsel for Defendant emailed Wigdor and requested $1,759,704.11, without any explanation. ECF 415-1 at 3-4.  In fact, Black's counsel preemptively informed Wigdor that it was "not willing to share the underlying billing entries with you," which indicated that even Black's lawyers knew they could not reasonably support that request.  *Id.*  Given Black's attempts to obfuscate, Wigdor wrote to the Court and expressed concerns.  ECF 414.  Minutes later, Defendant's counsel informed Wigdor that the number consisted of $654,475 in fees sought for work done by Perry Law ("Perry"), $1,101,081.80 in fees sought for work done by Quinn Emanuel ("Quinn") and $4,147.31 in expert fees related to the examination of Plaintiff's journals.  This second disclosure did not reveal what work was performed, who performed it, how many people performed it, how long the work took by task and/or by person or the billing rates by person, nor did it reveal how the total hours and fees were calculated.  ECF 415.

After this Court ordered them to provide time entries, on May 19, 2026, Defendant's counsel provided Wigdor with heavily redacted invoices and lowered the requested total.  *See* Declaration of Michael J. Willemin ("Willemin Decl.") ¶ 3, Ex. 1-2.   Defendant provided no rationale or explanation for the downward adjustment except to eventually note that the change was a result of being more "conservative."  *Id.* at ¶ 4.  Wigdor undertook an extensive review of the redacted invoices, but the dearth of information presented left many questions, particularly because the time entries, multiplied by the rates sought by each biller, did not match up with the total requested fees.  *Id.* at ¶ 3.

On May 27, 2026, Wigdor and Defendant's counsel met-and-conferred.  *Id.* at ¶ 4.  During that call, among other things, Defendant's counsel effectively conceded that there is no way of determining whether the present application is accurate because there is no contemporaneous

4

documentation of how much time was spent on many of the tasks at issue. *Id.* at ¶¶ 4-6. Instead, the contemporaneous records are months of heavily redacted block billing that apparently relate to a variety of different litigations (separate and aside from *Doe v. Black*) as well as significant work unrelated to the Motion. ECF 442, Ex. A; ECF 451, Ex. A. Accordingly, almost every relevant billing entry describes work for which Defendant claims an entitlement to reimbursement ("Reimbursable" "Time" or "Work"), as well as work for which Defendant claims no entitlement to reimbursement ("Non-Reimbursable" "Time" or "Work"). *Id.*

Defendant's counsel explained that in order to estimate (now more than a year after the fact) how much time was actually spent on Reimbursable Work, Quinn and Perry each assigned an unknown number of unknown individuals (the "Reviewers") to review the time entries of the more than 20 individuals who allegedly conducted Reimbursable Work. Willemin Decl. ¶¶ 5-6. The Reviewers—based on literally nothing other than their general perception of how long it might take *someone else* to do things—made non-contemporaneous "determinations" as to how much time within each entry was spent by *someone else* on Reimbursable Work. *Id.* In other words, not only were these estimates made well after the work was allegedly done, but they were not even made by the individuals who did the work (not that this would cure the temporal deficiency) and nothing contemporaneous (such as emails, work product, phone records, etc.) was even consulted in connection with the estimations.

During the meet-and-confer, Wigdor noted that it did not even have records to show how much time within each block-billed entry Defendant had characterized as Reimbursable. *Id.* at ¶ 7. The next day, Defendant's counsel provided this information, which demonstrated additional problems with Defendant's request, including the fact that the amount reflected as Reimbursable in the new records did not even match the total sought. *Id.* at ¶ 8, Ex. 3. Moreover, based on the

new information there appeared to be no consistent reduction or estimation method applied to the larger block bills, and certain times were narrowed down to the hundredth of an hour (*i.e.*, to an estimate of seconds). *See, e.g.*, *id.* (01/27/25 RR1 reduced from 4.6 to 1.61, 01/27/25 JS2 reduced from 4.7 to 2.82).

By letter on June 1, 2026, Wigdor raised these and other issues, including, *inter alia*, the:

- Overly vague descriptions of work;

- Excessive number of billers;

- Extremely high hourly rates;

- Duplicative and unnecessary nature of the work performed; and

- Amount of fees sought in relation to the relative success of Black's motion.

Willemin Decl. ¶ 10, Ex. 4.  The letter contained an offer to pay $325,000 to resolve the fee application.  This number should never have been disclosed to the Court.  It was a settlement offer presented as a take-it-or-leave-it proposal given the glaring inadequacies described herein.  The fact that Defendant did not even bother to respond to the proposal, and proceeded to include it in his motion, demonstrates his awareness that his supporting documentation is sorely lacking and his hope that Wigdor's offer will somehow legitimize some aspect of his exorbitant request and cause the Court to "split the baby."  Obviously, using a settlement proposal to help legitimize a claim is a violation of the spirit, if not the letter, of Fed. R. Evid. 408.

Instead of engaging in further discussions, Defendant filed a fee application requesting $1,622,916.70.  ECF 440.  Defendant's application inexplicably dropped its requests for costs, which calls into question whether the initial demand for costs was legitimate or if Black is trying to hide something by not producing the relevant invoices.

