**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JANE DOE,                                            :
                                                     :
                              Plaintiff,             :        Civil Action No.: 1:23-cv-06418-JGLC
               v.                                    :
                                                     :
LEON BLACK,                                          :
                                                     :
                              Defendant.             :
------------------------------------------------------------X

**DECLARATION OF MICHAEL J. WILLEMIN**
**IN SUPPORT OF NON-PARTY WIGDOR LLP'S OPPOSITION TO**
**DEFENDANT LEON BLACK'S FEE APPLICATION**

I, Michael J. Willemin, hereby declare as follows under penalty of perjury:

1.       I am a partner at the law firm Wigdor LLP ("Wigdor"), a non-party in the above-captioned action.

2.       I make this Declaration in support of Wigdor's opposition to Defendant Leon Black's ("Black" or "Defendant") Application for Fees.  ECF 440.

3.       On May 19, 2026, Defendant's counsel provided heavily redacted invoices and conveyed a new request for fees ($1,621,319.01).  Attached hereto as **Exhibit 1** is a true and accurate copy of the email correspondence with Defendant's counsel on May 19, 2026.  After reviewing these time entries, my colleagues and I learned that the requested total did not match the sum of the hours reflected in the timesheets (the amounts were over $1.1 million apart). Attached hereto as **Exhibit 2** is a true and accurate copy of the invoices provided by Defendant's counsel on May 19, 2026.  At that time, Defendant's counsel provided no explanation for the discrepancy.

4.       On May 27, 2026, I participated in a meet-and-confer with Defendant's counsel via videoconference.  During this call, Defendant's counsel stated that the new request for fees was

1

made in an effort to be "conservative," but refused to elaborate on what adjustments had been made.

5. Defendant's counsel also confirmed that they had calculated the fee request by having an unknown number of attorneys (counsel refused to disclose how many) review all of the time entries associated with all of the work conducted on this matter and, apparently, others, and (because the time entries were block billed across all tasks and, apparently, other matters) estimate how much time each billing attorney spent working on the case-terminating sanctions motion. Defendant's counsel admitted that at least some of the records were not reviewed by the attorney(s) or staff who actually did or billed the work, but would not disclose how many attorney(s) performed the estimates for the individuals who did the work.

6. Defendant's counsel also would not identify which attorney(s) made these estimates or whether they applied any sort of methodology in doing so. Nor would Defendant's counsel confirm whether the invoices contained time entries for other litigation involving Defendant, even though Quinn Emanuel's invoices stated that they were for "Professional Services through [Date] in connection with New York litigation." Finally, Defendant's counsel admitted that at least one other law firm (Estrich Goldin) had worked on the case-terminating sanctions motion, but they refused to disclose whether any other firms worked on the motion or explain why Estrich Goldin did not submit any time records.

7. I explained that Wigdor could not evaluate Defendant's request without knowing how much time Defendant's counsel characterized as "related to" the case-terminating sanctions motion within each entry.

8. On May 28, 2026, Defendant's counsel emailed me and my colleagues two charts depicting Defendant's counsel's estimates of how many hours (in places, down to a hundredth of

an hour) were spent working on the case-terminating sanctions motion, broken up by billing entry. Attached hereto as **Exhibit 3** is a true and accurate copy of that email and the two attached charts.

9. My colleagues and I then reviewed these charts and compared them to the time entries provided on May 19, and determined that the sum of the charts provided on May 28 did not match the amount requested by Defendant's counsel.

10. Attached hereto as **Exhibit 4** is a true and accurate copy of a June 1, 2026 letter sent by Wigdor to Defendant's counsel.

11. Defendant's counsel did not respond to the June 1, 2026 letter, nor did they acknowledge receipt. Instead, on June 4, 2026, they filed the instant fee application. ECF 440. The fee application made yet another change to Defendant's requested total sum by removing $4,000 in expert fees and adding $5,735 in fees attributable to Perry Law.

12. Attached hereto as **Exhibit 5** is a true and accurate compilation of screenshots of each billing associate's bar admission date, obtained from the New York State Unified Court System Attorney Directory, available at https://iapps.courts.state.ny.us/attorneyservices/ and the State of Massachusetts Board of Bar Overseers database, available at https://www.massbbo.org/s/.

13. Attached hereto as **Exhibit 6** is a true and accurate copy of an article published by *The New York Times* on April 24, 2026, downloaded June 15, 2026.

14. Attached hereto as **Exhibit 7** is a true and accurate copy of an article published by *Politico* on April 24, 2026, downloaded June 15, 2026.

15. Attached hereto as **Exhibit 8** is a true and accurate copy of an article published by *Law360* on April 24, 2026, downloaded June 15, 2026.

16. Attached hereto as **Exhibit 9** is a true and accurate copy of an article published by the *Financial Times* on April 24, 2026, downloaded June 15, 2026.

3

17.     Attached hereto as **Exhibit 10** is a true and accurate copy of an article published by *Fox News* on April 24, 2026, downloaded June 15, 2026.

18.     Attached hereto as **Exhibit 11** is a true and accurate copy of an article published by *Reuters* on April 24, 2026, downloaded June 15, 2026.

19.     Attached hereto as **Exhibit 12** is a true and accurate copy of a statement published by Susan Estrich via Business Wire on April 24, 2026, downloaded June 18, 2026.

20.     Attached hereto as **Exhibit 13** is a true and accurate copy of an article published by *The Guardian* on May 6, 2026, downloaded June 15, 2026.

21.     Attached hereto as **Exhibit 14** is a true and accurate copy of an article published by *The New York Times* on July 21, 2023, downloaded June 18, 2026.

22.     Attached hereto as **Exhibit 15** is a true and accurate copy of an article published by *Reuters* on July 21, 2023, downloaded June 18, 2026.

23.     Attached hereto as **Exhibit 16** is a true and accurate copy of an article published by *CNN* on July 25, 2023, downloaded June 18, 2026.

24.     Attached hereto as **Exhibit 17** are true and accurate copies of Epstein Files Transparency Act documents bearing the Bates numbers EFTA00697997, EFTA01018783, EFTA01128746, EFTA02353940, EFTA02486513, EFTA02488634, EFTA02492997, EFTA02493136, and EFTA 02523037.

25.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 18, 2026
    New York, New York        By: _____
                                        Michael J. Willemin