# Exhibit 4



**Michael J. Willemin**
mwillemin@wigdorlaw.com

June 1, 2026

<u>**VIA EMAIL**</u>

Ryan Rakower, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Fl
New York, NY 10016

      Re: *Doe v. Black*, Case No. 1:23-cv-06418-JGLC

Ryan,

We write in connection with our ongoing efforts to meet and confer regarding Defendant's anticipated motion for attorneys' fees and costs.  To be clear, these points and the offer below are presented without waiver of, or prejudice to, any and all rights and arguments, including in connection with any future motion practice on this or any other issue.  They are made solely as an effort to compromise.

Following our call on May 27, 2026, you provided us with supplemental material on May 28, 2026.  We have now had a chance to review that material and we continue to have significant concerns over your request for $1,621,599.01 in attorneys' fees and costs.  During our call, among other things, you effectively conceded that there is no way of determining whether the vast majority of your application is accurate because there is no contemporaneous documentation of the time spent by any individual specific to each relevant time entry that reflects work that was allegedly conducted for the case terminating sanctions motion.  Instead, the contemporaneous records are months of heavily redacted block billing that apparently relates to a variety of different litigations and sub-topics of the Doe v. Black litigation.  In fact, the Quinn Emanuel ("Quinn") time sheets reference "Professional Services through [Date] in connection with New York litigation," and both the Perry Law and Quinn time sheets have monthly time keepers who have been withdrawn altogether from the billing on this matter.  Accordingly, almost every relevant billing entry describes work for which you claim an entitlement to reimbursement ("Reimbursable" "Time" or "Work"), as well as work for which you claim no entitlement to reimbursement ("Non-Reimbursable" "Time" or "Work").

In order to estimate (now years after the fact) how much time was actually spent on Reimbursable Work, Quinn and Perry Law each assigned an unknown number (you refuse to disclose how many) of unknown individuals (you refuse to disclose who) (the "Reviewers") to review the time entries of the more than 20 individuals who allegedly conducted Reimbursable work.  The Reviewers – based on literally nothing than their general perception of how long it



might take *someone else* to do things – made non contemporaneous "determinations" as to how much time within each entry was spent by *someone else* on Reimbursable Work.  In other words, not only were these estimates made well after the work was allegedly done, but they were not even made by the individuals who did the work (not that this would cure the temporal deficiency) and nothing contemporaneous (such as contemporaneous emails, work product, phone records, etc.) was even consulted in connection with the estimations.  This is additionally concerning given the generality of the time records and granularity of the reductions, which were not made using any consistent method and appear to narrow time down to the hundredth of an hour (*i.e.*, to an estimate of seconds).  *See, e.g.*, 01/27/25 RR1 reduced from 4.6 to 1.61, 01/27/25 JS2 reduced from 4.7 to 2.82.  It is impossible that such detailed determinations were made non-arbitrarily.

This is obviously all problematic, particularly because you initially indicated a request for $1,758,704.11 in fees and costs, but when you were required to provide billing records, unilaterally reduced that request by over $137,000 without any logical explanation (the claim that you decided to be more "conservative" in your approach once the Court ordered you to support your request only supports the notion that the initial request was disingenuous).  The May 27, 2026 supplemental records raise additional questions, as the amount requested by Perry Law does not match the information provided (there is a $6,000 discrepancy).  Put simply, the entire request is suspect (at best) given that it is based upon block-billed records and unsupported estimates by Reviewers who apparently did not even do the vast majority of the work about which they were estimating.  Indeed, in connection with sanctions levied against Quinn, your firm argued for reductions to fee requests based in part on block billing and vague time entries. *See Apple v. Samsung*, 5:11-cv-01846 (N.D. Cal. 2015), Dkt. 3000.

Of course, the block billing, vague descriptions of work and arbitrary review process only scratch the surface of the issues here.  Among many, many other issues, Defendant collectively seeks $1,621,599.01 in fees and costs, a facially obscene amount given the relative lack of success and meritless nature of the majority of the allegations made against Wigdor.  Notably, the Honorable Jessica G.L. Clarke: (1) denied Defendant's request for case termination sanctions; (2) rejected Defendant's contention that Wigdor filed and/or pursued the complaint and subsequent amended complaint in Doe v. Black in violation of any law, court or ethical rules; (3) rejected Defendant's contention that the Wigdor failed to adequately investigate the complaint; and (4) rejected Defendant's contention that Wigdor unreasonably delayed in filing the amended complaint.  The conduct for which Wigdor was sanctioned was very limited and took up very little space in Defendant's briefing,[1] and where Defendant was otherwise successful, such success was based on Doe's conduct, not Wigdor's.  Yet, Defendant seeks reimbursement for all time spent on the motion for sanctions, regardless of whether the work

