**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

　　　　　　　　　　　Plaintiff,

　　　　v.

LEON BLACK,

　　　　　　　　　　　Defendant.

Case No. 1:23-cv-06418-JGLC

**DEFENDANT LEON BLACK'S REPLY IN FURTHER SUPPORT OF HIS**
**APPLICATION FOR ATTORNEYS' FEES**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ....................................................................................................................................2

I.     BLACK'S TIME RECORDS SATISFY THE GOVERNING STANDARD .....................2

II.    THE ALLOCATION OF RECORDED TIME WAS A CONSERVATIVE
      EXERCISE OF BILLING JUDGMENT.............................................................................3

III.   THE HOURS EXPENDED WERE REASONABLE ...........................................................4

     A.     The Hours Reflect The Scope Of The Work That The Misconduct
           Required .................................................................................................................4

     B.     The Staffing And Task Distribution Were Reasonable.............................................7

     C.     The Time Entries Are Precise And Conservative ......................................................7

IV.   THE REQUESTED RATES ARE REASONABLE ............................................................8

V.    WIGDOR'S REMAINING OBJECTIONS PROVIDE NO BASIS FOR DENIAL.........10

CONCLUSION...............................................................................................................................11

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*An v. Despins*,
  2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024)...............................................................................8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008) ......................................................................................................10

*Barbera v. Grailed, LLC*,
  2025 WL 1237413 (S.D.N.Y. Apr. 29, 2025) .............................................................................2

*Bunnell v. Haghighi*,
  183 F. Supp. 3d 364 (E.D.N.Y. 2016)..........................................................................................3

*Carrero v. N.Y. City Hous. Auth.*,
  685 F. Supp. 904 (S.D.N.Y. 1988) ..............................................................................................4

*Charlestown Cap. Advisors v. Acero Junction, Inc.*,
  2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021) .............................................................................2

*Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*,
  212 F.R.D. 94 (E.D.N.Y. 2002)....................................................................................................7

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
  246 F.3d 142 (2d Cir. 2001) ......................................................................................................10

*Doe 1 v. E. Side Club, LLC*,
  2023 WL 4174141 (S.D.N.Y. June 23, 2023) ...........................................................................10

*Fair Hous. Just. Ctr. v. Pelican Mgmt., Inc.*,
  2025 WL 965129 (S.D.N.Y. Mar. 31, 2025)...............................................................................8

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
  2020 WL 4750600 (S.D.N.Y. Aug. 17, 2020)..............................................................................6

*Fox v. Vice*,
  563 U.S. 826 (2011) .....................................................................................................................5

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................................................................3, 6

*Laba v. JBO Worldwide Supply Pty Ltd*,
  2023 WL 4985290 (S.D.N.Y. July 19, 2023)...............................................................................6

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
  2016 WL 5812105 (S.D.N.Y. Sept. 22, 2016) .............................................................................4

*Lilly v. City of N.Y.*,
  934 F.3d 222 (2d Cir. 2019) ........................................................................................................9

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ........................................................................................................7

*N.Y. State Ass'n for Retarded Child., Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983) ......................................................................................................2

*Oakley v. MSG Networks, Inc.*,
  2025 WL 3041936 (S.D.N.Y. Oct. 31, 2025)..........................................................................8, 9

*PDV USA, Inc. v. Interamerican Consulting Inc.*,
  2026 WL 1283316 (S.D.N.Y. May 11, 2026) ............................................................................10

*PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
  2026 WL 972522 (S.D.N.Y. Apr. 10, 2026) ......................................................................5, 9, 10

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
  2009 WL 72441 (S.D.N.Y. Jan. 7, 2009)....................................................................................4

*Raja v. Burns*,
  43 F.4th 80 (2d Cir. 2022) ...........................................................................................................3

*Scott v. City of N.Y.*,
  643 F.3d 56 (2d Cir. 2011)...........................................................................................................3

*StoneX Grp., Inc. v. Shipman*,
  2025 WL 1212165 (S.D.N.Y. Apr. 25, 2025) .............................................................................4

*Toussie v. Cnty. of Suffolk*,
  2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012) .......................................................................10, 11

*Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent.*,
  2025 WL 3525044 (S.D.N.Y. Dec. 9, 2025) ...............................................................................9

## Other Authorities

Fed. R. Evid. 408 .............................................................................................................................11

Fed. R. Evid. 408(a)-(b) ..................................................................................................................11

Fed. R. Civ. P. 11............................................................................................................................11

Fed. R. Civ. P. 53..............................................................................................................................2

iii

Defendant Leon Black ("Black") submits this reply in support of his Application for Attorneys' Fees (the "Application") incurred in connection with his Motion for Sanctions (the "Motion"), under this Court's Opinion and Order dated April 23, 2026 (ECF No. 388) (the "Opinion") and the Court's May 12, 2026 Order (ECF No. 418).

