UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JANE DOE,

                Plaintiff,                          23-CV-6418 (JGLC)

        v.

LEON BLACK,

                Defendant.

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES WIGDOR LLP AND JEANNE M. CHRISTENSEN'S MOTION FOR RECONSIDERATION

**LAW OFFICES OF MICHAEL S. ROSS**
**ONE GRAND CENTRAL PLACE**
**60 EAST 42ND STREET**
**FORTY-SEVENTH FLOOR**
**NEW YORK, NEW YORK 10165**

*Counsel to Non-Parties Wigdor LLP &*
*Jeanne M. Christensen*

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................................1

I.    STANDARD FOR RECONSIDERATION ...........................................................................2

II.   THE FINDING THAT MS. CHRISTENSEN MISREPRESENTED MS. DOE'S
      TESTIMONY ABOUT EPSTEIN'S PATERNITY CANNOT BE RECONCILED WITH
      THE UNDERLYING SANCTION ORDER'S OWN ACCOUNT OF THE RECORD ...........................2

III.  THE FINDING THAT MS. CHRISTENSEN MISREPRESENTED THE PROCEDURES
      OF THE JULY 8, 2024 HEARING IS UNSUPPORTED BY THE UNDERLYING
      DOCUMENT TO WHICH THE ORDER CITES ............................................................................5

      A.    THE MARCH 1, 2024 LETTER REFERENCED BY THE COURT IN ITS
            SANCTION ORDER DID NOT CONSENT TO A HEARING WITHOUT
            WIGDOR PRESENT.........................................................................................6

      B.    THE ORDER INCORRECTLY ATTRIBUTES TO MS. CHRISTENSEN
            STATEMENTS THAT SHE DID NOT MAKE................................................................7

IV.   THE COURT OVERLOOKED THE PRIOR LETTER OF WIGDOR'S PROFESSIONAL
      RESPONSIBILITY COUNSEL, WHICH THE COURT HAD BEFORE IT AND WHICH
      DIRECTLY ADDRESSED THE ACCUSATIONS THE ORDER CREDITED.....................................9

CONCLUSION.........................................................................................................................12

TABLE OF AUTHORITIES

PAGE

CASES

Dubose v. Jiminez, No. 22-CV-2124 (VB), ECF No. 82 (S.D.N.Y. Aug. 30, 2023)....................11

Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA) Inc.,
      2024 U.S. Dist. LEXIS 101952 (S.D.N.Y. Jun. 7, 2024) ......................................................11

Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010) .............................................................4, 5

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999) ......................................5

Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995)...............................................................2

Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir. 2003) ..................................................4, 5

StreetEasy, Inc. v. Chertok, 752 F.3d 298 (2d Cir. 2014) ...............................................................9

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245 (2d Cir. 1992)..........................2

Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110 (2d Cir. 2009) ...........................5, 7

RULES

Fed. R. Civ. P. 11 ........................................................................................................... passim

Local Civil Rule 6.3 ....................................................................................................2, 13

Local Civil Rule 7.1(c) .....................................................................................................13

iii

## PRELIMINARY STATEMENT

Wigdor LLP ("Wigdor") and Jeanne M. Christensen, former counsel to the Plaintiff, respectfully move for reconsideration of the portions of this Court's April 23, 2026 Opinion and Order (the "Order") imposing sanctions against them as they relate to the issue of having made false statements (but do not seek review of the spoliation-related sanctions). Reconsideration is warranted because the sanctions findings rest on factual and documentary inferences that cannot be reconciled with materials already before the Court, including the May 20, 2024 letter to Judge Rakoff, the March 15 and June 25, 2024 transcripts, and the January 10, 2025 letter by Wigdor's professional responsibility counsel, Michael S. Ross (the "Ross Letter"), filed on this docket on behalf of Ms. Christensen in response to the same accusations of misrepresentation later credited in the Order.

This Motion for Reconsideration is not an effort to relitigate Defendant's sanctions motion. It is a request that the Court consider and reconcile record materials bearing directly on whether Ms. Christensen made a false statement, whether any challenged statement was objectively baseless under Rule 11, and whether the record supports the specific finding of bad faith required for inherent-power sanctions.

