

**Michael J. Willemin**
mwillemin@wigdorlaw.com

August 7, 2026

**VIA ECF**

The Honorable Jessica G. L. Clarke
United States District Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601

      Re:    *Doe v. Black,* Case No. 1:23-cv-06418-JGLC

Dear Judge Clarke:

We write in furtherance to Wigdor LLP ("Wigdor's") opposition to Defendant Black's application for attorneys' fees.  Dkt. No. 456 ("Opposition"); Dkt. No. 440 ("Application").  Specifically, we respectfully request that the Court consider the attached report, released on August 4, 2026 by Senator Ron Wyden (the "Wyden Report" or the "Report"), in connection with Defendant's application.  The Wyden Report strongly supports Wigdor's argument that granting Defendant's application would create inequitable results given Black's repeated lies to this Court and others concerning his close and longstanding relationship with Jeffrey Epstein.  Opposition at pp. 26-27.

The Report details Senator Wyden's investigation into Jeffrey Epstein's financial activities, and specifically probed the ways in which Defendant Black funded Epstein's finances.  The Report explains in excruciating detail not only how Black provided $170 million dollars to Epstein from 2012-2017, but also that multiple Wall Street banks reviewed those transactions, flagged them as suspicious and not legitimate, and nevertheless allowed Black to continue funding Epstein's trafficking operations.  Among other things, the Report found that:

- "Billionaire Leon Black was overwhelmingly the largest source of funding for Epstein's sex trafficking;"

- "Epstein relied heavily on large payments from Black to bankroll his sex trafficking activity;"

85 FIFTH AVENUE  |  NEW YORK, NY 10003  |  212 257 6800  |  WIGDORLAW.COM



- "According to a settlement agreement signed by Black in [the U.S. Virgin Islands], Epstein used the money Black paid him to fund his sex trafficking activity in USVI;"

- "As part of this settlement, Black agreed to pay $62.5 million and avoided criminal prosecution in the USVI in relation to any matters concerning Jeffrey Epstein;"

- "Black was Epstein's primary source of income [approximately 90%] between 2012 and 2017;"

- "Bank of America in 2020 retroactively flagged $170 million in payments from Black to Epstein;"

- "In Bank of America's February 7, 2020, SAR filing, the bank flagged $156 million paid by the Black accounts to Epstein and stated that **'the wire transfer activity does not have a verifiable business purpose.'**" (Emphasis in original).

- "The bank's 2020 filing also stated that the years-old transactions **had 'no apparent economic, business or lawful purpose.'**" (Emphasis in original).

- "Epstein depended on the money he received from Black to finance his criminal activity;" and

- Even after closing Epstein's accounts, executives at J.P. Morgan Chase nevertheless sought to continue working with Epstein "as a source of referrals for business with ultra-wealthy clients," including Leon Black; indeed, multiple emails indicate that Epstein served as an intermediary between JPMC and Black and that Epstein was considered "Leon's primary advisor."

The Report's revelations come on the heels of Black's open defiance of the House Oversight Committee's investigation into Epstein. On June 26, 2026 (also after Wigdor's Opposition was filed), Black walked out of an interview with the Committee after refusing to answer questions about non-disclosure agreements ("NDAs") related to Jeffrey Epstein. See https://www.bbc.com/news/articles/cn948lwyl3jo (last accessed August 6, 2026); https://abcnews.com/US/leon-black-walked-epstein-interview-after-refusing-answer/story?id=134726348 (last accessed August 6, 2026). Then, after Black was subpoenaed for those NDAs, he produced a single agreement, unilaterally asserting—through counsel—that the congressional subpoena's scope was inappropriate and irrelevant. See https://www.politico.com/live-



updates/2026/07/24/congress/comer-unhappy-that-leon-black-produced-just-one-nda-to-house-oversight-01012064 (last accessed August 6, 2026).

Wigdor's Opposition brief argues that reimbursing Black for legal fees (particularly the exorbitant amount requested) would be inequitable and would not accomplish the goal of the sanction at issue.  Opposition at pp. 26-27.  The Opposition also argues that "to pay a reasonable amount to the Court or to a pro bono legal service would accomplish the Order's goals far more than paying $1.6mm+ million to Black would." Id. at p. 26; see also Fed. R. Civ. P. 11 (1993 Advisory Comm. Notes) ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty."); Hildenbrandt v. Apfel, 189 F.R.D. 237, 239 (N.D.N.Y. 1999) (ordering sanction pursuant to court's inherent power to be paid to court's pro bono fund).  The Report—which establishes "Billionaire Leon Black was overwhelmingly the largest source of funding for Epstein's sex trafficking"—provides further support for these arguments.  In particular, the Report makes even more clear that any payment to Black directly would run contrary to any notion of justice, and that it would be far more equitable to require a reasonable payment to be made to an organization with the mission of combating sex trafficking rather than to Black, who "was overwhelmingly the largest source of funding" for the most notorious sex trafficking operation of all time.

As such, we respectfully request that the Court consider Senator Wyden's findings in deciding Defendant's motion, particularly given that that "fee awards are at bottom an equitable matter." Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979) (citing Hall v. Cole, 421 U.S. 1 (1973)).

We thank Your Honor for the Court's time and consideration of this matter.

Respectfully submitted,

Michael J. Willemin