6

According to the application, Defendant's counsel took additional (albeit, inadequate) steps in response to Wigdor's concerns. First, as noted, Defendant's counsel dropped its request for $4,000 of expert fees, but added $5,735 in billing for Perry, the latter of which they vaguely explain as "the result of an inadvertent data entry error in Perry Law's May 11 calculation." ECF 441 at 18; ECF 451 ¶ 14.[1] Additionally, the fee application notes that in response to Wigdor's questions, "Quinn Emanuel and Perry Law asked core attorneys on the matter to review their redacted and unredacted time entries for the Fee Period to confirm whether the time was properly allocated in the Motion." ECF 441 at 5. Those attorneys each then signed nearly identical sworn declarations, which preposterously affirmed—nearly a year or more after they actually did the work—that the uneducated "guesses" of the Reviewers as to how long they spent on each task were uniformly accurate (down to the second) across hundreds of block-billed entries covering over 1,180 hours (4,248,000 seconds) of work. Obviously, it is impossible that this is true.

## **LEGAL STANDARD**

Courts calculate attorneys' fees by performing a 'lodestar' calculation, which requires "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Gym Door Repairs, Inc. v. Guardian Gym Equip.*, No. 23-7924, 2026 WL 891131, at *1 (2d Cir. Apr. 1, 2026). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of N.Y.*, 934 F.3d 222, 230-231 (2d Cir. 2019).

---

[1]    Confoundingly, Defendant asserts that this "error" could have been addressed in subsequent meet-and-confers, but of course, Defendant did not respond to Wigdor's June 1 request for additional discussion. Willemin Decl. ¶¶ 10-11.

"In evaluating hours expended, the Court must make a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *StoneX Grp., Inc. v. Shipman*, No. 23 Civ. 00613, 2025 WL 1212165, at *2 (S.D.N.Y. Apr. 25, 2025) (citations and quotations omitted). "In determining whether hours are excessive, the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* (citations and quotations omitted). Courts must exclude hours from the lodestar calculation that are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Capitol Recs., LLC v. ReDigi Inc.*, No. 12 Civ. 95, 2022 WL 3348385, at *4 (S.D.N.Y. Aug. 12, 2022) (quoting *Hensley*, 461 U.S. at 437). "Where the requesting party fails to provide satisfactory evidence to support their hourly rates, courts have reduced fee awards, and in some instances, refused to award fees altogether." *Trs. of N.Y. City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Prime Installations Inc.*, No. 24 Civ. 8250, 2026 WL 979229, at *8 n.6 (S.D.N.Y. Mar. 20, 2026). And a court may outright deny a request for fees that is "so outrageously excessive and unreasonable that it could not possibly have been made in good faith." *Toussie v. Cnty. of Suffolk*, No. 1 Civ. 6716, 2012 WL 3860760, at *6 (E.D.N.Y. Sept. 6, 2012).

Even where an award is appropriate, "the award must be limited to fees and costs caused by the sanctioned party's misconduct; it cannot include fees and costs the injured party would have

8

incurred even absent that misconduct." *PharmacyChecker.com LLC v. Nat'l Ass'n of Boards of Pharmacy*, No. 19 Civ. 07577, 2026 WL 972522, at *2 (S.D.N.Y. Apr. 10, 2026) (citation omitted).

## ARGUMENT

### I.    Defendant's Counsel's Time Records Are Fundamentally Unreliable

There is no way that either Wigdor or this Court could determine the reasonableness of Black's fee application based on the information he provided.  And, in the context of Defendant's repeatedly shifting claims of time and money spent and the overall opaque process counsel undertook to provide an accounting of their time, this Court cannot verify or trust the already inadequate information that actually has been provided.

#### A.    Block Billing

Block billing is "most problematic where large amounts of time (e.g., five hours or more) are block billed;" and where the lack of specificity "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent," such as where "the billing records are so voluminous that it would be difficult for the court to parse the block-billed entries individually to determine to what extent the time was reasonably billed" and where the record contains indicia of "fat to trim within the block-billed entries." *Raja v. Burns*, 43 F.4th 80, 89-90 (2d Cir. 2022); *see also Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 2011 WL 8955840, at *7 (S.D.N.Y. Apr. 7, 2011) ("Block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary.") (citations omitted).

This is especially troublesome here, where it is apparent that the redacted invoices cover Non-Reimbursable Work performed on this matter, but also from multiple additional actions

9

beyond this matter; *i.e.*, Quinn's invoices note that the invoice covers "work related to New York litigation." Defendant's counsel was unwilling to share additional information that would help determine whether any given entry was related to the motion for which they seek fees or even related to the case before Your Honor. *See Bunnell v. Haghighi*, 183 F. Supp. 3d 364, 375-76 (E.D.N.Y. 2016) (awarding ten hours of compensable time for a sanctions motion where block billing prevented the court from reliably calculating the time devoted to the sanctions compared to other tasks).

In sum, there is no way for the Court to assess the reasonableness of Defendant's non-contemporaneous guesses as to how much work described within each block is Reimbursable. *See LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12 Civ. 7311, 2016 WL 5812105, at *8-10 (S.D.N.Y. Sept. 22, 2016) (awarding 25% of the requested fees where, among other deficiencies, the moving party provided estimates of the time spent on the block-billed sanctions motion without explaining their reasonableness).