---

[1]    For instance, the "Arguments" sections in Defendant's moving and reply memoranda of law contained approximately 13,850 words combined.  Only approximately 1,700 words, or approximately 12%, related specifically to the allegations that Ms. Christensen mislead the Court about the JPMC proceedings and/or caused spoliation.



related to Doe's opposition or behavior, or where related to Wigdor, the work related to sanctionable conduct.  While Judge Clarke's Order references work done on the case terminating sanctions motion generally, consideration of the relative success of the motion against Wigdor is appropriate.

It also is noteworthy that Black is seeking reimbursement for the work of more than 20 lawyers and staff, many of whom have never attended hearings, entered a notice of appearance, participated in conferrals or meetings with our firm, or even been copied on emails with our firm related to this matter.  *See*, *e.g.*, *Brown v. Google*, 4:20-cv-03664 (N.D. Cal. 2022), Dkt. 625 (Quinn arguing that its client should not be required to reimburse an adversary for work performed by attorneys who otherwise did not participate in the case); 916 (reply papers describing relevant arguments made by Quinn, which was sanctioned, in connection with opposition to fee application).  Half a dozen of these individuals are non-lawyers for whom Quinn is seeking absurd hourly rates for tasks such as retrieving ECF filings, and much of the work performed by these individuals does not even seem to be legal in nature.  The issue of billing rates is magnified when looking at the rates sought for the attorneys on the case, which are hundreds, and in some instances thousands, of dollars more than courts have found to be reasonable under similar (at times, under all) circumstances.

Additionally, it is apparent on the face of the records and request that you are seeking reimbursement for work that was completely unnecessary or duplicative.  For example, on August 18, 2025, eight separate individuals from two firms billed for some variation of reviewing and revising a reply brief multiple days before it was filed, for a total of 31 hours (adjusted down to 25.65 hours per the spreadsheets sent on Thursday).  In other words, you are attempting to recover fees for more than 24 hours of work performed in a single day.  Moreover, while you have refused to provide complete information, we are aware of at least one other firm who participated in the drafting of the sanctions papers, which makes it even more likely that a significant portion of the purportedly Reimbursable Work was unnecessary and duplicative.  Furthermore, you have not provided us with any invoices that support your request for costs.  The examples provided herein are simply illustrative and are by no means even close to exhaustive.

Despite the foregoing, we are prepared to offer $325,000 (the "Settlement Funds") to resolve this dispute and avoid additional motion practice on this point.  To be clear, this is not a negotiating position or initial offer to be bid against.  It reflects the above, as well as other deficiencies in your billing records and request, and the fact that your motion is due on June 4, 2026.  It also reflects that fact that anything more than this amount would be unreasonable and excessive given the narrow purpose of the sanction, which is to deter future instances of the specific conduct the Court found sanctionable.  The latter point is worth emphasis here given that the Court's sanctions were based on statements made by Jeanne Christensen, who is now retired and no longer with Wigdor, and the fact that, as the Court explained, "although the Court is inclined to hold only Ms. Christensen responsible for these lies, the Federal Rules require otherwise."



Pursuant to this offer, the Settlement Funds would be placed in escrow pending the resolution of our motion for reconsideration and, if reconsideration is not granted, our appeal of the sanctions order and motion for reconsideration.  If either our motion for reconsideration or any appeal are successful in any respect, the Settlement Funds will revert back to Wigdor and, if any aspect of the sanctions order against Wigdor still stands, we will meet and confer regarding any appropriate resolution.  If the motion for reconsideration and any appeal are rejected in their entirety, the Settlement Funds will revert to Defendant (or counsel, as you all direct).  This would obviate the need for a fee application, spare the Court the burden of that application and avoid any potential appeal of the amount of the fees and costs awarded, while still preserving our rights to challenge the sanctions order.

This offer, again, is made without waiver of, or prejudice to, any and all rights and arguments, including in connection with any future motion practice on this or any other issue.
Please let us know when you would like to meet again to discuss this further.

Sincerely,

Michael J. Willemin

cc:     E. Danya Perry, Esq.
        Alexander Parachini, Esq.
        Michael Carlinsky, Esq.
        Jennifer Barrett, Esq.
        Jacqueline Stykes, Esq.
        Susan Estrich, Esq.