## PRELIMINARY STATEMENT

Wigdor's opposition asks this Court to do the one thing its Opinion forecloses: award nothing. The Court has already held that Jeanne Christensen and Wigdor are jointly responsible for Black's "reasonable attorneys' fees and costs in bringing th[e] Motion" during the period January 15 through August 22, 2025. ECF No. 388 at 2, 57, 63. The only question now is the amount.

Wigdor is shamelessly unapologetic. The firm argues that the purpose of the sanctions order—"to punish Wigdor for past behavior and deter future behavior"—has already been "accomplished." ECF No. 456 ("Opp.") 25. But Wigdor continues to deflect responsibility. Its opposition brands *Black's counsel* as "untrustworthy" actors who "deliberately mislead[] courts" and have "exhibited a pattern of dishonesty," Opp. 26-27, while accepting no accountability for the repeated "lies" that got Wigdor sanctioned in the first place, ECF No. 439 at 2.

The central premise of Wigdor's opposition is a mischaracterization. It contends that Black's counsel "reconstruct[ed]" time through "non-contemporaneous estimates" by unidentified "Reviewers." Opp. 5-11. Not so. Counsel recorded time contemporaneously and submitted those contemporaneous records. Later, counsel conservatively allocated the contemporaneously recorded time between Motion and non-Motion work, reducing the request. The cases Wigdor relies on condemn the opposite practice: submitting only end-product estimates divorced from any contemporaneous records.

1

Black's fee request is conservative, well supported, and should be granted.  In the alternative, the Court should appoint a special master under Federal Rule of Civil Procedure 53 to review counsel's unredacted invoices *in camera*.

## ARGUMENT

**I.    BLACK'S TIME RECORDS SATISFY THE GOVERNING STANDARD**

The lodestar framework governs here, though fees are awarded as sanctions rather than under a statute.  *Barbera v. Grailed, LLC*, 2025 WL 1237413, at *1 (S.D.N.Y. Apr. 29, 2025).  The Second Circuit requires a fee applicant to submit "contemporaneous time records"; it does not require that those records be unredacted or free of allocation judgment.  *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  Here, Black has produced contemporaneous invoices, entry-level records showing the portion of each entry allocated to the Motion, and declarations from the billing attorneys.  Wigdor's assertion that the records are "nearly indecipherable," Opp. 28, conflates two things: the privilege redactions this Court's Order contemplated, ECF No. 418, and the reliability of timekeeping.  Black cannot waive privilege by handing unredacted entries to his adversary, though he will provide them for *in camera* review by a special master.

Wigdor's reliance on *Charlestown Capital Advisors v. Acero Junction, Inc.*, 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021), is misplaced.  There, the two attorneys whose time was discounted submitted only "a table showing their 'best approximation' of their compensable time …, divorced from their underlying contemporaneous records." *Id.* at *6.  The *Charlestown* court explained that the cure is for counsel to submit their contemporaneous records with an explanation of the compensable portion, "allowing the court to review the judgment calls made and adjust them if it disagrees." *Id.*  Black has already done that.

*Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011), *see* Opp. 12, is distinguishable as it held only that a court's "personal observation" of an attorney's work was not a "rare exception" excusing the contemporaneous-records requirement. *Id.* at 57-59. It did not hold—as Wigdor suggests—that records prepared with staff assistance are categorically invalid.

Wigdor's block-billing argument fails for the same reason and is undercut by its own lead authority. *See* Opp. 9-10. *Raja v. Burns*, 43 F.4th 80 (2d Cir. 2022), did not approve an across-the-board reduction. It vacated a 40% block-billing cut as an abuse of discretion, holding that where a court can "parse the block-billed entries individually to determine to what extent the time was reasonably billed," a steep percentage reduction is improper. *Id.* at 89-90. Here, Black has done the parsing—producing entry-level allocations that separate Motion from non-Motion time—so the concern that animates block-billing reductions is absent. *Bunnell v. Haghighi*, 183 F. Supp. 3d 364, 375-76 (E.D.N.Y. 2016), is not helpful to Wigdor, as there, the entries were block billed with no allocation supplied; Black has provided allocation.