The overlooked materials here are highly important. They show that Ms. Christensen consistently maintained a distinction between what Ms. Doe was told by Jeffrey Epstein and whether Epstein was in fact the father of her children; that Ms. Christensen's March 1, 2024 letter to District Court Judge Jed S. Rakoff did not consent to a hearing at which Ms. Doe would be questioned without Wigdor present; and that Ms. Christensen's December 18, 2024 letter did not say that Judge Rakoff's questions had "no connection to the case."

### I.    STANDARD FOR RECONSIDERATION.

Local Civil Rule 6.3 governs this motion.  The standard is strict, but reconsideration is warranted where the movant identifies controlling decisions or factual matters the Court overlooked and that "might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Reconsideration is also appropriate where necessary to correct clear error or prevent manifest injustice.  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

That standard is met here.  The overlooked materials do not merely supplement an argument already rejected.  Rather, they bear directly on the factual predicates necessary to sustain Rule 11 and inherent-power sanctions – whether Ms. Christensen made the representation attributed to her, whether any factual contention was objectively baseless, and whether the record supports a specific finding of bad faith.  Because those materials were before the Court and, if credited or reconciled, would alter the sanctions analysis, reconsideration is warranted.

### II.    THE FINDING THAT MS. CHRISTENSEN MISREPRESENTED MS. DOE'S TESTIMONY ABOUT EPSTEIN'S PATERNITY CANNOT BE RECONCILED WITH THE UNDERLYING SANCTION ORDER'S OWN ACCOUNT OF THE RECORD.

The Order finds that Ms. Christensen "lied to this Court about the substance of Ms. Doe's testimony by claiming that Plaintiff *never* said she was the mother of Epstein's children."  Order at 40 (emphasis in original).  The single sentence on which this finding rests, drawn from Ms. Christensen's December 18, 2024 letter, reads:  "it is completely false that Plaintiff said she was the mother of Epstein's children and such statements [by Defendant] are reckless and vindictive." ECF No. 184 at 8.

The Order's own factual recitation of the record in the JPMC Action establishes that Ms. Christensen had consistently maintained – throughout the proceedings before Judge Rakoff and in

writing – a meaningful distinction between two different propositions:  (i) that Ms. Doe testified Mr. Epstein *told her* he was the father of certain of her children; and (ii) that Ms. Doe *was, in fact*, the mother of Mr. Epstein's children.  Ms. Christensen never disputed the former.  Her December 18, 2024 sentence concerned the latter.

The Order at page 16 acknowledges this distinction in describing Ms. Christensen's May 20, 2024 letter to Judge Rakoff, which preceded her December 18, 2024 letter:  "Ms. Christensen also explained that Plaintiff's claim that Epstein fathered four of her children was merely Plaintiff sharing what Epstein told her, not a representation of the truth."  Order at 16 (citing ECF No. 233-24 at 22-23).  Ms. Christensen's May 20 letter (which is also attached to the Ross Letter as Exhibit A) expressed the position even more directly:

> [Ms. Doe] does not "know" that she was impregnated by Epstein. She knows only that <u>Epstein told her this</u>. ... Simply because Epstein "told" her it was his child certainly does not mean that it is true.

Ross Letter, Ex. A at 22 (emphasis in original).

Ms. Christensen pressed the same distinction at the March 15, 2024 hearing before Judge Rakoff, objecting to Class Counsel's framing of the question:

> [CLASS COUNSEL]:  How many children did you give birth to where Jeffrey Epstein was the father?
>
> MS. CHRISTENSEN:  I'm going to object, your Honor, in that it was just her understanding or was she told? I mean, she –
>
> THE COURT:  No, I understand.
>
> MS. CHRISTENSEN:  OK.
>
> THE COURT:  I accept that amendment....

March 15 Hearing Tr. at 56.

Judge Rakoff confirmed the distinction again at the June 25, 2024 conference (which, again, preceded the December 18 letter):

3

> CHRISTENSEN: ... [W]hile she may believe what he told her is true that he was the father, I don't think there was anybody else, except her, sadly, who does believe this....
>
> THE COURT: That's fine. My point is, I understand your argument that Epstein probably wasn't the father, and that she nevertheless believed that.