B.    Counsel's Reductions Are Not Dependable

While the redacted block billing provides an independent basis to deny Defendant's counsel's fees, the issue is compounded here by the lack of evidence supporting Defendant's process in reducing the hours sought.

First and foremost, the post hoc reduction of the time entries by a certain number of unknown individuals fundamentally means that the fees sought were not contemporaneously billed. Instead, many months and even more than a year after the fact, the Reviewers made non-contemporaneous "determinations" as to how much time within each entry was spent by *someone else* on Reimbursable Work. They did this without even consulting anything contemporaneous, such as emails, work product or phone records. The after-the-fact estimation of time is contrary to

10

the purpose of providing contemporaneous records for a fee application: "courts should not be faced with an impossible chore when making fee determinations, and that lawyers should not be required to expend even more hours reconstructing the past in assembling a fee application." *Carrero v. New York City Housing Authority,* 685 F. Supp. 904, 909 (S.D.N.Y. 1988), *aff'd,* 890 F.2d 569 (2d Cir. 1989); *see also Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18 Civ. 4437, 2021 WL 1549916, at *6 (S.D.N.Y. Apr. 20, 2021) (heavily reducing fees where attorneys "provided only the end product of their judgment . . . [leaving] no way of knowing, for example, whether the entries on the annexed tables represent 10% or 90% of the time recorded in any of the corresponding contemporaneous entries, nor what other tasks were originally part of those entries but were deemed non-compensable and excised").

The fact that Defendant now asserts that each "core attorney" biller reviewed the reductions made by someone else does not fix the fact that the nature of Defendant's billing records makes any post hoc reduction non-contemporaneous. And, in any event, the non-contemporaneous assurances of all of these attorneys that someone else correctly guessed how long it took them to do months' worth of work, down to the second, many months (and at times over a year) after the work was done, is suspect at best. That is, even once Quinn and Perry did take the step of asking "core attorneys" on the matter to review the time entries, those attorneys did not find a single error in the extremely specific reductions—that were sometimes to the hundredth of the hour. Of course, they did not find any errors—it would have been impossible for these "core attorneys" to remember how long they spent performing specific tasks so long ago. That is why courts demand contemporaneous records. Furthermore, it defies credulity that after calculating and communicating the final hours to Wigdor *prior* to a re-review of those reductions, that a thorough individualized secondary review, apparently conducted by different and additional persons, would

11

result in exactly the same granular calculations.  Regardless, the affidavits also contain no explanation as to how the reductions were made and instead just confirm that whoever made the initial guesses managed to get them all right.

To that end, even assuming that non-contemporaneous determinations could be appropriate as a general matter, Defendant's counsel simply submitted a chart showing the final reductions without justifying this calculation, for example by explaining how the reductions were made or what other evidence was relied upon in making those reductions.  In *Charlestown Capital Advisors*, the court found issue with this practice, finding that the fee applicant's provision of "only the end product of their judgment – a table showing their 'best approximation' of their compensable time on various days, divorced from their underlying contemporaneous records" was plainly insufficient and justified a 50% reduction.  2021 WL 1549916, at *6.  Black's charts, ECF 442, Ex. B and ECF 451, Ex. B, are no more informative than the charts produced in *Charlestown Capital Advisors*, and should similarly be held insufficient to meet Defendant's burden.

The process around applying reductions, and the end result of that process, indicates that Defendant's counsel did not keep time with the required contemporaneous specificity it should have.  There are no independent indicia of reliability for these reductions and such an arbitrary review, after-the-fact, of other people's time does not satisfy Defendant's burden of showing the time they are seeking is fair or accurate.  *See Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (vacating fee award where time entries were re-created by office staff using work product and emails instead of being compiled by the attorney who did the work).

C.    The Fee Application Process Indicates Bad Faith

The Court may deny in its entirety a request that is "so outrageously excessive and unreasonable that it could not possibly have been made in good faith." *Toussie v. Cnty. of Suffolk*, 2012 WL 3860760, at *6 (E.D.N.Y. Sept. 6, 2012); *see also LaBarca v. GRJH, Inc.*, No. 16 Civ. 826, 2018 WL 1136918, at *11 (N.D.N.Y. Mar. 1, 2018) (application for attorneys' fees denied due to block billing and "troubling" time entries signaling bad faith).

Black's counsel's course of action in the fee application process alone supports a finding of bad faith: in response to this Court's Order requiring counsel to produce an "accounting" of its time, counsel emailed Wigdor a single number exceeding $1.7 million. Only after Wigdor raised the inadequacy of that approach to the Court did counsel provide further information, and even then, only provided a breakdown of that number between Quinn, Perry and expert costs. After the Court ordered time entries to be provided, Defendant provided entries that were so heavily redacted that it was impossible to determine how much of large block bills of time were actually compensable. It was only after Wigdor asked for follow up that counsel disclosed its particularized reductions and later had "core attorney" billers "review" those reductions. Then, Defendant filed its fee application and presented a new number for the amount sought—the fourth change to their request in the span of a month.