## II.    THE ALLOCATION OF RECORDED TIME WAS A CONSERVATIVE EXERCISE OF BILLING JUDGMENT

Wigdor's "non-contemporaneous estimate" argument depends on recharacterizing allocation as reconstruction. *See* Opp. 1-2, 5, 10-11. The time entries were recorded when the work was performed. Because counsel worked on both the Motion and other matters, counsel determined, entry by entry, which portion of each entry was attributable to the Motion, and sought fees for that portion only. That is billing judgment fee applicants must exercise, and it only *reduced* the request. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (counsel should exclude non-compensable hours).

Wigdor's attack on the billing-attorney declarations misconstrues them. No declarant vouched for someone else's "guesses." Opp. 7, 10, 12. Each reviewed his or her own

3

contemporaneous entries—both in the invoices and the spreadsheet produced to Wigdor on May 28, 2026—confirmed the total time recorded and the portion allocated to the Motion, and attested that the allocation is accurate. Nor does the law require the exactitude that Wigdor demands: a fee applicant need not "identify with precision the amount of hours allocated to each individual task." *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2009 WL 72441, at *7 (S.D.N.Y. Jan. 7, 2009).

The cases Wigdor relies on do not involve allocation of time from produced contemporaneous records. *See* Opp. 10-11. *LBBW Luxemburg S.A. v. Wells Fargo Securities LLC*, 2016 WL 5812105, at *8-9 (S.D.N.Y. Sept. 22, 2016) (unexplained "replacement hours" the court could not assess), and *Carrero v. New York City Housing Authority*, 685 F. Supp. 904, 908-09 (S.D.N.Y. 1988) (fees awarded on affidavits reconstructed from contemporaneous records) are unhelpful to Wigdor since Black produced contemporaneous records and allocated them.

## III.     THE HOURS EXPENDED WERE REASONABLE

### A.     The Hours Reflect The Scope Of The Work That The Misconduct Required

Wigdor's rhetorical figures—"over 13 hours per page," "*nearly an hour and a half per sentence*"—measure nothing. Opp. 14-15. The work was not merely writing pages; it was reviewing nearly 800 pages of JPMC materials, analyzing evidence, working with an expert, and preparing a motion supported by eight declarations and 32 exhibits, followed by two reply briefs responding to Wigdor's and Doe's voluminous oppositions—Wigdor's with more than 500 exhibit pages and Doe's spanning more than 375 pages of briefing, declarations, and exhibits. App. 3. The inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures," not how the output is measured in pages. *StoneX Grp., Inc. v. Shipman*, 2025 WL 1212165, at *2 (S.D.N.Y. Apr. 25, 2025) (internal quotation marks omitted). The court's task is thus "to do rough justice, not to achieve auditing perfection," and it "may use estimates." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The Motion was the outcome of an investigation far more complex than ordinary civil motion practice. Counsel had to reconstruct the truth behind Doe's false allegations and Wigdor's lies from numerous sources. *First*, counsel located, vetted, and procured sworn declarations from individuals Doe had named as her traffickers or witnesses. ECF Nos. 227-33. That investigation included developing a declaration to refute Doe's false account of being visibly pregnant on a trip over 20 years ago. ECF No. 227. *Second*, counsel mastered a record spanning Doe's complaints, her three successive (and materially different) JPMC submissions, her testimony before Judge Rakoff, and her since-deleted Twitter statements. Counsel then reconstructed a chronology that showed Doe's account shifted on foundational facts: who introduced her to Ghislaine Maxwell, what occurred, how many pregnancies she claimed, and who had trafficked her. *Third*, counsel worked with a forensic document examiner to analyze the manipulated sonogram images in Doe's journals. *Fourth,* counsel had to analyze—and disprove—Christensen's many misstatements and falsehoods. This work went well beyond "hours per page" on a brief. Opp. 14-15.