June 25, 2024 Tr. at 23-24.

Read against this record, the supposedly offending sentence in the December 18, 2024 letter is not a misrepresentation of Ms. Doe's testimony. It is a denial of the distinct proposition Defendant's counsel had asserted – that Ms. Doe claimed *to be* the mother of Epstein's children as a matter of fact – which Ms. Christensen had disputed at every prior stage of the JPMC Action. The Order's contrary finding depends on reading the sentence in isolation, rather than within the context the Order itself provides.

The Order also recognizes that, in the JPMC Action, "Ms. Christensen refuted many of Class Counsel's points" and "affirmed that Plaintiff had friends who would attest to her being pregnant." Order at 17. The same Order acknowledges that Ms. Christensen "believes ... that Plaintiff was told that information and not that it is true." Order at 53-54. That is precisely the position Ms. Christensen took in the supposedly offending December 18, 2024 letter. Sanctioning her for restating that position is inconsistent with the Court's own acknowledgment elsewhere in the Order that this reflects her view of the record.

Rule 11 sanctions cannot rest on a factual contention unless the particular allegation is "utterly lacking in support." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387-88 (2d Cir. 2003) (vacating Rule 11 sanctions where "isolation of fragmentary contentions" created the appearance of an unsupported statement, and holding that the challenged contentions were not "utterly lacking in support"); Kiobel v. Millson, 592 F.3d 78, 81-83 (2d Cir. 2010) (reversing Rule 11 sanctions where the challenged factual statements had a reasonable inferential basis in the record). Inherent-

4

power sanctions require still more:  clear evidence that the challenged conduct was both entirely without color and motivated by an improper purpose, supported by findings made with a high degree of specificity.  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336-38 (2d Cir. 1999); Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009).

Here, the contemporaneous record does not support the basis for sanctions.  Ms. Christensen's May 20, 2024 letter to Judge Rakoff, which preceded her December 18, 2024 letter to this Court, expressly distinguished what Epstein "told" Ms. Doe from what was true; the March 15 transcript shows Ms. Christensen objecting in real time to the very framing the Order now treats as her concession; and the June 25 transcript shows Judge Rakoff confirming his understanding of the same distinction.

The contemporaneous record thus supplies an objectively reasonable basis for the distinction Ms. Christensen drew, precluding Rule 11 sanctions, see Kiobel, 592 F.3d at 81-83; Storey, 347 F.3d at 387-88, and the same record reflects a position Ms. Christensen consistently maintained – not bad faith – precluding inherent-power sanctions as well.  See Schlaifer Nance, 194 F.3d at 336-38; Wolters Kluwer, 564 F.3d at 114.

### III.  THE FINDING THAT MS. CHRISTENSEN MISREPRESENTED THE PROCEDURES OF THE JULY 8, 2024 HEARING IS UNSUPPORTED BY THE UNDERLYING DOCUMENT TO WHICH THE ORDER CITES.

The Order at issue finds that Ms. Christensen "lied" to this Court about the format of the July 8, 2024 evidentiary hearing before Judge Rakoff and about the questions Judge Rakoff asked Ms. Doe at that hearing.  Order at 36-38, 57.  We respectfully submit that both findings rest on inferences the documentary record does not support.

### A.    THE MARCH 1, 2024 LETTER REFERENCED BY THE COURT IN ITS SANCTION ORDER DID NOT CONSENT TO A HEARING WITHOUT WIGDOR PRESENT.

The Order relies on Ms. Christensen's March 1, 2024 letter to Judge Rakoff for the proposition that, "before any hearings took place, Ms. Christensen indicated that she thought an examination by only Judge Rakoff, outside of the presence of Class Counsel *or counsel for Defendant*, would be preferable." Order at 37 (citing ECF No. 233-8 at 3; emphasis added). On that basis, the Order treats Ms. Christensen's December 18, 2024 description of the July 8 hearing – at which she was not present and her client was questioned alone – as a lie, finding that she "had consented to the procedures [Judge Rakoff] proposed." Order at 57.