Defendant ignored this Court's directives, disregarded the governing law in this Circuit and failed to employ the necessary candor to the Court and to opposing counsel to allow a reasonable assessment of its application. This pattern of behavior—compounded with the serious flaws in the time records—underscores the reality that Black did not believe he had to approach this process in good faith, and indeed, that he assumed that his application would be approved without this Court's requisite scrutiny. Particularly in the context of Defendant's practice of flouting authority, and in

13

light of recent decisions shedding light on Defendant's counsel's problematic firm culture, *see infra*, this is evidence of bad faith. This bad faith respectfully necessitates denial of Black's application.

## II.    Defendant's Counsel's Requested Hours are Objectively Unreasonable

### A.    Hyperinflated Hours

Defendant's counsel seeks to bill Wigdor for over 1,100 hours and freely admits that many more were spent by attorneys at other firms. This is plainly excessive time for a single motion. *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 Civ. 1254, 2020 WL 4750600, at *3 (S.D.N.Y. Aug. 17, 2020) ($95,684 for 190 hours of work was reasonable for sanctions motion); *PharmacyChecker.com*, 2026 WL 972522 at *5 (S.D.N.Y. Apr. 10, 2026) (holding that even sanctions motions involving "an extensive record and expert-driven analyses" reasonably require between 128 and 190 hours); *Laba v. JBO Worldwide Supply Pty Ltd*, No. 20 Civ. 3443, 2023 WL 4985290, at *15 (S.D.N.Y. July 19, 2023) (roughly 128 hours on sanctions motion was reasonable where parties attended hearing and oral argument)*, report and recommendation aff'd*, No. 24-558, 2025 WL 323762 (2d Cir. Jan. 29, 2025).

Here, Defendant seeks well over 1,000 hours for a few months of work on a single motion, without any in-person hearings, and on which he failed to achieve his objective and were only successful as relates to Wigdor in small part. This included a total of 715.98 hours for the opening brief (577.08 hours by Quinn and 138.9 hours by Perry) and 426.57 hours for the reply briefs (144.37 hours by Quinn and 282.2 hours by Perry).[2] This amounts to over 13 hours per page, *or*

---

[2]    Because the descriptions of the work performed are impermissibly vague, it is not possible to determine how much time was spent on the reply to Wigdor's opposition as opposed to Doe's.

*nearly an hour and a half per sentence.* Given the number of attorneys who allegedly performed this work over many weeks, this number is extremely overinflated and is plainly unreasonable.

And these shockingly high totals do not include the work done by other firms, including Estrich Goldin, which was no doubt heavily involved (Susan Estrich submitted the only attorney declaration in support of the Motion, ECF 233, as well as in support of the replies, ECF 324). Moreover, during the parties' meet-and-confer, defense counsel did not deny that additional firm(s) worked on the motion, and refused to identify who else worked on the motion, which indicates that Quinn and Perry were at least the third and fourth law firms working on the Motion. Even accounting for the work of only the two firms seeking compensation, a close examination of the time entries provided themselves reveals that most are redundant and inflated. This must be viewed in the context that at least one other law firm (and likely more) was also contributing to the sanctions motion. Defendant's choice to exclude those was nothing more than a strategic effort to hide counsel's massive fee inflation.

B.    Hours in Relation to Success on Motion

The hours purportedly expended on the sanctions motion are plainly hyperinflated, particularly when viewed in relation to the proportion of Defendant's counsel's work that actually resulted in sanctions levied against Wigdor. While we respectfully disagree with certain aspects of the Order, Your Honor's 76-page decision was clearly a significant undertaking. By comparison, Black's counsel asks to be paid $1.6 million for approximately 85 pages of briefing on these issues—only approximately 18 pages of which addressed conduct for which Wigdor was sanctioned. That is, Black's lawyers are asking the Court to award them six-and-a-half years of an Article III judge's compensation for the work they performed over seven months, on one

15

motion, on which they were only marginally successful and despite the fact that their requested relief of dismissal was denied.

As Rule 11 sanctions contemplate "reasonable" fees and costs "directly resulting from the violation," the Court should not grant Defendant's fee application, which includes time devoted to wholly unsuccessful arguments about Plaintiff's case as a whole, Plaintiff's conduct unrelated to Wigdor and Wigdor's conduct that was determined *not* to be sanctionable.  Fed. R. Civ. P. 11(c)(4).

C.    Overstaffing

Despite this being a single-plaintiff, single-defendant case with one claim that has not yet even entered discovery, Defendant seeks reimbursement for the work of no less than 21 billers, including 17 attorneys.  The Second Circuit has approved across-the-board reductions in fees because of overstaffing.  *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (approvingly citing case that held that "it simply was not necessary for counsel to have five attorneys and several clerks" attend a trial); *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming cut to requested fees because counsel "overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel").

Particularly given the low number of attorneys that have entered an appearance in this matter, have attended meet-and-confers or court conferences and are copied on communications with opposing counsel, it is simply not reasonable for Black to seek compensation for dozens of behind-the-scenes attorneys as well.

D.    Duplicative Work

The excessive number of individuals billing to work on this motion is only underscored when reviewing the amount of time spent on particular tasks and the fact that multiple billers simultaneously billed extensively for the same specific tasks.