Wigdor's argument that it should not pay because Black "specifically asked the Court to file separate reply briefs," Opp. 20, mistakes effect for cause. Black's counsel had to answer two separate oppositions only because Wigdor, having withdrawn as Doe's counsel, filed an opposition separate from Doe's. Black's separate replies were the most efficient response to these briefs, which advanced different positions.

Wigdor's own comparators confirm that the reasonable number of hours scales with the size of the record and the misconduct. The decisions Wigdor cites for its 128-to-190-hour figure, Opp. 14, each involved a single category of misconduct. *PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 2026 WL 972522, at *1, *5 (S.D.N.Y. Apr. 10, 2026) (single spoliation dispute); *Laba v. JBO Worldwide Supply Pty Ltd*, 2023 WL 4985290, at *1, *9, *15 (S.D.N.Y. July 19, 2023) (one fabricated agreement); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2020

5

WL 4750600, at *1, *3 (S.D.N.Y. Aug. 17, 2020) (discovery sanctions for lost damages records). The Motion was of a different magnitude. Here, spoliation—as in *PharmacyChecker*—was only one of several issues Black had to address. *Fashion Exchange* makes the point: hours that "may appear excessive" on their face may "speak[] to the extent of [the] misconduct in this litigation rather than inefficiencies by [ ] counsel." *Id.* at *3.

Wigdor's related complaint—that Black's counsel "freely admits that many more [hours] were spent by attorneys at other firms," including Estrich Goldin, and that Quinn Emanuel and Perry Law were "at least the third and fourth law firms working on the Motion"—is a non sequitur. Opp. 14-15. Black does not seek a dollar of any other firm's fees. Other firms' uncompensated work cannot make Quinn Emanuel's and Perry Law's hours unreasonable; if anything, it reduced what those two firms had to do. Wigdor's suggestion that the exclusion of other firms' time was "a strategic effort to hide counsel's massive fee inflation," *id.*, inverts the point: declining to seek recoverable fees is the mark of a conservative application, not inflation.

Wigdor's argument that fees should be confined to the "approximately 18 pages" addressing the sanctioned conduct, Opp. 15, misreads both the Opinion and the law. The Court fixed a temporal scope—January 15 to August 22, 2025—not an issue-by-issue one. ECF No. 388 at 63. And *Hensley* forecloses the page-by-page parsing Wigdor demands: where claims "involve a common core of facts or [are] based on related legal theories," the court focuses on "the significance of the overall relief obtained" not whether it "adopt[ed] each contention raised." 461 U.S. at 435, 440. Black's showing of fraud on the court rested on a single, interwoven factual record; the spoliation, falsification, and misrepresentation findings were not severable line items. Nor can Wigdor minimize its conduct by blaming Doe and Christensen. The Court already held Wigdor jointly responsible for its partner's misconduct, ECF No. 388 at 56-57, and rejected Wigdor's prior attempt—on reconsideration—to recast Christensen's misrepresentations as

6

differences of interpretation, ECF No. 439 at 2-3.  Its renewed effort is another bid to relitigate sanctions the Court has twice declined to disturb.

**B.      The Staffing And Task Distribution Were Reasonable**

Wigdor's overstaffing and duplication arguments rest on three days—January 21, January 28, and February 19, 2025, Opp. 17—on which multiple timekeepers recorded time as the opening Motion was finalized with 32 exhibits and eight declarations.  Collaboration on a complex motion on a deadline is not duplication; it is how such motions are produced.  Black's allocations already removed non-Motion time from those entries.  Wigdor's authorities do not support an across-the-board cut.  *See* Opp. 16-18.  In *Luciano v. Olsten Corp.*, 109 F.3d 111, 116-17 (2d Cir. 1997), the Second Circuit affirmed an overstaffing reduction only because the district court had "first-hand knowledge" of the litigation through a "month-long trial"; Wigdor offers only the mistaken and insufficient inference that because several lawyers billed on the same days, their work must have overlapped.

Wigdor's contention that the JPMC review and the investigation of Doe's allegations would have been done anyway is an improper and legally flawed attempt to relitigate the merits. *See* Opp. 16-18.  *Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y. 2002), addressed discovery costs that would have been incurred regardless of the sanctionable conduct.  Here, the Court fixed the compensable period and defined the award as the fees Black incurred in bringing the Motion.  ECF No. 388 at 63.  Wigdor cannot relitigate that scope under the guise of reasonableness.