This conclusion rests on an apparent misreading of the March 1, 2024 letter. What the letter actually requested was that any evidentiary hearing exclude *adversarial* counsel – specifically Class Counsel, Ms. Estrich, and Ms. Singer – from being "privy to our client's evidence." ECF No. 233-8 at 3 (March 1, 2024 letter at p. 2). The letter expressly contemplated that Ms. Christensen would appear with her client, stating: "We are willing to appear *personally before the Court **with** our client*, along with her adoptive parents, *provided no one **else** is present outside of the Claims Administrator*." Id. (emphasis added). The letter did not consent to Ms. Doe being questioned without Wigdor present.

The procedure that ultimately occurred on July 8, 2024 – Judge Rakoff alone with Ms. Doe, with Ms. Christensen "right outside" but not in the room – was *not* the procedure the March 1 letter proposed. The March 1 letter's request to exclude opposing counsel cannot fairly be read as consent to the exclusion of Ms. Christensen herself.

The Order also relies on the Claims Administrator's representation at the July 8 hearing that she had received Ms. Christensen's "permission to proceed in that manner." Order at 18 (citing July Hearing at 3:3-7). But the record explains how that permission came about, and it was

6

not an unconditional waiver.  As explained in the Ross Letter, Ms. Christensen was told by the Claims Administrator and her counsel that "unless she and her Firm agreed to not be present in the room, Judge Rakoff would not ask additional follow up questions and thus reduce Ms. Doe's allocation."  Ross Letter at 5.  Ms. Christensen and Ms. Firetog traveled to Virginia to be with Ms. Doe, hoping until the morning of the hearing that they would be permitted to remain in the hotel room behind the scenes and not appearing on Zoom.  Id.  When that hope did not materialize, they stepped into the hallway – not because they had consented to being excluded as a matter of preference, but because the alternative was to forfeit the entire follow-up proceeding that Ms. Doe's allocation depended on.

Ms. Christensen's December 18 description – that Judge Rakoff questioned Ms. Doe "without permitting her counsel to be present" – was not false, and the Order does not identify any factual inaccuracy in that statement.  Judge Rakoff did *not* permit Wigdor to be present in the room.  The Order's reasoning instead turns on the inference that because Ms. Christensen was told the questioning would not occur unless she agreed to that arrangement, her later description of the format was a lie.  Thus, none of the options available to Ms. Christensen involved permission for her to be present.  Ms. Christensen's statement was literally true.  The Order does not address Ms. Christensen's explanation with "a high degree of specificity" as required for a bad-faith finding under the Court's demanding inherent-power standard.  See Wolters Kluwer, 564 F.3d at 114.

### B.    THE ORDER INCORRECTLY ATTRIBUTES TO MS. CHRISTENSEN STATEMENTS THAT SHE DID NOT MAKE.

The Order also finds that "it is inaccurate to say – as Ms. Christensen did – that Judge Rakoff's questions at the July hearing had no connection to the case."  Order at 38.  We respectfully submit that Ms. Christensen's December 18, 2024 letter does not say that those questions "had no connection to the case."

What Ms. Christensen wrote in her December 18, 2024 letter was that Judge Rakoff "asked [Ms. Doe] highly personal questions having zero connection to *Epstein, Ghislaine Maxwell or what the Claims Administrator had reviewed to render her allocation award*." ECF No. 184 at 4 (emphasis added). The qualifying language matters. For example, the transcript confirms that the very first questions Judge Rakoff asked Ms. Doe concerned her 2022 adult adoption by her adoptive parents – a subject distinct from Epstein, Maxwell, and the trafficking allegations the Claims Administrator had evaluated. See July Hearing at 4:13-7:18 ("How did you come to be adopted?"; "[Y]ou were already over the age of 21, so you didn't have to be adopted by anyone. Why did you want to be adopted in this situation?").