16

For example, on January 21, 2025—six weeks before the opening brief was filed—seven different Quinn and Perry attorneys spent a combined 32.84 hours reviewing transcripts and drafting outlines. ECF 442, Ex. A at 14-15; ECF 451, Ex. A at 12. The time entries are mostly duplicative of one another, as though each of these attorneys were doing the same thing at once. On January 28, 2025—five weeks before the brief was due—10 different attorneys spent a combined 30.59 hours "plan[ning] for next investigative steps," "review[ing] transcripts," "review[ing] Rakoff materials," providing "attn to sanctions motion" (without explaining what that 'attention' entailed), and communicating amongst themselves. ECF 442, Ex. A at 18; ECF 451, Ex. A at 15-16. And on February 19, 2025, 11 attorneys spent a combined 43.86 hours "Attend[ing] to motion to expand word count for sanctions motion," "atten[ding] to exhibits to motion for sanctions," "review[ing] sanctions motion and correspondence re same," "address[ing] emails re: strategy," and otherwise revising the draft motion for sanctions. ECF 442, Ex. A at 37-38; ECF 451, Ex. A at 26. Indeed, nine of these attorneys spent at least some time revising and editing the draft brief on February 19, but the entries are part of blocks so large that it is impossible to tell how much time each person actually spent on each task. Nor do they shed any light on why exactly so many attorneys needed to be performing the same work at the same time.

This is also problematic given that a significant amount of the work allegedly performed in relation to the Motion was work that Defendant would have engaged in regardless—for instance, Defendant had requested access to the JPMC action as early as February 2024, when his counsel emailed a federal judge directly requesting to intervene in a confidential claim administration proceeding. *See* Letter from Susan Estrich to Judge Rakoff, Feb. 21, 2024. Thus, to ask for compensation for the JPMC review as related to their Motion is disingenuous—counsel would have reviewed those materials for multiple purposes separate and apart from the Motion. Indeed,

17

Defendants have always taken the position that Doe is a "fraud," raising factual disputes from the very beginning of this lawsuit. *See, e.g.*, ECF 22 (Black's unsuccessful September 2023 sanctions motion). This work was redundant and should not be compensable in this application. *See Creative Resources Grp. of N.J., Inc. v. Creative Resources Grp., Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y. 2002) (overruled on other grounds) (holding that the costs related to discovery tasks that would have been incurred even if no sanctionable conduct occurred were not compensable). Indeed, the only work that would not have been done but for the conduct for which Wigdor was sanctioned is based entirely on an analysis of Christensen's representations made by Judge Rakoff in his December 30, 2024 letter. ECF 182. Almost all of the remainder of the work—investigating Doe's evidence to challenge her version of facts—was Black's long-stated aim.

The duplicative nature of the work is only further highlighted when noting that other attorneys *and firms* whose time is not accounted for also worked on this matter. Given the absurdly redundant nature of the work performed—with nine attorneys revising a single brief on one day— one can only imagine how much of this work was unnecessary because it had already been performed by other firms' lawyers.

E.    Vague Time Entries and Internal Inconsistencies

Black's counsel's records also suffer from other flaws that countenance against granting the fee application. First, the time entries are far too vague to allow the Court to understand exactly what work was done. Black's counsel uses phrases like "attend to motion," but that description provides no actual information about what work was done, so the Court cannot assess reasonableness based on these records. *See Chrysafis v. Marks*, No. 21 Civ. 2516, 2023 WL 6158537, at *8 (E.D.N.Y. Sept. 21, 2023) (collecting cases). Several of Danya Perry and Michael Carlinsky's time entries, for example, are so vague that it is impossible to understand what work

18

they were actually doing ("attend[ing] to" various tasks and "review [ ]" are the most common culprits). This is impermissible. *See Oakley v. MSG Networks et al.*, 17 Civ. 06903, 2025 WL 3041936 at \*10 (S.D.N.Y. Oct. 31, 2025) (reducing one lawyer's fees by 50% where his time entries were "too vague to allow [the court] to assess whether these entries provide sufficient information on the work performed to assess whether the tasks described are compensable and whether the time spent on them was reasonable").

Additionally, a close review of the billing shows fundamental inconsistencies across the firms that purportedly performed the work on the Motion. For example, on Jan. 24, 2025, Alexander Parachini billed 0.5 hours for "teleconference with R. Rakower and J. Stykes re sanctions motion." Neither Rakower nor Stykes billed for such a call. And on Feb. 10, 2025, Danya Perry billed for a "Call with M. Carlinsky" that does not appear in Carlinsky's own time entries. While Defendant may contend he did not ask for all time in an effort to be "conservative," the larger issue remains—without being able to cross-check these calls and meetings against other entries, the Court has no objective mechanism for determining the accuracy of amounts billed for those meetings and calls—let alone to even confirm that the meetings and calls actually took place.

F.    Wigdor Did Not Cause Additional Work

In considering the reasonableness of a fee application, a court may consider whether an adversary's litigation tactics affected the amount of work required. *See, e.g., Knox v. Varvatos Enters. Inc*., 520 F. Supp. 3d 331, 347 (S.D.N.Y. 2021) (explaining that the defendant's conduct had "*unnecessarily* increased the number of hours [the plaintiff] had to expend") (emphasis added), *aff'd sub nom. Chaparro v. John Varvatos Enters., Inc*., No. 21-446, 2021 WL 5121140 (2d Cir. Nov. 4, 2021)

19

Contrary to Defendant's assertions, Wigdor did not "unnecessarily" or "needlessly" cause Defendant to have to file multiple reply briefs. As Your Honor is aware, Wigdor had an ethical obligation to withdraw from representing Plaintiff, but still had to address the Motion. Defendant specifically asked the Court to file separate reply briefs. ECF 309. Defendant could easily have filed a consolidated motion, as it did in response to Plaintiff and Wigdor's motions for reconsideration. ECF 433. To the extent this decision resulted in additional work, that was not by virtue of Wigdor's tactics or actions.