**C.      The Time Entries Are Precise And Conservative**

Wigdor's objection that entries such as "attend to" and "review" are too vague, Opp. 18-19, ignores the rest of the record.  Reasonableness is assessed on the entries together with the contemporaneous invoices, the per-entry allocations, and the billing-attorney declarations—not on

7

isolated verbs.   Black's entries, taken together with the allocations and declarations, are permissible because they "contain[] enough information to allow the Court to conduct a meaningful review."  *Oakley v. MSG Networks, Inc.*, 2025 WL 3041936, at *14 (S.D.N.Y. Oct. 31, 2025).  The redactions strip only privileged content—not the task, time, timekeeper, or Motion allocation—so everything a court needs to gauge reasonableness remains.  *See Fair Hous. Just. Ctr. v. Pelican Mgmt., Inc.*, 2025 WL 965129, at *9 (S.D.N.Y. Mar. 31, 2025) (entries "redacted based on privilege are not inherently vague").  Even standing alone, Wigdor's own authority refutes denial: *Oakley* reduced one timekeeper's fee by 50% for vague entries while awarding the balance because he had "clearly performed a significant quantum of work."  2025 WL 3041936, at *10.  The remedy for entries a court finds opaque is a limited reduction, not wholesale denial.

The two cross-firm "inconsistencies" Wigdor identifies prove the opposite of fabrication. Wigdor notes that Perry Law attorney Alexander Parachini billed a January 24, 2025 call with Quinn Emanuel attorneys who did not bill for it, and that Danya Perry billed a February 10, 2025 call with Quinn Emanuel Co-Managing Partner Michael Carlinsky that does not appear in Mr. Carlinsky's entries.  Opp. 19.  But Quinn Emanuel's billing conservatism does not call into question the accuracy of Perry Law's records: to the contrary, the purported "inconsistencies" show that Black's lawyers are, if anything, underbilling their time.  Those two calls are negligible in relation to the total amount of work necessitated by Wigdor's misconduct, and Black will drop them in the interest of efficiency and compromise.

## IV.    THE REQUESTED RATES ARE REASONABLE

Wigdor calls the requested rates "record-setting," Opp. 20, but it cites decisions showing that the rates counsel seek here are consistent with those approved by courts.  In *An v. Despins*, 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024), the court approved a partner rate of $1,990. *PharmacyChecker* approvingly cited a case in this District that concluded that partner rates in the

$1,370 to $1,750 range were consistent with large New York City firms. 2026 WL 972522, at *3. And *Zama Capital Advisors LP and Zama Capital Strategy Advisors LP v. Universal Entertainment*, 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025), approved partner rates of $1,712 to $1,980 and associate rates up to $1,168, relying on *Oakley*'s approval of associate rates up to $1,135, 2025 WL 3041936, at *6-7. Quinn Emanuel's partner rates of $1,645 to $2,410 are in line with the partner-rate approvals in *An* and *Zama*, with the senior-most rates reflecting the seniority of its Co-Managing Partners and the Motion's complexity. Quinn Emanuel's associate rates of $940 to $1,465 are consistent with the four-figure associate rates approved in *Zama* and *Oakley* and, like the partner rates, are confirmed by the rates a sophisticated client paid. Perry Law's rates of $900 to $1,650 fall at or below those *Zama* approved.

Wigdor singles out the $940 rate sought for three associates admitted in 2024, Opp. 24 & n.6, but this objection is meritless. Those three timekeepers account for 52.31 hours and $49,171.40 of the $1,622,916.70 request—roughly 3%—for discrete, time-limited work appropriate for junior associates. Even if the Court accepted Wigdor's premise and reduce their rate to $895, *see* Opp. 21 (noting courts in this District have approved "$895 for associates")—the request would fall by approximately $2,354, less than two-tenths of 1% of the total requested fees. It is no basis for the wholesale denial Wigdor seeks, much less for Wigdor's contention that the rate "calls into question every other hourly rate" in the Application, Opp. 24.