Whether those questions were "relevant" to the broader claim – as the Order at page 38 finds they were, in connection with how any monetary award would be administered – is a *different question* from whether they were connected to the *subjects* the December 18 sentence identified. The December 18 sentence did not assert that Judge Rakoff's questions were irrelevant; it asserted that they had no connection to Epstein, Maxwell, or what the Claims Administrator had reviewed. Those are distinct propositions, and only the latter is the one Ms. Christensen actually made.

The Order's finding that Ms. Christensen represented that Judge Rakoff's questions had "no connection to the case" is, respectfully, a paraphrase of a contention advanced by her, not a quotation of a statement she had made. Even if Judge Rakoff's questions are arguably relevant (and it is not obvious), the sentence Ms. Christensen actually wrote – i.e., that *some* of the questions had no connection to Epstein, Maxwell, or the Claims Administrator's allocation review – has documentary support in the transcript. See StreetEasy, Inc. v. Chertok, 752 F.3d 298, 307-08 (2d Cir. 2014) (vacating Rule 11 sanctions where the district court sanctioned a supposed factual

contention that the litigant "never represented," and explaining that he had instead "consistently represented" a narrower, supported contention).

Likewise, paraphrasing Ms. Christensen, the Order finds that she misled the Court by "den[ying] that the decision to amend the Complaint had anything to do with the JPMC Action" and labeling Defendant's contrary suggestion a "conspiracy" that was "unfounded."  Order at 40 (citing ECF No. 110 at 4).  However, Ms. Christensen's actual statement on page 4 was that "*Black contends* that Plaintiff's proposed amended complaint, ECF No. 103 is part of another conspiracy concerning an entirely separate action before Judge Rakoff."  ECF No. 110 at 4 (emphasis added).  That language tracked Defendant's own framing: his October 1, 2024 letter accused Plaintiff of advancing a "newly spun narrative" in the proposed amendment that was "in response to the matters submitted to (and potentially decided by) Judge Rakoff," and used that as the predicate for seeking leave to subpoena counsel.  ECF No. 108 at 2-3.

Ms. Christensen rejected *that specific accusation* – that the amendment was a part of a "conspiracy" involving the JPMC Action and that the JPMC Action was "the impetus" for the amendment – and explained that "Plaintiff's proposed changes conform her allegations to contemporaneous journal records ... uncovered after the filing of the initial Complaint."  ECF No. 110 at 4.  The Order (p. 8) recognizes that "[a] significant change between the Complaint and the FAC is that the FAC incorporates excerpts from Ms. Doe's journals."  Reconsideration is warranted.

IV.    **THE COURT OVERLOOKED THE PRIOR LETTER OF WIGDOR'S PROFESSIONAL RESPONSIBILITY COUNSEL, WHICH THE COURT HAD BEFORE IT AND WHICH DIRECTLY ADDRESSED THE ACCUSATIONS THE ORDER CREDITED.**

The Order describes Wigdor's response to the instant motion as having "failed to counter Defendant's arguments that [Ms. Christensen] misled the Court."  Order at 56.  Most respectfully,

this statement is fundamentally incorrect.  The Court's description fails to account for a detailed letter from Wigdor's outside professional responsibility counsel, Michael S. Ross, Esq., that Wigdor placed on the docket of this very motion before briefing began, and that addressed each of the accusations of misrepresentation that ultimately formed the basis of the Order's Rule 11 findings.  See ECF No. 202-2.

On January 15, 2025, in response to Defendant's pre-motion letter, Wigdor filed ECF No. 202, attaching as Exhibit 2 the dated January 10, 2025 letter from its outside counsel, Mr. Ross (i.e., the Ross Letter).  ECF No. 202-2.  The January 15 filing expressly stated that Wigdor's outside professional responsibility counsel (i.e., Mr. Ross) "already has addressed the issues raised in Judge Rakoff's letter, by submitting a letter to the Hon. Katherine Polk Failla on January 10, 2025."  ECF No. 202 at 6.  The Ross Letter responded directly to each of the three categories of statements the Order ultimately found to be false:  Ms. Christensen's description of the July 8, 2024 hearing format and Judge Rakoff's questioning; Ms. Christensen's representations regarding Ms. Doe's testimony about Mr. Epstein's purported paternity of her children; and Ms. Christensen's denial that the First Amended Complaint was filed in response to the JPMC Action.