Defendant's references to non-compensable work done during the briefing period only underscores his desperation to justify the entirely unjustifiable requested fee, particularly when the "collateral practice" specified is letters from *Plaintiff* which necessitated no response from Black. ECF 441 at 19. And finally, to state that "Wigdor, for its part, contested the Motion at each stage, multiplying the proceedings—and the hours its conduct required of Black's counsel—at every step" stretches the bounds of reason. ECF 441 at 19. Wigdor opposed the Motion by filing an opposition. That is how motion practice works; Wigdor did nothing additional that would justify Defendant's application.

## III.    Defendant's Counsel's Rates Are, With Few Exceptions, Unreasonably Inflated

### A.    Record-Setting Rates

The rates requested here—between $1,400 and $2,410 for partners and between $900 and $1,465 for associates—would be record-setting. The highest rates ever approved by courts in this district are still well below those Defendant's counsel seeks to charge. *See Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent. Corp.*, No. 24 Civ. 01577, 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025) (holding that rates between $716 and $1,168 for associates and $1,712 to $1,980 for partners were reasonable, although noting that the adversary did not contest the reasonableness of the rates and applying a 40% reduction to the request); *An v. Despins*,

No. 22 Civ. 10062, 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024) (approving hourly rates of up to $895 for associates in 2023 and up to $1,990 for partners where sanction resulted in dismissal of the lawsuit), *appeal dismissed*, No. 24-914, 2024 WL 4524742 (2d Cir. Aug. 13, 2024); *PharmacyChecker.com*, 2026 WL 972522 at *3 (rejecting proposed associate and paralegal rates lower than those requested herein, and noting that "[a]pproved rates for senior associates at large New York City firms, or their equivalent, have ranged from roughly $475 to $895 per hour.") (citations omitted).

Paralegals and other support staff are consistently capped at $200 rates in this district, but Defendant's counsel seeks to charge $595 per hour for paralegals without even providing evidence of their experience and seniority. *See, e.g.*, *Carrington v. Garden*, No. 18 Civ. 4609, 2020 WL 5758916 at *14 (S.D.N.Y. Sept. 28, 2020) (finding that courts typically cap paralegal rates at $200 per hour even for experienced paralegals); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 Civ. 5766, 2018 WL 3104631 at *7 (S.D.N.Y. May 24, 2018) (reducing hourly rates of paralegals with less than ten years of relevant professional experience to $150 per hour and paralegals with more than ten years of relevant experience to $200 per hour); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 23 Civ. 5262, 2024 WL 3409278 at *8 (S.D.N.Y. July 15, 2024) (collecting cases where paralegal rates were reduced to $125 or $150 per hour where there was no particular skill, training or experience to justify those rates).

Crucially, Defendant's counsel has made absolutely no attempt to justify its award in comparison to those granted in similar cases, instead asking the Court to agree the rates are reasonable because "peer firms" (a term not even applicable to Perry, a 15-attorney firm) also bill at exorbitantly high rates. But in assessing the reasonability of a fee application, the court must consider "awards in similar cases." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty.*

21

*of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008); *Alexander v. Amchem Prods., Inc.*, No. 07 Civ. 6441, 2008 WL 1700157, at *5 (S.D.N.Y. Apr. 3, 2008) (reviewing "comparable rates awarded . . . in *similar cases* in this District") (emphasis added).

Here, the $1.6 million requested bears no rational relationship to similar fee awards in personal injury cases like this one.[3]  Defendants assert that these are the rates charged by other firms like theirs, but cite to cases with far more complex issues that would require attorneys of particular skill.  *See, e.g.*, *An v. Despins*, 2024 WL 1157281, at *1 (lawsuit was initiated in bad faith in complex bankruptcy dispute with trustee); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (bankruptcy-related dispute regarding motion to quash noting the rates approved for partners were "on the higher end" and lowering the requested hourly rate for associates).  Defendant cites several cases in which Quinn attorneys' rates were held reasonable, but each are easily distinguishable.  For example, in *Clark v. Castor and Pollux Ltd. Liability Co.*, No. 655446/2017, 2019 WL 4467117, at *18 (N.Y. Sup. Ct. Sep. 18, 2019), Quinn requested just $79,082 to litigate an entire case involving "novel issues of art law."  The lead attorney in that case billed just over 12 hours for drafting "a sixty-page complaint pleading twenty causes of action in exceptional detail."  *Id.*  That attorney's restraint is striking given what her colleagues ask for here.  And in the motion for which Black seeks fees—in a single-plaintiff, single-defendant personal injury lawsuit with one claim—no such "novel issues of []law" were at issue. *See Lilly*, 934 F.3d at 231-32 (finding it "entirely appropriate" for the district court to consider the complexity of the matter in assessing fee applications).[4]

---

[3]    Defendant states that this matter is a "complex litigation" but does nothing to justify this conclusion.  ECF 441 at 9.