Wigdor's authorities also defeat its premise that Black's payment of these rates is irrelevant. The lodestar reflects "the rate a paying client would be willing to pay," *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019), and the comparators are rates charged by similar firms in complex litigation. The firms' actual rates are strong evidence, as the "actual billing arrangement … provides a strong indication of what private parties believe is the 'reasonable fee,'" *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001), and a firm's

"customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable rate, *Doe 1 v. E. Side Club, LLC*, 2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023). Black's counsel furnished that evidence through the declarations and each timekeeper's experience. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

Wigdor's biographical-information objection is unfounded, *see* Opp. 23-25, and at most warrants a modest adjustment. Even Wigdor's authority confirms as much: in *PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 1283316, at *5 (S.D.N.Y. May 11, 2026), the court imposed only a 15% rate reduction because it lacked information about the relevant associates' and paralegals' experience. *PharmacyChecker* likewise rejected a senior associate's rate—while acknowledging the going rate was "near or above $1,000 per hour"—only because the movant offered nothing beyond a law school and graduation year. 2026 WL 972522, at *3. Here, by contrast, the records—which the *PharmacyChecker* movant never provided—show each timekeeper's work; the Application identifies each timekeeper's role and seniority; and the Rakower Declaration confirms these are Quinn Emanuel's customary rates. Rakower Decl. ¶ 6.

## V.    <u>WIGDOR'S REMAINING OBJECTIONS PROVIDE NO BASIS FOR DENIAL</u>

Wigdor's demand that the Court deny the application in its entirety rests on *Toussie v. County of Suffolk*, 2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012), *see* Opp. 8, 13, but *Toussie* is distinguishable. The court there denied a fee request as "so outrageously excessive and unreasonable that it could not possibly have been made in good faith" partly because counsel, after only limited success on a "mixture of both related and unrelated claims," billed for tasks "replete with" work "unrelated to" the claims on which the plaintiff prevailed and failed to segregate them. *Id.* at *6. Black's request has none of these defects. He prevailed on the Motion; his hours arise from a single common core of fraud-on-the-court facts, not a mix of successful and unrelated claims; and his counsel segregated Motion from non-Motion time on a per-entry basis and sought

10

only the former. *Toussie*'s rationale—billing for unrelated, unsuccessful work—is the opposite of the record here.

Wigdor objects that Black disclosed Wigdor's $325,000 settlement proposal and contends this violates "the spirit, if not the letter, of" Federal Rule of Evidence 408. Opp. 6. It does not. Rule 408 bars a compromise offer only when offered "to prove or disprove the validity or amount of a disputed claim" or to impeach; it does not reach evidence offered "for another purpose." Fed. R. Evid. 408(a)-(b). Black raises the $325,000 offer not to prove the amount of his fee request but to show that the parties reached an impasse, with Wigdor leaving more than $1.275 million in fees unaddressed. App. 5. Wigdor's accusation that Black "dropped" his cost request to "hide something," Opp. 6, is meritless. Black excluded the modest expert cost to avoid motion practice over the only cost item—a decision that *reduces* the request.

The bulk of Wigdor's Section IV—the Epstein references and "firm culture" assertions, Opp at 14, 25-28—is irrelevant. Black's wealth, the press the Opinion received, and unrelated lawyers in another case do not reduce a movant's fees, and Wigdor cites no authority stating otherwise. Rule 11's deterrent purpose is served by requiring the sanctioned party to pay the *movant* the reasonable cost caused; it does not let Wigdor discharge that obligation by paying the Court or a pro bono legal service. *See* Opp. 26.

**CONCLUSION**

For the foregoing reasons, Black respectfully requests that the Court award the reasonable attorneys' fees sought. In the alternative, Black requests the Court appoint a special master to review counsel's unredacted invoices *in camera*.

Dated: New York, New York      **QUINN EMANUEL URQUHART**
      June 25, 2026            **& SULLIVAN, LLP**

By:    */s/ Michael B. Carlinsky*
        Michael B. Carlinsky

11

Jennifer J. Barrett
Ryan A. Rakower
Jacqueline M. Stykes
295 Fifth Avenue
New York, New York 10016
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
ryanrakower@quinnemanuel.com
jacquelinestykes@quinnemanuel.com


PERRY LAW
E. Danya Perry
Alexander K. Parachini
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
dperry@danyaperrylaw.com
aparachini@danyaperrylaw.com

*Counsel for Defendant Leon D. Black*

12

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Michael B. Carlinsky, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Reply was prepared using Microsoft Word, and the document contains 3,494 words as calculated by the application's word-counting function, excluding the parts of the Reply exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on June 25, 2026, in New York, New York.

/s/ Michael B. Carlinsky
Michael B. Carlinsky

13