The substantive nature of Mr. Ross's letter defending the conduct of Ms. Christensen underscores why it should have been considered.  Defendant filed ECF No. 198 in the early morning hours of January 15, 2025, in advance of a conference scheduled for the following day at which Defendant sought leave to file the Case Terminating Sanction motion.  ECF No. 198 expressly previewed the sanctions theory Defendant would later advance, asserting that Plaintiff's counsel had engaged in "knowing, serial misrepresentations to this Court and to Judge Rakoff" and that the conduct in Judge Rakoff's courtroom was "directly relevant ... to the motion for sanctions that Defendant intends to seek leave to file."  ECF No. 198 at 1.  Wigdor filed ECF No.

202 with this Court the same day, identifying (and attaching) the Ross Letter as the firm's substantive response to those very accusations.  ECF No. 202 was thus a targeted, same-day response to the precise allegations of misrepresentation that the Order ultimately credited.

In Int'l Cargo Loss Prevention, Inc. v. Mediterranean Shipping Co. (USA) Inc., 2024 U.S. Dist. LEXIS 101952, *1-2 (S.D.N.Y. Jun. 7, 2024), this Court granted reconsideration where it had not considered e-mail exhibits attached to the underlying motion that were "integral" to the operative pleading.  This Court then explained that "[h]aving reviewed and reconsidered" the record, it agreed the documents "should have [been] reviewed." Id. at *2; see also Dubose v. Jiminez, No. 22-CV-2124 (VB), ECF No. 82, at p. 7 (S.D.N.Y. Aug. 30, 2023) (granting reconsideration in part where "the Court has determined it overlooked an exhibit").

The same is true here.  The Ross Letter was on the docket, it was filed in direct response to Defendant's pre-motion letter on the very subject of Ms. Christensen's alleged misrepresentations, and it was identified by Wigdor as the firm's substantive response to the accusations Judge Rakoff had raised.  We respectfully submit that the Order's finding (at p. 56) that Wigdor "failed to counter Defendant's arguments" should be reconsidered in light of the existence of a docketed letter doing exactly that in connection with this very motion.

Finally, because the sanctions imposed on the Wigdor firm rest on the same findings of misrepresentation attributed to Ms. Christensen, the grounds for reconsideration set forth above apply with equal force to the firm.  If the Court vacates the findings that Ms. Christensen misrepresented Ms. Doe's testimony about Epstein's purported paternity, the procedures of the July 8, 2024 hearing, and the reasons for amending the Complaint, then the sanctions imposed on the firm should likewise be vacated in that regard.

11

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant reconsideration of its Order against Ms. Christensen and Wigdor and vacate:  (i) the finding that Ms. Christensen misrepresented Ms. Doe's testimony about Epstein's purported paternity; (ii) the finding that Ms. Christensen misrepresented the procedures of the July 8, 2024 hearing and Judge Rakoff's questioning at that hearing; (iii) the finding that Ms. Christensen misrepresented the reasons for amending the Complaint; and (iv) the sanctions imposed on Ms. Christensen and Wigdor that rest on those findings.

Dated: New York, New York
        May 6, 2026

                           Respectfully submitted,


                           By:   /s/Michael S. Ross
                                 Michael S. Ross

                                 /s/Eugene Gormakh
                                 Eugene Gormakh

                           Law Offices Of Michael S. Ross
                           One Grand Central Place
                           60 East 42nd Street
                           Forty-Seventh Floor
                           New York, New York 10165
                           Tel. (212) 505-4060
                           michaelross@rosslaw.org
                           eugenegormakh@rosslaw.org

                           *Counsel to Non-Parties Wigdor LLP*
                           *and Jeanne M. Christensen*

12

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Eugene Gormakh, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rules 6.3 and 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and contains 3,495 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 6.3.

I certify under penalty of perjury that the foregoing statements are true and correct. Executed this 6th day of May, 2026, in New York, New York.


/s/Eugene Gormakh
Eugene Gormakh

13