[4]    The other cases cited to support the reasonableness of Defendant's counsel's fees are similarly unpersuasive. In *Cerco Bridge Loans 6 LLC v. Schenker*, the court made absolutely no analysis of the reasonableness of the fees,

That Black—a billionaire who paid $170 million to Jeffrey Epstein—paid his attorneys' invoices is not a persuasive argument to support that the rates are reasonable. "The issue . . . is not what well-heeled clients might be willing to pay, but the hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney." *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596-97 (S.D.N.Y. 2012) (quotations and citations omitted); *Zama Cap. Advisors LP*, 2025 WL 3525044 at *8 ("[T]he reasonableness of the fee award in this case is "not dictated by a particular client's subjective desires or tolerance for spending.") (internal quotations and citation omitted); *PharmacyChecker.com*, 2026 WL 972522 at *3 ("[A] client prefers to pay no more than necessary to effectively litigate the case."). While Defendant may have paid these rates, they remain unreasonable.

B.    <u>Failure to Provide Sufficient Biographical Information</u>

Although courts may take judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates in the prevailing district, the requesting party must furnish the court with evidence to support their specific hourly rates and their attorneys' fees requests. Courts have drastically reduced fee awards where parties fail to provide requisite biographical information. *See*, *e.g.*, *Zero Carbon Holdings, LLC*, 2024 WL 3409278 at *7; *Charlestown Cap. Advisors, LLC*, 2021 WL 1549916 at *3.

---

which the opposing party did not challenge. 768 F. Supp. 3d 559, 587 (S.D.N.Y. 2025). And in *Vista Outdoor, Inc. v. Reeves Family Tr.*, Judge Rakoff approved fees—which were also not challenged by the opposing party—but crucially noted that "[w]hile it is notorious that no ordinary American could afford such fees, businesses can, and, indeed, regularly pay as much." 2018 WL 3104631, at *15-16 (S.D.N.Y. May 24, 2018). While Defendant's personal wealth may rival that of a corporation, it does not follow that a motion for sanctions in a personal injury case between two individuals should cost as much as complex corporate or commercial representation.

23

Black is seeking no less than $790,000 in fees for over 630 hours of work by associates: David Russell (8th-year associate);[5] Jacqueline M. Stykes (7th-year); Himanshu Patel (5th-year); Kelsey Sullivan (5th-year); Vincent R. Parascandolo (3rd-year); Emery Staton (3rd-year); Brittany Hanke (2nd-year); Elizabeth Bishop (2nd-year); Emily Erickson (1st-year); Abigail Graegin (1st-year); and Alex Lefkowitz (1st-year).  Willemin Decl. ¶ 12, Ex. 5.  Defendant provides no biographical information apart from these associates' class year, yet still seeks to bill Wigdor for between $900 and $1,465 per hour for each of these attorneys' work.  *See PharmacyChecker.com*, 2026 WL 972522 at *3 (explaining that "[a]pproved rates for senior associates at large New York City firms, or their equivalent, have ranged from roughly $475 to $895 per hour").  Here, Defendant's proposed rates for *first-year associates* are above the acceptable range for senior associates at large New York City firms.  For Black to request nearly one thousand dollars an hour to compensate the work of billers who were still in law school when this action was filed is plainly unreasonable,[6] and in doing so, Black's counsel calls into question every other hourly rate they contend is justified here.

Given the extremely high rates sought for each and every biller, the failure to provide this biographical information is yet another reason the Court should not countenance the fee application as submitted.  *See PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20 Civ. 3699, 2026 WL 1283316, at *5 (S.D.N.Y. May 11, 2026) (15% additional reduction to requested rates where failure to provide biographical information "left [Court] with no information about the experience level of any of the associates or paralegals and no basis to determine the reasonableness of their rates as

---

[5]    Defendant's brief misleadingly lists these associates' current class years, as opposed to their class years when the work was performed in 2025.

[6]    *See* ECF 442 ¶ 5 (seeking $940 an hour for associates who were admitted to the Bar in November and December 2024).

24

compared to the rates of associates with similar experience at other firms"). Simply put, Defendant's application does not meet its burden of showing through "satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (citations and quotations omitted).

## IV.    **Granting Defendant's Fee Application Would Create Inequitable Results**

If this Court were to approve Defendant's fee application, it would produce results that would be profoundly inequitable given both the Order's intended goal and Black's unclean hands.

### A.    Granting Black's Application Would Not Meet the Goal of the Sanction

The purpose of the Order was to punish Wigdor for past behavior and deter future behavior. *See* Fed. R. Civ. P. 11(c) (sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"); *Usherson v. Bandshell Artist Mgmt.*, No. 19 Civ. 6368, 2020 WL 3483661, at *18 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) ("Sanctions should be no more severe than reasonably necessary to deter repetition of the misconduct or comparable conduct by similarly situated persons.") (cleaned up).

In many ways, the Order itself accomplished that goal: the Order was covered in nearly every major media outlet, and extensively in industry-specific publications. Willemin Decl. ¶¶ 13-18, Ex. 6-11. And Black's counsel wasted no time in reaping what it believed to be the positive outcome of the Order, with Estrich issuing a long statement celebrating the result. *Id.* at ¶ 20, Ex. 12. Indeed, other judges have taken note of the decision: in litigation before Judge Sullivan, counsel for defendants in that action submitted a letter alerting Judge Sullivan to the Order. *Oakley*

*v. MSG Networks et al.*, 17 Civ. 06903, ECF 518 (Apr. 18, 2026). Judge Sullivan acknowledged that he had already seen the Order and would consider it as he believed appropriate. *Id.* at ECF 520.

An award of this exorbitant size would, given the extensive press that Black has already received around the sanctions, go beyond the purpose of the Court's Order. As the Court noted, it was inclined to only sanction Christensen, but Rule 11 requires that a law firm be sanctioned for the conduct of its partner. Order at 56-57 (citing Fed. R. Civ. P. 11(c)(1)). While the Rule might have required the Court to sanction Wigdor, it does not follow that Wigdor must be required to pay the exorbitant fee Black now requests. This would not keep with the Court's intention, especially given that Christensen has retired from the practice of law and is no longer a partner at Wigdor. The purpose of the sanction was to deter particular behavior that one attorney was found to have engaged in. A windfall of attorneys' fees for Black will do nothing to accomplish that goal.

Wigdor respectfully submits that to pay a reasonable amount to the Court or to a pro bono legal service would accomplish the Order's goals far more than paying $1.6mm+ million to Black would. This is especially true given that Black is a billionaire who has paid over 100 times the requested amount—$170 million—to Jeffrey Epstein and countless tens of millions more to resolve lawsuits related to Epstein's sex trafficking scheme. Willemin Decl. ¶¶ 21-23, Ex. 14-16.

B.      Black's History in this Litigation and Otherwise Cautions Against Granting the Application

In addition to acting in bad faith by misleading the Court and Wigdor through the fee application process, *see supra,* Defendant's counsel has also repeatedly proven themselves to be untrustworthy by deliberately misleading courts with respect to Defendant's relationship with Jeffrey Epstein.

26

By way of example, in January 2026, Michael Carlinsky wrote a letter to this Court stating that "[t]he recently released information regarding Mr. Black only further confirms the findings of the independent report conducted by the Dechert law firm that Mr. Black's relationship with Epstein was purely a business one." ECF 351 at 2. This was a lie. *See* ECF 362 at 4 (collecting evidence). As Your Honor is aware, there is evidence in the Epstein Files Transparency Act files that Black and Epstein were close friends and Epstein told Black's attorney, Brad Karp, that Epstein and Karp were the only two people Black could trust. Willemin Decl. ¶ 24, Ex. 17. Even with this documentary proof, Black's counsel continued to lie about the nature of their relationship and the veracity of the Dechert report. As another example, in September 2021, Black's counsel (Quinn) filed a motion to strike all references to Epstein in the complaint filed by Guzel Ganieva. *Ganieva v. Black*, Index No. 155262/2021, (N.Y. Sup. Ct.) (Cohen, J.), NYSCEF 37. Black claimed that Ganieva alleged "outrageous" facts about Black and his "best friend" relationship with Epstein that were "salacious and wholly untrue" and references to Epstein's misconduct were "untethered in any way to the issues in this case." *Id.*, NYSCEF 38 at 12. Black specifically claimed in his motion that Ganieva's allegations that Black told her that Epstein was helping him record her were "complete fiction" that was "unnecessarily scandalous and prejudicial." *Id.*, 10-17. This was a lie. Willemin Decl. ¶ 24, Ex. 17; *see* ECF 362 at 5-6 (collecting evidence and explaining that "Epstein, Black, and Karp worked closely together to confront allegations by [Ganieva], Black's former mistress, that Black sexually assaulted her. The group did so through surveillance, recruiting foreign actors, and investigating immigration actions and even looking into using the federal government to bring criminal action against her").

Taken as a whole, Black's counsel has exhibited a pattern of dishonesty and a willingness to use the Court system to accomplish their disgraced client's retaliatory agenda and attempt to

27

resuscitate his wholly unsalvageable reputation.    Thus, presenting overly manipulated and inaccurate time records in a fee application is nothing new to the firms Black retains to do his bidding. *Cf. Guardant Health, Inc. v. Natera, Inc.,* No. 21 Civ. 04062, 2026 WL 1401006, at *3 (N.D. Cal. May 19, 2026) (sanctioning various Quinn lawyers and finding that, "[t]hough each attorney culpable bears individual responsibility for their actions, their conduct implicates a culture of lawyering that is deeply disturbing. It is a culture that takes refuge in lawyering finesse and prioritizes winning motions over acting ethically. This kind of lawyering multiplies proceedings, balloons costs, and erodes trust in counsel.").

## **CONCLUSION**

For the reasons set forth herein, Defendant's application should be denied outright.  Wigdor disagrees that a special master's review of Defendant's unredacted time records would be a fair alternative—given that the redacted records and the arbitrary reductions are nearly indecipherable, a special master would be required to essentially recreate the records entirely.  This would only invite additional after-the-fact estimations, and would merely be another way in which Black's counsel could shirk their burden to produce information to justify the request.

Dated: June 18, 2026
    New York, New York                                    Respectfully Submitted,

WIGDOR LLP

By: _____

Michael J. Willemin
Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

29